# EXHIBIT F



REPORT OF JEFFREY M. KATZ, CPA/ABV, CFF, CFE
REGARDING THE BALANCE SHEETS OF
INDUSTRIAL CARRIERS, INC. IN 2008

November 21, 2013



## Table of Contents

A. Introduction ..................................................................................................................... 1

B. Qualifications ................................................................................................................... 1

C. Summary of Opinions ....................................................................................................... 2

D. Background ....................................................................................................................... 2

E. Forward Freight Agreements ............................................................................................ 4

F. Analysis of ICI Financial Statements .............................................................................. 7

G. Conclusion ...................................................................................................................... 12

Appendix A – Sources of Information and Documentation Considered ...................................... 13

Appendix B – Biography of Jeffrey M. Katz, CPA/ABV, CFF, CFE ........................................ 14

Privileged and Confidential - Attorney Work Product - Draft, Subject to Revision



## A. Introduction

I have been retained on behalf of Flame S.A. ("Flame") by Blank Rome LLP and Winter Scott LLP in connection with proceedings brought forth by Flame SA seeking collection of an approximately $19 million judgment from Industrial Carriers Inc. ("ICI"). Flame alleges, among other things, that Vista Shipping Ltd. ("Vista") and Freight Bulk Pte Ltd ("FBP") are alter ego entities of ICI and/or are companies created from the fraudulent conveyance of cash from ICI.

I have been asked on behalf of Flame to assess, among other things, the changes in the financial condition of ICI. This report sets forth my opinions and the basis for those opinions. This report is based on the information I have reviewed to date. I reserve the right to revise my opinions as additional information becomes available, including any additional expert reports. A listing of documents I have considered can be found in Appendix A.

## B. Qualifications

I am a Partner in the Litigation & Fraud Investigation Practice of BDO Consulting, a Division of BDO USA, LLP, and the Practice Leader for Post-Acquisition Disputes and Economic Damages. I received my Bachelor of Science degree with majors in Accounting and Economics from Rutgers University.

I am a Certified Public Accountant licensed in the states of New Jersey and New York and have received my Accreditation in Business Valuation and Certified in Financial Forensics designations from the American Institute of Certified Public Accountants. I am also a Certified Fraud Examiner from the Association of Certified Fraud Examiners.

I have over 26 years of professional experience providing forensic accounting services in business disputes and other litigation matters, including experience serving as an arbitrator in post-acquisition disputes. A copy of my biography, including expert testimony provided in the past four years and publications authored in the last ten years, is attached as Appendix B.

BDO is being compensated for the services performed based upon hours actually expended times our hourly billing rates. My hourly billing rate for this matter is $625. The fees are not



contingent upon the results of this matter. All work performed in this matter was performed at my direction and under my supervision.

## C. Summary of Opinions

As will be discussed in this report, it is my opinion that 1) ICI directed cash payments to subsidiary companies identified as companies created for the sole purpose of receiving cash due ICI and that such an arrangement is unusual, 2) based on a review of ICI's 2008 balance sheets, there appears to have been a large transfer of cash out of ICI and/or its related companies without explanation, 3) ICI's apparent failure to disclose intercompany receivables due from its subsidiaries in its bankruptcy filing in Greece is not in accordance with standard accounting practices.

## D. Background

Flame is an integrated shipping & trading company registered and headquartered in Lugano (Switzerland). Its major focus is in the sourcing and supply of steaming coal, petroleum coke and metallurgical coke, from various origins such as Australia, Indonesia, Russia, South Africa, United States and Colombia, for delivery to customers worldwide.

ICI was incorporated in the Republic of the Marshall Islands on September 21, 1999. The main business of the company was to serve as the operator of bulk carriers. The company did not own any vessels and only chartered vessels for the purposes of its operations.

ICI had several entities that were wholly-owned subsidiaries, which it dominated and controlled. These wholly-owned subsidiaries were:

- Weaver Investment Inc.
- Tempest Services Inc.
- Auster Marine Co.
- Selene Shipmanagement S.A.
- Cardinia Management Co.
- Treselle Navigation Inc.

All of these subsidiaries were registered under the laws of the Republic of the Marshall Islands. According to the audited financial statements of ICI and its subsidiaries (the "Group"), the sole activity of these subsidiaries was to maintain bank accounts which were used to receive funds



due to ICI. A review of certain invoices issued by ICI establishes that ICI provided instructions for payment to be made to those subsidiaries. According to information from the Republic of the Marshall Islands, the registrations for all of these subsidiaries were annulled (involuntarily dissolved) on July 28, 2011 (Auster Marine Co.), June 15, 2012 (Cardinia Management Co.), October 1, 2010 (Selene Shipmanagement S.A., Tempest Services Inc., Weaver Investment Inc.), April 1, 2010 (Treselle Navigation Inc.). In addition, on July 1, 2008, ICI formed IC Ukraine, a Ukrainian registered company that was a wholly-owned by "IC Marshall Islands."

