IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | | |
|---|---|---|
| FLAME S.A. | ) | |
| | ) | |
| Plaintiff, | ) | Civ. No. 2:13-cv-658 |
| vs. | ) | |
| | ) | |
| INDUSTRIAL CARRIERS, INC. | ) | |
| VISTA SHIPPING, INC., and | ) | |
| FREIGHT BULK PTE. LTD., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT FREIGHT BULK PTE. LTD.'s EMERGENT MOTION TO VACATE ATTACHMENT

**COMES NOW**, Defendant, FREIGHT BULK PTE. LTD. (hereinafter "FBP" or "Defendant"), registered Owner of the M/V CAPE VIEWER, making a restricted appearance in these proceedings pursuant to FED. R. CIV. P. SUPP. R. E(8), by and through undersigned counsel, who respectfully submits this Memorandum of Law and the accompanying declaration of Timothy Saloman ("Saloman Decl.", Exhibit 1 hereto), in support of this Emergent Motion to Vacate the November 22, 2013 *ex parte* Order authorizing the issuance of the process of Maritime Attachment and Garnishment ("PMAG") of the vessel CAPE VIEWER (hereinafter "the Vessel"). FBP respectfully submits that the *ex parte* Order of Attachment was improperly obtained by Plaintiff, FLAME S.A. (hereinafter "FLAME"), and should never have been issued in the first instance, as Plaintiff does not have a valid maritime claim. The underlying claim asserted by FLAME is based on the alleged breach of a Forward Freight Agreement ("FFA") against a third-party, Defendant INDUSTRIAL CARRIERS, INC.'s ("ICI"), who is not related to the Vessel. The prevailing case law is clear that claims arising from FFAs lack the "genuine

1

salty flavor"[1] required to support this Court's exercise of admiralty jurisdiction. In fact, they are not at all "salty", as the subject matter of the contract is not related to operation and navigation of a particular vessel, the use or hire of a vessel, and/or the carriage of any particular cargo. Further, FFAs do not provide for resolution of disputes in an admiralty court or tribunal. FFAs involve strictly land-based transactions and are nothing more than commodity contracts. The report attached to FLAME's Complaint regarding Defendant ICI's financial statements, provides that "the parties that utilize FFAs do not actually get the use of a ship, but rather trade just the paper." Docket #1-10, pg. 7. Moreover, FFAs fall well outside the scope of those claims which District Courts have found to be maritime claims. Whether applying U.S. law or English law (the applicable law under the subject FFAs), there can be no dispute that Plaintiff's claims do not fall within this Court's admiralty jurisdiction. Plaintiff's failure to assert a maritime claim is fatal to this action, and as such, FBP's challenges to Plaintiff's alter ego allegations need not be addressed by the Court.[2]

As a result of this improper attachment, FBP, as owner of the Vessel, has been forced to incur significant damages, costs and fees, including loss of daily hire at a rate of USD 31,000 per day. In addition, the time charterer of the Vessel, Noble Chartering Inc. has advised that it

---

[1] Contracts that are "made on land, to be performed on land" lack the "genuine salty flavor" characteristic of maritime contracts. *Kalafrana Shipping, Ltd. V. Sea Gull Shipping Co.*, 591 F. Supp. 2d 505, 509 (S.D.N.Y. 2008)(*citing Norfolk Southern Ry. Co. v. Kirby*, 543 U.S. 14, 22 (2004)). *A. Elephant Corp. v. HiFocus Group Ltd.*, 2009 U.S. Dist. LEXIS 19396 (S.D.N.Y. 2009)( Where the primary objective of the contract at issue was to retire a vessel from navigation to be dismantled and sold for scrap, the Court determined that the contract is clearly more "sandy" than "salty", and not a maritime claim.)

[2] Notwithstanding, and as set forth in Point IV, *infra*, should the Court not dismiss the matter on the basis that Plaintiff has failed to assert a maritime claim, FBP reserves its right to continue with a further prompt post-seizure hearing pursuant to Rule E to challenge the Plaintiff's failure to sufficiently present its alter ego allegations.

intends to bring significant claims in addition to terminating the charter party. Additionally, there is a serious risk that the owners of the coal cargo which has been loaded on board at Hampton Roads, will also assert claims against FBP. As a result of the attachment, FBP is also incurring daily expenses of no less than USD 5,600 for extra bunkers required for un-berthing and re-berthing the vessel.

