UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA, NORFOLK DIVISION

| | |
|---|---|
| GLORY WEALTH SHIPPING PTE LTD<br>-against-<br><br>INDUSTRIAL CARRIERS, INC., VISTA SHIPPING INC., FREIGHT BULK PTE LTD., SERGEI BARANSKIY, VICTOR BARANSKIY<br><br>Defendants | Civil Action No: 2:13cv658-RGD-LRL<br>2:13cv704-RGD-LRL<br><br>**AMENDED VERIFIED COMPLAINT** |

Plaintiff, Glory Wealth Shipping Pte Ltd., ("**Glory Wealth**"), by and through its attorneys, Holland & Knight LLP, for its verified complaint and request for maritime attachment order pursuant to Rule B of the Supplemental Admiralty and Maritime Rules of the Federal Rules of Civil Procedure, against Industrial Carriers, Inc. ("**Industrial Carriers**"), Vista Shipping Inc. ("**Vista**") and Freight Bulk Pte Ltd. ("**Freight Bulk**"), Sergei Baranskiy and Victor Baranskiy (collectively, "**Defendants**"), alleges, upon information and belief, as follows:

1. This is a case of admiralty and maritime jurisdiction as hereinafter more fully appears and is a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. This Court has jurisdiction over the Defendants by reason that Defendants' property is within the District and by reason of the Defendants' collective activities in the United States which give rise to personal jurisdiction.

2. At all times material herein, Glory Wealth is and was a business entity organized and existing under the laws of Singapore having an address at 9 Temasek Boulevard 07-00, Suntec City Tower 2, Singapore 038989, Singapore.

3. At all times material herein, Flame S.A. ("**Flame**") S.A. is and was a business entity organized and existing under the laws of Switzerland, with an office and principal place of business in Switzerland. Flame is also registered with the New York Secretary of State as a foreign business corporation.

4. At all times material herein, defendant Industrial Carriers is, and was, a foreign corporation or business entity organized and existing under the laws of the Marshall Islands and upon information and belief at all material times herein, maintained a principal place of business in Ukraine.

5. Defendant Vista was and now is a business entity organized and existing under the laws of a foreign country.

6. Defendant Freight Bulk was and now is a business entity organized and existing under the laws of a foreign country.

7. Vista and Freight Bulk are the beneficial and registered owners, respectively, of the M/V CAPE VIEWER. The M/V CAPE VIEWER is now within the District of Virginia and has been attached pursuant to the order of maritime attachment obtained by Flame in 13 CV 00658.[1]

8. Prior to its purported Bankruptcy, and in the face of creditor claims in excess of $100 million, Industrial Carriers, Sergei and Victor Baranskiy, knowingly and intentionally,

---

[1] Flame has obtained an order of maritime attachment with respect to the M/V Cape Viewer that is defective for lack of subject matter jurisdiction. To the extent that Flame relies upon its English Judgment against Industrial Carriers, the English Judgment was not and could not have been entered by an English Admiralty Court. To the extent that Flame relies upon the Southern District of New York's judgment against Industrial Carriers recognizing the English Judgment, the Southern District of New York Judgment is void for lack of subject matter jurisdiction. Glory Wealth will shortly be filing a motion to reopen that case as an interested party and move to vacate Flame's void judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.

fraudulently and unlawfully, transferred Industrial Carriers' business, assets, operations, personnel, contacts, know-how, good will, ongoing charters and business relationships and other valuable property from Industrial Carriers to its fraudulently and wrongfully established affiliates, subsidiaries and connected entities, including but not limited to Defendants Vista and Freight Bulk. Defendants Vista and Freight Bulk therefore maintain their wrongful existence and assets at the expense of Industrial Carriers's just creditors and are therefore alter-ego's, successors-in-interest and fraudulent transferees with respect to Industrial Carriers.

9. Glory Wealth is one of Industrial Carriers's creditors. It maintains a maritime claim against Industrial Carriers for breach of a charter party. Actions arising from breach of charter parties indisputably fall within this Court's admiralty subject matter jurisdiction.

