**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

FLAME S.A.,

      Plaintiff,

v.                                         Civil Action No.: 2:13-cv-658

INDUSTRIAL CARRIERS, INC.,
VISTA SHIPPING, INC.,
FREIGHT BULK PTE. LTD., and
VICTOR BARANSKIY,

      Defendants.

**PLAINTIFF FLAME S.A.'S**
**<u>FIRST AMENDED VERIFIED COMPLAINT</u>**

Plaintiff, FLAME S.A. (hereinafter, "Plaintiff"), by and through its attorneys, Crenshaw,

Ware & Martin and Blank Rome LLP (*pro hac vice*), files its First Amended Verified Complaint,

as directed by the Court, against Defendants INDUSTRIAL CARRIERS, INC., (hereinafter

"ICI") VISTA SHIPPING INC. (hereinafter "Vista"), FREIGHT BULK PTE. LTD. (hereinafter

"FBP"), and VICTOR BARANSKIY (collectively "Defendants," unless otherwise specified)

alleges:

**<u>Preliminary Statement</u>**

1.      In the fall of 2008 the freight rates in the shipping market, and in particular the

bulker market, crashed. ICI was, financially, on the wrong side of the crash and took heavy

losses. ICI, however, never felt those losses, because it transferred all of its cash and assets to

Vista, FBP, and Baranskiy.

2.      This action involves the recovery of a foreign judgment in the sum of USD $19,907,118.36 (hereinafter referred to as the "Judgment"), entered in favor of the Plaintiff as against the defendant ICI.

3.      On December 22, 2010, an action commenced in the United States District Court for the Southern District of New York, seeking recognition of the foreign judgment invoking the Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure.  Attached is a true copy of the Verified Petition to Enforce Foreign Judgment Pursuant to Uniform foreign Money-Judgments Recognition Act.  The Judgment was recognized by the United States District Court for the Southern District of New York on September 14, 2011.

4.      The Judgment was entered in the Southern District of New York on October 4, 2011.

5.      The Judgment was registered in the Eastern District of Virginia on October 11, 2013.

6.      As will be shown in greater detail below, the defendants ICI, Vista and FBP are dominated, controlled and operate as a single enterprise under the direction and control of Viktor Baranskiy, Vladimir Yudaev, Michael Ivanov, Vladimir Ivanov, and Daniel Su.

7.      Further, as will also be demonstrated below, Vista and FBP were formed and funded from the fraudulent bulk transfer of cash from ICI.

8.      ICI transferred cash to Vista and FBP to avoid paying its creditors.

**Jurisdiction and Venue**

9.      This is a case of admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333, and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of

Civil Procedure in that it involves a claim for the enforcement of a maritime judgment, the underlying basis of which was a claim for breach of four maritime contracts called Forward Freight Swap Agreements.  The Court also has supplemental and/or ancillary jurisdiction over any and all non-maritime claims, if any.

10.     The Plaintiff brings this claim against Defendants pursuant to Rule B of the Supplemental Rules of Admiralty and Maritime Claims of the Federal Rules of Civil Procedure for maritime attachment and garnishment of the property of Defendants within this District.


## The Parties

11.     At all times relevant hereto, Plaintiff was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of Switzerland, with an office and principal place of business in Switzerland.

12.     At all times material hereto, defendant ICI was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of a foreign country.

13.     ICI was, at all times relevant herein, registered to do business in New York and was a party in multiple lawsuits filed in the Southern District of New York.

14.     Plaintiff has registered a foreign maritime judgment against defendant ICI in this District.

15.     At all times material hereto, defendant Vista was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of a foreign country.

16.     Vista was, at all times relevant herein, registered to do business in the State of New York.

17.     At all times material hereto, defendant FBP was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of a foreign country.

18.     At all times material hereto, defendant Viktor Baranskiy was, and now is, a foreign citizen and resident of the Ukraine.

19.     Vista and FBP are the beneficial and registered owners, respectively, of the M/V CAPE VIEWER. The M/V CAPE VIEWER is now, or will shortly be, within the District of Virginia.

<u>**Background Facts To The Instant Litigation**</u>

20.     The individuals in managerial control of defendants ICI, Vista and FBP - in particular Mr. Viktor Baranskiy, Vladimir Yudaev, Michael Ivanov, Vladimir Ivanov and Daniel Su - and the entities within that group, have and continue to disregard corporate form. Accordingly, the Defendants are, and should be considered, alter egos of each other and liable for the debts and obligations of one another.

