IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FLAME S.A.,

    Plaintiff,

GLORY WEALTH SHIPPING PTE LTD.

    Consolidated Plaintiff,

v.

INDUSTRIAL CARRIERS, INC.,
VISTA SHIPPING, INC., and
FREIGHT BULK PTE. LTD.,

    Defendants.

CIVIL NO. 2:13-cv-658

## OPINION AND ORDER

This matter comes before the Court on motion of Defendant Freight Bulk Pte. Ltd. ("FBP") to vacate the November 22, 2013, order of this Court attaching the vessel M/V CAPE VIEWER, of which FBP is the registered owner. FBP asserts, among others things, that this Court lacks jurisdiction over this matter because it does not sound in admiralty.[1] Ultimately, this question is a choice of law question. That is, if federal law is applied, then this Court has admiralty jurisdiction. If English law is applied, there is no admiralty jurisdiction. Since this motion concerns the vacating of a Rule B attachment on subject matter jurisdiction grounds, federal law should apply because of the inherently procedural nature of this issue and, therefore,

---

[1] FBP also challenges whether Flame has met the pleading requirement for its allegation that FBP is the corporate alter ego of the other defendants. Considering the importance of the jurisdiction question, the extreme likelihood that this decision will be appealed on an expedited basis, and the interest of simplifying the appeal, the Court withholds judgment on that issue until the jurisdiction question is resolved on appeal.

1

this Court has admiralty jurisdiction over the case.

I.     FACTUAL AND PROCEDURAL BACKGROUND

The relevant background for this issue is as follows. In 2008 Plaintiff FLAME S.A. ("Flame") entered into four Forward Freight (Swap) Agreements ("FFA's") with Defendant International Carriers, Inc. ("ICI"). The FFA's concerned certain shipping routes that were defined by the Baltic Exchange. ICI breached those agreements and Flame subsequently brought a successful suit in the High Court of England, obtaining a judgment of just less than USD $20,000,000 against ICI.

On December 23, 2010, Flame filed a complaint in the Southern District of New York to enforce the English judgment. They brought the suit under the court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and the clerk subsequently categorized the case as a maritime cause of action. Although that court did not directly rule on the issue of jurisdiction, nor did ICI, represented at the time by FBP's present counsel, raise the issue in its motion to dismiss, the court did enter default judgment in favor of Flame after ICI's counsel withdrew from that proceeding. That judgment was registered in the Eastern District of Virginia on October 11, 2013.

On November 22, 2013, Flame brought the instant suit against ICI and co-Defendants Vista Shipping, Inc. ("Vista") and FBP. Flame alleges that Vista and FBP are corporate alter-egos of ICI and are therefore jointly liable with ICI. Flame moved this Court to issue an order for the attachment of the M/V CAPE VIEWER pursuant to its verified complaint, which attachment was granted via the November 22, 2013 order. FBP subsequently moved to vacate that order and to have the entire matter be dismissed. After three hearings and significant briefing the matter is now ripe for decision on the admiralty jurisdiction grounds.

2

## II.  LEGAL STANDARD

Before the Court is a question of choice of law on a procedural issue; specifically, whether the Court should utilize federal or foreign law in determining whether it may exercise admiralty jurisdiction in enforcing the attachment and the English judgment. "It is well recognized that federal courts in the United States possess jurisdiction in admiralty over claims to enforce a foreign *admiralty* judgment." *Vitol, S.A. v. Primerose Shipping Co. Ltd.*, 708 F.3d 527, 533 (4th Cir. 2013) (emphasis added). Whether or not a foreign judgment is an admiralty judgment is determined by whether "whether the [underlying] claim itself is maritime in nature." *Id.* at 535. Since the underlying claim at issue here was a breach of contract claim, it must be determined whether the FFA's are maritime contracts. As will be discussed in this Opinion, applying federal law as opposed to English law makes all the difference in this case.

Generally, procedural questions in federal court are governed by federal law. While other courts have followed this rule with regard to determining admiralty jurisdiction, it is not clear whether the Fourth Circuit follows such a rule when determining whether or not a foreign judgment should be enforced via admiralty jurisdiction. In *Vitol*, the Fourth Circuit approved of the district court's exercise of admiralty jurisdiction in enforcing an English judgment. In particular, the court in that case was concerned with how its admiralty jurisdiction was affected by the choice of the English forum from which the original judgment was obtained and the current form of the judgment. The question of whether or not the underlying claim itself was a maritime claim was not in dispute by the parties, and the court did not directly address the issue of whether federal or English law would govern the interpretation of the nature of the claim. Rather, the court seemed to presume that English law governed the interpretation because both parties had provided the district court with expert declarations that were in agreement that the underlying claim was maritime in nature under English law. Therefore, despite the general rule

3

that procedural questions are determined by federal law and the procedural nature of determining admiralty jurisdiction, the Fourth Circuit appeared to look to English law in *Vitol*.

However, the court in *Vitol* regularly looked to the Second Circuit throughout its legal analysis, which is typical considering the Second Circuit's vast experience with, and exposure to, admiralty claims. Therefore, that circuit's decision in *Blue Whale Corp. v. Grand China Shipping Dev. Co., Ltd.*, 722 F.3d 488 (2d Cir. 2013), is particularly informative in the instant case. There, the court noted that there was a split of authority in the Southern District of New York as to the choice of law for Rule B decisions. It briefly but clearly resolved that split by stating:

> Despite the divide, what is clear is that federal law controls the procedural inquiry, namely, whether a plaintiff's claim sounds in admiralty. This question is inherently procedural by virtue of its relationship to the courts' subject matter jurisdiction and, thus, is controlled by federal maritime law.

