UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FLAME S.A.,

                Plaintiff,

GLORY WEALTH SHIPPING PTE LTD.,

                Consolidated Plaintiff,

v.                                            Civil Action No. 2:13-cv-00658-RGD-LRL
                                                                 2:13-cv-00704-RGD-LRL

INDUSTRIAL CARRIERS, INC.,
VISTA SHIPPING, INC., and
FREIGHT BULK PTE. LTD.,

                Defendants.

**MEMORANDUM IN SUPPORT OF MOTION
FOR THE INTERLOCUTORY SALE OF THE M/V CAPE VIEWER**

      Plaintiff FLAME S.A. ("Plaintiff"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in Support of its Motion for the Interlocutory Sale of the vessel CAPE VIEWER, Singapore flag; IMO #9008160; call sign 9VLV.

**BACKGROUND**

      As part of its trading activities, Plaintiff and Defendant Industrial Carriers, Inc. ("ICI") entered into four Forward Freight (Swap) Agreements (hereinafter referred to as the "Agreements") dated March 12, 2008, May 19, 2008, August 14, 2008, and August 29, 2008.

      In mid to late September 2008, freight rates in the shipping market began to crash and ICI's financial obligations increased dramatically. On or about October 15, 2008, ICI defaulted and breached the Agreements by applying to the Piraeus Multimember Court of First Instance

(Ex-Parte Jurisdiction – Admiralty Division) for the granting of a petition for bankruptcy and for the appointment of a Reporting Judge and a Receiver in respect of its affairs. Defendant ICI's October 15, 2008 bankruptcy application was ultimately rejected on the basis that the Centre of Main Interest ("COMI") was not in Greece.

As a result of ICI's breach of the Agreements, Plaintiff filed suit against ICI in November, 2010. The Agreements provided for litigation in the High Court of England and Plaintiff's claims proceeded there. Plaintiff ultimately succeeded against ICI and obtained a judgment in excess of USD $19,907,118.36 in December, 2010. The amount currently owed by ICI to Plaintiff, as near as can presently be calculated, is $21,000,000.

On September 14, 2011, the English Judgment was recognized by the United States District Court for the Southern District of New York and was entered on October 4, 2011 (the "New York Judgment"). The New York Judgment was registered in the Eastern District of Virginia on October 11, 2013.

On November 22, 2013, Plaintiff commenced this action and obtained a Rule B attachment of the M/V CAPE VIEWER (the "Vessel"), which is registered to Defendant Freight Bulk Pte. Ltd. and beneficially owned by Defendant Vista Shipping, Inc.

On November 22, 2013, this Court issued an Order authorizing issuance of Process of Maritime Attachment and Garnishment, and on November 29, 2013, the United States Marshal executed the writ and attached the Vessel. On the same day, the U.S. Marshal transferred custody of the Vessel to a substitute custodian, National Maritime Services, in whose custody the Vessel currently remains. (Dkt. # 7 - 8).

The Vessel has been under attachment since November 29, 2013 and, notwithstanding Defendants' initial lukewarm suggestion that her release against security might be forthcoming,

no such alternate security has been posted. Thus, the Vessel has remained under attachment, in the hands of substitute custodian National Maritime Services, for over fifty (50) days (as of the date of this filing). National Maritime Services estimated the cost to maintain the Vessel for the next six (6) months is approximately $1,503,980.00,[1] or approximately $8,000 - $8,500 per day. These costs continually erode the value of the res, and the value will continue to decrease every day that the M/V CAPE VIEWER remains under attachment.

FBP's own Motion to Compel payment of *Custodia Legis* Expenses (Dkt. # 58), filed on January 16, 2014, supports Plaintiff's position that excessive and substantial expenses are being incurred to maintain and preserve the Vessel because Defendants have made no good faith effort to provide security. In particular, FBP's motion states:

> As of the filing of this motion, no less than USD 238,134.85 in *custodia legis* expenses have been incurred since the attachment of the M/V CAPE VIEWER. Specifically, the costs incurred to date are as follows: (i) USD 113,552.50 for fuel oil (calculated as follows: 160.85 metric tons at USD 650.00 per metric ton, plus USD 900.00 in barging costs); (ii) USD 27,180 for diesel oil (calculated as follows: 27.18 metric tons at USD 1,000.00 per metric ton); (iii) USD 30,800 for the provision of fresh water to the Vessel (172 metric tons at $150 per metric ton of fresh water delivered, plus USD 5,000 mobilization fee); (iv) USD 18,402.35 for supplies provided to the vessel (including food and cleaning supplies); and (v) 48,200 in crew wages. At present, additional supplies and necessaries are required, including but not limited to marine diesel oil/MDO and provisions for the crew. Additionally, crew wages will soon need to be paid for the next month of service.

(FBP's Memorandum in Support of Motion, p.p. 2 – 3), Dkt. # 59.

In these circumstances, Defendants' failure to provide security for the release of the

---

[1] See Ex. A to the Declaration of William R. Bennett, III , Esq. entitled: "National Maritime Services Estimate of Ongoing Costs – 6 Month Carry Forward."

