IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| FLAME S.A., ) | |
| ) | |
| Plaintiff, ) | Civil Action No: 2:13-cv-658 |
| ) | 2:13-cv-704 |
| GLORY WEALTH SHIPPING PTE LTD. ) | |
| ) | |
| Consolidated Plaintiff, ) | |
| vs. ) | |
| ) | |
| INDUSTRIAL CARRIERS, INC. ) | |
| VISTA SHIPPING, INC., and ) | |
| FREIGHT BULK PTE. LTD., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT FREIGHT BULK PTE. LTD.'s OPPOSITION TO FLAME S.A.'s
MOTION FOR INTERLOCUTORY SALE OF THE M/V CAPE VIEWER**

COMES NOW, Specially Appearing Defendant, Freight Bulk Pte. Ltd. ("FBP"), by and through undersigned counsel, subject to its restricted appearance and pending application to the Fourth Circuit, who respectfully submits this Memorandum in Opposition to Flame S.A.'s ("Flame") Motion for Interlocutory Sale of the M/V CAPE VIEWER (the "Vessel") (Docket #61). For the reasons set forth herein, there is no good faith basis for the relief that Flame has requested, and Flame's Motion must be denied in its entirety.

**RELEVANT FACTS AND PROCEDURAL HISTORY**

On November 22, 2013, Flame commenced this action, seeking the Rule B attachment of the M/V CAPE VIEWER, a Vessel owned by FBP, based on the purely speculative and self-serving allegations that the owner of the Vessel, FBP, *may be* the alter-ego of Industrial Carriers, Inc. ("ICI"), a judgment creditor of Flame (Docket #1) for an outstanding judgment which does

not properly invoke this Court's admiralty jurisdiction.[1] Despite the subsequent amendment of its complaint on January 9, 2014 (Docket #55), Flame continues to fail to set out <u>any</u> connection between FBP, the owner of the attached Vessel, and the judgment creditor ICI, with the exception of identifying three (3) former colleagues who, long before FBP was established (*i.e.* some 4+ years before), used to work for ICI or its related companies; none of which have anything to do with FBP. It is well settled in the Fourth Circuit that this is wholly insufficient *as a matter of law* to establish an alter-ego relationship. *See, e.g.*, *United States Fire Ins. Co. v. Allied Towing Corp.*, 966 F.2d 820, 828 (4th Cir. 1992) ("The corporate veil . . . may not be pierced solely because of an overlap (or even identity) of corporate officers and directors"); *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 444 (4th Cir. 1999) ("One-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to pierce the corporate veil"); *Dry Handy Invs., Ltd. v. Corvina Shipping Co. S.A.*, 2013 U.S. Dist. LEXIS 172431, * 11 (E.D. Va. 2013). Notwithstanding its thin allegations, Flame continues to wrongfully interfere with the Vessel for more than fifty-five (55) days (and counting) while the Vessel has continued to incur *custodia legis* expenses for which Flame, as attaching party, must be held responsible.[2] Notably, Flame has posted no security for the damages it inequitably continues to cause FBP.

Rather than accept (or even oppose) its responsibility to pay the *custodia legis* expenses

---

[1] *See* Opinion and Order dated January 10, 2014 (Docket #57) certifying matter for expedited appellate review. FBP timely filed its petition on January 16, 2014 and the application remains *sub judice* before the Fourth Circuit Court of Appeals. *See* Fourth Circuit Court of Appeals Miscellaneous Docket No. 14-111 (Petition for Permission to Appeal Pursuant to 28 U.S.C. § 1292(b) filed on January 16, 2014).

[2] Flame itself has recognized (in its Motion to Approve Substitute Custodian Fees as *Custodia Legis* Costs, Docket #48) that "it is well-established under admiralty law that the arresting plaintiff and any intervening creditors share in the costs of maintaining the *res* <u>until resolution of the case</u>." *Lubricantes Venoco, Intern., C.A. v. M/V NEVERIS*, 60 Fed. Appx. 835, 842 (1st Cir. 2003) (citing *Beauregard Inc. v. Sword Servs. L.L.C.*, 107 F.3d 351, 353 (5th Cir. 1997)) (emphasis added).

incurred to preserve and maintain the Vessel and her crew, Flame instead has launched a counter-offensive and filed its Motion for Interlocutory Sale of the Vessel (Docket #61) on January 17, 2014, contending that "[t]he cost and expense in maintaining custody of the Vessel is excessive and disproportionate to both the value of the claim and the value of the Vessel." *See* Docket #61 at ¶ 14. Again, Flame's premature motion comes at a time when FBP's application to the Fourth Circuit Court of Appeals is pending for expedited interlocutory review of the critical threshold issue of whether this Court even has subject matter jurisdiction over Flame's non-maritime claims; there has not yet been <u>any ruling</u> as to either the sufficiency or the validity of Flame's alter-ego allegations[3]; discovery demands have yet to be propounded by Flame[4]; and a prompt trial date has already been set should the Fourth Circuit decide this Court properly has subject matter jurisdiction. Simply put, there is no basis, either in fact or in law, for the sale of the Vessel at this time, and, as such, Flame's Motion must be denied.

