UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FLAME S.A.,

        Plaintiff,

GLORY WEALTH SHIPPING PTE LTD.,

        Consolidated Plaintiff,

v.                                                                          Civil Action No. 2:13-cv-00658-RGD-LRL
                                                                                                       2:13-cv-00704-RGD-LRL

INDUSTRIAL CARRIERS, INC.,
VISTA SHIPPING, INC., and
FREIGHT BULK PTE. LTD.,

        Defendants.

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT FREIGHT BULK PTE. LTD.'S**
**MOTION TO COMPEL PAYMENT OF *CUSTODIA LEGIS* EXPENSES**

      Plaintiff FLAME S.A. ("Plaintiff"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in Opposition to Defendant FREIGHT BULK PTE. LTD.'s ("FBP") Motion to Compel Payment of *Custodia Legis* Expenses.

**BACKGROUND**

      FBP seeks an Order from the Court directing Plaintiff to pay FBP $238,134.85 in *custodia legis* expenses that claims it has incurred since the November 22, 2013 attachment of the M/V CAPE VIEWER (the "Vessel"). But FBP did not provide any evidence to support its calculation of $238,134.85, or any proof that FBP has, in fact, paid these alleged expenses. Moreover, FBP and Defendant Vista Shipping, Inc. ("Vista") have acted as part of a scheme to

defraud the creditors of Defendant Industrial Carriers, Inc. ("ICI"), including Plaintiff. Indeed, Mr. Baranskiy testified that it was the practice of ICI to set up wholly owned subsidiary companies, i.e., "dummy" corporations, with no actual purposes other than to divert cash due ICI to avoid creditors. FBP should not be rewarded for its deceitful activities by receiving payment for *custodia legis* expenses incurred as a result of Plaintiff's efforts to be paid the money it is owed. FBP's failure to provide security for the release of the M/V CAPE VIEWER demonstrates FBP's deliberate and unreasonable efforts to make Plaintiff's debt collection effort as difficult and expensive as possible. Under these circumstances, FBP's Motion should be denied.

## ARGUMENT

### POINT I

### FBP HAS NOT PROVIDED ANY EVIDENCE THAT IT PAID THE *CUSTODIA LEGIS* EXPENSES DESCRIBED IN ITS MEMORANDUM OF LAW, AND THE COURT SHOULD DISMISS THE MOTION AS UNSUPPORTED

FBP claims in its memorandum of law that it has incurred $238,134.85 in *custodia legis* expenses since the attachment of the M/V CAPE VIEWER. Yet, nowhere does it allege that it actually paid these expenses, and FBP has not attached a single document, or provided any other evidentiary support, for the expenses it describes in its memorandum of law. In particular, FBP's memorandum of law states:

> As of the filing of this motion, no less than USD 238,134.85 in *custodia legis* expenses have been incurred since the attachment of the M/V CAPE VIEWER. Specifically, the costs incurred to date are as follows: (i) USD 113,552.50 for fuel oil (calculated as follows: 160.85 metric tons at USD 650.00 per metric ton, plus USD 900.00 in barging costs); (ii) USD 27,180 for diesel oil (calculated as follows: 27.18 metric tons at USD 1,000.00 per metric ton); (iii) USD 30,800 for the provision of fresh water to the Vessel (172 metric tons at $150 per metric ton of fresh water

2

>           delivered, plus USD 5,000 mobilization fee); (iv) USD 18,402.35 for supplies provided to the vessel (including food and cleaning supplies); and (v) 48,200 in crew wages. At present, additional supplies and necessaries are required, including but not limited to marine diesel oil/MDO and provisions for the crew. Additionally, crew wages will soon need to be paid for the next month of service.

(Dkt. # 59 at 2 – 3).

FBP offers nothing to establish the veracity of these numbers. FBP has the burden of proof on its Motion, and FBP has failed to meets its burden—in fact, it has not even attempted to offer proof. *See Louisiana Int'l Marine, L.L.C. v. Drilling Rig ATLAS CENTURY*, No. 11-0186, 2012 WL 2317541, at\*1 (S.D. Tex. June 18, 2012) ("the party seeking to collect expenses as *custodia legis* bears the burden of proving that the expenditures were necessarily or reasonably incurred and that they were reasonable in amount") (citing *Adams Offshore, Ltd. v. Con-Dive, LLC*, No. 09-0378, 2011 WL 1882640, at \*6 (S.D. Ala. May 17, 2011)). Moreover, FBP has not even claimed – let alone proven – that it has paid for the expenses it describes.

Because FBP has not offered a shred of evidence supporting the merits of its request, its Motion should be denied.

