IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| FLAME S.A., | ) |
| | ) |
| Plaintiff, | ) Civil Action No: 2:13-cv-658 |
| | ) 2:13-cv-704 |
| GLORY WEALTH SHIPPING PTE LTD. | ) |
| | ) |
| Consolidated Plaintiff, | ) |
| vs. | ) |
| | ) |
| INDUSTRIAL CARRIERS, INC. | ) |
| VISTA SHIPPING, INC., and | ) |
| FREIGHT BULK PTE. LTD., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT FREIGHT BULK PTE. LTD.'s OPPOSITION TO FLAME S.A.'s MOTION TO COMPEL OWNER TO CARE FOR VESSEL AND CREW AND CROSS-MOTION TO COMPEL SECURITY FOR COSTS**

COMES NOW, Specially Appearing Defendant, Freight Bulk Pte. Ltd. ("FBP"), by and through undersigned counsel, subject to its restricted appearance and pending application to the Fourth Circuit, who respectfully submits this Memorandum in Opposition to Flame S.A.'s ("Flame") wholly meritless Motion to Compel Owner to Care for Vessel and Crew (Docket #66, #67). For the reasons set forth herein, Flame's motion is without support in either fact or in law and has been pursued in bad faith. Flame's motion <u>must</u> be denied in its entirety; FBP should be awarded its costs for having to respond to such a frivolous application; and Flame should be compelled to post security.

**BACKGROUND**

Plaintiff Flame knows well that it has the responsibility to pay the necessary costs for maintenance of the M/V CAPE VIEWER (the "Vessel") while it remains under attachment and in *gremio legis* of the Court. The Eastern District of Virginia requires an attaching Plaintiff to

1

provide an initial remittance to the United States Marshal Service and to arrange for a Substitute Custodian to maintain the safety and security of the Vessel and her crew. In this action, Plaintiff filed its Verified Complaint on or about November 22, 2013 and, among other initiating papers, filed a Motion to Appoint National Maritime Services ("NMS") as the substitute custodian (in place of the U.S. Marshal) during the period of attachment. This Court granted the Order Appointing Substitute Custodian, which required NMS to retain the Vessel in its custody for possession and safekeeping until further order from the Court. *See* Docket #8. The relationship between Flame and NMS is contractual and, in relevant part, requires Flame to pay for all expenses and costs incurred by NMS to preserve the *res*. *See* as **Exhibit A** an example of the terms and conditions common in NMS Vessel Custody Agreements. NMS is nationally respected and handles the substitute custodianship for numerous vessels in district courts throughout the United States. NMS has <u>never</u> and would <u>never</u> let a vessel run out of fuel or otherwise go dark.[1] Simply put, there is absolutely no "emergency." In addition to "crying wolf," Flame's unreasonable failure to comply with its requirements as the attaching plaintiff to maintain the *res* cannot be well received by the Court.

On or about November 29, 2013, the Vessel was attached and over the course of the past eighty (80) days the Vessel has used an average of a mere five (5) metric tons of fuel per day; the cost of which being previously (albeit inequitably) borne by FBP. *See* Docket #58, #59, FBP Motion to Compel Payment of *Custodia Legis* Expenses. It is noteworthy that this is the very first time that Flame has had to actually undertake its obligations as the attaching Plaintiff to incur any expenses to care for the Vessel. At all times, FBP has continued to maintain the health

---

[1] In fact, the substitute custodian had already communicated with both the Captain of the Vessel and the undersigned prior to Flame's filing of this motion that the necessary arrangements for bunkers and other provisions have been scheduled in accordance with the terms of NMS' contract with Flame.

and safety of the crewmembers onboard the Vessel, despite Flame's clear obligations to do so, and has provided significant amounts of water and other provisions onboard. *See* Docket #59 and #65, pp. 4-5. All crew member wages have been paid and are current, despite the Vessel being unable to earn any hire as a result of Flame's improper attachment. Flame's allegation that the Vessel has been abandoned is nothing more than specious rhetoric which improperly, yet purposefully, is intended to inflame and prejudice this Court. This sort of conduct is improper and should not be well received by the Court. The simple fact is that Flame knows (and has acknowledged in prior filings) that it has a legal obligation to pay for the costs of maintaining the Vessel during attachment; but, rather than comply with these basic requirements of admiralty attachment, Flame has elected to file a frivolous motion to compel which has no basis in fact or law to support it.[2] *See* Docket #48.

