# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

| | |
|---|---|
| FLAME S.A., ) | |
| ) | |
|     Plaintiff, ) | Civil Action No: 2:13-cv-658 |
| ) |                      2:13-cv-704 |
| GLORY WEALTH SHIPPING PTE LTD. ) | |
| ) | |
|     Consolidated Plaintiff, ) | |
| vs. ) | |
| ) | |
| INDUSTRIAL CARRIERS, INC. ) | |
| VISTA SHIPPING, INC., and ) | |
| FREIGHT BULK PTE. LTD., ) | |
| ) | |
|     Defendants. ) | |

**SPECIALLY APPEARING DEFENDANT FREIGHT BULK PTE. LTD.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE THE DECLARATION OF JAMES H. POWER AND TO IMPOSE SANCTIONS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

LEGAL STANDARD ............................................................................................................. 4

ARGUMENT .......................................................................................................................... 5

I.    The Declaration Violates the Federal Rules of Evidence .................................. 5

II.    The Declaration Violates the Rules of Professional Conduct Governing Attorneys ......... 7

III.    The Declaration Potentially Violates Federal Law ............................................ 9

IV.    The Declaration is a Transparent Attempt to Harass FBP ............................... 10

CONCLUSION ..................................................................................................................... 11

## **TABLE OF AUTHORITIES**

**Page(s)**

Cases

*Ayres v. Ocwen Loan Servicing, LLC*,
  No. 8:13-cv-001597, 2013 WL 4784190 (D. Md. Sept. 5, 2013)................................................4

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991).................................................................................................................4, 10

*Corley v. Rosewood Care Ctr., Inc. of Peoria*,
  142 F.3d 1041 (7th Cir. 1998) ...................................................................................................10

*Eckhardt v. United States*,
  463 F. App'x  852 (11th Cir. 2012) .............................................................................................9

*Fantasy, Inc. v. Fogerty*,
  984 F.2d 1524 (9th Cir. 1993) ...................................................................................................10

*Garrett v. Selby Connor Maddux & Janer*,
  425 F.3d 836 (10th Cir. 2005) .....................................................................................................4

*Glory Wealth Shipping Pte. Ltd. v. Indus. Carriers, Inc.*,
  Index No. 650590-2014 (N.Y. Sup.)............................................................................................2

*Hawkins v. Stables*,
  148 F.3d 379 (4th Cir. 1998) .......................................................................................................8

*HOK Sport, Inc. v. FC Des Moines, L.C.*,
  495 F.3d 927 (8th Cir. 2007) .......................................................................................................9

*Int'l Woodworkers of Am. v. Chesapeake Bay Plywood Corp.*,
  659 F.2d 1259 (4th Cir. 1981) .....................................................................................................8

*Lexalt  v. McClatchy*,
  809 F.2d 885 (D.C. Cir. 1987).....................................................................................................9

*Mathis v. Martin*,
  No. 8:13-cv-02597, 2013 WL 5609134 (D. Md. Oct. 11, 2013) .................................................4

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  164 F.R.D. 346 (S.D.N.Y. 1996) .................................................................................................4

*Ready Transp., Inc. v. AAR Mfg., Inc.*,
  627 F.3d 402 (9th Cir. 2010) .......................................................................................................4

**TABLE OF AUTHORITIES**
**(cont'd)**

**Page(s)**

*Retired Indep. Guards Ass'n of Nev. v. Bd. of Trustees, Indep. Guards Ass'n of Nev.*,
 2011 WL 5190783 (D. Nev. Oct. 28, 2011) ..................................................................11

*S & S Hotel Ventures Ltd. P'ship v. 777 S. H. Corp.*,
 69 N.Y.2d 437 (N.Y. 1987) ..............................................................................................8

*Soutter v. Equifax Info. Servs. LLC*,
 No. 3:10cv107, 2014 WL 1379551 (E.D. Va. Apr. 8, 2014) ...........................................5

