IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FLAME S.A.,

Plaintiff,

GLORY WEALTH SHIPPING PTE LTD.,

Consolidated Plaintiff,

v.

INDUSTRIAL CARRIERS, INC.
VISTA SHIPPING, INC., and
FREIGHT BULK PTE. LTD.,

Defendants.

Civil Action No: 2:13-cv-658
2:13-cv-704

## DECLARATION OF MICHAEL IVANOV

1.    My name in Michael Ivanov. I am a resident of Ukraine and an employee of Columbus Maritime Ltd. ("Columbus"). During the entire time period relevant to this declaration, Columbus served as agent for the commercial manager of the M/V CAPE VIEWER, acting on behalf of Freight Bulk PTE. LTD. ("FBP"), the owner of the vessel.

2.    I have been asked by FBP's counsel to provide this declaration to explain the costs and expenses that FBP has incurred as a result of the attachment of the M/V CAPE VIEWER in this case. I have personal knowledge of the facts contained in this declaration and, if called to testify, I could competently attest thereto.

3.    On November 22, 2013, the M/V CAPE VIEWER was arrested in the waters near Norfolk, Virginia, pursuant to an order of attachment entered in this lawsuit. Since that date, the M/V CAPE VIEWER has incurred costs and expenses related to its arrest and immobilization.

1

These include fuel costs; the costs of fresh water, supplies and provisions for the vessel; crew wages; and other payments necessary to keep the M/V CAPE VIEWER safe and operational.

4.    Specifically, FBP has incurred and/or continues to incur the following costs and expenses in the amounts described:

a.    ***Fuel Costs and Bunker Usage*** (**USD $230,263**): During the period of its arrest, the M/V CAPE VIEWER has consumed approximately 317.86 metric tons of low sulfur fuel oil and 38.01 metric tons of low sulfur diesel oil. In accordance with the terms of the Charter Party, charterer Noble Chartering Inc., BVI ("Noble") paid for the value of these fuel bunkers upon delivery in Rotterdam, Holland. Therefore, the bunker quantities which were on board the M/V CAPE VIEWER at the time of the attachment belonged to Noble. Under the terms of the Charter Party, however, Noble is entitled to a reimbursement at the stipulated prices of USD $615 per metric ton of low sulfur fuel oil and USD $915 per metric ton of low sulfur diesel oil. Thus, FBP as owner of the vessel is obligated to pay Noble in the amounts of USD $195,483.90 for low sulfur fuel oil consumed and $34,779.15 for low sulfur diesel oil consumed. The sum of these amounts is approximately USD $230,263.

b.    ***Fresh Water Expenses*** (**USD $43,050**): In addition, from the date of attachment until the date that *custodia legis* fees were shifted to Plaintiffs, the managing agents acting on FBP's behalf arranged for approximately 210 metric tons of fresh water to be used to supply the M/V CAPE VIEWER and its crew. At the time of this supply, the cost of fresh water was estimated by Plaintiffs to be approximately USD $205 per metric ton (*see* Plaintiff Flame's Cost Estimate at ECF No. 62-1 at Exhibit A). Using Plaintiffs' Estimate, therefore, the cost to FBP of supplying the M/V CAPE VIEWER with fresh water has been approximately USD $43,050.

c.    **Provisions and Supplies Expenses (USD $24,407)**: Also on FBP's behalf, from the date of attachment until the date that *custodia legis* fees were shifted to Plaintiffs, Columbus and technical manager Sea Traffic Shipping Co. ("Sea Traffic") arranged for food, cleaning supplies, and other provisions to be provided to the M/V CAPE VIEWER. True and correct copies of the invoices for these supplies have been previously attached to FBP's filings in this matter (*see* Supplies Invoices submitted by FBP at ECF No. 65-2 at Exhibit 2) and are again attached here as Exhibit A to this Declaration. The total cost of these provisions and supplies was approximately USD $24,407.[1]

---

[1]    I understand that, in an effort to be conservative in its Supplemental Rule E(2) bond request, FBP has estimated that the ***combined cost*** of (a) Fuel Costs and Bunker Expenses, (b) Fresh Water Expenses, and (c) Provisions and Supplies Expenses was approximately USD $250,000. Based on my calculations, that figure is actually approximately USD $48,000 ***less*** than the actual expenses incurred for those items.

d. **Crew Wages (USD $337,400)**: Also on FBP's behalf, Sea Traffic has continued to pay the monthly wages and leave pay for crew members stranded aboard the M/V CAPE VIEWER as a result of the attachment. As a result of these continuing payments, the crew has continued to maintain and operate the vessel in a manner conducive to preserving its commercial and economic value. Between the date of the attachment and the end of March 2014, crew wages in the amount of approximately USD $245,744 had been paid. True and correct copies of the monthly portage bills reflecting these payments are attached as Exhibit B to this Declaration. Extrapolating based upon the payments made so far, the total amount of crew wages that will ultimately be paid by the date of the planned trial in this case (in June 2013) is expected to be more than USD $337,400.

5.    The costs listed above are actual expenses that have been paid or will be paid by either FBP or the managing agents of the M/V CAPE VIEWER, acting on behalf of FBP.

6.    In addition to the costs and expenses listed above, I understand that FBP has also requested a further $1,000,000 as part of a Supplemental Rule E(2) bond to secure any additional costs, claims, or expenses incurred by other third parties—such as the owners of the coal presently aboard the vessel, the charterer, and/or the ultimate receivers of the loaded cargo—as a result of the attachment of the M/V CAPE VIEWER. Based on my experience in the shipping industry, I believe it is reasonable to anticipate that the arrest and seizure of a vessel like the M/V CAPE VIEWER will occasion costs, claims or expenses to third parties.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

_____
Michael Ivanov

Executed on the 09 day of May, 2014, in Odessa, Ukraine.

3