UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FLAME S.A.,

Plaintiff,

GLORY WEALTH SHIPPING PTE LTD.

Consolidated Plaintiff,

-against-

INDUSTRIAL CARRIERS, INC., et al.,

Defendants.

Civil Action No: 2:13cv658-RGD-LRL
2:13cv704-RGD-LRL

**CONSOLIDATED PLAINTIFF GLORY WEALTH SHIPPING PTE LTD'S MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION AND FOR SANCTIONS AGAINST DEFENDANTS**

Consolidated Plaintiff Glory Wealth Shipping Pte Ltd, ("Glory Wealth"), by counsel, pursuant to Rules 37 and 54 of the Federal Rules of Civil Procedure requests that this Court reconsider its prior ruling regarding the scope of discovery in this action and impose sanctions on Defendant Freight Bulk PTE ("Freight Bulk") for its failure to comply with this Court's prior orders compelling it to produce responsive documents. As explained further below, recently discovered evidence demonstrates that the scope of discovery in this action should be expanded to include all entities controlled by Viktor Baranskyi because of the manner in which he transfers funds among his entities. In addition, the recent testimony of Freight Bulk's witnesses make it clear that certain deficiencies remain in Freight Bulk's discovery responses and sanctions should be imposed on Freight Bulk at trial of this matter.

## ARGUMENT

### I. This Court Should Reconsider Its Prior Decision and Broaden the Scope of Discovery.

By Discovery Order dated April 10, 2014, Magistrate Judge Leonard issued an order stating that the issue of "alter ego" regarding the Defendants is a proper subject of discovery. (Dkt. 149). On April 30, 2014, Magistrate Judge Leonard issued orders in response to motions to compel filed by Glory Wealth and Plaintiff Flame S.A. ("Flame"). (Dkt. 209 and 210). That Order directed Freight Bulk to begin producing documents responsive to certain of Plaintiffs' requests that were in the possession of those entities controlled by Viktor Baranskyi to the extent such entities are named defendants in this action. Flame, later joined by Glory Wealth, moved this Court to reconsider this limitation on discovery. (Dkt. 232). In denying Flame's motion for reconsideration, the Court stated that Plaintiffs fail to "cite an intervening change in controlling law, make a proffer of new evidence not available earlier, or demonstrate a need to correct a clear error of law or prevent manifest injustice." (Dkt. 274). By this Motion, Glory Wealth requests the Court reconsider its previous limitation on discovery in light of the newly obtained testimony from recent depositions.

#### A. Legal Standard on Motion for Reconsideration

Rule 54(b) provides a liberal standard for courts to reconsider non-final orders in their discretion:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end this action as to any of the claims or parties and may be revised at any time before the entry of judgment adjudicating all the claims and the parties' rights and liabilities.

As stated by the Court in its earlier ruling, a court may grant a motion for reconsideration "(1) to accommodate an intervening change in the controlling law; (2) to account for new

evidence not available earlier; or (3) to correct a clear error of law or prevent manifest injustice." *See Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). With this motion, Glory Wealth presents new evidence that was not available to Plaintiffs, or the Court, when previous requests to broaden the scope of discovery were made.

B. Recent Deposition Testimony Demonstrates the Corporate Records and Financial Documents of all Baranksyi-controlled Entities Should Be Produced.[1]

As this Court is aware, Plaintiffs Flame and Glory Wealth deposed a number of key witnesses beginning on July 1, 2014 in Istanbul, Turkey. During this week of testimony, Plaintiffs obtained evidence to further substantiate their claims that Defendants Freight Bulk and Vista Shipping, Inc. ("Vista") are the alter-egos, fraudulent transferees, and successors-in-interest of Defendant Industrial Carriers, Inc. ("ICI").