In addition, to the wholly-owned subsidiaries, there were several entities which the Group's audited financial statements described as being related parties. These included:

- Branwyn Marine Corporation
- Blue Coast Navigation S.A.
- Fist Inc.

ICI conducted transactions and had outstanding balances with these entities. I understand that Blue Coast was deemed an alter ego of ICI in the case name of is <u>World Reach Shipping Ltd. v. Indus. Carriers Inc.</u>, 2006 U.S. Dist. LEXIS 83224 (S.D.N.Y. Nov. 9, 2006).

The audited financial statements of the Group also describe a company called Diamant Co. Ltd. as being under common control as ICI and providing commercial management services to the Group.

As of December 31, 2007 the owners of ICI were as follows:

| Shareholder's Name | Shareholder Percentage |
|---|---|
| S. Baranskiy | 40.5% |
| V. Cherepanov | 26.5% |
| V. Tarasov | 17.0% |
| A. Kozminkikh | 16.0% |
| Total | 100% |

At a shareholder meeting on February 1, 2008, it was agreed that Viktor Baranskiy would be "admitted" as a shareholder effective January 1, 2008. There is no indication that Viktor Baranskiy purchase or provided consideration for that stock. After the admission of Viktor Baranskiy as a shareholder the ownership interests were as follows:



| Shareholder's Name | Shareholder Percentage |
|---|---|
| S. Baranskiy | 33.0% |
| V. Cherepanov | 21.8% |
| V. Baranskiy | 18.0% |
| V. Tarasov | 14.0% |
| A. Kozminkikh | 13.2% |
| Total | 100% |

In carrying out its business, the Group was exposed to a variety of financial risks, including the effects of changes in interest rates, price risk, credit risk, liquidity risk and foreign exchange risk. Risk management was carried out under policies approved by the Group's management who provided guidelines for overall risk management, as well as policies covering specific areas. One risk area that appears to have been significant to Group in 2008 was price risk. According to the company, the Group was exposed to price risk in connection with the daily charter rates that it could secure on its vessels. The Group sought to mitigate this risk by (a) entering into short term charter-in agreements corresponding to particular charter-out voyages and (b) entering into long-term charter-in agreements securing significantly lower rates. The Group also entered into Forward Freight Agreements ("FFAs") in order to partially mitigate the impact of fluctuations in the hire rates by fixing certain cargoes and routes at particular rates in advance.

## E. Forward Freight Agreements

Forward Freight Agreements are contracts between two parties for that can be used to hedge exposure to freight market risk through the trading of specified time charter and voyage rates for forward positions. Essentially, one party to a FFA projects that shipping rates will increase while the other party projects that shipping rates will decrease. On a monthly basis, FFAs are settled where one party pays the other party depending on which direction shipping rates moved. The parties that utilize FFAs do not actually get the use of a ship, but rather trade just the paper. According to the Group's audited financial statement for the year ending December 31, 2007 and its financial statement for the six months ending June 30, 2008, it did not enter into any FFAs that qualified for hedge accounting treatment, indicating that it was not entering into FFAs to hedge its exposure to the freight market.

# |BDO

For example, according to the Group's audited financial statement for the year ending December 31, 2007, on December 18, 2007, the Group had entered into an FFA based on the BPI Average 4 Panamax TC Routes on a notional price of $61,900 for 366 days with settlement taking place monthly against all BPI days of the month. At December 31, 2007, the price for this FFA was $58,745. The decline in value of the FFA means that ICI has a fair value loss of $1,154,730. That amount is shown as a liability on the Group's December 31, 2007 balance sheet, but it does reflect any amount that is currently payable. It appears that based on how this FFA was recorded in the balance sheet of ICI, ICI was projecting that shipping rates would be increasing in the future.

During calendar year 2008, the price of FFAs was highly volatile for both Baltic Capesize Index Time Charter ("BCITC") and Baltic Panamax Index Time Charter ("BPITC"). The price of these two different types of FFAs increased from January 2008 through May 2008 before declining slightly in June 2008. Although the price of the BCITC FFAs began to decline in June 2008, it did not drop below the January 2008 levels until September 2008 when it dropped significantly. Similarly, the price of BPITC FFAs was greater than the January 2008 levels until August 2008 when it was less than 10% below the January 2008 level before significantly decreasing in September 2008. After September 2008, the prices of FFAs continued to decrease through November and December 2008. For example, for the BPITC, the price was $55,937 in January 2008, increasing to $81,464 in May 2008, and then declining to $4,140 in December 2008. The change in the price of FFAs for BCITC was even more dramatic, starting at $110,262 in January 2008, peaking at $201,136 in May 2008 and declining to $3,995 in November 2008.