For the reasons more fully discussed herein, Defendant FBP respectfully submits that the Rule B attachment order and PMAG dated November 22, 2013 must be vacated; the Vessel released; the action dismissed; and Defendant FBP awarded damages, including the costs and expenses it has been forced to incur in bringing this motion to challenge this unlawful attachment. Defendant FBP makes this motion pursuant to Rules B and E of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (hereinafter "the Supplemental Admiralty Rules") and Local Admiralty Rule E(12).

## PROCEDURAL HISTORY

FLAME improperly commenced this Rule B action to obtain security for enforcement of a judgment entered against a third-party, ICI by the English High Court of Justice, Queen's Bench Division, Commercial Court Registry ("English judgment"). *See* Docket # 1 The underlying claim asserted by FLAME in the High Court proceeding allegedly arose from ICI's alleged breach of four (4) Forward Freight Swap Agreements ("FFAs"). FFAs are not maritime contracts. Rather, they are a financial trading instrument based upon a future "…difference between a price agreed today and the future price of moving a product from one location to another, or for the future price of hiring a ship over a period of time." *D'Amico Dry Ltd., v. Primera Mar. (Hellas) Ltd.*, 2011 U.S. Dist. LEXIS 84241, *2-3 (S.D.N.Y.). After obtaining the English judgment, FLAME successfully sought recognition of the foreign judgment in the

3

United States District Court for the Southern District of New York ("SDNY judgment"). *See* Docket #1-7, 1-8. The SDNY judgment was registered in this Court on October 17, 2013. *See* Docket #1-9.

In its Complaint, FLAME self-servingly alleged, without any evidentiary support, that moving Defendant FBP (an innocent non-party to its FFA with Defendant ICI), is an alter ego of ICI, and that FBP's property, the M/V CAPE VIEWER, is subject to attachment on the basis of these unsubstantiated alter ego allegations. *Id.* Further, FLAME erroneously asserted that the underlying breach of an FFA brings this action within the Court's admiralty jurisdiction. Nevertheless, this Court granted FLAME's motion for issuance of an Order authorizing process of maritime attachment and garnishment ("Order of attachment"). *See* Docket # 7. The PMAG was issued by the Clerk on November 22, 2013. The M/V CAPE VIEWER was attached on or about November 28, 2013.

## ARGUMENT

### POINT I

### PLAINTIFF BEARS THE BURDEN TO DEMONSTRATE WHY THE ATTACHMENT SHOULD BE MAINTAINED

In *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 541 (4th Cir. Md. 2013), the Fourth Circuit Court of Appeals held that, in order to "avoid vacatur of attachment", the plaintiff bears the burden of demonstrating that:

> (1) it has a valid prima facie admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) property of the defendant can be found within the district; and (4) there is no statutory or maritime law bar to the attachment. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006); *see* Fed. R. Civ. P., Supp. R. B.

*Id.* All four (4) factors must be satisfied in order for a Rule B attachment to be sustained. It is well-settled that "after receiving notice of Supplemental Rule B attachment, the defendant is entitled to contest the attachment at a prompt hearing pursuant to Rule E(4)(f). *Id.*; *see also Evridiki Navigation, Inc. v. Sanko S.S. Co.*, 880 F. Supp. 2d 666, 672 (D. Md. 2012) ("Whenever property is attached under Supplemental Admiralty Rule B, Supplemental Rule E(4)(f) allows any party claiming an interest in the property to obtain a prompt hearing at which the attaching plaintiff must bear the burden of showing that the attachment is proper.")(citing Fed. R. Civ. P., Supp. R. E(4)(f))(*emphasis added*).