10. As set forth in greater detail below, Glory Wealth has pursued its claim against Industrial Carriers in arbitration in London, pursuant to the terms of the relevant charter party, and has obtained a duly rendered award against Industrial Carriers in the amount of $38,528,759.18, plus interest (the "**Award**"). A true and correct copy of the Award is attached as Exhibit 1 to the accompanying Affidavit of James H. Power dated December 17, 2013 ("**Power Affidavit**").

11. As alter-egos and/or successors-in-interest and/or fraudulent transferees with respect to Industrial Carriers, Defendants Vista and Freight Bulk are liable to Glory Wealth.

12. Glory Wealth respectfully seeks an order of maritime attachment as against the property of Vista and Freight Bulk in this judicial district, *to wit*, the M/V CAPE VIEWER and any freight or hire payable to Vista and/or Freight Bulk from currently unknown entities within

this district in connection with the M/V CAPE VIEWER's carriage of coal from this judicial district to an unknown location.

### GLORY WEALTH'S CLAIM AGAINST INDUSTRIAL CARRIERS

13. On or about June 5, 2008, Industrial Carriers time chartered from Glory Wealth the vessel M/V MINERAL CAPEASIA for a period of 12-13 months via fixture recap pursuant to the New York Produce Exchange Form with Rider Clauses (collectively the "**Charter**").

14. Glory Wealth, as owner, and Industrial, as charterer, entered into a time charter agreement.

15. Under the terms of the Charter, the daily charter hire rate required to be paid by Industrial Carriers to Glory Wealth was $183,000 per day payable 15 days in advance. Industrial Carriers failed to pay the 4th installment of hire which became due on 17 August 2008, or any other payment due under the Charter, while simultaneously placing Glory Wealth in the untenable position of being forced to perform the voyages or be liable to the relevant cargo owners and sub-charterers.

16. Glory Wealth commenced arbitration in London pursuant to clause 45 of the Charter. Industrial Carriers failed to respond to the duly served arbitration demands or appoint an arbitrator despite multiple requests from Glory Wealth and the arbitrator to do so. Under the circumstances, the London Arbitration Panel determined to resolve the matter with Industrial Carriers in *abstentia*, and issued the lengthy and reasoned Award, dated October 29, 2009.

17. The Award sets forth the particulars of Glory Wealth's claim, the nature of its damages, and the legal bases for the arbitrators' decision in considerable detail. The Award grants Glory Wealth its claim for outstanding hire in the amount of $3,715,482.18, with interest compounded quarterly from October 2008 at the rate of 4.75%, and $34,813,271.00 in damages, with interest compounded quarterly from March, 2009 at the rate of 4.75%.

18. With respect to the unpaid hire interest has accrued to $1,011,709.82. With respect to the damages, interest has accrued to $6,842,309.91. As such, Industrial Carriers is currently liable to Glory Wealth in the amount of $46,382,772.91.

## GLORY WEALTH'S CLAIMS AGAINST SERGEI BARANSKIY, VICTOR BARANSKIY, VISTA AND FREIGHT BULK

19. Sergei and Victor Baranskiy, are and were majority shareholders of Industrial Carriers. They exerted complete control over the entity and its finances, including bank accounts. Sergei Baranskiy owned 51% of Industrial Carriers, while Victor Baranskiy was the beneficial owner of 18% of Industrial Carriers.

20. Victor Baranskiy has admitted that ICI, with knowledge by Sergei Baranskiy and Victor Baranskiy, utilized shell corporations to divert assets of Industrial Carriers to avoid attachments of Industrial Carriers' assets.

21. As a result of Industrial Carriers' practice of fraudulently diverting payments and contracts to its subsidiaries, Industrial Carriers was severely undercapitalized relative to its obligations.

22. Industrial Carriers filed for bankruptcy shortly after it entered the Charter with Glory Wealth, evincing a fraudulent intent to collect charter and/or freight hire from its customers while failing to pay Glory Wealth.

23. The entities within the "Industrial Carriers Group" including but not limited to Defendants routinely disregard corporate form and do not deal with the other members of the group absent an arm's-length relationship. The Defendants possess, transfer and/or hold funds of, or for the benefit of, one another, and make and receive payments for, and on behalf of, the other Defendants, pooling the resources without regard to corporate separateness, and without entering into an arm's-length negotiated contract to provide such services.