21.     At all times herein mentioned, the M/V CAPE VIEWER was, and now is, a vessel beneficially owned by VISTA. FBP, an alter ego of Vista, is listed as the Registered Owner of the M/V CAPE VIEWER, however, Vista purchased the M/V CAPE VIEWER with the funds fraudulently transferred out of ICI.

22.     At all times herein mentioned Vista was the beneficial owner of the M/V CAPE VIEWER, operating, managing, controlling and manipulating the vessel for its own use under the direction of the "former" ICI personnel; namely, Mr. Viktor Baranskiy, Vladimir Yudaev, Michael Ivanov, Vladimir Ivanov and Daniel Su.

a)  <u>**The London Proceedings.**</u>

23.     The relevant documents that support that factual background regarding this litigation are attached to the accompanying Declaration of William R. Bennett, III (with exhibits), and the same are incorporated herein. All references to Exhibits herein refer to the Exhibits attached to the Declaration of William R. Bennett, III.

24.     As part of its trading activities, Plaintiff and ICI entered into four (4) Forward Freight (Swap) Agreements (hereinafter referred to as the "Agreements") dated March 12, 2008, May 19, 2008, August 14, 2008, and August 29, 2008.

25.     Forward Freight (Swap) Agreements are derivative contracts. The value of the contracts is derived from a freight rate for a specific physical trade route which received a daily assessment on one of the Baltic Exchange Indices.  The Agreements served as a means of hedging exposure to freight market risk by providing for the purchase and sale of a freight rate along a named voyage route over a specified period of time.

26.     Forward Freight (Swap) Agreements are cash settled each month. On settlement, if the contract rate is less than the average of the rates for the contract route over the contract period, as determined by reference to the relevant index, the seller of the Forward Freight (Swap) Agreement is required to pay the buyer an amount equal to the difference between the contract rate and the settlement rate multiplied by the number of days specified in the contract. Conversely, if the contract rate is greater than the settlement rate the buyer is required to pay the seller the settlement sum.

27.     In mid to late September 2008, freight rates in the shipping market began to crash. ICI's financial obligations increased dramatically.

28.     Pursuant to the terms and conditions of the Agreements, ICI defaulted and breached the Agreements. In particular, on or about October 15, 2008, defendant ICI applied to

the Piraeus Multimember Court of First Instance (Ex-Parte Jurisdiction – Admiralty Division, Piraeus, Greece) for the granting of a petition for bankruptcy and for the appointment of a Reporting Judge and a Receiver in respect of its affairs.

29.     The October 15, 2008 bankruptcy application was an Event of Default within the meaning of section 5(a)(vii)(6) of the Agreements in that ICI had, by that application, "*[sought] the appointment of a … receiver, trustee, custodian or other similar official for it or for all or substantially all its assets*."

30.     Pursuant to section 6(a) of the Agreements, the October 15, 2008 bankruptcy application was an Event of Default within the meaning of section 5(a)(vii)(6) and gave rise to a right of Early Termination of the Agreements.

31.     Clause 9(f) of the Agreements provides for Automatic Early Termination to apply to both parties, therefore, the Agreements were automatically terminated by reason of ICI's October 15, 2008 bankruptcy application.

32.     In or about November 2010, Plaintiff commenced an action in London, England against ICI to recover the amounts due and owing under the Agreements. Exhibit A are true and correct copies of the Claim Form and the Particulars of Claim which were filed in the High Court of Justice, Queen's Bench Division, Commercial Court Registry in London, England.

33.     On December 13, 2010, the High Court of Justice, Queen's Bench Division, Commercial Court Registry entered a judgment for Plaintiff as against ICI and ordered ICI to pay Plaintiff a total of USD $19,907,118.36 (hereinafter referred to as the "Judgment"). Exhibit B is a true and correct copy of the Judgment for Claimant (Plaintiff herein) issued by the High Court of Justice, Queen's Bench Division, Commercial Court Registry, London, England.

34.    Pursuant to the Order issued by the High Court of Justice, Queens Bench Division, Commercial Court Registry, defendant ICI is obliged to pay Plaintiff $19,907,118.36, excluding post-judgment interest and attorney's fees.