*Id.* at 494 (citations omitted).

Additionally, *Vitol* must be interpreted in the context of *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14 (2004). In that case, the Supreme Court considered whether federal or state law governed the interpretation of two maritime contracts. The Court held that "[w]hen a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation." *Id.* at 22-23 (citing *Kossick v. United Fruit Co.*, 365 U.S. 731, 742 (1961)). In interpreting a contract a court cannot "simply look to the place of the contract's formation or performance. Instead, the answer 'depends upon . . . the nature and character of the contract,' and the true criterion is whether it has 'reference to maritime service or maritime transactions.'" *Id.* at 24 (citing *North Pacific S.S. Co. v. Hall Brothers Marine Railway & Shipbuilding Co.*, 249 U.S. 119, 125 (1919)). The Supreme Court further stated that "our

4

touchstone is a concern for the uniform meaning of maritime contracts." *Id.* at 28.[2] This is particularly relevant in the case at bar, as the outcome would differ depending on whether English law or federal law were utilized.

### III. JURISDICTION IN THIS CASE

FBP has proffered to the Court a declaration of Timothy Saloman, Queen's Counsel, which asserts that FFA's would not be considered maritime contracts under English law and would not be actionable under admiralty there. Additionally, other federal courts have found that FFA's are not maritime in nature under English law. *See D'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd.*, 09 CIV. 7840 JGK, 2011 WL 1239861 (S.D.N.Y. Mar. 28, 2011); *Pioneer Freight Futures Company Limited v. Marine Trade S.A., et al.*, 11-cv-10313-PA (C.D. Ca. Dec. 20, 2011). It is apparent to the Court that under English law the FFA's would not be maritime contracts and as a result the English judgment in this matter would not be an admiralty judgment. Therefore, if English law were used in addressing this Rule B attachment, no admiralty jurisdiction would exist.

Under federal law, however, it appears that the FFA's in question would certainly be maritime contracts. While it is true that the FFA's are a form of derivative financial contracts and therefore are not purely maritime, they are singularly concerned with shipping routes; specifically, shipping routes as specifically defined by the Baltic Exchange. Indeed, the Supreme Court has stated that "[o]ur cases do not draw clean lines between maritime and nonmaritime contracts" and "[w]e have reiterated that the fundamental interest giving rise to maritime jurisdiction is the protection of maritime *commerce*." *Kirby*, 543 U.S. at 23, 25 (citations

---

[2] The Court continued: "It certainly could not have been the intention [of Article III] to place the rules and limits of maritime law under the disposal and regulation of the several States." *Kirby*, 543 U.S. at 28. Similarly, it could not have been the intention of Article III's grant of admiralty jurisdiction to place the rules and limits of maritime law under the disposal and regulation of foreign states.

omitted) (emphasis in original). Flame's use of FFA's appears to have been primarily for hedging the risks inherent in their shipping business.

This Court is not alone in finding that, under federal law, FFA's are maritime contracts. *See, e.g., Transfield ER Futures Ltd. v. Deiulemar Shipping S.P.A.*, CIV.A. 11-099, 2012 WL 123286 (E.D. La. Jan. 17, 2012); *Flame S.A. v. M/V Lynx*, Civ. No. 10-278, R. Doc. No. 35 (E.D. Tex. Jun. 22, 2010); *Brave Bulk Transp. Ltd. v. Spot On Shipping Ltd.*, 07 CIV. 4546 (CM), 2007 WL 3255823 (S.D.N.Y. Oct. 30, 2007). Under federal law, it is clear that the question of whether the FFA's are maritime contracts is answered in the affirmative.

In consideration of *Blue Whale* and *Kirby*, in addition to the well settled general rule that federal law governs procedural inquiries, it must be the case that federal law should inform this Court's determination of whether it has admiralty jurisdiction. To do otherwise and apply English law would result in a precedent whereby the determination of admiralty jurisdiction would be subject to the variances and uncertainties of foreign law. This would be in direct contradiction with *Kirby*'s clear preference for uniformity in admiralty cases. Therefore, since federal law should be used here, the FFA's in question (and Flame's underlying claim) are maritime contracts. Moreover, this Court is asked to enforce the judgment of a United States District Court, which case was filed under that court's admiralty jurisdiction, against ICI that recognized the English judgment against that defendant; however, it is noted that Vista and FBP were not parties to that suit. *Flame S.A. v. Industrial Carriers, Inc.*, 777 F.Supp.2d 717 (SDNY 2011).

The Court, therefore, **FINDS** that it does have admiralty jurisdiction in this case and **DENIES** FBP's Motion to Vacate, ECF No. 11, as to the question of admiralty jurisdiction. The Court withholds ruling on the additional question of Flame's pleading that FBP is the corporate

alter ego of ICI. However, considering the complexities and uncertainties involved in this case and the importance of clarifying the procedural issues presented, the Court **CERTIFIES** this matter for expedited appeal to the Fourth Circuit. The Court further recommends that the parties are able to present an appeal on the existing record and that there may be no need for oral argument.

    The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

    **IT IS SO ORDERED.**

                                                                                          /s/
                                                      Robert G. Doumar
                                                      Senior United States District Judge
                                                      UNITED STATES DISTRICT JUDGE

Norfolk, VA
January 10, 2014