3

Vessel is deliberate and unreasonable, as set forth fully below, and the Court should order an interlocutory sale of the Vessel to preserve the value of the attachment in this matter.

## ARGUMENT

### THE FEDERAL RULES OF CIVIL PROCEDURE AUTHORIZE THE SALE OF THE ATTACHED RES IN THESE CIRCUMSTANCES

Rule E (9)(a) of the Supplemental Rules of Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (the "Supplemental Rules"), governs interlocutory vessel sales and provides, in relevant part:

(a) Interlocutory Sales; Delivery.

> i. On application of a party, the marshal, or other person having custody of the property, the court may order all or part of the property sold—with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court—if:
> A. the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
> B. the expense of keeping the property is excessive or disproportionate; or
> C. there is an unreasonable delay in securing release of the property.

In order to prevail on a motion for interlocutory sale, the movant need only show that one of the above listed conditions is satisfied. *Merchants National Bank of Mobile v. Dredge GENERAL G.L. GILLESPIE*, 663 F2d 1338, 1341 (5th Cir. 1981).

A.     <u>DISPROPORTIONATE COST OF KEEPING THE VESSEL UNDER ATTACHMENT</u>

Supplemental Rule E(9)(b)(i)(B) provides for interlocutory sale of a vessel if "the expense of keeping the property is excessive or disproportionate." There can be no doubt that

the Vessel is a wasting asset. The expense of keeping the Vessel idle and under attachment at Norfolk is either excessive, disproportionate, or both. The value of Plaintiff's attachment interest is steadily eroding by the vessel's daily running costs that include crew wages, victualing, garbage/sewage removal, insurance, dockage, etc. If one adds to these amounts the daily cost of bunkers consumed, it is reasonable to assume that the Vessel is losing approximately $8,000 - $8,500[2] from her value daily, by reason of her detention, which Defendants have made no good faith effort to end by providing alternate security.

Indeed, Courts have found amounts much lower than these to be excessive or disproportionate. *See, e.g., Merchants Nat'l Bank,* 663 F.2d at 1342 (affirming a district court's holding that monthly costs of $17,000 associated with a vessel's seizure were excessive and warranted an interlocutory sale); *Freret Marine Supply v. M/V Enchanted Capri,* 2001 U.S. Dist. LEXIS 8161, *13, *15-16 (E.D. La. 2001) (finding that daily custodial costs of $1,500 were excessive for a vessel worth $12 million); *Samsun Logix Corp. v. Parkroad Corp*, 2009 U.S. Dist. LEXIS 7602 *7 (W.D. La Feb. 3, 2009)(interlocutory sale of the vessel was warranted because $4,677.49 per day in substitute custodian and dockage fees was excessive).

Here, the $8,000 - $8,500 per day maintenance cost that the Vessel continues to incur is excessive and disproportionate to the value of the Vessel.[3] FBP's own Motion to Compel payment of *Custodia Legis* Expenses (Dkt. # 58), confirms "as of [January 16, 2014], no less than USD 238,134.85 in *custodia legis* expenses have been incurred since the attachment of the

---

[2] See Ex. A.

[3] The current market value is contested: Plaintiff has obtained a valuation of $12.5 million, whereas Defendants contend the value is somewhat lower. See Ex. B, "Valuation Certificate in respect of the M/V CAPE VIEWER" issued by Gibson Shipping Energy.

M/V CAPE VIEWER." Further, National Maritime's spreadsheet estimates the amount to maintain the Vessel for the next six months is $1,503,980, or $250,663 per month, which is significantly higher than the Fifth Circuit has found to be an excessive monthly fee in *Merchants Nat'l Bank*.

In view of the custodial costs and the daily running costs and expenses that have been accruing ever since the Vessel was attached over fifty (50) days ago, as of the date of this filing, the value of Plaintiff's attachment interest has already eroded by as much as $400,000 - a state of affairs that benefits no one. Accordingly, the Court should order the sale of the Vessel as a conservatory measure to halt further economic deterioration of the res.

B.    UNREASONABLE FAILURE OF THE OWNERS TO PROVIDE SECURITY

Supplemental Rule E(5)(a) provides for the release of an attached Vessel against owner's adequate security. At the time of the Rule E(4) hearings on December 13, 2013, Defendant's counsel advised he would speak to his client in order to obtain an appraisal of the Vessel in order to post security and get the Vessel released. Apart from a lukewarm start of "without prejudice" discussions approximately one month ago, however, there has been no movement on the part of the Defendant to release the Vessel against security.