## ARGUMENT

### POINT I

**FLAME'S MOTION MUST BE DENIED, AS FLAME HAS FAILED TO MEET THE STANDARD FOR INTERLOCUTORY SALE OF THE VESSEL**

Rule E(9)(a) of the Supplemental Rules for Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Admiralty Rules") allows the Court to exercise

---

[3] *Id.*, at n. 1 ("FBP also challenges whether Flame has met the pleading requirement for its allegation that FBP is the corporate alter ego of the other defendants. . . . [T]he Court withholds judgment on that issue until the jurisdiction question is resolved on appeal."). FBP expects to lodge a further Rule E(4)(f) challenge to Flame's First Amended Verified Complaint, filed on January 9, 2014 (Docket #55), as the First Amended Complaint is insufficient to establish a *prima facie* claim against FBP based on alter-ego liability.

[4] In fact, Flame has attempted to abuse the discovery process by circumventing the Court's Rule 16(b) Scheduling Order (Docket #56) and directing the substitute custodian to collect documents on board the Vessel to be provided to Flame's counsel. Such conduct – outside of the discovery process and without the knowledge of counsel for FBP – is wholly inappropriate and underscores the "schoolyard shakedown" tactics being pursued by Flame in this matter.

its discretion and order the sale of attached or arrested property in only three (3) limited situations:

> if:
>
> (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
>
> (B) the expense of keeping the property is excessive or disproportionate; or
>
> (C) there is an unreasonable delay in securing release of the property.

*See* Rule E(9)(a)(i). Flame has failed to establish any of the criteria required by Rule E(9)(a)(i), as no such conditions exist here.

### A.  The Vessel is Not Perishable

Flame has not alleged, let alone established, that the Vessel is "perishable, or liable to deterioration, decay, or injury" such that it would be subject to interlocutory sale under Rule E(9)(a)(i)(A), consequently this element must fail. *See Atta Gyasi v. M/V ANDRE*, 2008 U.S. Dist. LEXIS 30279, *5 (S.D. Fla. 2008) ("Plaintiff alleges that 'the vessel's situation has deteriorated as additional creditors have emerged who seek supplementary warrants of arrest. Even if true, there is no allegation that the *property* is deteriorating.") (emphasis in original) (brackets omitted). There is no evidence to suggest that the Vessel is deteriorating such that its market value has been in any way impaired by the passage of less than two (2) months under attachment. Indeed, Flame's own counsel has argued that the value of the ship has <u>increased</u> due to improvements in both the market for the trade of such a vessel, as well as the improvement in the price of steel and the Vessel's ultimate "scrap value." There is no indication or appreciable risk that the Vessel will diminish in value while she remains under attachment pending rulings from the Fourth Circuit and/or this Court and, in fact, Flame has not (and cannot) contend

otherwise. *See* Point I(B), *infra*. As such, this subsection cannot serve as a basis for the interlocutory sale of the Vessel.

### B.     The Expense of Maintaining the Vessel is Not Excessive or Disproportionate

Flame argues, *inter alia*, that the costs and expenses being incurred to maintain custody of the Vessel are excessive and disproportionate to both the value of Flame's claim and the value of the Vessel. While FBP acknowledges some costs have accrued to date (and, indeed, have moved to compel Flame to pay these *custodia legis* expenses), FBP denies that these costs are "excessive", "disproportionate", or in any way support the interlocutory sale of the Vessel at this time. Rather, they are costs which must be borne by Flame, as the attaching party.[5]

As an initial matter, Flame's contention that the expenses cited in its Motion are "steadily eroding" the value of the Vessel is completely misplaced. In support of its Motion, Flame attaches a spreadsheet (*see* Docket #62-1 at Exhibit "A") which sets forth an estimate of ongoing costs if the Vessel remains under attachment for the next six (6) months. However, careful consideration of this spreadsheet clearly reveals that a large percentage of these anticipated costs pertains to crew wages and victualing; issues which have no bearing on the value of the Vessel. The incidental costs associated with Flame's voluntary interference with a third-party's Vessel, and which do nothing to impede the value of the *res*, cannot form the basis for an interlocutory sale; especially when the Court has yet to issue its ruling as to the validity of Flame's attachment.[6]