## POINT II

### FBP HAS UNCLEAN HANDS IN THIS LITIGATION, AND THE COURT SHOULD EXERCISE ITS DISCRETION TO DENY FBP'S REQUEST TO BE AWARDED FOR ITS FRAUDULENT BEHAVIOR

Even if FBP could offer proof of these expenditures, FBP has defrauded Plaintiff and should not be rewarded. Viktor Baranskiy admitted in his December 12, 2013 deposition that it was the practice of ICI to set up wholly owned subsidiary companies with no actual purpose other than to divert cash from ICI to avoid creditors. *See*, Dkt. # 51, Baranskiy Deposition of

December 12, 2013, p. 71.  He also admitted that portions of his declaration filed in support of FBP's motion to vacate attachment were false and misleading.  *Id*., p. 131.  Moreover, the evidence presented to the Court has shown that after ICI shut down operations, Baranskiy, the third largest stockholder in ICI, began operating under the name Vista.  Vista then chartered the same ships that ICI chartered to move the same cargo of iron ore on the same route from the Black Sea to China that ICI had been transporting.  The inference from all of these facts is clear: FBP and Vista are instrumentalities in Baranskiy's scheme to defraud Plaintiff.

In *Fortis Bank (Nederland N.V. v. M/V Shamrock*, 379 F. Supp. 2d 2 (D. Me. 2005), an intervenor plaintiff argued that it was owed payment contributions that it characterized as *custodia legis* expenses.  The court first noted that "[i]n order to qualify for preferential treatment as an expense *in custodia legis,* an expense must be incurred 'upon the authority of the court or its officer,' and be 'for the common benefit of those interested in [the] fund.'" *Id.* at 7 (quoting *Oil Shipping (Bunkering) B.V v. Sonmez Denizcilik Ve Ticaret A.S.*, 10 F.3d 176, 182 (3d Cir. 1993)).  The court found there was no evidence that the intervenor plaintiff had ever notified the court, the U.S. Marshals Service, or the substitute custodian that it believed contributions were due to it, and did not object when the substitute custodian did not list the intervenor plaintiff among the expenses it was incurring.  As a result of the intervenor plaintiff's silence, any contributions that it did incur were not incurred "upon the authority of the Court or its officer." *Id.* at 8.  The court concluded: "Although the Court recognizes that in its discretion it could still award these contributions preferred status as *in custodia legis* expenses upon a finding that 'equity and good conscience' so require, it declines to do so on the facts and arguments presented." *Id.* at 9 (quoting *N.Y. Dock Co. v. The Ponzan*, 274 U.S. 117, 122 (1927)).

Here, assuming FBP incurred and paid the expenses it claims – for which there is no

proof – it did not do so "upon the authority of the Court or its officer." Furthermore, "equity and good conscience" tips in Plaintiff's favor, not FBP's. FBP, as an instrumentality in ICI's scheme to defraud Plaintiff, has avoided paying Plaintiff's debt, and has forced Plaintiff to incur the expense of this litigation to recover the money it is owed. And because FBP has failed to post security and release the Vessel, it continues to harm Plaintiff, for no reason other than to make recovery of Plaintiff's debt more difficult and more expensive. Given FBP's unclean hands, the Court should exercise its discretion and deny FBP's request for *custodia legis* expenses.

## POINT III

### PLAINTIFF IS NOT LIABLE TO REIMBURSE FBP OR POST SECURITY FOR THE ALLEGED EXPENSES INCURRED

The Court should exercise its discretion and deny FBP's motion for the reasons discussed above. But if the Court approves the alleged expenses as *custodia legis*, which Plaintiff opposes, Plaintiff should not be required to reimburse Defendant FBP. Rather, such expenses as approved by the Court should be paid directly from the proceeds of the Vessel's sale. *Ost-West-Handel Bruno Bischoff GmbH v. Project Asia Line*, No. 96-0226, 1997 U.S. Dist. LEXIS 15959, at *3 (E.D. Va. Oct. 1, 1997).

## POINT IV

### IN THE ALTERNATIVE, IF THE COURT HOLDS THAT PLAINTIFF IS LIABLE FOR THE CUSTODIAL EXPENSES, GLORY WEALTH MUST EITHER CONTRIBUTE TO THE CUSTODIAL EXPENSES OR WITHDRAW ITS WRIT OF ATTACHMENT

On December 19, 2013, a writ of attachment for the M/V CAPE VIEWER was issued to Consolidated Plaintiff Glory Wealth Shipping Pte. Ltd. ("Glory Wealth"). *Glory Wealth Shipping Pte Ltd. v. Industrial Carriers, Inc.*, No. 13-0704, Dkt. # 6 (E.D. Va. 2013). To date, Glory Wealth has not served its writ of attachment upon FBP. There is only one reason for this:

Glory Wealth is attempting to hold the benefit of the Court's issuance of a writ of attachment, without the burden of contributing to *custodia legis* expenses. This activity contravenes the spirit of Rule B, particularly, because counsel for Glory Wealth represented to the Court that Glory Wealth would, in fact, serve its writ of attachment on the Vessel. During the January 7, 2014 hearing, counsel for Glory Wealth had the following exchange with the Court:

> THE COURT: [A]re you going to attach the vessel or not?
>
> MR. POWER: Well, Your Honor, I will attach it.
>
> THE COURT: I'm not asking you to attach it at all. I'm [sic] just want to know whether you're going to do it or not.
>
> MR. POWER: Your Honor, we intend to attach the vessel.
>
> THE COURT: Well, if you wait long enough you won't have a vessel to attach, maybe.
>
> MR. POWER: That is a very significant risk which I have informed my client of. . . .
>
> . . . .
>
> THE COURT: All I'm asking you is are you going to attach the vessel or not.
>
> MR. POWER: Yes, Your Honor, we are going to attach the vessel.
>
> THE COURT: Well, you better get to it.

(Mot. Hr'g Tr. 32:25-33:10; 34:21-34:25 Jan. 7, 2014, Dkt. # 49.)

It has now been roughly twenty days since counsel told the Court that Glory Wealth would attach the Vessel, yet the writ has not been served. Glory Wealth is apparently hoping that by never attaching the Vessel, it can escape liability for contribution to the *custodia legis* expenses. The Court should amend its *ex parte* Order entered December 19, 2013, in the

6

consolidated case, (Dkt. # 6, 2:13cv704) and require that Glory Wealth share in the *custodia legis* expenses. Otherwise, Glory Wealth should not be permitted to conduct the litigation in this manner. If the Court finds Plaintiff is liable for FBP's claimed *custodia legis* expenses, fairness dictates that Glory Wealth should be required to contribute 50% of the costs or withdraw from this action.

## CONCLUSION

FBP's Motion to Compel Payment of *Custodia Legis* Expenses should be denied.

Respectfully Submitted,

FLAME S.A.

_____
Steven M. Stancliff, VSB No. 73853
*Attorney for Plaintiff Flame S.A.*
Crenshaw, Ware & Martin, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, VA 23510
Tel: (757) 623-3000
Fax: (757) 623-5735
sstancliff@cwm-law.com

- and -

William R. Bennett, III
Lauren B. Wilgus
*Attorneys for Plaintiff Flame S.A.*
*Admitted Pro Hac Vice*
Blank Rome LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Tel: (212) 885-5000
Fax: (212) 885-5001
wbennett@blankrome.com
lwilgus@blankrome.com

7

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of January, 2014, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such electronic filing to the following counsel of record:

| | |
|---|---|
| Patrick M. Brogan<br>DAVEY & BROGAN, P.C.<br>101 Granby Street, Suite 300<br>Norfolk, Virginia 23510<br>Tel: (757) 622-0100<br>Fax: (757) 622-4924<br>Email: pbrogan@daveybroganpc.com<br>*Attorney for Defendant Freight Bulk PTE, LTD.* | Michelle Hess (VSB No. 71080)<br>HOLLAND & KNIGHT, LLP<br>1600 Tysons Blvd , Suite 700<br>McLean, VA 22102<br>Tel: (703) 720-8600<br>Fax: (703) 720-8610<br>Email: michelle.hess@hklaw.com<br>*Attorney for Consolidated Plaintiff<br>Glory Wealth Shipping Pte Ltd.* |
| George M. Chalos (*pro hac vice*)<br>CHALOS & CO., P.C.<br>55 Hamilton Avenue<br>Oyster Bay, New York 11771<br>Tel: (516) 7 14-4300<br>Fax: (516) 750-9051<br>Email: gmc@chaloslaw.com<br>*Attorney for Defendant Freight Bulk PTE, LTD.* | James H. Power (*pro hac vice)*<br>HOLLAND & KNIGHT, LLP<br>31 West 52nd Street,<br>New York, NY 10019<br>Tel: (212)513-3200<br>Fax: (212)385-9010<br>Email: James.power@hklaw.com<br>*Attorney for Consolidated Plaintiff<br>Glory Wealth Shipping Pte Ltd.* |

*/s/ Steven M. Stancliff*
Steven M. Stancliff, VSB No. 73853
*Attorney for Plaintiff Flame S.A.*
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, VA 23510
Tel:  (757) 623-3000
Fax: (757) 623-5735
sstancliff@cwm-law.com