## ARGUMENT

**POINT I.    THE MOTION IS WITHOUT MERIT AND MUST BE DENIED**

### A.    The Supplemental Rules and Statutes Require Plaintiff to Maintain the Attached Property

Flame, itself, has recognized the longstanding admiralty law requiring an attaching plaintiff to bear *custodia legis* expenses. *See* Docket #48. Nevertheless, this motion was filed with the veiled intent of improperly influencing the Court to order a premature sale of the Vessel

---

[2] It is evident that whoever prepared Flame's slapdash filing has paid little to no attention to the procedural status of this case (or is simply ignoring same). *See* Docket #67, p. 4. Despite Flame's misplaced allegations of fraud, this Court has expressly declined to make even a preliminary finding as to the sufficiency of Flame's alter-ego allegations. *See* Docket #57 at n. 1 ("FBP also challenges whether Flame has met the pleading requirement for its allegation that FBP is the corporate alter ego of the other defendants. . . . **[T]he Court withholds judgment on that issue** until the jurisdiction question is resolved on appeal.") (emphasis added). There is also a serious question as to whether Flame's action was proper in the first instance as one falling within this Court's subject matter jurisdiction. Recognizing "the importance of the jurisdiction question" (*id.*) and the "complexities and uncertainties" involved with this issue of first impression (*id.* at p. 7), this Court certified that issue for immediate interlocutory appeal, and this issue remains *sub judice* before the Fourth Circuit Court of Appeals. Flame has made no showing that it is likely to prevail, either before this Court or the Fourth Circuit, and its misplaced assertions that this Court has already decided the merits of Flame's alter-ego allegations are ambitious but unsupported.

with a view towards exerting pressure on FBP and potentially depriving it of its property. *See* Docket #63, FBP Opposition to Motion for Sale of M/V CAPE VIEWER. Indeed, no other reasonable conclusion can be drawn as to the genesis for Flame's conduct. Prior to the filing of its present motion, counsel for Flame was expressly reminded that the law is clear that the attaching party has the responsibility for the costs associated with maintaining the *res* while under attachment. In an attempt to resolve this issue, the undersigned requested Flame's counsel to cite <u>any</u> case law to the contrary, but Flame failed to do so. *See* exchanges with counsel for Flame attached hereto as **Exhibit B**. This failure was not an oversight, but rather silence was necessary, as there is absolutely no legal support for Flame's position. Thereafter, Flame sent an email request to Chambers[3] requesting the Court to hold a hearing on its premature motion for sale of the M/V CAPE VIEWER. *See* Docket #61. Not receiving the desired response, Flame then submitted this frivolous motion instead of simply honoring its obligation as the attaching Plaintiff to maintain the *res*.

Supplemental Rule E(4)(e) incorporates 28 U.S.C. § 1921, which clearly and unambiguously provides that the Marshal has both the authority and obligation to collect from the attaching plaintiff "fees for the following":

> (E) The keeping of attached property (including boats, vessels, or other property attached or libeled), actual expenses incurred, such as storage, moving, boat hire, or other special transportation, watchmen's or keepers' fees, insurance, and an hourly rate, including overtime, for each deputy marshal required for special services, such as guarding, inventorying, and moving.

28 U.S.C. 1921(a)(1)(E)[4].; *See also* Local Admiralty Rule E(8)-(9).

---

[3] *See* exchanges with Courtroom Deputy Clerk attached as **Exhibit C**.

[4] These requirements are not some mere permissible guidelines, they are the statutory requirements of Congress and require that the private litigant plaintiff bear the costs of attachment (as the Marshal is not permitted to bind public funds for admiralty cases where the United States is not a party). *See* 28 U.S.C. 1921(2); *Araya v. McLelland*, 525 F.2d 1194 (5th Cir. 1976) (citing *Cohn v. George*, 297 F. Supp. 527 (E.D. Ill. 1968)).