*United States v. Miljus*,
 No. 06-1832, 2008 WL 3539946 (D. Or. Aug. 11, 2008) ..............................................11

*United Union of Roofers, Waterproofers, & Allied Workers Local No. 210*,
 547 F. App'x 17 (2d Cir. 2013) .......................................................................................8

*Zepeda v. PayPal, Inc.*,
 No. C 10-2500 SBA, 2013 WL 2147410 (N.D. Cal. May 15, 2013) ..............................4

Statutes, Rules and Regulations

12 U.S.C. §§ 3401 *et seq.*............................................................................................................9

15 U.S.C. §§ 6801 *et seq*.............................................................................................................9

15 U.S.C. § 6821(a)(1)...............................................................................................................10

Fed. R. Civ. P. 11 .........................................................................................................................4

Fed. R. Civ. P. 26(a) ....................................................................................................................6

Fed. R. Evid. 602 .........................................................................................................................5

Fed. R. Evid. 702 ......................................................................................................................6, 7

Va. R. Prof. Conduct 3.7..............................................................................................................7

Other Authorities

Richard L. Marcus, *The Perils of Privilege: Waiver and the Litigator*,
 84 U. Mich. L. Rev. 1605 (1986).....................................................................................8

Regrettably, Freight Bulk Pte Ltd. ("FBP") is compelled to bring this motion to address the inappropriate declaration of Attorney James H. Power, counsel for Plaintiff Glory Wealth Shipping Pte. Ltd. ("Glory Wealth"), filed with the Court in this matter. On April 9, 2014—approximately *one hour* before a scheduled hearing before Magistrate Judge Leonard to address discovery issues raised by another Plaintiff Flame S.A.'s motions to compel (ECF Nos. 25 & 92) ("the Flame motions")—Mr. Power filed a document styled as a "Notice of Joinder" in the Flame motions (ECF No. 145). Attached to the notice was a 17-page "declaration" attested to by Mr. Power under penalty of perjury, supposedly setting out "facts and circumstances" (ECF No. 146 at ¶ 3) that Mr. Power claimed to be "true and correct" and that purport to vouch for the truth of Glory Wealth's litigation position in this case (*id.* at ¶ 50). However, Mr. Power's declaration amounts to little more than pseudo-expert testimony that is improper in numerous respects.

As an initial matter, Mr. Power's declaration is littered with improper testimony. For example, Mr. Power testifies that:

- FBP's litigation positions "are simply untrue" (*id* at ¶ 7) and that "Glory Wealth has amassed voluminous evidence supporting each and every one of the alter ego, fraudulent transfer and successor in interest allegations" (*id* at ¶ 8).

- He "believe[s] the records demonstrate" that money was wrongfully diverted from Industrial Carriers, Inc.'s estate. *Id*. at ¶ 17.

- Mr. Power "believe[s] the wire transfers will unequivocally demonstrate" that the prior deposition testimony of Mr. Viktor Baransky as "unsubstantiated and fanciful." *Id*. at ¶ 47.

*See also id.* at ¶ 14 (testifying to Mr. Power's "belief" as to what certain "records demonstrate"); *id.* at ¶ 25 (testifying regarding whether there is a "plausible explanation" for certain alleged financial transactions); *id.* at ¶ 29 (testifying that a fact "is utterly implausible"); *id* at ¶ 42 (Mr. Power testifying to what be "believe[s] the records further demonstrate" regarding certain alleged financial transactions); *id.* at ¶ 44 (Mr. Power testifying "[b]ased on [his] review of the

1

wire transfer records"); *id.* at ¶ 44 (Mr. Power testifying that Vista Shipping, Inc. has the burden of "produc[ing] additional evidence to contradict the wire transfers"); *id.* at ¶ 45 (Mr. Power testifying as to what be believes "the records demonstrate" regarding charter hire payments); *id.* at ¶ 46 (Mr. Power testifying to what undisclosed expert reports "will most likely demonstrate").