Beginning on July 4, 2014 and continuing to the next day, Plaintiffs deposed Ekaterina Bobrenko ("Ms. Bobrenko"), who testified she was the Chief Financial Officer for Vista. The excerpts of Ms. Bobrenko's testimony cited in Glory Wealth's memorandum are attached hereto collectively as Exhibit 1. Although she stated she serves as the CFO for Vista, she also testified she is paid by Sea Traffic Company, another Baranksyi-controlled entity, and that her workbook identifies Subsun Tranship and Black Sea Azoz Service as her employers. Ex. 1, Tr. at 12:2-10; 12:22-13:11; 34:10-12. Later, she testified that she considers herself the CFO for the Palmira Group as well. Ex. 1, Tr. at 134:4-6. She also testified that she acted on behalf of Columbus Maritime as an agent of Vista. Ex. 1, Tr. at 104:5-7. Ms. Bobrenko's own employment history,

[1] Glory Wealth received a production of documents from Freight Bulk on July 14, 2014 and understand from counsel's representations additional documents are forthcoming. Glory Wealth had difficultly accessing the production, which resulted in additional productions being made by Freight Bulk and sent to Glory Wealth today at 4:16 p.m. In light of the deadlines imposed by this Court and the upcoming trial, Glory Wealth files this motion to preserve its arguments regarding the scope of discovery and reserves all rights to amend the relief sought by this motion.

and her actions taken on behalf of the various entities, justify an expansion of discovery as it is clear there is little to no separation between the various entities.

She testified that she meets with Viktor Baranskyi at the same time every day for him to review the proposed bank transfers for the various entities within the umbrella of the Palmira Group. Ex. 1, Tr. at 20:3-21:8. Viktor Baranskyi then "goes through all of [the bank transfers]." *Id.* Ms. Bobrenko repeatedly testified that Viktor Baranskyi owns and controls all the companies which make up the Palmira Group. Ex. 1, Tr. at 33:25-34:3.

Ms. Bobrenko testified that Viktor Baranskyi maintains a bank box for various entities, and through various wire transfers, cash ends up in the bank box. Ex. 1, Tr. at 38:7-15. She further testified that cash from the bank box is used to pay bonuses to people like herself who work for multiple companies that are controlled by Viktor Baranskyi. She also testified that certain entities are used for "cashing in money," such as Red Bridge. Ex. 1, Tr. at 57:5-9.

Ms. Bobrenko's testimony clearly demonstrates that at a minimum, Viktor Baranskyi blurs the lines between the various entities he controls. Simply because some of the entities operated and controlled by Viktor Baranskyi are not named defendants does not place their documents outside the scope of the discovery, especially in light of Viktor Baranskyi's routine commingling of funds referenced in Ms. Bobrenko's recent deposition testimony. These additional entities are under the control of Viktor Baranskyi and operate with funds obtained from the named Defendants. *See* Fed. R. Civ. P. 34(a); *Steele Software Corp. v. DataQuick Info Sys., Inc.*, 237 F.R.D. 561, 564 (D. Md. 2006) ("Common relationship between a party and its related nonparty entity are particularly important to the determination of control."). Admittedly, Freight Bulk has produced certain corporate documents and financial records for certain of the Baranskyi-controlled entities, but Freight Bulk claims that such production is not made pursuant

to the Court's order and without waiving Freight Bulk's objections. Freight Bulk is simply cherry-picking which additional records it will produce without providing Glory Wealth with the full scope of the necessary discovery. Without litigating the possible waiver of its objections by Freight Bulk through its additional productions, Glory Wealth states that the Court should modify its prior order and direct Freight Bulk to produce the requested documents by all Baranksyi-controlled entities. Specifically, the Court should direct Freight Bulk to produce all responsive documents called for by Request Nos. 80-94, 133-134, 136-137, 148, and 164-170. To the extent the request as drafted is limited to named entities, the request should be read to include all Baranskyi-controlled entities, the full extent of which was not known to Plaintiffs at the time they propounded the requests.