In general, the shipping rates increased from January 2008 through June 2008. According to an analysis of the market shipping rates, a "crash" in shipping rates began to occur in the middle of September 2008. Because ICI was projecting shipping rates to increase through the use of FFAs, a decline in market shipping rates in the month of September 2008 would result in ICI owing amounts to the FFA counterparties. Such amounts would have been settled in the beginning of October 2008. In October 2008, market shipping rates continued to decline. These trends can be seen in the following chart and graph:



Baltic Index
Average Shipping Rate

| | BCITC | BPITC | | BCITC | BPITC |
|---|---|---|---|---|---|
| Jan-08 | 110,262.32 | 55,937.05 | Jan-11 | 10,217.00 | 13,816.15 |
| Feb-08 | 111,501.67 | 54,201.86 | Feb-11 | 5,874.10 | 13,392.40 |
| Mar-08 | 130,145.32 | 65,693.84 | Mar-11 | 8,991.30 | 16,439.83 |
| Apr-08 | 141,394.95 | 67,050.77 | Apr-11 | 7,664.61 | 12,811.39 |
| May-08 | 201,135.50 | 81,464.30 | May-11 | 7,372.25 | 13,903.00 |
| Jun-08 | 186,297.71 | 75,248.00 | Jun-11 | 10,779.77 | 14,647.27 |
| Jul-08 | 153,940.78 | 70,134.13 | Jul-11 | 11,862.19 | 12,658.62 |
| Aug-08 | 130,482.25 | 51,965.70 | Aug-11 | 13,142.41 | 12,458.64 |
| Sep-08 | 70,063.32 | 39,836.68 | Sep-11 | 26,170.00 | 13,482.95 |
| Oct-08 | 19,516.70 | 11,429.83 | Oct-11 | 29,372.90 | 15,759.10 |
| Nov-08 | 3,994.85 | 6,736.00 | Nov-11 | 26,159.95 | 14,439.27 |
| Dec-08 | 6,498.56 | 4,139.50 | Dec-11 | 30,651.24 | 13,748.71 |
| Jan-09 | 14,377.19 | 4,397.43 | Jan-12 | 10,288.29 | 9,432.10 |
| Feb-09 | 31,978.80 | 10,662.20 | Feb-12 | 5,395.29 | 6,885.95 |
| Mar-09 | 23,267.77 | 14,610.64 | Mar-12 | 5,306.91 | 7,646.18 |
| Apr-09 | 19,982.00 | 11,302.30 | Apr-12 | 6,457.11 | 10,589.11 |
| May-09 | 37,485.47 | 18,362.63 | May-12 | 7,617.77 | 10,263.14 |
| Jun-09 | 80,846.27 | 24,189.59 | Jun-12 | 3,884.16 | 7,936.68 |
| Jul-09 | 60,852.26 | 25,570.52 | Jul-12 | 5,909.77 | 8,891.32 |
| Aug-09 | 44,241.40 | 19,555.30 | Aug-12 | 3,501.41 | 6,624.91 |
| Sep-09 | 29,918.82 | 19,716.95 | Sep-12 | 5,095.50 | 4,180.60 |
| Oct-09 | 41,889.45 | 22,242.09 | Oct-12 | 13,151.22 | 6,029.70 |
| Nov-09 | 70,280.62 | 31,334.52 | Nov-12 | 15,809.41 | 6,908.64 |
| Dec-09 | 54,449.39 | 29,404.83 | Dec-12 | 8,933.56 | 6,814.88 |
| Jan-10 | 38,394.80 | 30,708.50 | Jan-13 | 7,038.50 | 5,696.36 |
| Feb-10 | 30,862.45 | 25,390.40 | Feb-13 | 6,310.80 | 6,428.15 |
| Mar-10 | 33,236.13 | 32,351.39 | Mar-13 | 4,725.50 | 9,176.35 |
| Apr-10 | 29,192.10 | 31,268.00 | Apr-13 | 4,447.52 | 8,981.76 |
| May-10 | 47,997.00 | 34,592.47 | May-13 | 5,473.81 | 7,417.33 |
| Jun-10 | 38,113.27 | 26,843.86 | Jun-13 | 8,844.85 | 6,883.70 |
| Jul-10 | 15,857.91 | 18,046.55 | Jul-13 | 13,314.65 | 8,617.74 |
| Aug-10 | 27,749.05 | 22,955.95 | Aug-13 | 13,642.62 | 7,494.62 |
| Sep-10 | 35,429.77 | 24,068.59 | Sep-13 | 30,485.57 | 10,694.71 |
| Oct-10 | 42,516.38 | 18,778.86 | Oct-13 | 29,415.35 | 15,512.96 |
| Nov-10 | 35,632.77 | 18,282.36 | Nov-13 | 19,253.50 | 12,460.50 |
| Dec-10 | 25,161.56 | 17,550.22 | | | |