Here, Plaintiff FLAME cannot sustain its burden of proving that all the prerequisites for a Rule B attachment have been met. In fact, it fails to satisfy even the first element, as the substance of Plaintiff's claim is based upon purported breaches of FFA contracts, which do not give rise to a maritime claim. In addition, Plaintiff has wholly failed to establish probable cause for its alter-ego claim against Defendant FBP. *Amstar Corp. v. S/S Alexandros T.*, 664 F.2d 904, 912 (4th Cir. 1981)(Court recognizes that a party "challenging the validity of an arrest is constitutionally entitled to a prompt post-arrest hearing in which the *plaintiff has the burden of showing probable cause for the arrest.*")(*emphasis added*); *Austral Asia Line Pte. Ltd. V. SE Shipping Line Pte. Ltd.*, 2012 U.S. Dist. LEXIS 91104 (E.D. La. July 2, 2012)(At Rule E(4)(f) post-arrest hearing stage, "the attaching party must present sufficient evidence to show probable cause for the attachment."). Accordingly, Defendant respectfully submits that the Order of Attachment must be vacated, *as a matter of law*.

## POINT II

### THE FFAs AT ISSUE DO
### NOT GIVE RISE TO A MARITIME CLAIM

Through this Rule B action, FLAME is seeking to enforce a judgment entered by the High Court of Justice, Queen's Bench Division, Commercial Court Registry ("English High Court"). The Fourth Circuit Court of Appeals has held that "federal courts in the United States possess jurisdiction in admiralty over claims to enforce a foreign admiralty judgment" only where "the claim itself is maritime in nature." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 534 (4th Cir. Md. 2013)(*citing Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987)("[A]n admiralty court has jurisdiction of a claim to enforce a foreign judgment *that is itself based on a maritime claim.*")(*emphasis added*).

A. **FFA Disputes are Not Maritime Claims.**

FFAs disputes do <u>not</u> fall within the Court's admiralty jurisdiction. The seminal case regarding application of the court's admiralty jurisdiction to contract disputes is *Norfolk Southern Ry. Co. v. Kirby*, 543 U.S. 14, 23 (2004). In *Norfolk*, the U.S. Supreme Court recognized as follows:

> Our cases do not draw clean lines between maritime and non-maritime contracts. We have recognized that "[t]he boundaries of admiralty jurisdiction over contracts--as opposed to torts or crimes--being conceptual rather than spatial, have always been difficult to draw... [T]he trend in modern admiralty case law...is to *focus the jurisdictional inquiry upon whether the nature of the transaction was maritime.*

*Id.* at 24 (*emphasis added*). Applying the U.S. Supreme Court's rationale, it is clear that in determining whether a contract falls within the federal admiralty jurisdiction, the focus of the analysis must be the subject matter of the contract. *See Norfolk*, 543 U.S. 14, 24 (2004); *Barna Conshipping, S.L. v. 2,000 Metric Tons of Abandoned Steel*, 410 Fed. Appx. 716, 722 (4th Cir.

Va. 2011)("Admiralty jurisdiction exists over contract disputes if the contract at issue is a maritime contract; whether a contract qualifies as a maritime contract 'depends upon the nature and character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions.'")(*citing Norfolk*); *Colonna's Shipyard, Inc. v. U.S.A.F. Gen. Hoyt v. Vandenberh*, 584 F. Supp. 2d 862, 866 (E.D. Va. 2008)("A contract dispute falls within federal courts' admiralty jurisdiction if the subject matter of the contract is maritime."). A contract is maritime if it relates to a ship in its use in commerce or upon navigable waters. *Outbound Maritime Corp. v. P.T. Indonesian Consortium of Constr. Industries*, 582 F. Supp. 1136, 1141 (D. Md. 1984)(citing *New Jersey Steam Navigation Co. v. Merchants' Bank*, 47 U.S. 344, 392, 6 Howard 344, 12 L. Ed. 465 (1848); 1 *Benedict on Admiralty* § 183 at 11-6 (7th Ed. 1981). One treatise provides the following guidance:

> Admiralty does not recognize contracts that, while preliminary to maritime contracts or related to maritime contracts, are not actually concerned with the business of running or navigating a boat...This rule exists to exclude from admiralty jurisdiction matters that are too tenuously connected to maritime contracts to warrant extending admiralty jurisdiction over them.

*See* 1 Benedict on Admiralty § 183 (7th ed. 2010).