24. As set forth in the BDO Report, which is attached in this consolidated action to the Affidavit of William Bennett, approximately $57 million was wrongfully transferred out of the Industrial Carriers Bankruptcy Estate.

25. Vista was formed by the very persons at ICI who orchestrated, effectuated, knew of and allowed the Industrial Carriers fraud and who directly benefited from such fraud. The assets of Vista and Freight Bulk are simply the former assets of Industrial Carriers, and to wit, the $57 million which was wrongfully transferred out of the Industrial Carriers Bankruptcy Estate.

26. Victor Baranskiy has represented that he is the beneficial owner and sole managerial authority with respect to Vista and Freight Bulk. Victor Baranskiy owns 100% of the shares of Vista, and 100% of the shares of the entity which owns Freight Bulk.

27. Vista and Freight Bulk are defendants in this action because they are the ultimate direct and beneficial recipients of the fraudulent transfers from Industrial Carriers that were

made during and immediately prior to Industrial Carriers' (now dismissed) bankruptcy. While not necessary to pierce the corporate veil of both Defendants as they are recipients of fraudulent proceeds, the Vessel represents the fruit of the Industrial Carriers' bankruptcy fraud. Vista, Freight Bulk, and Industrial Carriers' common ownership, management, business continuity and affiliation are relevant to the issues of motive and ability to perpetrate the fraud in question, as well as "disregard" of the corporate form and "mere continuation" of Industrial Carriers' business.

28. On June 24, 2008, Vista was incorporated in the British Virgin Islands to receive fraudulent asset transfers from Industrial Carriers. Industrial Carriers wrongfully utilized its subsidiaries, including Defendants to create a sophisticated web of shell companies by which to divert, and then re-divert cash and receivables that should have been within the Industrial Carriers estate for the benefit of its myriad creditors, including Glory Wealth. The receivables, cash, contracts, know how, relationships and assets were ultimately diverted to Vista and Freight Bulk's benefit and use, and ultimately utilized to purchase the M/V CAPE VIEWER without bank financing and without a mortgage. Ultimately, all of the wrongful diversions of assets of Industrial Carriers were fraudulent as to Glory Wealth. Accordingly, it is equitable and justified pursuant to the venerable body of United States maritime law, to pierce the corporate veil of all of the beneficiaries of these transfers, particularly Defendants, and hold these alter-egos liable for Industrial Carriers's debts.

29. Victor Baranskiy, without any support, claims that Vista was initially capitalized with approximately $1 million in *cash in a suitcase* provided to him by his mother. Even if this were true, which is denied, funds provided to Victor Baranskiy were nonetheless themselves

funds obtained directly and/or indirectly from the fraudulent diversion of funds from ICI by Sergei Baranskiy and Victor Baranskiy.

30. Even more fantastically, Victor Baranskiy claims that within a period of approximately 24-36 months, he converted this $1 million investment into more than $100 million, such that the Vessel, along with approximately 10 other vessels, could be purchased in cash ***without*** mortgages.

31. Rather, Sergei Baranskiy and Victor Baranskiy conspired to utilize their ownership, position and influence at Industrial Carriers and to convert and siphon the missing $57 million from Industrial Carriers into the unmortgaged "Vista" fleet, utilizing Vista, Freight Bulk and related entities and affiliates owned and nominally controlled by Victor Baranskiy as the vehicles of their fraud.

32. Victor Baranskiy interchangeably utilizes Vista and Vista's affiliates that Victor Baranskiy has admitted he solely owns and controls, including but not limited to Freight Bulk. For example, in connection with successive charter hire payments associated with the M/V Great Dynasty, Columbus Maritime Corp. a Victor Baranskiy company, made a payment of $52,348.63 on November 21, 2012, while Vista made a $52,348.63 payment in connection with the same charter on January 11, 2013.

33. Viktor Baranskiy further admits to taking the former employees, profitable contract and chartering routes he established at Industrial Carriers and misappropriating them for Defendants' benefit. This act alone renders Vista a fraudulent transferee and justifies piercing of the corporate veil.