35.    The Order issued by the High Court of Justice, Queen's Bench Division, Commercial Court Registry is a final Judgment, conclusive and enforceable in England.

36.    The $19,907,118.36 Judgment against defendant ICI in the High Court of Justice, Queen's Bench Division, Commercial Court Registry remains unpaid to date, though payment has been duly demanded.

37.    Defendant ICI's October 15, 2008 bankruptcy application was ultimately rejected on the basis that the Centre of Main Interest ("COMI") was not in Greece. Accordingly, ICI is still actively registered company in the Marshall Islands.

**b) <u>Litigation in the Southern District of New York</u>.**

38.    Plaintiff, having obtained a Judgment against defendant ICI in the High Court of Justice, Queen's Bench Division, Commercial Court Registry, obtained confirmation of the Judgment in the United States District Court for the Southern District of New York.

39.    By Order dated September 14, 2011, the United States District Court for the Southern District of New York granted Plaintiff's motion for recognition of a foreign judgment pursuant to Fed. R. Civ. P. 55(b)(2). A copy of the September 14, 2011 Order is Exhibit C.

40.    A judgment confirming and recognizing the foreign Judgment issued by the High Court of Justice in London, England in favor of Plaintiff and against ICI in the amount of $19,907,118.36 was entered on October 4, 2011. A copy of the October 4, 2011 judgment is Exhibit D.

**c)** **Litigation in the Eastern District of Virginia.**

41.     A copy of the October 4, 2011 judgment was registered in the United States District Court Eastern District of Virginia on October 17, 2013. A copy of the October 17, 2013 registration is Exhibit E.

### The Instant Action

42.     This action is brought, in the first instance, to obtain enforcement of a foreign money judgment recognized in the Southern District of New York, in favor of Plaintiff and against Defendant ICI.

43.     This action is also brought to demonstrate that ICI committed a fraud by fraudulently transferring cash to defendants Vista and FBP to avoid paying its creditors, including Plaintiff.

44.     This action is also brought to demonstrate that the defendants are alter egos of one another and hence liable for the Judgment debt of ICI to Plaintiff.

45.     One or more of the Defendants have property now, or soon to be, in the Eastern District of Virginia. This action is also brought to attach such property pending judgment in favor of Plaintiff and against the Defendants in this action.

46.     Defendants have a commonality of operation, control, and routinely transfer funds between each other such that entities within the group are alter egos of the others.

47.     The individuals in managerial control of Defendants ICI, Vista, and FBP - in particular Mr. Viktor Baranskiy, Vladimir Yudaev, Michael Ivanov, Vladimir Ivanov and Daniel Su - and the entities within the "ICI group," disregard corporate form, and the Defendants herein are and should be considered alter egos of each other and thus liable for the debts and obligations of one another.

48.     Defendants disregard their own corporate form and deal with the other members of the group absent an arm's-length relationship.

49.     Defendants possess, transfer and/or hold funds of, or for the benefit of, one another, and make and receive payments for, and on behalf of, the other Defendants, pooling the resources without regard to corporate separateness, and without entering into an arm's-length negotiated contract to provide such services. As such, each of the Defendants is a proper party to be identified in the process of attachment to be issued herein.

50.     In support of these fraud and alter ego allegations, Plaintiff further alleges the following:

a)  The officers, directors, operators and owners of each of the Defendants are the same and/or are substantially the same. In particular, Viktor Baranskiy is a controlling shareholder, director and/or officer of defendants ICI, Vista, and FBP.

b)  Viktor Baranskiy directly or indirectly owns the Defendants, in whole or in part, and ultimately exercises complete dominion and control over all the Defendants, whether or not he owns a controlling share in any particular Defendant.

c)  Upon information and belief, Michael Ivanov is a director and/or officer in the chartering department of defendants ICI, Vista, and FBP.

d)  Upon information and belief, Vladimir Ivanov is a director and/or officer in the operations department of defendants ICI, Vista, and FBP.

e)  Upon information and belief, Vladimir Yudaev is a director and/or officer in the operations department of ICI and a shareholder and director and/or officer in the chartering department of Vista and FBP.

f) ICI, as a corporate practice, routinely disregarded corporate formalities. As evidenced by the financial statements, audited by PricewaterhouseCoopers, ICI owned and controlled the following companies for the sole purpose of being a depository for money due and owing ICI:

    i. Weaver Investment, Inc.