In these circumstances - i.e. the owner's unreasonable delay in providing security for the release of the Vessel - Supplemental Rule E(9)(a) authorizes the interlocutory sale of the attached Vessel. *See, e.g.*, *Silver Star Enterprises, Inc. v. M/V SARAMACCA*, 19 F.3d 1008, 1014 (5th Cir. 1994); *Merchants National Bank of Mobile v. Dredge GENERAL G.I. GILLESPIE*, 663 F 2d 1338, 1341-1342 (5th Cir. 1981); *Branch Banking & Trust Co. v. Fishing Vessel Toplesss*, 2013 U.S. Dist. LEXIS 97334 (D. Md. July 11, 2013); *Colonna's Shipyard, Inc. v. U.S.A.F. Gen.*

*Hoyt S. Vandenberg*, 584 F. Supp. 2d 862, 878 (E.D. Va. 2008); *Ferris Financial Service Co. v,. O.S. ARCTIC PRODUCER*, 567 F. Supp. 400 (W.D. Wash. 1983).

Courts generally give a defendant three to four month to release a vessel against alternate security, absent other considerations. *See, e.g.*, *Bank of Rio Vista v. Vessel Captain Pete*, 2004 U.S. Dist. LEXIS 21388, 2004 WL 2330704, *2 (N.D. Cal. 2004) (citation and internal quotations omitted); *see also, e.g.*, *Vineyard Bank v. M/Y Elizabeth I*, U.S.C.G. Official No. 1130283, 2009 U.S. Dist. LEXIS 23844, 2009 WL 799304 (S.D. Ca. 2009) (holding that the failure to secure the release of a vessel during the four months after arrest constituted an unreasonable delay); *Boland Marine & Mfg. Co., L.L.C. v. A.G. Navajo*, 2002 U.S. Dist. LEXIS 22737, 2002 WL 31654856 (E.D. La. 2002)(same); *Bollinger Quick Repair, L.L.C. v. Le Pelican M/V*, 2000 U.S. Dist. LEXIS 9084, 2000 WL 798497 (E.D. La. 2000)(same); *Ferrous Fin. Serv. Co. v. O/S Arctic Producer*, 567 F. Supp. 400, 401 (W.D. Wash. 1983)(same). Here, by the time this motion is fully submitted to the Court, nearly three months will have passed. In view of that fact, and the fact that Defendants have demonstrated an ability, but no willingness, to post security, the Court should find that Plaintiff satisfied the "unreasonable delay" criteria under Supplemental Rule E(9)(a)(i)(C) has been met.

## **CONCLUSION**

For these reasons, this Honorable Court should Order the interlocutory sale of the M/V CAPE VIEWER under Supplemental Admiralty Rule E(9)(a), as the cost and expense in maintaining custody of the property is excessive and disproportionate to both the value of the

claim and the value of the Vessel, and Defendants are unreasonably delaying the provision of security to release the property.

Counsel hereby requests an oral argument on this Motion as soon as possible.

FLAME S.A.

*/s/ Steven M. Stancliff*
Steven M. Stancliff, VSB No. 73853
*Attorney for Plaintiff Flame S.A.*
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, VA 23510
Tel: (757) 623-3000
Fax: (757) 623-5735
sstancliff@cwm-law.com

- and -

William R. Bennett, III
Lauren B. Wilgus
*Attorney for Plaintiff Flame S.A.*
*Admitted Pro Hac Vice*
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Tel: (212) 885-5000
Fax: (212) 885-5001
wbennett@blankrome.com
lwilgus@blankrome.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of January, 2014, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such electronic filing to the following counsel of record:

| | |
|---|---|
| Patrick M. Brogan | Michelle Hess (VSB No. 71080) |
| DAVEY & BROGAN, P.C. | HOLLAND & KNIGHT, LLP |
| 101 Granby Street, Suite 300 | 1600 Tysons Blvd , Suite 700 |
| Norfolk, Virginia 23510 | McLean, VA 22102 |
| Tel: (757) 622-0100 | Tel: (703) 720-8600 |
| Fax: (757) 622-4924 | Fax: (703) 720-8610 |
| Email: pbrogan@daveybroganpc.com | Email: michelle.hess@hklaw.com |
| *Attorney for Defendant Freight Bulk PTE, LTD.* | *Attorney for Consolidated Plaintiff Glory Wealth Shipping Pte Ltd.* |
| | |
| George M. Chalos (*pro hac vice*) | James H. Power (*pro hac vice)* |
| CHALOS & CO., P.C. | HOLLAND & KNIGHT, LLP |
| 55 Hamilton Avenue | 31 West 52nd Street, |
| Oyster Bay, New York 11771 | New York, NY 10019 |
| Tel: (516) 7 14-4300 | Tel: (212)513-3200 |
| Fax: (516) 750-9051 | Fax: (212)385-9010 |
| Email: gmc@chaloslaw.com | Email: James.power@hklaw.com |
| *Attorney for Defendant Freight Bulk PTE, LTD.* | *Attorney for Consolidated Plaintiff Glory Wealth Shipping Pte Ltd.* |

      */s/ Steven M. Stancliff*
      Steven M. Stancliff, VSB No. 73853
      *Attorney for Plaintiff Flame S.A.*
      CRENSHAW, WARE & MARTIN, P.L.C.
      150 W. Main Street, Suite 1500
      Norfolk, VA 23510
      Tel:  (757) 623-3000
      Fax: (757) 623-5735
      sstancliff@cwm-law.com