---

[5] As noted in FBP's Motion to Compel Payment of *Custodia Legis* expenses, equity and good conscience require that Glory Wealth Shipping Pte Ltd. also share in the *custodia legis* expenses, as an intervening plaintiff who has obtained an Order of Attachment for the Vessel but purposefully declined to serve it to avoid paying *custodia legis* fees.

[6] Significantly, in nearly all of the cases relied on by Flame, the courts ordered the interlocutory sales of the vessels at issue to enforce undisputed *in rem* claims against arrested vessels. Said another way, there was no question in any of those matters that the vessels themselves were liable to the claimants. In contrast, Flame commenced this Rule B

The <u>only</u> costs that have been incurred to date by Flame have been USD 39,470.00 in connection with the substitute custodian's fees, watchmen, and liability insurance. *See* Flame's Motion to Approve Substitute Custodian Fees as *Custodia Legis* Costs at Exhibit "1" (Docket #48-1). These expenses are the sole and proximate result of Flame's voluntary yet purposeful decision to attach the Vessel and pursue litigation in this jurisdiction. <u>None</u> of the other costs cited by Flame in its motion have been incurred or approved as *custodia legis* expenses. Even assuming, *arguendo*, that the Vessel were to remain under attachment until the June trial setting[7], the custodial charges to be incurred over the next six (6) months are only projected by Flame to total USD 163,770. *See* Docket #62-1 at Exhibit "A". Using Flame's own assumed valuation of the Vessel at USD 12.5 million[8], the custody fee, watchmen fees, and liability insurance coverage would proportionally represent *de minimis* expenses at or less than a mere <u>one percent</u> (1%) of the Vessel's total unencumbered value. Surely, this cannot be said to be disproportionate. *See, e.g.*, *Schoninger v. M/V THREE OLIVES*, 2010 U.S. Dist. LEXIS 55306, * 9-10 (D. Me. 2010) ("Even if a period of 10 months were to elapse from the time of arrest to final judgment, [plaintiff's] total custodial charges . . . would amount to only 3 percent of the Vessel's value. This cannot be said as a matter of law to be excessive or disproportionate.").

---

*quasi in rem* action on an "alter-ego" theory in an attempt to hold FBP liable for a judgment to which it was not a party. The sufficiency of Flame's alter-ego pleadings <u>must</u> be considered and ruled on by this Court before FBP's property may be sold as security for another party's debt. Should the Court issue an adverse ruling, FBP respectfully requests that the matter also be certified for immediate interlocutory appeal under 28 U.S.C. § 1292(b), as such a ruling would involve a controlling question of law as to which there is a substantial ground for difference of opinion and an immediate appeal from the order would materially advance the ultimate termination of the litigation.

[7] Even if the Fourth Circuit may affirm this Court's January 10, 2014 Opinion and Order, Flame has nonetheless failed to meet the pleading requirements for its allegation the FBP is the alter-ego of the judgment creditor, ICI, and the Complaint must be dismissed upon this Court's consideration of this issue.

[8] *See* Docket #62-1 at Exhibit "B". As noted in Flame's Motion, the parties disagree as to the current market value of the Vessel, as FBP has obtained a valuation from Charles R. Weber estimating the value of the Vessel to be USD 9.5 million.

Finally, Flame relies on FBP's Motion to Compel Payment of *Custodia Legis* Expenses (Docket #58) in support of its argument that the Vessel is incurring approximately USD 8,000 – USD 8,500 per day in daily maintenance costs and, thus, its attachment interest "has already eroded by as much as $400,000." *See* Docket #62 at pp. 5-6. This argument is a nonsensical non sequitur. FBP's Motion set forth the costs and expenses that <u>it had already paid</u> related to the maintenance and preservation of the Vessel and her crew since its attachment in November, and requested that such costs be approved as *custodia legis* expenses to be paid by Flame, as the attaching party. The Motion alternatively requested that Flame be compelled to post security, under Supplemental Admiralty Rule E(2)(b) and Local Admiralty Rule (e) 8-9, for *custodial legis* costs incurred and to be incurred while the Vessel remains under attachment.[9] Contrary to Flame's suggestions, FBP has, since the time of the attachment, and will continue to (until the Court orders otherwise) maintain the health, safety, and security of the crew and Vessel. There is simply no basis for Flame to improvidently cite projected costs which presume abandonment by the Vessel interests in a misguided attempt to convince this Court to sell the Vessel.