The substitute custodian, NMS bears these same obligations as it serves as a substitute for the U.S. Marshal and has been placed in charge of maintaining the custody, possession, and safekeeping of the Vessel and her crew during the attachment. In fact, this is such a well-known and understood tenet of admiralty attachment and arrest law, that NMS has specific provisions in its Standard Terms and Conditions which require attaching parties such as Flame to expressly agree to advance all necessary fees for such costs (or alternatively reimburse costs incurred with a 15% added surcharge). *See* **Exhibit A**.

> B. **Flame is Obligated to Maintain the Vessel during Attachment**

Flame **knows** that it is obligated to pay the costs of maintaining the Vessel while it remains under attachment, as it indeed advised the Court in its pending Motion to Approve Substitute Custodian Fees as Custodia Legis Costs (Docket #48), that "it is well-established under admiralty law *that the arresting plaintiff and any intervening creditors share in the costs of maintaining the res until resolution of the case*."[5] Docket #48, p. 4 (quoting *Lubricantes Venoco, Intern., C.A. v. M/V NEVERIS*, 60 Fed. Appx. 835, 842 (1st Cir. 2003)(*emphasis added*)). In *Lubricantes*, intervening plaintiff, Perez, moved for reconsideration of the District Court's Order granting the substitute custodian's unopposed request for additional *custodia legis* expenses. *Id*. at 839. The District Court denied Perez' motion for reconsideration, and Perez appealed to the First Circuit Court of Appeals. *Id*. In affirming the District Court's Order, the First Circuit reasoned in relevant part, "it should have come as ***no surprise*** to Perez that it was at risk of being held partially responsible for the remaining custodia legis expenses . . . It is a well-established tenet of admiralty law that the arresting <u>plaintiff</u> and the intervening <u>plaintiffs</u> share

---

[5] Flame was arguing that intervening plaintiff Glory Wealth Shipping Pte. Ltd. ("Glory Wealth") was required to share in the attachment costs or have its Order of Attachment Vacated. Docket #48, p. 4. Notably, not once did Flame ever previously allege that there were legal grounds to compel FBP to share in these attachment costs, because there simply are none.

5

in the costs of maintaining the *res* until resolution of the case." *Id.* (emphasis added). Here, it is similarly no surprise to Flame that it is responsible for the costs of marinating the *res* until the resolution of the litigation, as it is the attaching plaintiff and has relied on this precedent in its own prior pleadings to the Court (and, in fact, has already sought to compel Glory Wealth to share in the expenses). *See* Docket #48. Simply put, this is "standard" in attachment and arrest proceedings.

In *Beauregard, Inc. v. Sword Servs. LLC*, 107 F.3d 351 (5th Cir. La. 1997), the Fifth Circuit Court of Appeals held, "the party that filed a suit will pay the <u>entire</u> cost of maintaining the *res* until the resolution of the case." *Id.*, at 353 (emphasis added).[6] Incredibly, *Beauregard, Inc.* is one of the cases cited by Plaintiff in support of its position in this motion that FBP "must" contribute to the costs of maintaining the attachment, despite the case's clear language that the party who filed the suit will pay the costs. *Id.*; *see also Certain Underwriters at Lloyds v. Kenco Marine Terminal*, 81 F.3d 871 (9th Cir. 1996).

    **C.**    **Flame's Reliance on *Northern Insurance Company* is Confused, as the case Stands for the Undisputed Proposition that Successful Attaching Parties Share Custodia Legis Expenses *Pro Rata* in Accordance With the Amounts they are Awarded.**

The only case cited by Flame in support of its current motion is so plainly distinguishable that Flame's argument can be described as nothing short of frivolous. *Northern Insurance Company of New York v. 1996 SeaRay Model 370DA Yacht, et al.*, was a Supplemental Rule D petitory and possessory suit to try title to a pleasure vessel. 453 F. Supp. 905, 907 (D.S.C. 2006). The small yacht in question was stolen property and as such valid title was <u>never</u> passed to the defendants. *Id.* Although defendants were initially good faith purchasers, they later learned that

---

[6] The Court goes on to hold that "At the judicially ordered sale, the cost of maintenance is deducted from the sale proceeds before the remaining proceeds are divided among the claimants. Therefore, even when a single litigant advances the cost of maintenance, all claimants are eventually required to share in this cost." *Id*.

the SeaRay had been stolen. Despite this knowledge, defendants refused to turn over the title to the boat and, instead, simply ignored plaintiff's demands for the return of the undisputedly stolen property. Following trial on the question of title, the Court awarded title and ownership to the plaintiff Northern Insurance and awarded partial judgment in favor of the defendants on their counterclaim for reimbursement of betterments and improvements made to the boat. *Id*., 916.