Remarkably, Mr. Power's declaration does not attach or specifically identify any document or piece of evidence to support his accusations. Rather, the sole predicate for this testimony is Mr. Power's "review" of unspecified bank records that were purportedly subpoenaed in a parallel New York lawsuit (that Glory Wealth is actively prosecuting),[1] which Glory Wealth apparently initiated, in part, as an end-run around *this Court's* own discovery process. *See id* at ¶¶ 10-13 (acknowledging that Glory Wealth initiated suit in New York, naming—but not serving—the Defendants, for the purpose of subpoenaing bank records). The subpoenas Glory Wealth served in the parallel New York action *assume* that FBP is the alter ego of Industrial Carriers, Inc. ("ICI")—the very fact that Glory Wealth is seeking to *prove* in this litigation. *See, e.g.*, Ex. 1 (subpoena to Bank of China stating, "The circumstances or reasons for such disclosure is sought or required is because the witness has information and documents that are material and necessary to Plaintiff's claims against Defendant Industrial Carriers, Inc. as principal debtors and its alter egos.").

Mr. Power's declaration is improper on numerous additional fronts. Under the Federal Rules of Evidence, Mr. Power is not competent to testify to any of the supposed assertions or opinions contained in his declaration. Mr. Power lacks any personal knowledge of the "facts" that form the basis of his testimony, and he has none of the specialized skill or training that would qualify him to offer expert testimony. Moreover, under the Rules of Professional

---

[1] *Glory Wealth Shipping Pte. Ltd. v. Indus. Carriers, Inc.*, Index No. 650590-2014 (N.Y. Sup.).

Responsibility of both Virginia and New York, Mr. Power is barred from serving simultaneously as counsel and a witness in this litigation.

Mr. Power's declaration is also procedurally improper. His 17-page declaration was purportedly offered in support of a two page notice of joinder in a motion filed by Flame S.A. that had almost nothing to do with Glory Wealth. Flame S.A.'s motion sought to compel responses by FBP to certain discovery requests made by Flame S.A. Glory Wealth propounded its own, separate discovery requests to FBP. *See, e.g.*, ECF No. 145 at ¶ 1. Glory Wealth did not meet and confer with FBP regarding its responses and objections, and Glory Wealth did not file a motion to compel with respect to its own discovery requests. There was no reason, other than harassment, for Glory Wealth to join Flame's motion, let alone to attach 17 pages of hearsay testimony.

Finally, Mr. Power's declaration is a transparent attempt to lob baseless and disparaging comments into the public record, in the hopes of prejudicing these court proceedings and causing reputational harm to FBP and its principal, Viktor Baransky. Notably, within hours of Mr. Power's filing his declaration, a reporter from the *Tradewinds* newspaper contacted defense counsel seeking comment in response to Mr. Power's charges. Ex. 2 (email from *Tradewinds* reporter to FBP's counsel). And shortly thereafter, *Tradewinds*—a newspaper that plaintiffs have acknowledged is widely read within the shipping industry—published a lengthy article featuring Mr. Power's picture and detailed records of alleged bank transactions (all of which are statutorily-protected confidential information). Ex. 3 (*Tradewinds* article).

Glory Wealth's misleading statements, attempts to try this case in the press, and harassment of FBP and Mr. Baransky are improper and unethical. Accordingly, the Court should

3

strike the declaration and exercise its authority to impose sanctions against Glory Wealth, including an award of costs and attorneys' fees.

## LEGAL STANDARD

This Court has the inherent power to strike briefs, pleadings, and declarations that that are scandalous, impertinent, or irrelevant. These inherent powers are "necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (internal quotation marks omitted) (holding that applying inherent powers to sanction improper conduct is permissible even where Rule 11 may apply to parts of a party's litigation conduct). Therefore, "[t]he law is clear that district courts have the inherent power to control their docket, and in the exercise of that power, they may properly strike improper documents." *Zepeda v. PayPal, Inc.*, No. C 10-2500 SBA, 2013 WL 2147410, at *3 (N.D. Cal. May 15, 2013).