## II. The Court Should Impose Sanctions on Freight Bulk For Its Failure to Comply With This Court's Prior Discovery Orders.

Both Plaintiffs have been forced to seek intervention from the Court to compel Freight Bulk to comply with its discovery obligations. Flame has filed five motions to compel, with Glory Wealth filing two as well as joining in on certain of the overlapping relief requested by Flame. By Orders dated April 30, 2014, the Court identified certain requests propounded by Plaintiffs to which Freight Bulk was ordered to respond. While Freight Bulk made an extensive document dump on Plaintiffs in the following weeks, quantity did not equate to quality. The production, done haphazardly and in violation of the rules for producing business records, was difficult for Plaintiffs to review and analyze. But upon Plaintiffs' review, it became clear that certain responsive documents were still outstanding. Since Freight Bulk failed to fully comply with the Court's order regarding discovery, Glory Wealth now seeks sanctions pursuant to Rule 37, including, but not limited to, reimbursement of fees, evidentiary preclusion, and adverse inferences drawn from Freight Bulk's failure to comply.

A. Standard of Review on Motion for Sanctions

The Fourth Circuit recognizes that district courts have wide latitude to impose discovery sanctions. *See, e.g. So. States Rack and Fixture, Inc., v. Sherwin-Williams Co.*, 318 F.3d 592, 595 (4th Cir. 2003). The Fourth Circuit has established four factors for determining appropriate sanctions under Rule 37. The court must determine 1) whether the non-complying party acted in bad faith, 2) the amount of prejudice that noncompliance caused the adversary, 3) the need for deterrence of the particular sort of non-compliance, and 4) whether less drastic sanctions would have been effective. *Ex., Anders v. Found. for Advancement*, 155 F.3d 500, 504 (4th Cir. 1998).

Rule 37 "provides that a court may sanction a party who fails to obey an order to provide or permit discovery by prohibiting that party from introducing late-filed matters into evidence." *Shammas v. Focarino*, 2014 WL 31282, at *1 (E.D.Va. Jan. 3, 2014) (citations omitted). *See also Financial Markets Int'l, Inc. v. Booz Allen Hamilton*, 2013 WL 5537817, at *3 (E.D. Va. Sept. 26, 2013) (sanctions available for failure to comply with court order include prohibiting the disobedient party from supporting or opposing designated claims or defenses).

Rule 37(b) specifically authorizes the court to preclude evidence where a party has failed to comply with discovery orders. *See Financial Markets Int'l, Inc.* 2013 WL 5537817 at *2. Rather, the matters embraced by the requests will be "taken as established." *Hammett v. Seig*, 2009 WL 3808373 (W.D. Va. Nov. 13, 2009) (where failure to respond to discovery was unjustified, facts designated in Plaintiff's sixty-three numbered admission requests were deemed established and defendant was prohibited from supporting or opposing any defenses or claims referenced or otherwise described in the Plaintiff's six numbered interrogatories).

B. Freight Bulk Failed To Produce Documents That Were The Subject of The Court's Orders

There are a significant number of areas where Freight Bulk failed to produce the documents and information subject to this Court's Order. For ease of reference, Glory Wealth groups together those related requests, explains what remains outstanding, and identifies the relief requested in light of Freight Bulk's failures.

1. *Corporate Records of Freight Bulk and Vista*[2]

Freight Bulk was ordered to respond to those requests that sought information regarding the corporate structure of Defendants Freight Bulk, the owner of the M/V Cape Viewer, and Vista, the alleged alter ego also controlled by Viktor Baranskyi. A copy of the Glory Wealth's First Request for the Production of Documents is attached hereto as Exhibit 2. Such documents are responsive to a number of Glory Wealth's requests:

> **Request No. 4** asks for all documents concerning records relating to the identify of all shareholders for each named Defendant.
>
> **Request No. 13** asks for all documents concerning the minutes of the board meetings of each named Defendant and its respective subsidiaries for the period from and including January 1, 2008.
>
> **Request No. 19** asks for correspondence and/or documents concerning the corporate structure of FBP, Vista, and ICI.
>
> **Request No. 53** asks for all correspondence, contracts, agreements, emails, applications for credit, bank transfers, charter parties, documents, memoranda, representations, statements, reports, or other writings or recordings exchanged between and/or among Defendant FBP and Vista Shipping, MKTM Ltd., Columbus Maritime Shipping Corporation, Sea Traffic Shipping Co., Tech Project LLC, Hachi Holdings, MetInvest and/or Hasden Enterprises (BVI), Treadstone, and/or Black Sea Service Co. relating to the CAPE VIEWER.

---

[2] Glory Wealth received a file transfer link from counsel for Freight Bulk purporting to contain a production of "Corporate Documents" by email on July 16, 2014 at 4:16 pm. Glory Wealth is undertaking a review of the production but in light of today's deadline imposed by the Court identifies this category of documents for the Court's consideration and reserves all rights. If this production is found to be complete, it is axiomatic that such production should have occurred prior to the recent depositions. Glory Wealth reserves the right to amend the relief requested by this motion, including but limited to, seeking reimbursement of the fees incurred in conducting such depositions.

> **Request No. 67** asks for all correspondence, documents, memoranda, representations, statements, reports, emails and/or other writings or recordings between and/or among ICI, Vista, FBP, and Hachi Holdings.

In fact, in its recent court filing dated July 11, 2014, Freight Bulk indicated that its May production included the corporate documents of Freight Bulk and Vista. (Dkt. 319 at 14). The documents received by Plaintiffs to date indicated that Hachi Holdings, a holding company owned entirely by Viktor Baranskyi, owns Freight Bulk Ltd., which owns Freight Bulk, the defendant here, which in turns own the M/V Cape Viewer. This Court recognized the inter-connected nature, and its importance, of this ownership structure in its Order overruling Freight Bulk's objections to the Court's discovery order. (Dkt. 192 at 5).

Yet, on July 14, 2014, Freight Bulk produced a Stock Transfer showing that the shares of Hachi Holdings were transferred to Lilliya Dariy, Viktor Baranskyi's mother, by Viktor Baranskyi on March 31, 2014. There is simply no justification for the belated production of such an important, and responsive, document. Freight Bulk waited until after key depositions were scheduled and took place to produce a key document, thereby depriving Plaintiffs of the opportunity to examine Freight Bulk's witnesses about the transfer. According to this document, Hachi is no longer part of the Viktor Baranskyi-controlled enterprise, a significant turn of events that has implications for this case. Hachi Holdings is the ultimate owner of the Cape Viewer, the asset currently attached in this jurisdiction. Despite Freight Bulk counsel's claims that Viktor Baranksyi still controls Hachi even in light of the transfer, such a transfer could be evidence of Viktor Baranskyi distancing himself from the asset currently subject to attachment. Moreover, that document is directly responsive to Request Nos. 4, 13, 19, 53, and 67, all requests that were identified in the Court's Order, Dkt 209 at 5. In light of this belated production, Glory Wealth has simply no confidence that the productions made by Freight Bulk to date encompass all the

corporate records and transactions requested and ordered by this Court to produce. In fact, Ms. Bobrenko testified that her computer was never accessed during the discovery process of this litigation to obtain any corporate documents, despite her position with the various companies and the fact that her computer is known to have responsive documents. Ex. 1, Tr. at 243:23-244:9.

Accordingly, Glory Wealth requests sanctions be imposed on Freight Bulk for its failure to comply with the discovery order. Specifically, in this instance, Glory Wealth asks that the Court find that Freight Bulk disregarded the corporate form with respect to this transaction and the transfer of stock to Viktor Baranskyi's mother was a sham transaction not done at arm's length and designed to avoid Viktor Baranskyi's creditors.