A review of ICI's balance sheet as of June 30, 2008 shows that it had gains from FFAs in the amount of $23,187,142. This gain, combined with the FFA prices increasing in the first several months of 2008, further indicates that ICI benefited financially when the price of FFAs increases. After June 2008, the price of FFAs dropped and continued to decrease throughout the rest of the year; however prices did not begin to "crash" until the middle of September 2008. In fact, although prices began declining after June 2008, ICI remained profitable through August 31, 2008 as evidenced by the testimony of ICI's head company accountant, Mr. Fr. Koutatzis, in the proceedings in Greece. The beginning of this "crash" in the middle of September 2008 is when ICI alleges to have begun having financial difficulties.

## F. Analysis of ICI Financial Statements

A review of ICI's financial statements shows that it was a profitable company that appeared to be in good financial condition. As shown in the following table, ICI was profitable in year from 2005 through 2007 and for the six months ending June 30, 2008:



|  | 30-Jun-08 | 31-Dec-07 | 31-Dec-06 | 31-Dec-05 |
|---|---|---|---|---|
| Gross Revenue | $556,295,520 | $560,804,497 | $182,849,400 | $175,473,844 |
| Profit | $80,627,022 | $36,136,046 | $819,251 | $10,784,206 |

The company's balance sheet shows that by June 30, 2008, ICI had more than $100 million of equity, which included more than $42 million of cash.

Industrial Carriers, Inc. and Subsidiaries

|  | 6/30/2008 | 12/31/2007 | 12/31/2006 | 12/31/2005 |
|---|---|---|---|---|
| **ASSETS** | | | | |
| **Non-Current Assets** | | | | |
| Fixed Assets - Property, plant & equipment | 337,030 | 362,670 | 429,657 | 408,274 |
| Due from Shareholders | 0 | 221,300 | 236,304 | 251,308 |
| | | | | |
| **Current Assets** | | | | |
| Inventories | 20,197,334 | 14,222,740 | 3,230,591 | 2,968,781 |
| Trade and Other Receivables | 66,541,787 | 42,945,630 | 3,923,888 | 4,429,247 |
| Due from Shareholders | 0 | 2,853,163 | 1,785,920 | 8,970,424 |
| Restricted Cash | 10,027 | 10,026 | 10,000 | 10,000 |
| Derivative Financial Instruments | 35,662,310 | - | - | - |
| Money Available in Bank - Cash | 39,236,853 | 17,695,666 | 2,432,907 | 5,900,711 |
| Restricted Cash - Current | 3,500,000 | - | - | - |
| | | | | |
| **Total Assets** | 165,485,341 | 78,311,195 | 12,049,267 | 22,938,745 |
| | | | | |
| **LIABILITIES** | | | | |
| Trade and Other Accounts Payable | 60,090,239 | 36,822,030 | 7,850,878 | 8,332,684 |
| Derivative Financial Instruments | - | 1,154,730 | - | - |
| Due to Shareholders | 4,453,645 | - | - | - |
| Provision for other Liabilities and Charges (Long Term) | 12,893 | 12,893 | 12,893 | 10,976 |
| | | | | |
| **Total Liabilities** | 64,556,777 | 37,989,653 | 7,863,771 | 8,343,660 |
| | | | | |
| **Net Position - Total Equity** | 100,928,564 | 40,321,542 | 4,185,496 | 14,595,085 |

8

# BDO

Despite ICI's strong financial performance through August 2008, ICI filed for bankruptcy in Greece on or about October 15, 2008. I have been advised by counsel for Flame that only ICI filed for bankruptcy and that ICI's wholly-owned subsidiaries and related parties did not file for bankruptcy. A comparison of ICI's June 30, 2008 balance sheet and ICI's balance sheet that was included with ICI's Greece bankruptcy filing is as follows:

Industrial Carriers, Inc.
Comparison of Balance Sheet

| | 6/30/2008 | 10/15/2008 |
|---|---|---|
| **ASSETS** | | |
| Fixed Assets - Property, plant & equipment | 337,030 | 384,006 |
| Restricted Cash - Long Term | 10,027 | |
| Money Available in Bank - Cash | 39,236,853 | 3,123,076 |
| Restricted Cash - Current | 3,500,000 | |
| Treasury | | 357,460 |
| Claims (Without Derivatives) - Accounts Receivable | 66,541,787 | 18,879,735 |
| Claims (From Derivatives) - Derivative Financial Instruments | 35,662,310 | 418,699 |
| Inventories | 20,197,334 | |
| | | |
| Total Assets | 165,485,341 | 23,162,976 |
| | | |
| **LIABILITIES** | | |
| | | |
| Liabilities (Without Derivatives) - Trade/Other Accounts Payable | 60,090,239 | 34,555,806 |
| Liabilities (With Derivatives) - Derivative Financial Instruments | - | 4,077,980 |
| Due to Shareholders | 4,453,645 | |
| Provision for other Liabilities and Charges (Long Term) | 12,893 | |
| | | |
| Total Liabilities | 64,556,777 | 38,633,786 |
| | | |
| Net Position - Total Equity | 100,928,564 | (15,470,810) |

A review of the changes in the more significant balance sheet categories from June 30, 2008 through the October 15, 2008 bankruptcy filing follows:



Assets

*Cash*

Cash decreased from $42.7 million as of June 30, 2008 to $3.1 million in the October 15, 2008 Greece bankruptcy documents, a decrease of $39.6 million. With limited financial information available for ICI and subsidiaries, it is difficult to determine exactly the reasons for the cash decline. However, in my opinion the decrease in cash is highly suspect given that the wholly-owned subsidiaries, whose sole activity was to maintain bank accounts which were used in the operations of ICI, did not also file for bankruptcy. Because those subsidiaries did not also file for bankruptcy, one would have expected ICI to have listed the amounts held by the subsidiaries as intercompany receivables (or amounts due from related parties) as an asset in the bankruptcy filing. No such disclosure appears to have been made.

*Accounts Receivable / Claims (without Derivatives)*

Accounts receivable decreased from $66.5 million as of June 30, 2008 to $18.9 million in the October 15, 2008 Greece bankruptcy documents, a decrease of $47.6 million. According to its financial statements, ICI management did not anticipate that any receivables will not be collected. A decrease in accounts receivable means that ICI's cash balance should have increased by $47.6 million after June 30, 2008, but before filing for bankruptcy, on account of the change in accounts receivable.

*Derivative Financial Instruments / Claims (with Derivatives)*

Derivative financial instruments declined from $35.6 million as of June 30, 2008 to $0.4 million in the October 15, 2008 Greece bankruptcy documents, a decrease of $35.2 million. This indicates that the value of the derivative financial instruments that ICI held declined in value by $35.2 million. The decline in value of the derivative financial instruments is at least partially related to the decline in FFA values. The change in the value of FFA contracts is reflected on ICI's balance sheet, but this line item does not reflect cash inflows or outflows.

*Inventories*

Inventories declined from $20.2 million as of June 30, 2008 to zero as shown in the October 15, 2008 Greece bankruptcy filings, a decrease of $20.2 million. The inventories reflected on ICI's balance sheet were the inventory for bunkers. Bunkers are the fuel that is used to power the ships. Typically when such inventory declines in value, it is an indication that it was either used in operations or sold back to the ship owner. It is not possible to determine from the limited documentation available whether ICI received cash for the bunker inventory or the ship owners used it for payment of ICI's debts. To the extent ICI was paid for the bunker inventory, it would have received additional cash.



Liabilities

*Trade and Other Accounts Payable / Liabilities (without Derivatives)*

Trade and other accounts payable declined from $60.1 million as of June 30, 2008 to $34.6 million in the October 15, 2008 Greece bankruptcy documents, a decrease of $25.5 million. A decrease in accounts payable is an indication that cash was used to pay the accounts payable after June 30, 2008, but before the bankruptcy filing.

*Derivative Financial Instruments / Liabilities (with Derivatives)*

Derivative financial instruments liabilities increased from zero as of June 30, 2008 to $4.1 million as shown in ICI's October 15, 2008 bankruptcy filing, an increase of $4.1 million. This indicates that the value of the derivative financial instruments that ICI held declined in value by $4.1 million. The decline in value of the derivative financial instruments appears to be at least partially related to the decline in FFA values. Changes in the value of FFA contracts are reflected on ICI's balance sheet, but this line item does not reflect cash inflows or outflows.