Plaintiff's attempt to characterize the FFAs at issue as "maritime contracts" is factually incorrect and legally insufficient to establish the underlying claim as maritime. There is a long line of cases in which claims which are arguably more "salty" than the claims asserted herein, have been found to be non-maritime. For example, it is well-established that claims arising from construction of a vessel do not invoke the court's admiralty jurisdiction. *Hatteras of Lauderdale, Inc. v. Gemini Lady*, 853 F. 2d 848, 850 (11th Cir. Fla. 1988). It is also axiomatic that the sale of a vessel and or its cargo are not maritime claims under U.S. law. *Great E. Shipping Co. v. Mar. Tankers &Shipping Co. Int'l Ltd.*, 2009 U.S. Dist. LEXIS 21358, *2 (S.D.N.Y. Jan. 21, 2009).

Failure to take delivery of a vessel is similarly "not a maritime obligation and it does not implicate concerns of maritime commerce." *Vrita Marine Co. v. Seagulf Trading LLC*, 572 F. Supp. 2d 411, 412 (S.D.N.Y. 2008). Claims arising from brokerage contracts are also excluded from the realm of maritime claims. In *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 134 (2d Conn. 1998), the Second Circuit Court of Appeals "held that a contract under which plaintiff was to act as a broker and procure a subcharter for defendant was not a maritime contract but was preliminary to maritime commerce." *Penguin Mar. Ltd. V. Lee & Muirhead Ltd.*, 588 F. Supp. 2d 522, 525 (S.D.N.Y. 2008). Even agreements to secure contracts for the use of an offshore drilling rig are not maritime in nature. In *Maritima Petroleo e Engenharia Ltda. V. Ocean Rig IA*, 78 F. Supp. 2d 162, 169 (S.D.N.Y. 1999), the district court concluded that an agreement to procure a contract for the future use of defendants' offshore drilling rigs was not maritime in nature, as the services provided involved land-based negotiations regarding terms of a potential contract. Contracts providing an option to lease a specific vessel are similarly omitted from the scope of maritime claims. *See Carter-Green-Redd, Inc. v. USS Cabot/Dedalo Museum Foundation*, 756 F. sup. 276, 278 (E.D. La. 1991)(Contract providing an option to lease a vessel is not maritime as it "merely sets the stage and conditions for the possible opening of land-based negotiations [and] is far too remote from navigation or maritime commerce to be labelled as a maritime contract.").[3] Just as none of the above claims are considered maritime in nature, neither is FLAME's claim arising from the alleged breach of FFAs a maritime claim. FFAs are

---

[3] In *Fernandez v. Haynie*, 120 F. Supp. 2d 575, 583 (E.D. Va. 2000), this Court remarked that it is "cautious to open the courthouse doors to a surge of litigation concerning transactions that may only tangentially involve a maritime business or a ship owner merely because one is a party in the dispute" *Id.* at *36-37. (*emphasis added*).

solely financial transactions and have no connection to maritime activity, which do not even remotely involve maritime obligations.

Matters which are only remotely related to maritime activity are excluded from admiralty jurisdiction. Simply put, FFAs are not maritime contracts, but rather "derivative financial contracts" which do not involve any specific vessel, provide for the engagement of any vessel, or relate in any way to the operation of any vessel. *D'Amico Dry Ltd. v. Primera Maritime (Hellas) Ltd.*, 2011 U.S. Dist. LEXIS 31986, at * 3-4 (S.D.N.Y. March 28, 2011). An FFA may be (and often is) traded by bankers and speculators and are not transactions between shipowners and/or charterers and/or cargo interests with respect to any particular vessel or carriage of goods. The parties to an FFA are not parties to a charter party; nor is an FFA part of a transaction between the same parties involving any identifiable charter party, vessel, cargo or voyage. The contract does not involve any particular voyage, the use or hire of any particular vessel, or any particular contract of carriage, and does not provide for resolution of disputes in an admiralty court or tribunal. It is purely a financial agreement - much like that found in other commodity futures markets. Under an FFA, parties simply 'bet the market' with the losing party being required to "pay the difference between a price agreed today and the future price of moving a product from one location to another, or for the future price of hiring a ship over a period of time." *D'Amico*, 2011 U.S. Dist. LEXIS 31986, at * 4 (citation and internal punctuation omitted). An FFA does not require physical performance of any kind or contemplate any maritime activity. The underlying purpose of an FFA is simply to obtain financial gain or loss based upon independent market factors (outside of the parties' control).