34. The Defendants have common ownership and managerial control and employees. Defendants Industrial Carriers, Vista, and Freight Bulk are commonly controlled, beneficially owned and managed by Viktor Baranskiy, Vladimir Yudaev, Michael Ivanov, Vladimir Ivanov and Daniel Su. Viktor Baranskiy, in particular, is a shareholder, director and/or managerial employee - or has some other ability to control - every corporate Defendant. Viktor Baranskiy directly or indirectly owns the Defendants, in whole or in part, and ultimately exercises complete dominion and control over all the Defendants, whether or not he owns a controlling share in any particular Defendant.

35. Defendants are not found within the Eastern District of Virginia but do have assets, goods or chattels within the jurisdiction, to wit: the vessel CAPE VIEWER and receivables in connection with the CAPE VIEWER'S Carriage of coal.

**WHEREFORE**, Glory Wealth Shipping Pte Ltd., prays:

1. That a order of maritime attachment and garnishment may issue against the Defendants; and if Defendants cannot be found, then that their goods, chattels and credits within the district, and particularly the vessel CAPE VIEWER and receivables in connection with the CAPE VIEWER'S Carriage of coal may be attached in an amount sufficient to answer Glory Wealth's claim;

2. That Defendants, and any other person claiming an interest therein may be cited to appear and answer the matters aforesaid;

3. That judgment be entered in favor of Glory Wealth Shipping Pte Ltd. against Defendants in the amount of $46,382,772.91; and,

4. That this Court grant Glory Wealth Shipping Pte Ltd. such other and further relief which it may deem just and proper.

Dated: New York, New York
       January 9, 2013

BY: Holland & Knight LLP

/s/
Michelle Hess (VSB# 71080)
James H. Power (Admitted *Pro Hac Vice*)
31 West 52nd Street
New York, NY 10019
212-513-3200
212-385-9010 (facsimile)
michelle.hess@hklaw.com
james.power@hklaw.com

*Attorneys for Intervening Plaintiff*
*Glory Wealth Shipping Pte Ltd.*

# VERIFICATION

STATE OF NEW YORK            )
                             :ss.:
COUNTY OF NEW YORK           )

James H. Power, being duly sworn, deposes and says:

I am an attorney with the firm of Holland & Knight LLP, counsel for Glory Wealth Shipping Pte Ltd. ("Glory Wealth"), plaintiff in the foregoing action. I have read the foregoing Verified Complaint and know the contents thereof, and the same are true and correct to the best of my knowledge. I have reviewed documentation provided to me by Glory Wealth and my firm has corresponded with Glory Wealth's representatives regarding this matter. I am authorized by Glory Wealth to make this verification, and the reason for my making it as opposed to an officer or director of Glory Wealth is that there are none within the jurisdiction of this Honorable Court.

_____
James H. Power

Sworn to before me this
9th Day of January, 2014

_____
Notary Public

Elvin Ramos
Notary Public State of New York
NO. 01RA4870243
Qualified in Queens County
Certificate filed in New York County
Commission Expires September 2, 2014

#27009109_v1

11

# CERTIFICATE OF SERVICE

I certify that on the 9th day of January, 2014, a true copy of the foregoing was filed via the Court's electronic case filing (ECF) system and serve via electronic mail on counsel of record:

Steven Stancliff
Crenshaw Ware & Martin PLC
150 West Main Street
Suite 1500
Norfolk, VA 23510
Sstancliff@cwm.law.com

Lauren Brooke Wilgus
William Robert Bennett III
Blank Rome LLP
405 Lexington Avenue
The Chrysler Building
New York, New York 10174
lwilgus@blankrome.com
wbennett@blankrome.com
*Counsel for Plaintiffs Flame S.A.*

Patrick Brogan
Davey & Brogan PC
101 Granby Street
Suite 300
Norfolk VA 23510
pbrogan@daveybrogan.com

George Chalos
Chalos & Co. P.C.
55 Hamilton Avenue
Oyster Bay, NY 11771
gmc@chaloslaw.com
*Counsel for Defendants*

/s/
Michelle T. Hess (VSB#71080)
HOLLAND & KNIGHT LLP

31 West 52nd Street,
New York, NY 10019
(212) 513-3583
(212) 385-9010 (facsimile)
michelle.hess@hklaw.com

*Attorneys for Consolidated Plaintiff*
*Glory Wealth Shipping Pte Ltd.*