    ii. Selene Ship Management S.A.

    iii. Auster Marine Co.

    iv. Treselle Navigation Ltd.

    v. Cardinia Management Co.

    vi. Tempest Service Inc.

g) It is not the general practice in the maritime community, or in any other business, for independent companies to make or receive large payments on behalf of other independent companies, yet such payments were, and are, made and received regularly by the six affiliated companies for ICI. Indeed, the sole activity of these six companies was to maintain bank accounts for the sole purpose to receive funds for ICI.

h) At all relevant times herein, ICI created and operated an incestuous group of companies with the sole purpose of ICI avoiding its debts by defrauding creditors.

i) The practice of directing payments to its wholly owned subsidiaries was utilized by ICI to evade creditors.

j) ICI issued invoices requesting payments to these corporate entities. The most common beneficiary was Weaver Investment, Inc. Invoices sent to Plaintiff requested payment to ICI to an account at HSBC Bank in Piraeus in the name of

Weaver Investment Inc., Selene Ship Management S.A., Auster Marine Co., and Treselle Navigation Ltd.

k) Payments sent or received on behalf of another independent company without due consideration, and without written agreements, are suggestive of a relationship that is not at arm's length. This fraudulent activity, which occurred between 2006 and 2008, was pervasive.

l) On June 24, 2008, Vista was incorporated in the British Virgin Islands with the primary  purpose  to receive cash and assest transfers from ICI.

m) On June 30, 2008, ICI's Interim Semi-Annual Financial Statements for January 1 – June 30, 2008 indicated a cash and cash equivalent amount of US $39,236,853.00, and a profit of US $80,627,022.00.

n)  On October 15, 2008, defendant ICI, a mere six (6) weeks after recording cash on hand of nearly $40,000,000, applied to the Piraeus Multimember Court of First Instance (Ex-Parte Jurisdiction – Admiralty Division) for the granting of a petition for bankruptcy. At the time of the bankruptcy filing, ICC's financial position indicated a cash and cash equivalent amount of €311,377.06 and US $2,733,854.52, with total losses of US $15,504,000.

o) Using cash it illegally received from ICI, Vista began operating ships, with voyages commencing in December 2008.

p) On December 18, 2012, the M/V CAPE VIEWER was bought by Vista, under the name of FBP, unencumbered by a mortgage. Buying a vessel unencumbered, i.e., without a mortgage, is not simply rare in the shipping industry, it's virtually unheard of.

q) The M/V CAPE VIEWER is listed as part of Vista's fleet on Vista's website.

r) FBP, an alter ego of Vista, is listed as the Registered Owner of the M/V CAPE VIEWER. Vista is the beneficial owner of the M/V CAPE VIEWER, being operated, managed, controlled and manipulated by Viktor Baranskiy, Vladimir Yudaev, Michael Ivanov, Vladimir Ivanov and Daniel Su.

s) FBP is owned by Viktor Baranskiy and Vista. Vista, in turn, is controlled or otherwise operated by Viktor Baranskiy, who was a shareholder in ICI.

t) FBP makes no independent business decisions controlling its asset, the M/V CAPE VIEWER. All such decisions are made by Viktor Baranskiy, Vladimir Yudaev, Michael Ivanov, Vladimir Ivanov and Daniel Su.

u) The law firm of MFB, located in London, appeared in London to respond to the proceedings commenced against ICI in London. Shortly thereafter, MFB also represented Vista in purchasing numerous vessels.

v) Vessels owned and operated by Viktor Baranskiy Vladimir Yudaev, Michael Ivanov, Vladimir Ivanov and Daniel Su, whether under the name ICI, Vista or FBP employ subsidiaries of ICI, Vista or FBP, namely, Tech Projects, MKTM Ltd. and Columbus to manage their respective vessels. Tech Projects, MKTM Ltd and Columbus employ the same key employees as defendants ICI, Vista, and FBP. Further, MKTM shares the same address as ICI/Baranskiy.

w) Upon information and belief, the Baranskiy family is the beneficial owner of and maintains the same address as ICI, Vista, FBP, and MKTM.

x)  Viktor Baranskiy was an 18% shareholder in ICI, which made him the third largest shareholder in ICI, resulting in him having a controlling interest in ICI under applicable law.