### C. FBP has not Unreasonably Delayed in Securing Release of the Vessel

Finally, Flame contends that FBP has unreasonably delayed in securing release of the property, as FBP has not provided substitute security. This argument is factually untrue and similarly without any merit.

The Order of Attachment was issued in this matter on November 22, 2013. *See* Docket

---

[9] In considering the appropriate sum of security to be imposed upon the attaching Plaintiff, FBP respectfully refers the Court to § 8.01-537.1(C) of the Virginia Code, which provides that "[i]f the plaintiff seeks pretrial seizure of property, the amount of the bond [to be posted by the Plaintiff as security for costs] <u>shall be at least double the estimated fair market value of the property to be seized</u>." (emphasis added). By requiring an attaching plaintiff to have some "skin in the game" by posting security for costs associated with a potentially wrongful attachment, this ensures that the plaintiff will proceed in good faith in presenting its allegations. Indeed, it is not uncommon for Courts to sanction parties for wrongful attachment when there was no good faith basis for the attachment. *See, e.g.*, *Equatorial Marine Fuel Mgmt. Servs. PTE Ltd. v. MISC Berhard*, 464 Fed. Appx. 647 (9th Cir. 2011) (reversing District Court's denial of award of costs for wrongful attachment).

#7. The U.S. Marshal served the writ of attachment on Friday, November 29, 2013 to attach the Vessel. FBP <u>immediately</u> (*i.e.* - on the very next Court day) moved to vacate the attachment and sought a prompt post-seizure hearing pursuant to Rule E(4)(f) of the Supplemental Admiralty Rules, challenging both this Court's exercise of subject matter jurisdiction over Flame's claims and the insufficiency of Flame's alter-ego allegations. *See* Docket #11. Over the course of the next seven (7) weeks, the Court held three (3) hearings on these issues prior to issuing its January 10, 2014 Order concluding in the first instance that it had admiralty jurisdiction over Flame's claims, certifying the question for immediate Fourth Circuit review. At the same time, the Court deferred ruling on the sufficiency of Flame's alter-ego allegations pending interlocutory appeal to the Fourth Circuit on the threshold jurisdictional issue. *See* Docket #57 at n. 1. It is wholly disingenuous for Flame to contend that FBP has unreasonably delayed in pursuing the release of the Vessel when it has at all times sought to expedite the resolution of this matter before both this Court and the Fourth Circuit. Moreover, it would be grossly premature to order the sale of the Vessel at issue when the Court has yet to rule on the fundamental issue of whether Flame even has properly obtained a valid Rule B attachment over the Vessel.

Flame's contentions that FBP has shown "no willingness" to post substitute security are equally misleading. Undersigned counsel and counsel for Flame have, in fact, discussed the provision of substitute security for the Vessel to be released, and FBP has provided Flame with a valuation of the Vessel to aid in these discussions. Notwithstanding, the parties have been unable to agree as to the appropriate valuation of the Vessel and quantum or form of substitute security to be provided. Finally, Flame has cited to no authority that would support its contention that a period of a mere two (2) months while the parties contest the validity of the Court's subject matter jurisdiction and issuance of the Order of Attachment in lieu of posting