For sure, *Northern Insurance* does not stand for Flame's novel theory that the rightful "owner" of an attached or arrested vessel shares in the maintenance costs.[7] Rather, the District Court held that the two (2) attaching parties would share in the administrative custodial costs on a *pro rata* basis reflective of the apportionment of damages affirmatively awarded to each party. *Id*., 917-18. Here, in the unlikely event that Flame and Glory Wealth succeed on the merits in this case, the Court may apportion the shared expenses between the two (2) attaching claimants. However, this is a completely different issue than the one at bar. Again, Specially Appearing Defendant FBP is not a claimant against the *res*. Rather, it is an innocent party whose lawful business continues to be interrupted and interfered with by Flame's improper attachment and continues to inequitably be caused to suffer significant daily losses. Plaintiff's attempts to twist the very specific facts of *Northern Insurance* to this case underscore the lack of good faith with which Flame has proceeded and continues to conduct this litigation.[8]

---

[7] Flame relies exclusively on the line from the decision wherein District Judge Wooten stated "The plaintiff asserts that courts have consistently ruled that owners and lienholders of a vessel are liable for their proportionate share of administrative expenses incurred while maintaining a vessel." *Id*. (citations omitted). However, upon even the most cursory review of the case law, neither case cited by the Court in *Northern Insurance* actually stood for the proposition claimed by the plaintiff or by Flame in this case. *Donald D. Forsht Associates, Inc. v. Transamerica ICS, Inc.*, 821 F.2d 1556 (11th Cir. 1987) and *Beauregard, Inc. v. Sword Services LLC*, 107 F. 3d 351 (5th Cir. 1998) actually both stand for the proposition that the attaching (or arresting) plaintiff is responsible for the maintenance of the vessel from the time of attachment through litigation (and that the costs may be split *pro-rata* by other "claimants").

[8] On February 12, 2014, Flame served abusive discovery demands including, *inter alia*, sixty-eight (68) requests for production of documents -- many of which containing subparts -- and a Notice of Entry indicating Flame's intention to board the Vessel to examine and copy additional documentation from the Vessel. FBP intends to object to both

## II. FLAME SHOULD BE COMPELLED TO POST SECURITY FOR THE COSTS FBP IS BEING FORCED TO INCUR IN CONNECTION WITH FLAME'S WRONGFUL ATTACHMENT; FAILING WHICH THE ATTACHMENT SHOULD BE VACATED

As set forth in FBP's prior briefing to this Honorable Court[9], the Court is authorized under both Supplemental Admiralty Rule E(2)(b) and Local Admiralty Rule (e) 8-9 to require Flame to post security for FBP's costs and expenses incurred in connection with Flame's wrongful attachment of the Vessel. Indeed, the very purpose of Supplemental Rule E(2)(b) is to "give[] the court power to require security for costs and expenses to be posted by the party initiating the . . . seizure **to protect parties affected by the seizure**." *Merchants National Bank of Mobile v. Dredge General G.L. Gillespie*, 663 F.2d 1338, 1344 (5th Cir. 1981) (emphasis added). A trial court "has broad discretion to order a party to post security for costs" under Supplemental Rule E(2)(B). *Result Shipping Co., Ltd. v. Ferruzzi Trading USA Inc.*, 56 F.3d 394, 401 (2d Cir. 1995); *see also Ocean Line Holdings Ltd. v. China Nat'l Chartering Corp.*, 578 F. Supp. 2d 621, 628 (S.D.N.Y. 2008) (ordering Plaintiff to post USD 2 million as security for costs); *Rolls Royce Industrial Power (India) Limited v. M/V Fratzis M*, 1996 U.S. Dist. LEXIS 4907 (S.D.N.Y. 1996).