Courts throughout the country, including those in the Fourth Circuit, have not hesitated to strike filings containing improper or scandalous material. *See, e.g.*, *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (District court's inherent power "includes the power to strike items from the docket as a sanction for litigation conduct"); *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840-41 (10th Cir. 2005) (District court has "an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates" (internal quotation marks omitted)); *Mathis v. Martin*, No. 8:13-cv-02597, 2013 WL 5609134, at *3 (D. Md. Oct. 11, 2013) (federal courts have the "inherent power" to strike frivolous or scandalous material).[2] This case should be no different.

---

[2] *See also In re NASDAQ Mkt.-Makers Antitrust Litig.*, 164 F.R.D. 346, 349 (S.D.N.Y. 1996) (it is within a court's inherent power "to strike any filed paper which it determines to be abusive or otherwise improper under the circumstances"); *Ayres v. Ocwen Loan Servicing, LLC*, No. 8:13-

**ARGUMENT**

There are at least four separate grounds that independently support this Court striking Mr. Power's declaration and sanctioning Glory Wealth for its improper filing. *First*, Mr. Power's declaration is inconsistent with the Federal Rules of Evidence. *Second*, it violates the code of professional conduct that governs the practice of law in this Commonwealth (and in Mr. Power's home state of New York). *Third*, the declaration was filed in violation of the terms of various confidentiality agreements entered into by Glory Wealth and federal laws that prohibit the unwarranted disclosure of sensitive financial information. *Fourth*, Mr. Power's declaration was intended to harass and to cause unwarranted reputational harm. For all of these reasons, FBP moves the Court to strike the declaration and impose appropriate sanctions against Glory Wealth.

**I.     The Declaration Violates the Federal Rules of Evidence.**

On its face, Mr. Power's declaration fails to satisfy nearly every applicable test for admissibility set out by the Federal Rules of Evidence. Mr. Power lacks any personal knowledge of the facts he attempts to testify about. The Rules are clear: "A witness may testify in a matter *only if* evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602 (emphasis added). The courts of this District have interpreted this requirement to apply *at all stages of litigation*, including to affidavits and declarations offered in support of pre-trial motions. *See*, *e.g.*, *Soutter v. Equifax Info. Servs. LLC*, No. 3:10cv107, 2014 WL 1379551, at *7 (E.D. Va. Apr. 8, 2014) (granting motion to strike an affidavit filed in support of class certification that was not based on the affiant's personal knowledge and holding that requirements of Rule 602 apply throughout pre-trial litigation). By

---

cv-001597, 2013 WL 4784190, at *3 (D. Md. Sept. 5, 2013) (using inherent powers to strike motion to dismiss).

Mr. Power's own admission, his declaration is entirely hearsay, based upon his "review" of unproduced wire records and offered for the truth of matters supposedly contained therein.

In an attempt to gloss over the fact it is full of inadmissible hearsay, Mr. Power's declaration masquerades as expert testimony. At various points, he refers to his "determin[ations]" and "experience" *See*, *e.g*., ECF No. 146 at ¶ 11 ("I have been retained by numerous other clients in similar situations to enforce judgments . . . . I have in prior cases determined that there are third party sources capable of producing information similar to what might be expected from a defendant's financial institution."); *id.* at ¶ 13 ("In my experience, the Intermediary Banks maintain records of the wire transfers they process for a minimum of 6-8 years.").

And Mr. Power repeatedly offers his opinion and belief. *See id*. ¶ at 14 ("I believe the records demonstrate . . . ."); ¶ 17 (same); ¶ 23 ("The balance of the purchase price is believed to have been paid to an entity other than Sea Breeze."); ¶ 29 ("The M/V FATHER S is believed to have been sold in February 2014 to a vessel scrap buyer based in Singapore."); ¶ 42 ("I believe the records further demonstrate how . . . ."); ¶47 ("In sum, I believe the wire transfers will unequivocally demonstrate the impossibility of Viktor Baranskyi's unsubstantiated and fanciful contention that he turned 'a million dollars in a suitcase' from his mother into more than $100 million of un-mortgaged vessels via Vista's 'lawful' chartering activity alone.").