2. *Emails Sent or Received by Viktor Baranskyi*[3]

Freight Bulk was ordered to produce communications relevant to this litigation, which included email communications. Ms. Bobrenko testified in her deposition that she does communicate with Viktor Baranskyi by email and that she believed he used a gmail account through Google. Ex. 1, Tr. at 108:3-8. A number of requests propounded by Glory Wealth implicate email communications to or from Viktor Baranksyi.

Specifically, as further set forth by in the attached Request for the Production of Documents, the following Requests call for the production of emails to or from Viktor Baranskyi: Nos. 11, 19-22, 25-26, 29, 31-33, 40, 46-48, 52-53, 55-59, 66-67, 69-70, 72-75, 77, 95-114, 119, 125-128, 141, 157, and 163. Not a single email from or to Viktor Baranskyi was found within Freight Bulk's document production, despite each of the above requests seeking

[3] Glory Wealth received a file transfer link from counsel for Freight Bulk purporting to contain a production of "Baranskyi emails" by email on July 16, 2014 at 4:16 pm. Glory Wealth is undertaking a review of the production but in light of today's deadline imposed by the Court identifies this category of documents for the Court's consideration and reserves all rights. If this production is found to be complete, it is axiomatic that such production should have occurred prior to the recent depositions. Glory Wealth reserves the right to amend the relief requested by this motion, including but limited to, seeking reimbursement of the fees incurred in conducting such depositions.

communications from Viktor Baranskyi. The Court's prior order compelled Freight Bulk to respond to each of the enumerated requests. Freight Bulk's failure to comply with the Court's order warrants the imposition of sanctions pursuant to Rule 37.

Due to Freight Bulk's failure to comply with the requests as ordered by the Court, Glory Wealth asks the Court to find that had the emails been produced, the emails would have shown unfavorable evidence to the Defendants. In addition, Freight Bulk should be precluded from presenting any email communications from or to Viktor Baranskyi that was timely produced in discovery.

3. *Supporting Documentation for the Wire Transfer Ledgers*

While Freight Bulk did produce some cash and wire transfer ledgers, the ledgers provide what Glory Wealth believes to be a purposefully incomplete picture of the transactions between Defendants and the various entities.

> **Request 25** asks Freight Bulk to produce all correspondence, documents, memoranda, representations, statements, reports, or other writings or recordings concerning bank transfers, loan agreements, applications for credit between and among each of the Defendants and their subsidiaries for the period January 1, 2008 to present.
>
> **Request No. 26** asks Freight Bulk to produce all correspondence, documents, memoranda, representations, statements, reports, or other writings or recordings concerning each of the Defendants' payment of dividends to shareholders for the period January 1, 2008 to present.
>
> **Request No. 52** asks Freight Bulk to produce all correspondence, contracts, agreements, emails, applications for credit, bank transfers, charter parties, documents, memoranda, representations, statements, reports, or other writings or recordings exchanged between and/or among FBP and Vista Shipping, MKTM Ltd., Columbus Maritime Shipping Corporation, Sea Traffic Shipping Co., Tech Project LLC, Hachi Holdings, MetInvest and/or Hasden Enterprises (BVI), Treadstone, Aspinall Pte. Ltd. and/or Black Sea Service Co. for the period of January 2012 to the present.
>
> **Request No. 53** asks Freight Bulk to produce all correspondence, contracts, agreements, emails, applications for credit, bank transfers, charter parties,

> documents, memoranda, representations, statements, reports, or other writings or recordings exchanged between and/or among Defendant FBP and Vista Shipping, MKTM Ltd., Columbus Maritime Shipping Corporation, Sea Traffic Shipping Co., Tech Project LLC, Hachi Holdings, MetInvest and/or Hasden Enterprises (BVI), Treadstone, and/or Black Sea Service Co. relating to the CAPE VIEWER.