*Due to Shareholders*

The amount due to shareholders declined from $4.5 million as of June 30, 2008 to zero in the October 15, 2008 Greece bankruptcy documents, a decline of $4.5 million. A decrease in the amount due to shareholders is an indication that the loan was either forgiven or the amount was paid to the shareholders. Once again with the limited financial information available, it is not possible to tell.

Although without a complete set of financial records it is difficult to calculate the amount of cash inflows and cash outflows, the above analysis of the changes in the balance sheet items, seem to indicate that cash should have increased by $47.6 million on account of the collection of accounts receivable and possibly $20.2 million on accounts of the bunker inventory. In addition, cash should have decreased by $25.5 million as a result of the decrease in account payable and $4.5 million from a decrease in the amount owed to shareholders (assuming the debt was not forgiven). Therefore, based upon the available information, one would have expected cash to increase by a total of at least $17.6 million ($47.6 million - $25.5 million - $4.5 million). If the bunker inventory were sold and not used in the operations, one would have expected cash to increase by $37.8 million ($17.6 million + $20.2 million). However, cash actually decreased by $39.6 million. This difference between the expected amount of cash and the actual cash balance is $57.2 million ($17.6 million + $39.6 million). When one takes into account that the wholly-

**|BDO**

owned subsidiaries of ICI have "disappeared," the difference between the expected and actual cash balances is highly suspect.

## G. Conclusion

It is my opinion that 1) ICI directed cash payments to subsidiary companies identified as companies created for the sole purpose of receiving cash due ICI and such an arrangement is unusual, 2) based on a review of ICI's 2008 balance sheets, there appears to have been a large transfer of cash out of ICI and/or its related companies without explanation, 3) ICI's apparent failure to disclose intercompany receivables due from its subsidiaries in its bankruptcy filing in Greece is not in accordance with standard accounting practices.

Respectfully Submitted,

_Jeffrey M. Katz_

Jeffrey M. Katz

Dated: November 21, 2013



## Appendix A – Sources of Information and Documentation Considered

In connection with this case, I have considered the following facts and data:

- Memorandum – Background Facts
- Forward Freight Agreement between Flame SA (Seller) and Industrial Carriers, Inc. (Buyer) dated March 12, 2008
- QBD Judgment in favor of Flame SA against Industrial Carriers, Inc.
- US Filing of UK Judgment
- Industrial Carriers, Inc. (Group of Companies) audited financial statements for the years ending December 31, 2006 and 2007, including the unaudited financial statement for the year ending December 31, 2005
- Industrial Carriers, Inc. (Group of Companies) financial statements for the six months ending June 30, 2008
- Industrial Carriers, Inc. company profile as of October 8, 2008
- Industrial Carriers, Inc. Voyage Statement of Account / Invoices
- Affidavit of Pagona Karagiorgi and Exhibits
- Industrial Carriers, Inc. Agency Contract and IC Ukraine Company Report
- Diamant Co Ltd Company Report
- Information regarding Vista Shipping Ltd. fleet and company information
- Vista Shipping Company website information accessed on October 26, 2011
- Vista Shipping Company Ltd Company Report
- Vista Shipping Company Ltd fleet information 2011-2012
- Industrial Carriers, Inc. investigation and Lloyd's Intelligence Report
- Memorandum and Articles of Association for Freight Bulk pte Ltd.
- Charter Party agreement between Vista Shipping Ltd and Flame SA dated July 5, 2013
- MKTM Fleet and Subsidiaries information
- Marshall Islands corporate structure information
- Vista registered corporation in New York
- http://www.balticexchange.com/default.asp?action=article&ID=35 – accessed on November 20, 2013.
- Forward Freight Agreement historical settlement prices and related information
- http://www.marexspectron.com/FAQs.aspx - accessed on 11/13/2013 3:16:54 PM
- Non-Resident Entity Reports from the Republic of the Marshall Islands for Industrial Carriers, Inc. and subsidiaries
- http://www.bloomberg.com/apps/news?pid=newsarchive&sid=aiVNoTyAYA78&refer=home – accessed on November 20, 2013
- http://sti-warrior.blogspot.com/2008/08/baltic-index-rise-18-aug-08.html - accessed on November 20, 2013
- http://en.link-run.com/html/News/Logistics_News/20080819/2363.html - accessed on November 20, 2013
- ICI's legal submissions in support of the (failed) application to liquidate in Greece.