Significantly, there are no decisions from any Circuit Court of Appeals addressing whether a Forward Freight Agreement or any other freight futures agreement is *per se* a

"maritime contract" per se (or not).   However, most recently, in *Farenco Shipping Co. v. Farenco Shipping Pte. Ltd.*, 2012 U.S. Dist. LEXIS 163469, *5 (E.D. La. 2012), the District Court concluded that "FFA or Forward Freight Agreements are futures contracts based upon the cost of freight associated with maritime trade routes. *FFA contracts involve financial speculation but they do not directly involve maritime commerce or an actual commitment to move cargo.*" *(emphasis added).*[4]

Applying the above principles to this matter, it is clear that the FFAs from which FLAME's claim arises do not give rise to an admiralty claim under U.S. law – they are too tenuously related to maritime activity.   As such, FBP respectfully submits that FLAME has failed to assert a maritime claim in this action, and that the Order of attachment must be vacated.

---

[4] Defendant is mindful that there are a limited number of cases wherein FFA disputes form the basis of Rule B claims.   In *Brave Bulk,* District Judge McMahon stated that while she "was initially skeptical about the saltiness of forward freight agreements" ("[a]n FFA is not a maritime contract . . . but rather is a means of hedging financial risk and making costs and revenues more predictable", *Brave Bulk*, 2007 U.S. Dist. LEXIS 69751, at *4 (S.D.N.Y. Sept. 14, 2007)), she was apparently "persuaded that they are sufficiently part of the business of maritime commerce to confer admiralty jurisdiction." *Id.*  However, the court in *Brave Bulk* erroneously determined, without explanation, that FFAs "are commitments to perform in the future a shipping service between ship owners, charterers and/or traders." *Id.* at *4.   In fact, and as recognized by the court in *Farenco,* the FFAs (including the FFAs at issue in this matter) do not involve any shipping service, or any maritime obligation. *Farenco*, 2012 U.S. Dist. LEXIS 163469, *5 (E.D. La. 2012).   The few additional cases which address this issue rely exclusively on Judge McMahon's decision in *Brave Bulk*, without additional independent analysis. *See, e.g., Flame, S.A. v. Primera Maritime (Hellas) Ltd.*, 2010 U.S. Dist. LEXIS 9830 (S.D.N.Y. Jan. 28, 2010); *Armada (Singapore) PTE, Ltd. v. North China Shipping, Co. Ltd.*, 2010 U.S. Dist. LEXIS 11014 (S.D.N.Y. 2010);*Glory Wealth Shipping Services Ltd. v. The Rice Co.*, 2008 U.S. Dist. LEXIS 106468 (S.D.N.Y. 2008).   No court which has performed an independent analysis of the issue of whether FFAs constitute maritime contracts, has relied on the *Brave Bulk* decision. *See Pioneer Freight Futures Company Limited v. Marine Trade S.A., et. al.*, 11-CV-10313-PA (Dec. 20, 2011), and *D'Amico Dry Ltd. v. Primera Maritime (Hellas) Ltd.*, 2011 U.S. Dist. LEXIS 31986 (S.D.N.Y. 2011).

B. **English Law Agrees:  FFA's Are Not Maritime Contracts and Do Not Give Rise to Maritime Claims**.

Several District Courts have looked to the law of the contract in making a determination as to whether an FFA dispute gives rise to a maritime claim.  Every court which has done so, has held that it does not.  *Pioneer Freight Futures Company Limited v. Marine Trade S.A., et. al.*, 11-CV-10313-PA (Dec. 20, 2011), addressed the very issue which is now before this Court, and is instructive.  A copy of the Amended Final Decision of Magistrate Judge Kenton is attached hereto as Exhibit 2.  In *Pioneer*, the plaintiff sought a Rule B attachment on the basis of a claim for breach of an FFA by defendant Marine Trade S.A.  *Id.*  An Order of attachment was granted and a vessel belonging to defendant Rizzo Bottiglieri-de Carlini Armatori, S.P.A. ("RBDA") was attached.  *Id.*  RBDA moved to dismiss the attachment on the basis that: (i) FFAs are not maritime contracts and plaintiff's underlying claims do not sound in admiralty; and (ii) plaintiff's alter ego allegations were insufficient.  *Id.*  A prompt post-seizure hearing was held and Magistate Judge Kenton vacated the Order of attachment.  The court was persuaded that FFAs are not maritime contracts, and that they are "essentially similar to financial instruments which are utilized in other commodity future markets."  *Id.* at 3.  In relevant part, the *Pioneer* court held as follows:

> The Court is sufficiently persuaded that the governing law of the FFAs in this case, which is English law, clearly provides that FFAs such as this are not maritime in nature…In a nutshell, these FFAs are commodity contracts, not maritime contracts. There is no relationship whatsoever between an FFA and an agreement which would relate to the carriage of goods in a ship or the use or hire of a ship. Indeed, according to the Verified Complaint, FFAs are defined as "maritime contracts that enable contracting parties to hedge on the price of ocean freight over future contractual periods."…The fact that Plaintiff labels these contracts maritime contracts does not control the issue. Rather, the Court must here apply the governing law of England.

*See Exhibit 2*, pg. 3 – 4. The plaintiff in *Pioneer* filed an *ex parte* application with the District Court seeking immediate review of the Magistrate Judge's decision to vacate the attachment. The District Court rejected plaintiff's argument, and denied plaintiff's application. *Id.*, Docket #33. Thereafter, the plaintiff filed a notice of appeal, and filed an emergency motion for a stay of the District Court's Order with the Ninth Circuit Court of Appeals. *Id.*, Docket #43.    The Ninth Circuit denied the plaintiff's request for a stay. *Id.*

Similarly, in *D'Amico Dry Ltd. v. Primera Maritime (Hellas) Ltd.*, District Judge Koeltl held that the Court did not have subject matter jurisdiction to enforce Plaintiff's foreign judgment arising from the Defendant's alleged breach of an FFA. 2011 U.S. Dist. LEXIS 31986 (S.D.N.Y. 2011).[5] In so ruling, Judge Koeltl looked to the governing law of the parties' FFA – *i.e.*, English law – to determine whether plaintiff's claim was maritime in nature. *Id.* at * 9. The Court noted that admiralty jurisdiction would only exist over a claim "arising out of any agreement relating to the carriage of goods in a ship or the use or hire of a ship." *Id.* (quoting Senior Courts Act, 1981, c. 54 § 20(2)(h)).  Judge Koeltl further noted that this requires an agreement to pertain to an "identifiable," "particular" ship. *Id.* (citing *The "Lloyd Pacifico"*, [1995] 1 Lloyd's Rep., 54 [Q.B.] 57).  Applying this law to the specific facts at issue in *D'Amico*, Judge Koeltl concluded that the Southern District of New York lacked admiralty jurisdiction over the action. *Id.* at * 11.

---

[5] Notably, the *Pioneer* court followed Judge Koeltl's well-reasoned decision in *D'Amico v. Primera Maritime (Hellas) Ltd.,* 2011 U.S. Dist. LEXIS 31986 (S.D.N.Y. 2011), described in further detail below: "Although D'Amico Dry Ltd. is an opinion of a District Court, and not of an appellate court, after careful review of that decision, this Court finds it to be highly persuasive, in substantial part because the FFAs at issue in this case, as in the D'Amico Dry Ltd. case, are governed by English law. In D'Amico, the District Court's review of applicable English law led it to conclude that a contract for marine insurance is not sufficiently connected to a contract for carriage of goods in or use of a ship, a requirement under English law to establish maritime jurisdiction." *See Exhibit 2*, pg. 3.

In so ruling, he highlighted the fact that "the FFA between the parties related, by its terms, to average BPI rates for four standardized Panamax routes; it did not identify or relate to a particular ship." *Id.*