y)  Viktor Baranskiy controls Vista and Freight Bulk and treats their bank accounts as his own personal accounts.

z)  The M/V HARMONY FALCON was the first vessel that Viktor Baranskiy through Vista chartered in October 2008, carrying iron ore from the Ukraine to China.

aa) The HARMONY FALCON was a vessel belonging to ICI as noted in the ICI filings in Greece. The HARMONY FALCON loaded coal in the Ukraine in mid-October 2008 as part of the ICI fleet. After ICI filed for bankruptcy, the vessel came under the control of Vista without any explanation. Upon information and belief, Vista, without any consideration, took control of the ICI fleet of ships.

bb) Vista, without any consideration, took control of the ICI fleet of ships.

cc) ICI had large sums of cash missing from its accounts. Vista has unexplained amounts of cash added to its accounts such that it was able to purchase unencumbered assets valued at nearly $100,000,000.

dd) Viktor Baranskiy has testified that he had access to more than $100,000,000.00 USD of cash. Vista is not a success story, but rather a story of how they are the successor to ICI.

ee) Through Viktor Baranskiy, Vista succeeded ICI taking control of ICI's cash, vessels, assets, key employees, clients and long-term shipping contracts. Vista is ICI.

**The BDO Report**

51.     Between mid-September and mid-October 2008, ICI, upon information and belief, transferred tens of millions of dollars of cash.

52.     The BDO report, Exhibit F, is an analysis of the PricewaterhouseCoopers audited financial statements. The report makes the following findings:

a)   A review of ICI's financial statements shows that it was a profitable company that appeared to be in good financial condition.

b)    The company's balance sheet shows that by June 30, 2008, ICI had more than $100 million of equity, which included more than $42 million of cash.

c)   Despite ICI's strong financial performance through August 2008, ICI filed for bankruptcy in Greece on or about October 15, 2008.  Only ICI filed for bankruptcy. ICI's wholly-owned subsidiaries and related parties did not file for bankruptcy.

d)   Because those subsidiaries did not also file for bankruptcy, one would have expected ICI to have listed the amounts held by the subsidiaries as intercompany receivables (or amounts due from related parties) as an asset in the bankruptcy filing.  No such disclosure appears to have been made.

e)   A decrease in accounts receivable means that ICI's cash balance should have increased by $47.6 million after June 30, 2008, but before filing for bankruptcy, on account of the change in accounts receivable.

f)   ICI directed cash payments to subsidiary companies identified as companies created for the sole purpose of receiving cash due ICI and that such an arrangement is unusual.

g) Based on a review of ICI's 2008 balance sheets, there appears to have been a large transfer of cash out of ICI and/or its related companies without explanation.

h) ICI's apparent failure to disclose intercompany receivables due from its subsidiaries in its bankruptcy filing in Greece is not in accordance with standard accounting practices.

i) The analysis of the changes in the balance sheet items indicates that cash to ICI should have increased by $47.6 million on account of the collection of accounts receivable and possibly $20.2 million on account of the bunker inventory.  In addition, cash should have decreased by $25.5 million as a result of the decrease in account payable and $4.5 million from a decrease in the amount owed to shareholders (assuming the debt was not forgiven). Therefore, based upon the available information, one would have expected cash to increase by a total of at least $17.6 million ($47.6 million - $25.5 million - $4.5 million).  If the bunker inventory was sold and not used in the operations, one would have expected cash to increase by $37.8 million ($17.6 million + $20.2 million).  However, cash actually decreased by $39.6 million. **This difference between the expected amount of cash and the actual cash balance is $57.2 million ($17.6 million + $39.6 million).**  When one takes into account that the wholly-owned subsidiaries of ICI have "disappeared," the difference between the expected and actual cash balances is highly suspect.

53.     Upon information and belief, ICI with the intent to deceive and defraud its creditors, including Plaintiff herein, fraudulently conveyed and transferred in bulk all of its cash to its subsidiary companies, which included Vista and, ultimately, FBP.

54.     Based on the foregoing, as well as other activities, the Defendants should be considered a single economic unit with no corporate distinction between or among any of them, rendering each liable for the debts of the other, and all assets of Defendants together should be susceptible to attachment and/or restraint for the debts of ICI.

55.     By virtue of the foregoing, all of the named Defendants are properly considered as liable on the Judgment against ICI in favor of Plaintiff.