alternate security is sufficient to justify the interlocutory sale of the Vessel. Indeed, Courts which have considered the issue have held that "[a]s a general rule, defendants are given <u>at least four months</u> to bond a vessel absent some other considerations." *Regions Bank v. M/Y ROYAL INDULGENCE*, 2010 U.S. Dist. LEXIS 117471, * 9-10 (N.D. Fla. 2010) (quoting *Bank of Rio Vista v. Vessel Captain Pete*, 2004 U.S. Dist. LEXIS 21388, * 5 (N.D. Cal. 2004)) (emphasis added). The case law cited by Flame in its Motion is in accord with this general rule. *See, e.g.*, *Silver Star Enterprises, Inc. v. M/V SARAMACCA*, 19 F.3d 1008 (5th Cir. 1994) (<u>seven (7) months</u> between arrest and date of order granting sale); *Merchants National Bank of Mobile v. Dredge GENERAL G.I. GILLESPIE*, 663 F. 2d 1338 (5th Cir. 1981) (vessel remained under arrest for <u>ten (10) months</u> prior to sale); *Branch Banking & Trust Co. v. Fishing Vessel Toplesss*, 2013 U.S. Dist. LEXIS 97334 (D. Md. 2013) (vessel remained under arrest for nearly <u>twelve (12) months</u> before judicial sale was ordered); *Colonna's Shipyard, Inc. v. U.S.A.F. Gen. Hoyt S. Vandenberg*, 584 F. Supp. 2d 862 (E.D. Va. 2008) (vessel remained under arrest for six <u>(6) months</u> before judicial sale was ordered); *Ferrous Financial Services Co. v. O.S. ARCTIC PRODUCER*, 567 F. Supp. 400 (W.D. Wash. 1983) (vessel remained under arrest for <u>four (4) months</u> before judicial sale was ordered). Indeed, in another matter recently pending before this Honorable Court, a Vessel was held for one hundred sixty-two (162) days (*i.e.* – approximately five (5) months) until trial. *See United States v. Kassian Maritime Navigation Agency, Ltd.*, Criminal No. 2:13-cr-70 (E.D. Va. 2013). Here, the Court has already set the matter for expedited trial, if necessary, and this alone, serves as an "other consideration" which counsels against the sale of the Vessel.

In fact, Courts have found "delay" reasonable when the shipowner has demonstrated active efforts to secure the release of the vessel. In *Action Marine v. M/V Norseman*, 1997 U.S.

Dist. LEXIS 5898 (E.D. La. 1997), District Judge Berrigan held "As to the issue whether there is unreasonable delay in securing the release of the vessel, *the Court cannot find that the delay in this matter of less than five months is unreasonable in itself*. In addition, it cannot be said that the defendants have made no effort in this case to secure the release of the release in this matter; instead, the parties are disputing the terms of the release." *Id.*, at *3. Judge Berrigan clarified that the Fifth Circuit's decisions in *Silver Star Enterprises, Inc.* and *Merchants National Bank of Mobile* suggested that a significantly longer delay of seven (7) or eight (8) months would actually be required before the delay would be considered unreasonable. *Id.*, at n. 2.; *see also Entron, Ltd. v. Crane Vessel Titan 2*, 1995 U.S. Dist. LEXIS 6005, *9-10 (E.D. La. 1995) (motion for interlocutory sale denied where the Court found the vessel was not liable to "deterioration, decay, or injury and that there has not been an unreasonable delay in securing the vessel's release.") Here, as outlined in the Court's January 10, 2014 Rule 16(b) Scheduling Order (Docket #56), and to the extent a trial becomes necessary, the Court has set this matter for an expedited trial setting beginning June 23, 2014. Said another way, the trial of this action will be completed within seven (7) months of the Vessel's attachment – *i.e.*, well <u>before</u> the time frame within which other Circuits have found to constitute "unreasonable delay".

Here, less than two (2) months have passed since the Vessel's attachment and FBP has actively and consistently engaged in efforts to release the Vessel in the interim. Given the seriousness of selling a vessel for the purpose of creating a fund to secure a claim which may not even properly be before this District Court and against a party that has not defaulted on any award or judgment, the June trial setting is the minimally prudent waiting time before the District Court should even consider ordering the M/V CAPE VIEWER to be sold. Flame cannot in good faith argue that FBP has unreasonably delayed in securing the Vessel's release and, as such, this

argument must fail.

        D.     <u>**The Cases Cited by Flame are Inapposite and Easily Distinguished**</u>

In support of its Motion, Flame string cites a series of cases, without any analysis, wherein other Courts have ordered the interlocutory sale of a vessel.  While there is no dispute that Rule E(9) of the Supplemental Admiralty Rules authorizes a Court to order the interlocutory sale of attached property under certain circumstances, all of the cases cited by Flame can easily be distinguished from the present action.