Supplemental Rule E(2)(b) provides, in relevant part, that the Court may "require the plaintiff . . . to give security . . . in such sum as the court shall direct to pay all costs and expenses that shall be awarded against the party by any interlocutory order or by the final judgment, or on appeal by any appellate court." FED. R. CIV. P. SUPP. R. E(2)(b). The United States Code expressly authorizes a court to tax as costs, to be paid to the prevailing party, fees for, *inter alia*, "the keeping of attached property (including boats, vessels, or other property attached or

---

discovery demands within fifteen (15) days, *i.e.* on or before February 27, 2014. *See* Docket #56.
[9] *See* Docket #12, at pp. 14-15; Docket #41, at pp. 18-19; Docket #59, at pp. 5-6; Docket #63, at p. 16; and Docket #65, at p. 8.

libeled)" and "actual expenses incurred" in connection with same. 28 U.S.C. § 1921 (a)(1)(E); *see also Marastro Compania Naviera, S.A. v. Canadian Maritime Carriers, Ltd.*, 959 F.2d 49, 53 (5th Cir. 1992) (allowing fees for storage expenses, charter hire, bunker fuel, agency fees while detained, pilotage from load berth to anchorage, and launch service while at language, noting it would be "patently unfair to expect Canadian, an innocent third party in this dispute, to absorb costs.").

Here, like in *Marastro*, FBP is an innocent third party who is unjustly being caused to suffer significant and irreparable harm as a result of the wrongful attachment of its Vessel to enforce a foreign judgment <u>to which FBP was not a party</u>. *See* fn. 2, *supra*. Notwithstanding Flame's undisputed and expressly acknowledged obligations under longstanding U.S. admiralty law to bear the costs of maintaining the Vessel until the resolution of the matter (*see* Point I, *supra*), Flame has repeatedly attempted to evade its responsibilities[10] and continues to try to convince the Court to order a grossly premature judicial sale of the Vessel as a means to cause FBP additional harm and/or strongarm a settlement. Worse yet, when FBP previously provided fuel, fresh water, and provisions to the Vessel and the crew, Flame incredibly both opposed FBP's request that the Court treat such expenses as *custodia legis* expenses.

Equity requires that, given Flame's obvious attempts to avoid honoring its obligations to bear the costs of its own attachment and misguided efforts to mislead the Court in its efforts to have the M/V CAPE VIEWER prematurely sold at judicial auction; it is respectfully submitted that the Court exercise its discretion and order Flame to post security for costs, or alternatively

---

[10] Flame's repeated attempts to avoid its responsibility, as attaching party, to maintain the Vessel during the period she is under attachment only underscores the need for this Court to order Flame to post security for costs, as it is further evidence of Flame's own financial difficulties. *See, e.g.*, *Glory Wealth Shipping Pte Ltd. v. Flame S.A.*, 1:13-cv-9083, Docket #1 (S.D.N.Y. filed Dec. 23, 2013) (action for recognition and enforcement of unpaid foreign arbitration award).

9

vacate the attachment and permit the Vessel to depart. *See Beauregard, Inc.*, 107 F.3d 351, 352 (5th Cir. 1997) (dismissal of claim for failure of intervening plaintiff to seize the vessel and share in *custodia legis* expenses); *Petrano v. Vessel Mistress*, 2006 U.S. Dist. LEXIS 98756, *3 (M.D. Fla. 2006) (arrest vacated as an appropriate sanction for plaintiff's failure to pay custodial costs and necessary fees related to arresting and safekeeping of the arrested vessel)(citing 28 U.S.C. 1921; *Donald D. Forsht Associates, Inc.*, 821 F.2d 1556, 1561 (11th Cir. 1987)); *Canaveral Port Auth. v. M/V Surfside Princess*, 2010 U.S. Dist. LEXIS 122047, *13-15 (M.D. Fla. Sept. 23, 2010) (adopted by 2010 U.S. Dist. LEXIS 122039 (M.D. Fla., Nov. 17, 2010)).