Glory Wealth has not disclosed Mr. Power as an expert in its Rule 26(a) disclosures. *See* Ex. 4 (Glory Wealth's expert disclosures). Moreover, Mr. Power holds no degrees or certification in the fields of accounting, banking, or forensic accounting. Simply put, he has no "knowledge, skill, experience, training or education" in any field relevant to the opinions he expresses in his declaration. Fed. R. Evid. 702. And Mr. Power's declaration contains no indicia

of scientific or technical reliability. It discloses none of the facts or data on which his self-serving opinions are based, and it fails to mention a single principle or method of accounting used to generate Mr. Power's opinions. *Id.* In short, Mr. Power's "determinations," "opinions," and "beliefs" are inadmissible and should be stricken.

**II.      The Declaration Violates the Rules of Professional Conduct Governing Attorneys**.

Mr. Power's declaration also violates the professional standards that govern the practice of law in Virginia and New York (where Mr. Power's is a member of the bar), which plainly prohibit the type of dual roles that Mr. Power has attempted to fulfill here. It is axiomatic that a lawyer may not serve as a fact witness or personally vouch for the veracity of evidence in an adversary proceeding. Va. R. Prof. Conduct 3.7 ("A lawyer shall not act as an advocate in an adversarial proceeding in which the lawyer is likely to be a necessary witness."). As the comments to the Virginia Rules of Professional Conduct explain:

> Combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client . . . . The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

*Id.* at cmt 1-2.

The New York Court of Appeals is equally clear that Glory Wealth's tactics are unseemly:

> Recognizing that the roles of an advocate and of a witness are inconsistent, and that it is from a public image point of view "unseemly" for a lawyer in a trial also to argue his own credibility as a witness, the Code of Professional Responsibility directs that a lawyer who ought to be called as a witness on behalf of his client shall withdraw from the conduct of the trial and his firm shall not continue representation in the trial.

7

*S & S Hotel Ventures Ltd. P'ship v. 777 S. H. Corp.*, 69 N.Y.2d 437, 444 (N.Y. 1987) (italics omitted).

The Fourth Circuit also provides unambiguous guidance to lawyers who improperly seek to be both their client's advocate and a witness in support of their client's case:

> The roles of witness and advocate are fundamentally inconsistent and when . . . a lawyer ought to testify as a witness for his client, he must as a rule withdraw from advocacy. . . . Where the question arises, doubts should be resolved in favor of the lawyer testifying and against his becoming or continuing as an advocate.

*Int'l Woodworkers of Am. v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1272 (4th Cir. 1981) (internal quotation marks omitted). Mr. Power's declaration disregards this clear ethical guidance from the Virginia State Bar, the New York State bar, and the Fourth Circuit, and it should be struck.[3]

Beyond violating the witness-advocate rule, Mr. Power's declaration also makes false and misleading statements about the applicable law. For example, Mr. Power misleadingly attempts to reverse the burden of proof by claiming that it is the defendants' burden to *disprove* Glory Wealth's alter ego allegations. *See, e.g.*, ECF No. 146 at ¶ 44 ("Vista needs to produce additional evidence to contradict the wire transfers."). Mr. Power is mistaken. It is solely up to plaintiffs to demonstrate both the alleged alter ego relationship and that the alter ego was used for an illicit purpose, under the preponderance of the evidence standard. *See, e.g.*, *United Union of Roofers, Waterproofers, & Allied Workers Local No. 210*, 547 F. App'x 17, 20 n. 2 (2d Cir. 2013) (noting that "plaintiffs bore the burden of proof at trial" to establish an alleged alter ego