All of these Requests fall within the scope of the Court's order and Freight Bulk was ordered to fully comply with the requested information. Deposition testimony given by Ms. Bobrenko indicates that she was directed to make certain notations on the cash ledgers to support payments and transactions between and among Viktor Baranskyi's entities. Ex. 1, Tr. at 258:14-22. But no documents were produced by Freight Bulk to support the notations and descriptions found within the cash ledgers. Such documents fall squarely with the afore-mentioned requests and are within the scope of the Court's order.

Glory Wealth believes that had the supporting documentation for the cash and wire transfer ledgers been produced, it would likely have shown that the underlying transactions were not legitimate business transactions and were done to avoid creditors and create sham entities that were purposefully undercapitalized. Accordingly, Glory Wealth asks the Court to make a factual finding that the transactions referenced in the corporate ledgers lacked a legitimate business purpose and were executed with the sole purpose of fraudulently transferring funds and avoiding creditors.

4. *Attachment to Loan Agreement between Sea Traffic and Freight Bulk*

Glory Wealth specifically requested production of the Loan Agreement between Sea Traffic Shipping Co. (a Baranskyi-controlled entity) and Freight Bulk, which provided Freight Bulk with the funds necessary to purchase the M/V Cape Viewer. *See* Request Nos. 55-58. Freight Bulk did produce the referenced loan agreement but it was incomplete and missing attachments. The attachment purportedly indicates how the loan will be repaid to Sea Traffic.

Such an attachment is plainly responsive to the requests propounded by Glory Wealth and ordered by this Court to be complied with by Freight Bulk.

Glory Wealth believes that the failure to produce the repayment schedule is purposeful as Viktor Baranskyi never intended for the loan to be paid back. Glory Wealth therefore asks the Court to preclude Defendants from presenting any evidence at trial with respect to repayments made under the loan and for the Court to find that the loan was a sham transaction for the sole purpose of avoiding creditors and demonstrates Viktor Baranskyi's disregard for the corporate form.

5. *Charter for Harmony Falcon*

The M/V Harmony Falcon was the first vessel that Viktor Baranskyi, through Vista, chartered in October 2008. The Harmony Falcon was a vessel belonging to ICI, according to the ICI filings in Greece. Glory Wealth specifically requested all chartering documents for vessels owned and/or operated by Defendants Freight Bulk, Vista, and ICI.

> **Request 45** asks for copies of any and all emails or other correspondence, including, but not limited to, charter parties, contracts, mortgages, applications for credit, bank transfers, accounting records, statements of fact relating to any and all vessels Defendant ICI or its affiliates operated, chartered, and/or owned for the period January 1, 2008 to November 1, 2008.
>
> **Request 46** asks for copies of any and all emails or other correspondence, including, but not limited to, charter parties, contracts, mortgages, applications for credit, bank transfers, accounting records, statements of fact, relating to vessels Vista or its affiliates owned, chartered, and/or operated for the period of June 1, 2008 to the present.
>
> **Request 48** asks for copies of any and all emails or other correspondence, including, but not limited to, charter parties, contracts, mortgages, applications for credit, bank transfers, accounting records, statements of fact, relating to vessels FBP or its affiliates owned, chartered, and/or operated for the period of September 1, 2012 to September 30, 2013.

Each of these afore-mentioned requests was covered by the Court's Order. (Dkt. 209 at 5). Freight Bulk did not produce a charter for the Harmony Falcon, despite the fact that it was subject to charter during the time period.

Due to Freight Bulk's failure to produce such a key document, Glory Wealth asks the Court to impose sanctions in the form of an adverse finding that the charter was transferred by ICI to Vista without consideration and for the sole purpose of avoiding ICI's creditors.