**BDO**

## Appendix B – Biography of Jeffrey M. Katz, CPA/ABV, CFF, CFE



**|BDO** BDO CONSULTING

# Biography



jkatz@bdo.com
Direct: 212-885-8302
Mobile: 973-220-5037

100 Park Avenue
New York, NY 10017

Tel: 212-885-8000
Fax: 212-697-1299
www.bdoconsulting.com

### Jeffrey M. Katz, CPA/ABV, CFF, CFE
**BDO Consulting Partner**

EXPERIENCE SUMMARY

Jeffrey M. Katz leads BDO Consulting's Post-Acquisition Disputes and Economic Damages practices with more than 25 years of experience providing forensic accounting and litigation consulting services to attorneys, businesses and individuals. Mr. Katz analyzes financial issues, prepares damage analyses, designs court exhibits, provides testimony at trial or deposition, and serves as a neutral arbitrator.

Mr. Katz has testified on numerous subjects, including amounts lost by investors, economic damages, business valuation, and accounting subjects related to shareholder disputes, breach of contract, employee matters, and allegations of fraud. He also serves as a neutral arbitrator in post-acquisitions disputes, having arbitrated more than 35 private matters.

He has provided expert testimony before the United States District Court, United States Bankruptcy Court, Delaware Chancery Court, New Jersey Superior Court, Superior Court of California, New York Supreme Court, the American Arbitration Association, the National Association of Securities Dealers, and JAMS. He is a Certified Public Accountant, Accredited in Business Valuation, Certified in Financial Forensics and a Certified Fraud Examiner.

Mr. Katz has presented on topics such as fraud, valuation and stock option backdating to various organizations, including the U.S. Securities and Exchange Commission. He has published articles on post-acquisition dispute issues in numerous national publications.

PROFESSIONAL AFFILIATIONS

American Bar Association
American Institute of Certified Public Accountants
Association of Certified Fraud Examiners
New Jersey Society of Certified Public Accountants

EDUCATION

B.S., Accounting and Economics, Rutgers University

BDO USA, LLP, a Delaware limited liability partnership, is the U.S. member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms. BDO is the brand name for the BDO network and for each of the BDO Member Firms.

## CERTIFICATIONS

Certified Public Accountant (CPA)
Accredited Business Valuation (ABV)
Certified Fraud Examiner (CFE)
**Certified in Financial Forensics (CFF)**

## SELECT FINANCIAL INSTITUTION MATTERS

**Retail Brokerage Firm** - Led forensic accounting investigation into one of the largest retail brokerage frauds in U.S. history involving client losses of $250 million. BDO reconstructed account activity from paper records for hundreds of accounts and analyzed data to identify fraudulent transactions, improper transfers between accounts and liquidation of funds. Assisted counsel in negotiating settlements with account holders and the SEC.

**Retail Brokerage Firm** - Retained on behalf of the chairman of a retail brokerage firm alleged to have committed securities fraud, involving racketeering and defrauding customers, investors, other brokerage firms, and securities regulators through price manipulation of initial public offerings (IPOs) and illegal sales tactics. Analyzed individual customer gains and losses from IPOs, transactions where securities were alleged to have been "parked" at other brokerage firms, and prepared exhibits for counsel. BDO's work was utilized by the joint defense team.

**Investment Bank** - Provided expert witness testimony in NASD hearing on amounts owed to an investment bank in connection with a down-and-out option held by one of its customers who refused to pay for losses incurred. Analyzed underlying stock, terms of the option and calculated loss amounts. BDO also analyzed customer margin accounts.

**Financial Institution Mutual Funds** - Involved in the calculation of losses in over 30,000 mutual fund accounts for the purposes of analyzing a variety of claims, including improper practices related to mortgage securities. Conducted initial account statement/transactional data reconciliation with the Company's financial statements, identified accounts to be considered and demographic analyses and conducted loss scenarios.

**Hedge Funds** - Provided quality control review of report and distribution plan in connection with matter involving a family of hedge funds that experienced a $300 million fraud in three of the funds with a collective alleged value of over $1 billion and 350 high-profile investors.

**Video Game Developer** - Investigated stock option backdating allegations at a major video game developer and calculate adjustments to previously reported compensation expenses. The investigation resulted in a significant restatement of the Company's financial statements and the termination of the board chairman and the in-house counsel.

## EXPERT TESTIMONY - PRECEDING 4 YEARS

2013    Damages, Lost Earnings, Breach of Contract - *D__ v. S__*. American Arbitration Association - Arbitration Testimony.

2012    Business Valuation - *IDX Capital, LLC et al. v. Phoenix Partners Group LLC et al.* Supreme Court of the State of New York, County of New York - Trial Testimony.

2012    Damages - *Synnex Corporation* v. *Sitoa Corporation/Sitoa Corporation v. Synnex Corporation and New Age Electronics, Inc.* Superior Court of the State of California, County of Alameda - Deposition and Trial Testimony.