The declaration of Timothy Saloman, attached hereto as Exhibit 1, further supports the holding of the courts in *Pioneer Freight* and *D'Amico*, that a claim under an FFA does not constitute a "maritime claim" under English law. Mr. Saloman, Queen's Counsel in London, opines that claims made pursuant to FFAs do <u>not</u> constitute a maritime claim under English law. *Id.* Specifically, Sections 20(1) and 20(2) of the Senior Courts Act 1981 ("SCA") confer admiralty jurisdiction over "any claims arising out of any agreement relating to the carriage of goods in a ship or to the use of hire of a ship." Exhibit 1, ¶ 4-5. Decisions relating to the scope of Section 20(2) have held that only those claims that "arise out of an agreement relating to carriage in a *particular* vessel" fall within this provision. *Id.* at ¶ 12, *citing The Lloyd Pacifico* [1995] 1 Lloyd's Rep. 54.[6] An FFA "has everything to do with the future movement of freight rates for specified contract routes and any resulting difference from the bet placed, and nothing to do with an agreement relating to the carriage of goods in a ship or to the use of or hire of a ship, still less an agreement relating to carriage in any *particular* ship." *Id.* at ¶ 20. Simply put, there is an insufficient connection between a claim made under an FFA and the "*carriage of goods in a ship or the use of hire of a ship*" as provided for under section 20(2)(h) of the SCA and, as such, a claim under an FFA would not be deemed to be a "maritime claim" under English law.

---

[6] In applying English law to the issue of whether an FFA is a maritime contract, Judge Koeltl in *D'Amico*, relied heavily on *The Lloyd Pacifico*. The Judge reasoned that, since FFAs do not relate to an identifiable, particular vessel, the English court did not exercise its admiralty jurisdiction in entering a judgment in favor of the plaintiff.

Here, as in *Pioneer Freight* and *D'Amico*, the FFA contracts at issue are governed by English law. These agreements were strictly commodity contracts – they did <u>not</u> involve the charter of any particular vessel(s) or relate to any particular voyage(s); did <u>not</u> provide for any maritime services or necessaries; did <u>not</u> provide for the performance of any maritime or other shipment obligations; and did not provide for resolution of disputes in an admiralty court or tribunal. In short, the claims at issue are simply not maritime claims under U.S. or English law and, as such, the Order of Attachment was improperly sought and obtained by Plaintiff. Accordingly, FBP respectfully requests this Honorable Court to issue an order vacating the Order of Attachment and releasing the MV CAPE VIEWER.

**POINT III**

**<u>DAMAGES FOR WRONGFUL ATTACHMENT ARE WARRANTED</u>**

It is well-settled that "a plaintiff in a maritime case may be liable in damages for the wrongful attachment of the defendant's property", where a showing of bad faith, malice, or gross negligence, can be made. *See Result Shipping Co. v. Ferruzzi Trading USA*, 56 F. 3d 394, 402 (2d Cir. Conn. 1995) (*citing* 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 21-5, at 500 (2d ed. 1994)). Here, FLAME has wrongfully attached FBP's vessel, causing it to incur substantial damages. FLAME has based its claim on the purported breach of an FFA, which is not a maritime contract under either U.S. or English law.[7] Moreover, FLAME's claims against

---

[7] Undoubtedly, FLAME will claim that its attachment was proper, and refer the Court to, among other things, *Bulk Trading S.A. v. Capex Eur. S.A.M.*, 2011 U.S. Dist. LEXIS 35059 (E.D. La. Mar. 21, 2011) and *Transfield Er Futures Ltd. V. Deiulemar Shipping S.P.A.*, 2012 U.S. Dist. LEXIS 5040 (E.D. La. Jan. 16, 2012). Neither case supports the Plaintiff's claims in this matter based on the contracts at issue. Both of these cases rely heavily on *Brave Bulk Transport Ltd. v. Spot on Shipping Ltd.*, 2007 U.S. Dist. LEXIS 81137, (S.D.N.Y. Oct. 30, 2007) and its progeny. As indicated in footnote 5, *supra*, the court in *Brave Bulk* wrongly decided that FFAs are maritime contracts, without any analysis regarding this issue, or any explanation of how

14

FBP are predicated entirely on an alter ego claim which is comprised of nothing more than conclusory allegations, made "upon information and belief." Docket #1.   FLAME does not provide a shred of evidence linking FBP to the defendant with which FLAME entered into the FFAs, ICI.[8]