56.     The four (4) Agreements called for the application of English law. Under English law, including, but not limited to Section 63 of the English Arbitration Act of 1996, costs, including attorneys' fees, disbursements, and interest are recoverable as part of Plaintiff's main claim.

57.     This action is further brought to obtain security for the additional sums which are recoverable including Plaintiffs anticipated attorneys' fees and costs of collection, all of which are recoverable as part of Plaintiff's claim under English law.

58.     Plaintiff estimates that, as nearly as presently may be calculated, the outstanding sum due under the English Judgment, together with recoverable attorneys' fees, legal expenses, costs, and interest is no less than $21,000,000.00.

59.     Plaintiff reserves the right to amend this First Amended Verified Complaint to seek additional security to the extent that the amount of security sought herein should prove to be inadequate to fully secure Plaintiff.

## **Request for Rule B Relief**

60.      Defendants cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendants, or any of them, have, or will shortly have, assets within this District and subject to the jurisdiction of this Court assets comprising, inter alia, the vessel M/V CAPE VIEWER, cash, funds, escrow funds, credits, debts, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendants.

61.      The total amount sought to be attached is no less than USD $21,000,000.00.

**WHEREFORE**, Plaintiff Flame prays:

a. That process in due form of law according to the practice of this Court may issue against Defendants citing them to appear and answer the foregoing, failing which Plaintiff will move for default on the principal amounts owed together with interest, costs, disbursements, and reasonable attorneys' fees;

b. That if Defendants cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendants up to and including USD $21,000,000.00 be restrained and attached, including, but not limited to the vessel M/V CAPE VIEWER, as well as any cash, funds, escrow funds, credits, debts, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or being transferred from or for the benefit of Defendants (collectively hereinafter, "ASSETS") within the possession, custody, or control of such banking institutions and/or any such other garnishees, including, but not limited to T. Parker Host, Inc., who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein.

c. That this Court retain jurisdiction over the matter for any subsequent enforcement action as may be necessary; and

d. For such other, further and different relief as the Court may deem just and proper in the premises.

FLAME S.A.


_____/s/_____

Steven M. Stancliff, VSB No. 73853
*Attorney for Plaintiff Flame S.A.*
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, VA 23510
Tel:  (757) 623-3000
Fax: (757) 623-5735
sstancliff@cwm-law.com

-   and  -

William R. Bennett, III *
Lauren B. Wilgus *
*Attorneys for Plaintiff Flame S.A.*
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, NY  10174
Tel:  (212) 885-5000
Fax: (212) 885-5001
wbennett@blankrome.com
lwilgus@blankrome.com

* *Pro Hac Vice* application pending

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of January, 2013, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such electronic filing to the following counsel of record:

Patrick M. Brogan
DAVEY & BROGAN, P.C.
101 Granby Street, Suite 300
Norfolk, Virginia 23510
Tel: (757) 622-0100
Fax: (757) 622-4924
Email: pbrogan@daveybroganpc.com
*Attorney for Defendant Freight Bulk PTE, LTD.*

Michelle Hess (VSB No. 71080)
HOLLAND & KNIGHT, LLP
1600 Tysons Blvd , Suite 700
McLean, VA 22102
Tel: (703) 720-8600
Fax: (703) 720-8610
Email: michelle.hess@hklaw.com
*Attorney for Consolidated Plaintiff*
*Glory Wealth Shipping Pte Ltd.*

George M. Chalos (*pro hac vice*)
CHALOS & CO., P.C.
55 Hamilton Avenue
Oyster Bay, New York 11771
Tel: (516) 7 14-4300
Fax: (516) 750-9051
Email: gmc@chaloslaw.com
*Attorney for Defendant Freight Bulk PTE, LTD.*

James H. Power (*pro hac vice*)
HOLLAND & KNIGHT, LLP
31 West 52nd Street,
New York, NY 10019
Tel: (212)513-3200
Fax: (212)385-9010
Email: James.power@hklaw.com
*Attorney for Consolidated Plaintiff*
*Glory Wealth Shipping Pte Ltd.*

/s/ Steven M. Stancliff
Steven M. Stancliff, VSB No. 73853
*Attorney for Plaintiff Flame S.A.*
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, VA 23510
Tel:  (757) 623-3000
Fax: (757) 623-5735
sstancliff@cwm-law.com