As an initial matter, all except for one (1) of the cases cited by Plaintiff involved the <u>arrest</u> of the vessels for lien claims <u>against the ship</u> pursuant to Supplemental Admiralty Rule C. *See, e.g.*, *Merchants Nat'l Bank v. Dredge General G. L. Gillespie*, 663 F.2d 1338 (5th Cir. 1981) (Rule C arrest to enforce preferred mortgage lien); *Freret Marine Supply v. M/V Enchanted Capri*, 2001 U.S. Dist. LEXIS 8161 (E.D. La. 2001) (Rule C arrest to enforce various liens, including preferred mortgage lien, lien for crew wages, and statutory maritime liens, from no fewer than twenty-five (25) intervening plaintiffs and one hundred fifty (150) crewmembers); *Silver Star Enters. v. M/V Saramacca*, 19 F.3d 1008 (5th Cir. La. 1994) (Rule C arrest to enforce preferred mortgage lien); *Branch Banking & Trust Co. v. Fishing Vessel Toplesss*, 2013 U.S. Dist. LEXIS 97334 (D. Md.  2013) (Rule C arrest to enforce preferred mortgage lien); *Ferrous Financial Services Co. v. O/S Arctic Producer*, 567 F. Supp. 400 (W.D. Wash. 1983) (Rule C arrest to enforce USD 3.5 million promissory note); *Bank of Rio Vista v. Vessel Captain Pete*, 2004 U.S. Dist. LEXIS 21388 (N.D. Cal. 2004) (Rule C arrest to enforce preferred mortgage lien); *Vineyard Bank v. M/Y Elizabeth I*, 2009 U.S. Dist. LEXIS 23844 (S.D. Cal. 2009) (Rule C arrest to enforce preferred mortgage lien); *Colonna's Shipyard, Inc. v. U.S.A.F. Gen. Hoyt S. Vandenberg*, 584 F. Supp. 2d 862 (E.D. Va. 2008) (rule C arrest to enforce maritime lien for ship

repairs); *Bollinger Quick Repair, L.L.C. v. Le Pelican MV*, 2000 U.S. Dist. LEXIS 9084 (E.D. La. June 19, 2000) (Rule C arrest to enforce maritime lien for ship repairs). In each of the cited cases, there was no need for the Court to determine the threshold issue present in this matter (*i.e.* – whether the plaintiff had alleged a *prima facie* maritime claim against the owner of the property sought to be sold), as the plaintiffs had claims directly against the vessels at issue.

Additionally, as discussed in greater detail in Point I(C), *supra*, each of the cases cited by Flame involved motions for interlocutory sale that were brought at *significantly* later stages in the proceedings than Flame's in this case. Here, the Vessel has been attached for less than two (2) months, and FBP's challenge to the Court's subject matter jurisdiction and FBP's initial Rule E(4)(f) challenge to the validity of Flame's Rule B attachment remains *sub judice*.[10]

Only one (1) of the cases cited in Flame's motion addressed the interlocutory sale of property that has been attached pursuant to Rule B. *See Samsun Logix Corp. v. Parkroad Corp.*, 2009 U.S. Dist. LEXIS 7602 (W.D. La. 2009). However, the procedural history of *Samsun* easily distinguishes that matter from the case at issue here. In *Samsun*, the Court granted the plaintiff's motion for interlocutory sale of the vessel <u>after</u> full consideration of and ruling in favor of plaintiff on the defendant's motion to vacate the attachment. This is vastly different from this matter, where the Court has yet to rule on FBP's Rule E(4)(f) challenge to the validity of Flame's attachment and its alter-ego allegations. Additionally, the vessel at issue in *Samsun* was valued at only USD 4.9 million (*i.e.* – a little more than one third (1/3) of Flame's estimated value of the CAPE VIEWER), which made the issue of excessive or proportionate expense a far more significant consideration. Finally, unlike in this matter, where Flame's counsel has repeatedly argued that the Vessel's lack of a mortgage is "unheard of", the vessel at issue in

---

[10] As indicated in n. 3, *supra*, a further Rule (E)(4)(f) challenge to Flame's First Amended Verified Complaint will be forthcoming.

*Samsun* was encumbered by two (2) mortgages, totaling USD 24,000,000, which greatly exceeded the value of the ship, while the plaintiff had asserted a claim for USD 17,000,000 and the Vessel was only valued at USD 4.9 million. *See* Case 2:08-cv-01736 at Docket #19 (E.D. La. filed Dec. 22, 2008). This matter is starkly different, as the CAPE VIEWER is unencumbered by any mortgage.

Finally, in at least two (2) of the cases cited by Flame, the claimants' motions for interlocutory sale of the vessels were <u>unopposed</u>. *See Vineyard Bank*, 2009 U.S. Dist. LEXIS 23844; *Colonna' Shipyard, Inc.*, 684 F. Supp. 2d 862. Indeed, in *Vineyard Bank*, the owner of the vessel never even answered, moved, or otherwise appeared in the proceedings.