### III. FBP SHOULD BE AWARDED ITS COSTS FOR RESPONDING TO FLAME'S FRIVOLOUS MOTION

FBP respectfully submits that this Court should order Flame to pay the costs and fees that FBP has needlessly been forced to incur in responding to Flame's frivolous motion. As set forth above, there is absolutely no basis in either fact or law for the instant motion, and Flame has cited no legal authority for its meritless position that the owner of an attached vessel is responsible for sharing in its maintenance costs during the period of its attachment. Rather, it is abundantly clear under longstanding U.S. admiralty law that the attaching plaintiff(s) (including any intervening plaintiffs) is responsible to maintain the *res* during the period of the attachment.

Courts within the Fourth Circuit have frequently awarded parties their costs and fees incurred in responding to a frivolous motion. *See, e.g.*, *Shank v. Eagle Technologies, Inc.*, 2013 U.S. Dist. LEXIS 115454, at *9, *10 (D. Md. 2013) (awarding costs and fees to defendant when plaintiff "unnecessarily multiplied proceedings in this case by filing an emergency motion . . . [that] was completely without merit", leading the Court to conclude that "the meritless emergency motion was filed for some improper purpose"); *Channing v. Equifax, Inc.*, 2012 U.S.

Dist. LEXIS 50713 (E.D.N.C. 2012) (finding that an award of "reasonable expenses" was "appropriate and necessary to deter Plaintiff from further baseless filings"); *Beckman Instruments, Inc. v. LKB Produkter AB*, 1990 U.S. Dist. LEXIS 18494, at * 18 (D. Md. 1990) (awarding costs and fees associated with responding to a "frivolous and abusive" motion).

The instant motion is nothing more than a misguided attempt by Flame to inflame the Court in the hopes the Court will order a premature sale of the Vessel, or, in the alternative, avoid its obligation to maintain the Vessel that Flame itself elected to interfere with, by, at best, misstating the applicable law on this issue and, at worst, purposefully misleading the Court. Simply put, Flame's motion is wholly without merit and lodged in bad faith, and FBP should be awarded its fees and expenses incurred in preparing this response in opposition.

## CONCLUSION

For the reasons set forth above, and what may be added at oral argument, Defendant Freight Bulk Pte. Ltd. respectfully requests that this Court deny Plaintiff Flame S.A's motion to compel in its entirety, compel Flame S.A. to post security, compel Flame to pay FBP's costs for having to respond to this Motion, and grant such other and further relief as may be just, equitable, and proper under the circumstances.

Dated: February 13, 2014  Respectfully submitted,
      Norfolk, Virginia

                                                  CHALOS & Co, P.C.

                                      By:    /s/ George M. Chalos_____
                                                  George M. Chalos, Esq.
                                                  Fed ID: GC-8693
                                                  *Admitted Pro Hac Vice*
                                                  55 Hamilton Avenue
                                                  Oyster Bay, New York 11771
                                                  Telephone: (516) 714-4300
                                                  Facsimile: (516) 750-9051

Email: gmc@chaloslaw.com
*Attorneys for Specially Appearing Defendant*
FREIGHT BULK PTE. LTD.

-AND-

DAVEY & BROGAN, P.C.

/s/ Patrick M. Brogan
Mr. Patrick M. Brogan (VSB No. 25568)
101 Granby Street, Suite 300
Norfolk, Virginia 23510
Telephone: 757.622.0100
Facsimile: 757.622.4924
Email: pbrogan@daveybroganpc.com

**CERTIFICATE OF SERVICE**

       I hereby certify that on February 13, 2014, I electronically transmitted and caused to be served upon all counsel of record, the foregoing Opposition to Flame S.A.'s Motion to Compel and Cross-Motion for Security, using the CM/ECF System for the Eastern District of Virginia and via e-mail.

       DAVEY & BROGAN, P.C.

          /s/ Patrick M. Brogan
       Mr. Patrick M. Brogan (VSB No. 25568)
       101 Granby Street, Suite 300
       Norfolk, Virginia 23510
       Telephone: 757.622.0100
       Facsimile: 757.622.4924
       Email: pbrogan@daveybroganpc.com*Attorneys for Specially Appearing Defendant*
       FREIGHT BULK PTE. LTD.