---

[3] By revealing previously confidential information regarding Glory Wealth's "investigation" into the facts of this case, Mr. Power has waived Glory Wealth's attorney-client and work-product privileges on these facts. *Hawkins v. Stables*, 148 F.3d 379, 384 n.4 (4th Cir. 1998) ("[I]mplied waiver occurs when the party claiming the privilege has made any disclosure of a confidential communication to any individual who is not embraced by the privilege."); Richard L. Marcus, *The Perils of Privilege: Waiver and the Litigator*, 84 U. Mich. L. Rev. 1605, 1615 n.55 (1986) ("In theory the privilege can only be waived by the client, not the lawyer, but in fact waiver often results from actions by the lawyer, who is considered to be an agent authorized to waive.").

8

relationship "by a preponderance of the evidence"); *see also Eckhardt v. United States*, 463 F. App'x 852, 856 (11th Cir. 2012) ("As the party asserting the alter ego theory, the government bears the burden of proof."); *HOK Sport, Inc. v. FC Des Moines, L.C.*, 495 F.3d 927, 935 (8th Cir. 2007) ("Disregarding the entity's corporate form under either the alter ego doctrine or the remedy of piercing the corporate veil is an extraordinary measure that should be reserved for exceptional circumstances, and the party seeking to do so bears the burden of proof.").

### III. The Declaration Potentially Violates Federal Law.

In addition to being inadmissible and violating professional standards, Mr. Power's declaration discloses potentially unlawful conduct. The laws that govern the disclosure of financial information are scrupulously protective of privacy. *See*, *e.g.*, 15 U.S.C. §§ 6801 *et seq.* (the Gramm-Leach-Bliley Act); *see also* 12 U.S.C. §§ 3401 *et seq.* (Right to Financial Privacy Act). For example, the Gramm-Leach-Bliley Act states that "each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801(a). For this reason, financial institutions enter into confidentiality agreements with parties that request financial records via subpoena. *Cf. Lexalt v. McClatchy*, 809 F.2d 885, 889 (D.C. Cir. 1987) (noting that when financial information is protected by the Gramm-Leach-Bliley Act "it is appropriate for a court to exercise its broad discretion to fashion protective orders"). By testifying to the contents of various financial records Glory Wealth received via subpoena, Mr. Power has violated these confidentiality agreements and the Gramm-Leach-Bliley Act.[4]

---

[4] On April 11, 2014, FBP's counsel requested copies of these confidentiality agreements in order to investigate Glory Wealth's compliance with the Gramm-Leach-Bliley Act. Ex. 5 (letter from FBP's counsel to Mr. Power). Glory Wealth has failed to produce these agreements.

9

Moreover, the Gramm-Leach-Bliley Act prohibits "making a false, fictitious, or fraudulent statement or representation to an officer, employee, or agent of a financial institution." 15 U.S.C. § 6821(a)(1). In this case, Glory Wealth repeatedly misrepresented FBP's relationship to ICI in order to improperly gain access to bank accounts and wire transfer records without the oversight of this Court or the participation of FBP's counsel. *See* Ex. 1 (subpoena to Bank of China stating, "The circumstances or reasons for such disclosure is sought or required is because the witness has information and documents that are material and necessary to Plaintiff's claims against Defendant Industrial Carriers, Inc. as principal debtors and its alter egos."); Ex. 6 (same in subpoena to BNP Paribas); Ex. 7 (same in subpoena to UBS); Ex. 8 (same in subpoena to J.P. Morgan Chase Bank, N.A.). To date, Glory Wealth has not made available to FBP the information garnered from these subpoenas.

## IV. The Declaration is a Transparent Attempt to Harass FBP.

Finally, Mr. Power's declaration has no apparent purpose other than harassment. A district court has the inherent power to "fashion . . . appropriate sanction[s] for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44. In order to sanction a party pursuant to this inherent power, a court must find a litigant "acted in bad faith, vexatiously, wantonly, or for other oppressive reasons." *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 142 F.3d 1041, 1059 (7th Cir. 1998), *aff'd in part on other grounds by* 338 F.3d 990 (7th Cir. 2004) (internal quotation marks omitted). Courts also have the inherent power to strike "statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by* 510 U.S. 517 (1994) (internal quotation marks omitted).