6. *Documents from ICI*

Many of Glory Wealth's requests ask for documents relating to Defendant ICI. While ICI has not appeared in this action, this Court's ruling includes defendants that Viktor Baranskyi controls. Plaintiffs have alleged that by holding 18% of the shares of ICI, Viktor Baranskyi controls ICI. Therefore, all of the document requests propounded by Plaintiffs with respect to ICI should have been complied with. Request Nos. 1, 3-4, 16-22, 25-29, 30-32, 36-37, 39-46, 49, 67-70, 72, 75, 95-110, and 123 all seek documents relating to ICI and which should be considered within the control of Viktor Baranskyi, and therefore subject to the Court's order.

Freight Bulk, however, failed to produce any documents from ICI even though ICI documents should have been in Viktor Baranskyi's possession. This failure mandates Freight Bulk be sanctioned for its conduct. Glory Wealth asks the Court to find that had documents from ICI been produced, they would have been unfavorable to Defendants and supported Plaintiffs' claim that Vista and Freight Bulk are the alter egos, successors-in-interest, and fraudulent transferees of ICI.

**CONCLUSION**

For the reasons set forth above, Glory Wealth requests the Court grant its Motion for Reconsideration regarding the scope of discovery in light of the newly obtained deposition testimony. Glory Wealth also requests the Court grants its motion for sanctions, make the proposed adverse findings against Defendants in trial of this matter, or in the alternative, impose any other such relief in favor of Glory Wealth as necessary and just.

Dated: July 16, 2014

BY: Holland & Knight LLP

/s/ James H. Power
James H. Power (admitted *pro hac vice*)
31 West 52nd Street,
New York, NY 10019
(212) 513-3200
(212) 385-9010 (facsimile)
James.power@hklaw.com

/s/ Michelle T. Hess
Michelle Hess (VSB#71080)
31 West 52nd Street,
New York, NY 10019
(212) 513-3200
(212) 385-9010 (facsimile)
michelle.hess@hklaw.com

*Attorneys for Consolidated Plaintiff*
*Glory Wealth Shipping Pte*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of July, 2014, I electronically filed a true and correct copy with the Clerk of Court using the CM/ECF system, which will then send a notification of the filing to the following counsel of record:

Patrick M. Brogan
DAVEY & BROGAN, P.C.
101 Granby Street, Suite 300
Norfolk, Virginia 23510
pbrogan@daveybroganpc.com

Sergei Kachura
LAW OFFICES OF SERGEI KACHURA
311 North Center Avenue
Brownwood, TX 76801
svkachura@yahoo.com
*Attorneys for Defendant Freight Bulk Pte. Ltd.*

Steven M. Stancliff
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, VA 23510
sstancliff@cwm-law.com

Lauren Brooke Wilgus
William Robert Bennett III
Nicholas Robert Tambone
BLANK ROME LLP
405 Lexington Avenue
The Chrysler Building
New York, New York 10174
lwilgus@blankrome.com
wbennett@blankrome.com
NTambone@BlankRome.com
*Attorneys for Plaintiffs Flame S.A.*

Mark T. Coberly
Dustin M. Paul
VANDEVENTER BLACK LLP
101 W. Main Street
500 World Trade Ctr
Norfolk, VA 23510
mcoberly@vanblk.com
dpaul@vanblk.com
*Attorneys for Interested Party Vitol S.A.*

John Joseph Reilly
Paul Myung Han Kim
SQUIRE SANDERS LLP
30 Rockefeller Plaza, 23rd Floor
New York, NY 10112
john.reilly@squiresanders.com
paul.kim@squiresanders.com

David Harlen Sump
Leonard Leroy Fleisig
WILLCOX & SAVAGE PC
Wells Fargo Center
440 Monticello Ave, Suite 2200
Norfolk, VA 23510
dsump@wilsav.com
lfleisig@wilsav.com
*Attorneys for Intervenor Plaintiff Noble Chartering Inc.*

/s/Michelle T. Hess
Michelle T. Hess (VSB#71080)
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
(212) 513-3200
(212) 385-9010 (facsimile)
michelle.hess@hklaw.com
*Attorneys for Consolidated Plaintiff*
*Glory Wealth Shipping Pte Ltd.*