2012    Copyright Infringement - *FragranceNet.com, Inc.* and *Telescents, Inc.* v. *FragranceX.com, Inc.* United States District Court for the Eastern District of New York - Deposition Testimony.

2010    Post-Acquisition Dispute - *GA Escrow, LLC* v. *Autonomy Corporation plc.* United States District Court for the Northern District of California - Deposition Testimony.

2010    Post-Acquisition Dispute - *American Home Mortgage Corp* v. *Union Federal Bank of Indianapolis and Waterfield Shareholder LLC.* United States District Court for the Southern District of New York - Deposition Testimony.

2009    Post-Acquisition Dispute - *Jeffrey H. Rosen, Lawrence I. Rosen, and Sydney Rosen* v. *Mega Bloks Inc. and MB US Inc.* United States District Court for the Southern District of New York - Deposition Testimony.

2009    Lost Profits - *The Smart Marketing Group, Inc.* v. *Consumer Guide, LLC and Publications International Ltd.* United States District Court for the Northern District of Illinois, Eastern Division- Deposition (2007) and Trial Testimony (2009).

## SELECTED AS ARBITRATOR / NEUTRAL - PRECEDING 3 YEARS

2012    Independent Branding and Design Network Company - Arbitrator in a post-acquisition dispute involving a working capital adjustment in connection with the sale of a business.

2012    Asphalt Production and Paving Company - Arbitrator in a post-acquisition dispute in connection with the sale of a business.

2011    Printing Systems - Arbitrator in a post-accquisition dispute involving an earn-out in connection with the sale of a business division and formation of joint venture.

| 2011 | International Body Systems and Auto Parts Manufacturer - Arbitrator in a post-acquisition dispute involving a working capital adjustment in connection with the sale of a business division. |
|------|---|
| 2011 | Spacecraft Development and Manufacturer - Arbitrator in a post-acquisition dispute involving a net working capital adjustment in connection with the sale of a business. |
| 2011 | Financial Filing and Printing Firm - Arbitrator in a post-acquisition dispute involving an earn-out calculation in connection with the sale of a business. |
| 2011 | Designer and Manufacturer of High-Precision, Flight-Critical Components and Tooling - Arbitrator in a post-acquisition dispute involving a working capital adjustment in connection with the sale of a business. |
| 2010 | Recycling Company - Selected by party-arbitrators to serve as 3rd neutral arbitrator on a panel to resolve post-acquisition dispute involving purchase price agreement. |
| 2010 | Ordinance Disposal and Security Company - Arbitrator in post-acquisition dispute involving a tax indemnification claim. |

## PUBLICATIONS

| 2009 | The Deal, "The Earnout Fallout" (October). |
|------|---|
| 2006 | Mergers & Acquisitions; the Dealmaker's Journal, "Using Arbitration to Settle Post-Closing Tussles" (March). |
| 2005 | Corporate Counsel Weekly, "Understanding Post Acquisition Dispute Issues: An Accounting Arbitrator's Role in Heading off costly Litigation" (December). |
| 2005 | GC New York, "Balance Sheet - in Post-Acquisition Disputes, Arbitration is Often in the Hands of Accountants," (November). |
| 2005 | The Deal, "Minimize Post-Deal Accounting Disputes by Defining Beforehand How Financial Statement Items Will Be Valued - Bridging the GAAP," (June). |

## PRESENTATIONS

| 2010 | The Earnout Fallout: *Presenter, BDO Consulting.* |
|------|---|
| 2009 | Forensic Accounting for In-House Attorneys: *Presenter, Association of Corporate Counsel, Greater New York Chapter* |
| 2007 | Stock Option Investigations/ Restatement Process: *Seminar Panelist, Bowne* |

2006    What Should the Audit Committee Know About Stock Options Accounting, Including Backdating Issues?: *Conference, Association of Audit Committee Members, Inc.*

2006    Stock Options Backdating: Perspectives for All Public Companies: *Seminar Panelist, NASDAQ*

2006    Stock-Based Award Granting Practices: *Conference Panelist, Acsense*

2005    Closing Accounting Considerations/Minimizing Post-Acquisition Disputes: *Conference, The Wall Street Transcript, The Harvard Club, New York.*

2005    How to Frame Arguments in Post-Acquisition Disputes: *Podcast, DealLawyers.com.*

2005    The Impact of Hedge Fund Fraud & Current Techniques & Strategies for Prevention, Detection & Minimizing Liability: *Conference, Grand Cayman.*

2004    Understanding & Investigating Fraud: *United States Securities and Exchange Commission, Enforcement Division.*