In *Equatorial Marine Fuel Mgmt. Servs. Pte. Ltd. v. MISC Berhad*,  464 Fed. Appx. 647, 648 (9th Cir. Cal. 2011), the Ninth Circuit Court of Appeals reversed the District Court's denial of the defendant's claim from damages for wrongful attachment.  The court held, in relevant part, that the plaintiff "knew or should have known that [defendant] MISC had contracted with Market Asia Link, and that Market Asia Link, not MISC, was liable to Equatorial for the fuel." *Id.* at 2. As a result, the court found plaintiff liable to defendant for damages arising from the wrongful attachment of the vessel.  Here, FLAME is well-aware that FBP is a non-party to the FFAs at issue. Docket #1.  Nonetheless, FLAME has asserted groundless allegations that FBP is an alter ego of its contractual counter-party, ICI, in an effort to create a link to the M/V CAPE VIEWER. Further, the very claim upon which this action is based – breach of FFAs – is not a maritime claim within the meaning of Rule B. *See*, Point II, *supra*.  As such, it is clear that FLAME has acted in bad faith and/or with gross negligence, and that FBP is entitled to damages for wrongful attachment, including costs incurred in connection with this motion to vacate.

---

maritime obligations are triggered by FFAs.  As such, any reliance by FLAME on these cases is misguided and improper.
[8] The Report appended to FLAME's Complaint, dated November 21, 2013, merely mentions FBP in the preamble, in the context that FLAME is alleging that FBP and VISTA are alter egos of ICI.  Docket #1-10. There is <u>no</u> evidence that Report relating to FBP.

## POINT IV

## FLAME HAS NOT ALLEGED A PRIMA FACIE ALTER EGO CLAIM AGAINST FBP

As set forth in Point II, *supra*, FLAME's failure to establish a maritime claim is fatal to this action, and as such, FLAME's alter ego allegations need not be addressed by the Court. The matter of *Pioneer Freight Futures Company Limited v. Marine Trade S.A., et. al.*, 11-CV-10313-PA (Dec. 20, 2011), is instructive. *See Exhibit 2.* In *Pioneer*, the Plaintiff improperly attached a vessel belonging to defendant Rizzo Bottiglieri-de Carlini Armatori, S.P.A. ("RBDA"), on the basis that RBPA was an alter ego of defendant Marine Trade S.A. ("Marine"). *See Exhibit 2.* As set out above, plaintiff and Marine purportedly entered into fourteen (14) separate FFAs, which plaintiff alleged that Marine breached. *Id.* After conducting a Rule E(4)(f) hearing, the court determined that the FFAs are not maritime in nature and that it could not exercise maritime jurisdiction. *Id.* While the court went on to address the alter ego claim raised by the plaintiff, it made clear that "the Court's determination that admiralty jurisdiction does not exist here would, in and of itself, be sufficient to grant RBDA's motion." *See* Exhibit 2, pg. 4. (*emphasis added*). As such, the merits of the alter ego claim need not be addressed at this stage.

Notwithstanding, in the unlikely event that this Honorable Court does not vacate the attachment for failure to allege a maritime claim, FBP reserves the right to continue with a further prompt post-seizure hearing pursuant to Rule E to challenge the Plaintiff's failure to sufficiently present its alter ego allegations and, if necessary, to engage in a trial on the merits of these allegations.

## **CONCLUSION**

For the reasons set forth above, the attachment of the M/V CAPE VIEWER should be vacated; the vessel released; the matter dismissed and Defendant awarded damages, including the costs and expenses it has been forced to incur in bringing this motion, and such other and further relief that the Court deems just and proper under the circumstances.


Dated: December 2, 2013                          Respectfully submitted,
       Oyster Bay, New York
                                               DAVEY & BROGAN, P.C.


                                                 __/s/ Patrick M. Brogan__
                                                 Mr. Patrick M. Brogan (VSB No. 25568)
                                               101 Granby Street, Suite 300
                                             Norfolk, Virginia 23510
                                             Telephone: 757.622.0100
                                             Facsimile: 757.622.4924
                                             Email: pbrogan@daveybroganpc.com


                                               CHALOS & Co, P.C.


By:      __/s/ George M. Chalos__
                                             George M. Chalos, Esq.
                                           Fed ID: GC-8693
                                           *Pro hac vice application forthcoming*
                                           55 Hamilton Avenue
                                           Oyster Bay, New York 11771
                                           Telephone: (516) 714-4300
                                           Facsimile: (516) 750-9051
                                           Email: gmc@chaloslaw.com
                                           *Attorneys for Defendant*
                                           FREIGHT BULK PTE. LTD.