## POINT II

### EQUITABLE CONSIDERATIONS WARRANT DENIAL OF FLAME'S MOTION

As this Court believes it is properly is sitting in Admiralty, it must act as a Court of equity. *See, e.g.*, *The Ship Virgin v. Vyfhius,* 33 U.S. 538, 550, 8 L. Ed. 1036, 1834 U.S. LEXIS 616 (1834) (J. Story) (Admiralty "courts, in the exercise of their jurisdiction, are not governed by the strict rules of the common law, but act upon enlarged principles of equity."); *Toledo S.S. Co. v. Zenith Transp. Co.*, 184 F. 391, 399-400 (6th Cir. 1911) ("[T]his suit is in admiralty, a branch of the law not hampered by the rigid rules of the common law and which deals with causes upon considerations even more elastic than pertain to the broad jurisdiction of Courts of Chancery . . . So broad are the powers of a court of admiralty, and so extensive the considerations which impel its action, that it has been called, as distinguished from a court of law or a court of equity, "***a court of justice.***") (internal citations omitted) (emphasis added).

Assuming *arguendo*, Flame had established at least one (1) of the required criteria for an

interlocutory sale, which is wholly denied, Supplemental Rule E(9) by its very language does not mandate interlocutory sale. *Triton Container Int'l v. Baltic Shipping Co.*, 1995 U.S. Dist. LEXIS 4856 (E.D. La. 1995) ("Even if [plaintiff] meet this burden, the Rule, using the word "may", clearly indicates that ordering the sale is not mandatory."); *Adams Offshore, Ltd. v. Con-Dive, LLC*, 2010 U.S. Dist. LEXIS 7922 (S.D. Ala. 2010).

In *Adams Offshore, Ltd.*, the District Court denied the motion for interlocutory sale due to plaintiff's failure to meet the required Rule E(9) criteria. District Judge Steele further confirmed that even if preliminary Rule E(9) criteria was met, the Court would not exercise the discretion afforded under the Rule to order an interlocutory sale. The Court was focused on the disparity of the potential gain to the plaintiff (of saving minimal *custodia* costs, approximately 1% of the value of the vessel) as opposed to the disproportionate potential loss to the owner due to the distressed value obtained in judicial auctions (approximately 40-50% of fair market value lost). *Id.*, *7-8. The Court reasoned:

> Thus, were the sale to occur and the Court later to determine that attachment was wrongful, or that the plaintiff's case against [defendant] is invalid, [defendant] would have lost almost USD 2 million. The plaintiff insists that resolution of the merits is not required in determining whether the Rule E(9)(a)(i) predicate to interlocutory sale is satisfied, (Doc. 97 at 3-4), but it does not suggest that the merits are irrelevant to a Court's exercise of its discretion once that predicate is established. ***When, as here, the potential damage to the owner from an interlocutory sale is grossly disproportionate to the potential savings to the plaintiff, the Court concludes that the plaintiff should demonstrate a significant likelihood of success on the merits before an interlocutory sale is granted***. The plaintiff, however, has attempted no such showing.

*Id.*, at *8-9. (emphasis added).

Here, Plaintiff Flame has improvidently asked this Court to sell the M/V CAPE VIEWER when there are serious threshold issues as to whether the Plaintiff has even properly invoked the subject matter jurisdiction of this Court and/or is properly interfering with the Vessel are pending

14

before the Fourth Circuit and this Court. Coupled with the insufficient alter-ego allegations against FBP; fairness, equity, and justice require this Court to deny Flame's improper motion for interlocutory sale of the Vessel. *Mosher v. Tate*, 182 F.2d 475, 479 (9th Cir. 1950) ("A court of admiralty has powers akin to those of a court of equity, and should not be hampered in its efforts to reach a substantial justice by the inexorable rules invoked by the claimant").

Finally, there can be no meaningful dispute that the sale of the Vessel at a judicial auction would result in a substantially lesser sale price than if the Vessel were to be sold at fair market value in an arms' length transaction between a ready, willing and able buyer and seller. *See, e.g., Freret Marine Supply v. M/V Enchanted Capri*, 2001 U.S. Dist. LEXIS 8161 (E.D. La. 2001) (vessel sold at auction for USD 4,000,000; despite being valued between USD 8,000,000 – 9,000,000); *Royal Bank of Scotland, N.V. v. M/T STAVRODROMI, et al.*, 11-cv-372-ML-LDA, Docket #66 (D. R.I. March 12, 2012) (unreported) (Vessel sold for USD 3,500,000 despite being valued by two (2) independent surveyors as having a fair market value of more than USD 8,000,000); *Wong Shing v. M/V MARDINA TRADER*, 564 F.2d 1183 (5th Cir. 1977) (vessel sold at judicial auction for USD 610,000.00 despite being purchased for USD 1,533,000.00 and insured for USD 2,000,000). The very purpose of a judicial sale "is to benefit the creditors and debtor." *Munro Dry Dock, Inc. v. M/V HERON*, 585 F.2d 13, 14 (1st Cir. 1978). Here, it would be wholly inequitable, and certainly not to the benefit of <u>any</u> party, for the property of an innocent third-party, FBP, to be sold at judicial auction for less than its fair market value.[11]