This is not a high bar to meet with respect to Mr. Power's declaration. As discussed above, Mr. Power's declaration was generated through a parallel litigation that Glory Wealth is

10

actively pursuing in New York. Glory Wealth used the New York litigation, in part, as an end-run around this Court's control over discovery. Without notice to FBP or this Court, Glory Wealth sent subpoenas to various financial institutions. These subpoenas improperly asserted, without proof or judicial finding, that FBP was the alter ego of ICI. Then, approximately one hour prior to an almost entirely unrelated hearing, Glory Wealth filed a notice of joinder that was nothing more than a vehicle for airing its scandalous allegations against FBP and other entities that are not named as defendants in this litigation.

Glory Wealth has not provided FBP or this Court with any of the documents that supposedly support its allegations in Mr. Power's declaration. Courts routinely exercise their inherent powers to strike materials that are designed to do nothing more than harass a party. *See United States v. Miljus*, No. 06-1832, 2008 WL 3539946, at *6 (D. Or. Aug. 11, 2008) (striking "potentially prejudicial procedural nonentities"); *Retired Indep. Guards Ass'n of Nev. v. Bd. of Trustees, Indep. Guards Ass'n of Nev.*, No. 2:08-cv-00849, 2011 WL 5190783, at *1 (D. Nev. Oct. 28, 2011) (striking affidavits that "contain information to which the affiants could not have personal knowledge" and that contained "information that Plaintiffs withheld during discovery"). Therefore, Glory Wealth's litigation conduct and unsupported, prejudicial accusations should be struck from the docket.

## CONCLUSION

For the foregoing reasons, Mr. Power's declaration is at every turn objectionable, improper, untrue, and unsupported. Accordingly, FBP respectfully requests that the Court strike Mr. Power's declaration and impose sanctions against Glory Wealth, including an award of costs, attorneys' fees, and any other sanctions necessary to remedy Glory Wealth's litigation conduct.

Dated: April 18, 2014                    Respectfully submitted,

                                            By:    /s/ Patrick M. Brogan

                          Mr. Patrick M. Brogan (VSB No. 25568)
                          101 Granby Street, Suite 300
                          Norfolk, Virginia 23510
                          Telephone: 757.622.0100
                          Facsimile: 757.622.4924
                          Email: pbrogan@daveybroganpc.com

                          -AND-

                          MAYER BROWN LLP
                          Reginald R. Goeke
                          (*Pro Hac Vice* Application Pending)
                          Marcus A. Christian
                          (*Pro Hac Vice* Application Pending)
                          Adam L. Hudes (*Pro Hac Vice*)
                          1999 K Street, NW
                          Washington, DC 20006-1101
                          Tel: 202.263.3000
                          Email: rgoeke@mayerbrown.com
                                  mchristian@mayerbrown.com
                                  ahudes@mayerbrown.com

                          *Attorneys for Specially Appearing*
                          *Defendant FREIGHT BULK PTE. LTD*

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2014, I caused the foregoing SPECIALLY APPEARING DEFENDANT FREIGHT BULK PTE. LTD.'s MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE THE DECLARATION OF JAMES H. POWER AND TO IMPOSE SANCTIONS to be electronically filed with the Clerk of the Court using the CM/ECF system, which in turn will provide electronic notification of and access to such filing to the counsel of record in this matter who are registered on the CM/ECF system.

Dated: April 18, 2014

By: /s/ *Patrick M. Brogan*
Patrick M. Brogan, Esq. (VSB No. 25568)
**DAVEY & BROGAN, P.C.**
101 Granby Street, Suite 300
Norfolk, Virginia 23510
Telephone: 757.622.0100
Facsimile: 757.622.4924
PBrogan@daveybroganpc.com
Counsel for Specially Appearing Defendant
Freight Bulk Pte., Ltd.