---

[11] If the Court is inclined to grant Flame's Motion for Interlocutory Sale, it is respectfully submitted that the Court must set the minimum bid for the sale of the Vessel at USD 12.5 million, which is the valuation that Flame, itself, has attributed to the Vessel. *See* Docket #62-1 at Exhibit "B".

### POINT III

### FLAME SHOULD BE REQUIRED TO POST SECURITY FOR CUSTODIA LEGIS EXPENSES AND DAMAGES ARISING FROM WRONGFUL ATTACHMENT

As set forth in FBP's Motions to Vacate (Docket #12 at pp. 14-15 and Docket #41 at pp. 18-19) and Motion to Compel Payment of *Custodia Legis* Expenses (Docket #59), the contents of which are incorporated by reference herein, FBP is unjustly being caused to suffer significant and irreparable harm as a result of the wrongful attachment of its Vessel to enforce a foreign judgment to which FBP was not a party. Accordingly, FBP respectfully requests this Court to exercise its authority under Supplemental Admiralty Rule E(2)(b) and Local Admiralty Rule (e) 8-9 to require Flame to post security for any *custodia legis* costs incurred while the Vessel remains under attachment and for FBP's costs, fees, expenses, and damages resulting from this wrongful attachment. *See Merchants National Bank of Mobile v. Dredge General G.L. Gillespie*, 663 F.2d 1338, 1344 (5th Cir. 1981) (noting that Rule E(2)(b) "gives the court power to require security for costs and expenses to be posted by the party initiating the . . . seizure to protect parties affected by the seizure."). Requiring Flame to post security for costs in this action is particularly warranted when considering Flame's own perilous financial footing and inability to pay its own judgments, debts, and arbitration awards rendered against it. *See Glory Wealth Shipping Pte Ltd. v. Flame S.A.*, 1:13-cv-9083, Docket #1 (S.D.N.Y. filed Dec. 23, 2013).

### CONCLUSION

For the reasons set forth above, and what may be added at oral argument, Defendant Freight Bulk Pte. Ltd. respectfully requests that this Court deny Plaintiff Flame S.A's Motion for Interlocutory Sale of the M/V CAPE VIEWER in its entirety, and grant such other and further relief as may be just, equitable, and proper under the circumstances.

Dated: January 27, 2014  
       Norfolk, Virginia

Respectfully submitted,

CHALOS & Co, P.C.

By:    /s/ George M. Chalos  
George M. Chalos, Esq.  
Fed ID: GC-8693  
*Admitted Pro Hac Vice*  
55 Hamilton Avenue  
Oyster Bay, New York 11771  
Telephone: (516) 714-4300  
Facsimile: (516) 750-9051  
Email: gmc@chaloslaw.com  
*Attorneys for Specially Appearing Defendant*  
FREIGHT BULK PTE. LTD.

-AND-

DAVEY & BROGAN, P.C.

   /s/ Patrick M. Brogan  
Mr. Patrick M. Brogan (VSB No. 25568)  
101 Granby Street, Suite 300  
Norfolk, Virginia 23510  
Telephone: 757.622.0100  
Facsimile: 757.622.4924  
Email: pbrogan@daveybroganpc.com

**CERTIFICATE OF SERVICE**

       I hereby certify that on January 27, 2014, I electronically transmitted and caused to be served upon all counsel of record, the foregoing Opposition to Flame S.A.'s Motion for Interlocutory Sale of the M/V CAPE VIEWER, using the CM/ECF System for the Eastern District of Virginia and via e-mail.

                              CHALOS & Co, P.C.

                              /s/ George M. Chalos_____
                              George M. Chalos, Esq.
                              Fed ID: GC-8693
                              *Admitted Pro Hac Vice*
                              55 Hamilton Avenue
                              Oyster Bay, New York 11771
                              Telephone: (516) 714-4300
                              Facsimile: (516) 750-9051
                              Email: gmc@chaloslaw.com
                              *Attorneys for Specially Appearing Defendant*
                              FREIGHT BULK PTE. LTD.