**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

FLAME S.A.,

                              Plaintiff,

GLORY WEALTH SHIPPING PTE LTD.,

                    Consolidated Plaintiff,

         v.

INDUSTRIAL CARRIERS, INC.,
VISTA SHIPPING, INC., and
FREIGHT BULK PTE. LTD., and
VIKTOR BARANSKIY,

                         Defendants.

Civil Action Nos.
2:13-cv-00658-RGD-LRL
2:13-cv-00704-RGD-LRL

**PLAINTIFF FLAME S.A.'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR SANCTIONS AND**
**PARTIAL RECONSIDERATION OF THE COURT'S APRIL 30, 2014 ORDER**

        Plaintiff Flame S.A. ("Flame"), by and through its undersigned counsel, respectfully

submits this memorandum of law in support of its Motion for Sanctions and Partial

Reconsideration of the Court's April 30, 2014 Order (ECF No. 210).[1]

                    <u>BACKGROUND AND PROCEDURAL HISTORY</u>

        Flame served three Requests for Production of Documents on Defendant Freight Bulk

Pte. Ltd. ("FBP"). The first ("First RFP") was dated December 6, 2013, and included nine

requests for production. (Ex. 1.) The second ("Second RFP") was dated February 12, 2014, and

included 68 additional requests for production. (Ex. 2.) The third ("Third RFP") was dated

---

[1] Reconsideration is warranted because the testimony of four non-party witnesses produced by
FBP establishes unequivocally that Viktor Baranskiy controls and operates roughly sixty (60)
companies as one, including Vista Shipping, Inc.

March 4, 2014, and included 44 additional requests for production. (Ex. 3.) The total number of categorized requests made to FBP is 121. The number of requests was reasonable and commensurate, considering the sophistication of Industrial Carriers and Vista's attempts to evade Industrial Carriers' creditors.

FBP resisted producing documents, and Flame filed four motions to compel: The first, dated December 13, 2013 (ECF No. 25); the second, dated March 5, 2014 (ECF No. 92), and the third and fourth, dated April 21, 2014 (ECF Nos. 179, 181). On April 30, 2014, the Court issued an Order granting in part and denying in part Flame's Third and Fourth Motions to Compel. (ECF No. 210 (the "April 30, 2014 Order").) The Court Ordered FBP to produce documents responsive to all three of Flame's requests for production by May 7, 2014, "but only as to those requests specifically tailored to named Defendants in this litigation." *Id.* The Court also sanctioned FBP for taking discovery positions that were "not substantially justified." (*Id.* at 7.) On the same date, the Court made the same ruling with respect to Consolidated Plaintiff Glory Wealth Shipping Pte Ltd.'s ("Glory Wealth") outstanding motions to compel. (ECF No. 209.)

On May 14, 2014, Flame filed a "Motion to Reconsider, or, In the Alternative, Rule 72(a) Objection to Magistrate's Discovery Order" (ECF No. 232). On May 18, 2014, Glory Wealth filed a Motion for Joinder to Flame's Motion for Reconsideration (ECF No. 238). On June 4, 2014, the Court denied the motions "[b]ecause there has not been an intervening change in controlling law, a proffer of new evidence not available earlier, or a need to correct a clear error of law or to prevent manifest injustice, the motion to reconsider." (ECF No. 274 at 1.)

After the Court entered the April 30, 2014 Order, FBP produced, albeit after the date FBP was required to produce, over 150,000 pages of documents to Flame and Glory Wealth, but the vast majority of those documents were a nonresponsive document dump. Now that Flame has

reviewed all the documents produced by FBP, and traveled to Turkey to take the depositions of four "non-party witnesses"[2] produced by FBP—Michael Ivanov, Dmitry Zorin, Katerina Bobrenko, and Sergey Bakalo—it is apparent FBP insufficiently responded to over 60 requests.

FBP should be sanctioned for failing to comply with the April 30, 2014 Order. It failed to produce an enormous amount of documents to Flame, and Flame has already been prejudiced by this failure after flying to Turkey for depositions with an incomplete understanding of the facts.

Moreover, in light of new evidence uncovered during the depositions, which is discussed in detail below, the scope of relevant discovery has expanded. Accordingly, Flame requests that the Court reconsider and modify the April 30, 2014 Order so that FBP's responses to all of Flame's discovery requests are not limited to "named Defendants in this litigation," but instead include all companies wholly-owned or affiliated with the Palmira Group, which are ultimately owned and controlled by Viktor Baranskiy, and which act as a singular entity.

## ARGUMENT

### FBP HAS FAILED TO COMPLY WITH THE COURT'S APRIL 30, 2014 ORDER

Flame holds a roughly $19.5 million judgment against Defendant Industrial Carriers, Inc. ("Industrial Carriers"). In this lawsuit, Flame alleges that FBP is an alter ego of Defendant Vista Shipping, Ltd. ("Vista"), Industrial Carriers, and Viktor Baranskiy, and asserts that Defendants are liable for the debts of judgment debtor Industrial Carriers. The issues for trial in this case include allegations that Defendants fail to follow corporate formalities, fraudulently transfer assets, routinely comingle and siphon funds from each other, fail to maintain proper corporate records, have an overlap of directors and non-functioning officers, share key employees, and that the corporate Defendants are dominated by Viktor Baranskiy, the sole shareholder.

---

[2] The witnesses testified that they were all employed by separate corporations (not named Defendants) controlled by Viktor Baranskiy, and that their "bonuses" were all paid in cash—United States dollars.

In order to prove these allegations at trial, Flame sent three document requests to FBP seeking numerous documents related to Flame's alter ego allegations. Throughout this lawsuit, FBP has resisted the production of documents, and to date, Flame has been forced to file five motions to compel. On April 30, 2014, following Flame's third and fourth motions to compel, the Court Ordered FBP to produce documents responsive to Flame's requests for production and sanctioned FBP for taking discovery positions that were "not substantially justified." (ECF No. 210 at 7.). FBP then produced—albeit late—over 150,000 pages of documents to Flame.

Now that Flame has completed its review of these numerous documents and deposed four defense witnesses, it is apparent that FBP has failed to produce many documents requested by Flame, in violation of the Court's April 30, 2014 Order. These missing documents can be categorized as documents related to: (1) Defendants' corporate records and structure; (2) emails sent and received by Viktor Baranskiy; (3) bank statements, wire transfer ledgers, and related supporting documents; (4) vessel records, including charter parties and fixture recaps, particularly for the M/V HARMONY FALCON; (5) audit documentation and correspondence; (6) Industrial Carriers documents; (7) all attachments to emails and other documents; and (8) evidence related to the defense of this lawsuit, including FBP's affirmative defenses.

Flame's specific relief requested for FBP's violations of the Court's April 30, 2014 Order will be addressed in Point II below. For ease of reference, Flame's outstanding requests for production, categorized as described above, are listed below.

### A. Defendants' Corporate Records and Structure

Flame sent the following requests regarding Defendants' corporate records and structure:

> **First RFP Request Four:** Any and all documents concerning records relating to the identity of all shareholders for each named Defendant and its respective subsidiaries . . . for the period from and including January 1, 2008 to December 1, 2013.

4

**Second RFP Request One:** A copy of each of the Defendants: a) Articles of incorporation; b) Bylaws; c) Stockholder ledgers; d) Shareholder agreements.

**Second RFP Request Two:** Any and all documents concerning the minutes of board meetings of each named Defendant and its respective subsidiaries for the period from and including January 1, 2008 to present.

**Second RFP Request Six:** All documents evidencing the full legal names of each officer(s), director(s), shareholder(s), and employee(s) of each of the corporate Defendants.

**Second RFP Request Seven:** All documents evidencing the corporate address(es), telephone number(s), fax number(s), and email address(s) of each of the Defendants.

**Second RFP Request Eight:** Any and all correspondence and/or documents concerning the corporate structure of FBP, Vista, and ICI.

**Second RFP Request Fifteen:** Any and all correspondence, documents, memoranda, representations, statements, reports, or other writings or recordings concerning each of the Defendants' payment of dividends to shareholders for the period January 1, 2008 to present.

**Second RFP Request Seventeen:** Copies of each of the Defendants' tax records and financial statements from January 2008 to present.

**Second RFP Request Twenty-Six:** Copies of all the Powers of Attorney executed by Victor Baranskiy on behalf of Defendants and their affiliates and subsidiaries.

**Second RFP Request Fifty-Four:** Copies of the Power(s) of Attorney authorizing Victor Baranskiy, [Dimitri] Zorin, [Sergey] Bakalo, [Katerina] Bobrenko to execute contracts and/or agreements for ICI, Vista, FBP and their affiliates and subsidiaries.

**Second RFP Request Fifty-Seven:** Copies of all of Victor Baranskiy's employment contracts.

**Second RFP Request Fifty-Eight:** Copies of all documents, correspondence relating to bonuses received by Victor Baranskiy while a director, officer, shareholder, and/or employee of any company, including, but not limited to ICI, FBP, and/or Vista.

**Second RFP Request Fifty-Nine:** Any and all correspondence, documents, memoranda, representations, statements, reports, emails and/or other writings or recordings regarding joint ventures entered into by ICI, FBP, and/or Vista.

**Second RFP Request Sixty-Six:** Copies of all correspondence, documents, emails. letters, agreements, invoices, wire transfers, [and] bank account details related to the sale of Victor Baranskiy's shares and/or stock in Vista to [Hachi] Holding. [See Baranskiy Transcript, pg. 178].

FBP produced documents partially identifying the identity of shareholders for FBP, but not Vista or Industrial Carriers. Some, but not all, board minutes were produced for FBP, but none for Vista or Industrial Carriers. No document evidencing the corporate structure, along with the full legal names of all shareholders, directors, officers, and employees, have been produced for any corporate Defendant. Except for very limited documents provided for FBP, no board resolutions, bylaws, shareholder agreements, tax records, and stock transfers have been provided. At least one stock transfer document existed before May 7, 2014; on July 14, 2014, two weeks after the depositions of the four defense witnesses, FBP produced a Stock Transfer showing that all 500 shares of Hachi Holding Ltd. were transferred from Palmira Holding N.V. to Liliya Dariy, Viktor Baranskiy's mother, for the total sum of one (1) euro. (Ex. 4.) Hachi Holding Ltd. owns Freight Bulk Ltd., which in turns owns Defendant Freight Bulk Pte. Ltd., the registered owner of the M/V CAPE VIEWER. Viktor Baranskiy signed on behalf of Palmira Holding N.V. Flame suspects that more stock transfers and other corporate documents exist, but have been deliberately withheld.

### Emails Sent or Received by Viktor Baranskiy

As noted in some of the documents produced by FBP, Viktor Baranskiy is identified as the Chief Executive Officer ("CEO") and sole beneficial owner of the roughly sixty companies that comprise the Palmira Group, including Defendants FBP and Vista. Viktor Baranskiy was

also an 18% shareholder of Industrial Carriers, where he worked in the chartering department. It defies belief that Viktor Baranskiy conducts business without sending emails. FBP only produced one email from Viktor Baranskiy from the Google "Gmail" account "viktorbaransky@gmail.com," despite Katerina Bobrenko testifying that she sent business communications to Viktor Baranskiy at his Gmail address. None of those communications were produced to Flame.

Many of Flame's requests for production implicate email communications to or from Viktor Baranskiy as the CEO and beneficial owner of the Palmira Group companies, including FBP and Vista. In a recent court filing, FBP confirmed that Viktor Baranskiy "has an e-mail account, with g-mail." (ECF No. 313 at 9.) Astonishingly, FBP then took the following position:

> To treat Victor Baransky as one of "Defendants" to whom the discovery order applies would destroy the "Defendants-only" delineation the Court has so carefully drawn, as treating Victor Baransky as such "Defendant" per whom discovery production was ordered would necessarily imply production of everything per every company Victor Baransky owns or ever owned.

(*Id.*) Viktor Baranskiy is a Defendant in this lawsuit. (*See* ECF No. 55.) The Court clearly Ordered FBP to respond to Flame's requests for production on the following terms: "FBP is only required to respond to discovery requests that are tailored specifically to the named Defendants in this action, regardless of whether the Defendant has been served or entered an appearance." (ECF No. 210 at 4.) There was no exception made for Viktor Baranskiy.

FBP also represents that Viktor Baranskiy "regularly cleans his g-mail account to avoid being a victim of a hacker attack, as is recommended by respectable internet security guides. Last [sic] time Victor Baransky has [sic] completely cleaned out his g-mail account—October 2013 (incoming), August 2013 (outgoing)." (ECF No. 313 at 9.) FBP intends to investigate if any unlawful spoliation of evidence has occurred in this lawsuit. It is certainly suspect that

Viktor Baranskiy, who is the CEO and beneficial owner of the Palmira Group of companies, a shareholder of Industrial Carriers, and the most important witness in this lawsuit, does not use a work email address, uses a Gmail account to conduct business, and routinely deletes those emails —yet, his employees all use work email addresses and apparently do not regularly delete emails to protect against "hackers."

### Supporting Documentation for the Wire Transfer Ledgers and Bank Statements

Flame sent the following requests regarding Defendants' wire transfer ledgers, bank statements, and related documents:

> **Second RFP Request Nine:** Any and all correspondence and/or documents concerning monthly bank statements for each of the Defendants and their subsidiaries for the period January 1, 2008 to present.
>
> **Second RFP Request Fourteen:** Any and all correspondence, documents, memoranda, representations, statements, reports, or other writings or recordings concerning bank transfers, loan agreements, applications for credit between and among each of the Defendants and their subsidiaries for the period January 1, 2008 to present.
>
> **Second RFP Request Twenty:** Copies of any and correspondence or other documentation relating to the identification and location of each of the Defendants' bank accounts.
>
> **Second RFP Request Twenty-Two:** Copies of any and correspondence or other documentation relating to the identification and location of Victor Baranskiy's personal bank accounts.
>
> **Second RFP Request Twenty-Five:** Copies of any and correspondence, documentation, emails, contracts, agreements, and bank account records held at BNP Paribas for ICI, FBP, and Vista.
>
> **Second RFP Request Twenty-Seven:** Copies of all of Victor Baranskiy's personal banking records supporting the following statement made by Mr. Baranskiy at ¶ 13 of his declaration (Document No. 19-1) filed with the Court on December 5, 2013: "Vista began trading in the shipping market during November 2008, and as I explained above, I used my personal savings and

8

borrowings to fund its initial activities. At the time, hire rates were only a few hundred USD/day so this was manageable for me."

**Third RFP Request Seventy-Eight:** Any and all correspondence and/or documents concerning monthly bank statements for Sea Traffic Shipping Co., Columbus Maritime Shipping Corporation, Tech Project LLC and MKTM Ltd. for the period January 1, 2008 to present.

**Third RFP Request Eighty-Four:** Any and all correspondence, documents, memoranda, representations, statements, reports, emails or other writings or recordings concerning bank transfers, loan agreements, applications for credit between and among each of the Defendants and Sea Traffic Shipping Co. for the period January 1, 2008 to present.

**Third RFP Request Eighty-Eight:** Copies of any and all emails or other correspondence or documents, including, but not limited to, charter parties, contracts, mortgages, applications for credit, bank transfers, accounting records, statements of fact between Defendants and Sea Traffic Shipping Co. relating to any and all vessels operated, chartered, and/or owned by Defendants for the period January 1, 2008 to present.

**Third RFP Request Ninety-Two:** Any and all correspondence, contracts, agreements, emails, applications for credit, bank transfers, charter parties, documents, memoranda, representations, statements, reports, or other writings or recordings exchanged between and/or among Defendants and Sea Traffic Shipping Co. for the period January 1, 2008 to present.

**Third RFP Request Ninety-Six:** Any and all correspondence, contracts, agreements, emails, applications for credit, bank transfers, charter parties, documents, memoranda, representations, statements, reports, or other writings or recordings exchanged between and/or among Defendants and Sea Traffic Shipping Co. for the period January 1, 2008 to present relating to the CAPE VIEWER.

FBP produced some, but not all, monthly bank statements and wire transfer documents. For instance, FBP failed to provide the bank statements and related documentation for Viktor Baranskiy's personal bank accounts. Viktor Baranskiy testified during his December 12, 2013 deposition that he started Vista with $1 million of his personal funds given to him by his mother

in a suitcase, along with his personal savings and loans from friends. Yet, he has failed to produce his personal bank statements to Flame. In fact, a review of Alpen Shipmanagement Co.'s bank statements show that Viktor Baranskiy has been using that companies' funds for personal expenses, such as ski vacations in France, aircraft charters, a high school boarding school in Switzerland, and medical expenses. FBP "voluntarily" produced Sea Traffic Shipping Co.'s bank records for the years 2008, 2009, 2010, 2011, and 2013, yet withheld the records for the critical year of 2012, when Sea Traffic Shipping Co. purportedly received funds from Vista, which it then loaned to FBP for the purchase of the M/V CAPE VIEWER. Flame suspects that additional documents exist and are being withheld from Flame in violation of the Court's April 30, 2014 Order.

**Attachment to the Loan Agreement Between Sea Traffic Shipping Co. and FBP**

Flame sent the following requests regarding the Loan Agreement between Sea Traffic Shipping Co. and FBP:

> **Second RFP Request Forty-Five:** Any and all correspondence, drafts, documents, emails exchanged between [Katerina] Bobrenko and Sea Traffic and/or FBP relating to loan agreement number 35/11.

> **Second RFP Request Forty-Six:** Any and all correspondence, documents, memoranda, representations, statements, reports, emails and/or other writings or recordings evidencing security taken by Sea Traffic to secure the loan number 35/11 with FBP.

> **Second RFP Request Forty-Seven:** Any and all correspondence, documents, memoranda, representations, statements, reports, emails and/or other writings or recordings regarding interest charged by Sea Traffic and/or paid by FBP relating to loan agreement number 35/11.

> **Third RFP Request 100:** Any and all correspondence, drafts, documents, addenda, emails, invoices relating to loan agreement number 35/11 between FBP and Sea Traffic Shipping Co.

> **Third RFP Request 101:** Any and all correspondence, drafts, documents, emails exchanged between [Katerina] Bobrenko and Sea Traffic and/or FBP relating to loan agreement number 35/11.
>
> **Third RFP Request 102:** Any and all correspondence, documents, memoranda, representations, statements, reports, emails and/or other writings or recordings evidencing security taken by Sea Traffic to secure the loan number 35/11 with FBP.
>
> **Third RFP Request 103:** Any and all correspondence, documents, memoranda, representations, statements, reports, emails and/or other writings or recordings regarding interest charged by Sea Traffic and/or paid by FBP relating to loan agreement number 35/11.

Katerina Bobrenko testified that there is an attachment to the Loan Agreement describing the terms of repayment, which has not been produced. (Bobrenko Dep. 111:19-112:3, July 5, 2014.) The attachment was not created contemporaneously with the Loan Agreement, but it seems to have been created by Viktor Baranskiy after this lawsuit began. (*Id.* at 113:6-19 (testifying that Viktor Baranskiy handed her the document at the "end of the year 2013 or beginning of year 2014").) Moreover, the Loan Agreement is dated August 9, 2012, yet FBP was not incorporated until September 21, 2012. It is highly suspect that in an arm's length transaction, a company would loan another company that is not yet incorporated and has no assets $18.5 million without either agreed-upon terms of repayment or collateral. Yet, no documents evidencing repayment terms or collateral have been produced to Flame. Based on Katerina Bobrenko's testimony that these documents exist, FBP's failure to produce the documents to Flame violates the Court's April 30, 2014 Order.

### Charter Parties and Fixture Recaps for Vessels, Including, but not Limited to, the M/V HARMONY FALCON

Flame sent the following requests regarding vessel-related documents, including the M/V HARMONY FALCON:

**Second RFP Request Nineteen:** Copies of any and all emails or other correspondence between Defendants and shipbrokers, including, but not limited to, Ifchor Group; Freight Investor Services Ltd. ("FIS"); and/or GFI Group, relating to each of the Defendants' purchase, charter, or operation of any vessel, for the period of January 1, 2008 to present, including, but not limited to, CAPE VIEWER and CAPE CLIMBER.

**Second RFP Request Thirty-Five:** Copies of any and all emails or other correspondence, including, but not limited to, charter parties, contracts, mortgages, applications for credit, bank transfers, accounting records, statements of fact relating to any and all vessels Defendant ICI or its affiliates operated, chartered, and/or owned for the period January 1, 2008 to November 1, 2008.

**Second RFP Request Thirty-Six:** Copies of any and all emails or other correspondence, including, but not limited to, charter parties, contracts, mortgages, applications for credit, bank transfers, accounting records, statements of fact, relating to vessels Vista or its affiliates owned, chartered, and/or operated for the period of June 1, 2008 to the present.

**Second RFP Request Thirty-Seven:** Copies of any and all emails or other correspondence, including, but not limited to, charter parties, contracts, mortgages, applications for credit, bank transfers, accounting records, statements of fact, relating to vessels FBP or its affiliates owned, chartered, and/or operated for the period of September 1, 2012 to September 30, 2013.

**Second RFP Request Thirty-Eight:** Copies of all correspondence, including but not limited to Notices of Entry, Hull and Machinery insurance and Certificates of Insurance, by and between any agent, broker, insurance company, and/or Mutual P&I Club regarding vessels owned, operated, and/or chartered by Defendant ICI.

**Second RFP Request Thirty-Nine:** Copies of all correspondence, including but not limited to Notices of Entry, Hull and Machinery insurance and Certificates of Insurance, by and between any agent, broker, insurance company, and/or Mutual P&I Club regarding vessels owned, operated, and/or chartered by Defendant Vista.

**Second RFP Request Forty:** Copies of all correspondence, including but not limited to Notices of Entry, Hull and Machinery insurance and Certificates of Insurance, by and between any agent, broker, insurance company, and/or Mutual P&I Club regarding vessels owned, operated, and/or chartered by Defendant FBP.

**Second RFP Request Sixty-Two:** Any and all correspondence, documents, memoranda, representations, statements, reports, emails and/or other writings or recordings for every vessel managed, operated, chartered, and/or owned by Vista.

**Third RFP Request 104:** A copy of any and all Management Agreements between FBP and Sea Traffic Shipping Co. relating to any and all vessels operated, chartered, and/or owned by each of the Defendants for the period January 1, 2008 to present.

FBP owns the M/V CAPE VIEWER, yet Vista chartered the vessel to Noble Chartering Inc. for the voyage that brought the ship to the Eastern District of Virginia. FBP failed to produce any agreements, correspondence, or other documents evidencing a "bareboat charter" or other arrangement between Vista and FBP for Vista's use, charter, and operation of the M/V CAPE VIEWER, or any other evidence demonstrating that FBP allowed Vista to charter the vessel to Noble Chartering, Inc. Moreover, although the M/V HARMONY FALCON was on charter to Industrial Carriers in late September 2008, and was listed as an asset in Industrial Carriers' bankruptcy, documents in the record indicate that Vista was paid hire and received other benefits as a result of chartering the M/V HARMONY FALCON in October 2008. No charter party or fixture recap between Vista and any other company for the charter of the M/V HARMONY FALCON has been produced. FBP failed to produce these documents in violation of the Court's April 30, 2014 Order.

**Audit Documentation and Correspondence**

Flame sent the following requests regarding correspondence with corporate auditors:

**Second RFP Request Ten:** Any and all correspondence, documents, memoranda, representations, statements, reports, emails, drafts, or other writings or recordings by PricewaterhouseCoopers relating to each of the Defendants and their subsidiaries for the period January 1, 2008 to present.

**Second RFP Request Eleven:** Any and all correspondence, documents, memoranda, representations, statements, reports, or other writings or recordings by any auditor relating to each of the

13

Defendants and their subsidiaries for the period January 1, 2008 to present.

**Second RFP Request Twenty-Four:** Copies of all accounting records by and between FBP, Vista and Deloitte.

Katerina Bobrenko testified that she communicated with auditors and provided documents to the auditors, yet none of these communications and other documents were produced to Flame, in violation of the Court's April 30, 2014 Order.

### Documents from Industrial Carriers

Flame sent the following requests regarding Industrial Carriers documents: (1) First RFP Request One; (2) First RFP Request Two; (3) Second RFP Request Five; (4) Second RFP Request Twenty-Eight; (5) Second RFP Request Twenty-Nine; (6) Second RFP Request Thirty; (7) Second RFP Request Thirty-One; (8) Second RFP Request Thirty-Two:; (9) Second RFP Request Thirty-Three; (10) Second RFP Request Thirty-Four; and (11) Second RFP Request Sixty-One.

At an Industrial Carriers shareholder meeting on February 1, 2008, it was agreed that Viktor Baranskiy would be "admitted" as a shareholder effective January 1, 2008. Viktor Baranskiy is now an 18% shareholder of Industrial Carriers. Along with his father, Sergei Baranskiy's 33% stake, the father and son were majority shareholders of the company. It is unreasonable that Viktor Baranskiy does not have access to a single Industrial Carriers document, especially because Industrial Carriers is still an active company following its failed attempt to declare bankruptcy. Accordingly, FBP's failure to produce Industrial Carriers documents is a deliberate violation of the Court's April 30, 2014 Order.

### All Attachments to Emails and Other Documents

This category was addressed in Flame's Fifth Motion to Compel filed on June 27, 2014. (ECF No. 299.) To the extent this Motion was mooted by the Court's comments during the

telephone conference held on July 11, 2014, Flame now seeks sanctions under Federal Rule of Civil Procedure 37(b) for FBP's failure to comply with the Court's April 30, 2014 Order.

FBP was ordered to produce *all* responsive documents. (ECF No. 210.) FBP eventually began producing responsive documents, including several thousand e-mail communications, in PDF format. But FBP failed to produce the attachments to those e-mails and to other documents. Many of the emails produced contain attachments, but not *a single* attachment was produced to Flame.

FBP chose to file a response to Flame's Fifth Motion to Compel, although the Motion seems to be moot. (ECF No. 319.) In its response, FBP takes the following positions:

- Flame must identify to FBP the attachments Flame desires. (*Id.* at 9.)

- The Court's Order compelling FBP to produce all relevant documents covers documents FBP considers to be "not even remotely related to the alter ego cause of action." (*Id.*)

- "While in some instances e-mails and other documents can indeed be relevant for an alter ego cause of action (i.e., when concurrent existence is the gist of the cause of action), this is not the case here. As there is no dispute that ICI became defunct as a company in October 2008, there is simply no way there could be communication or business dealings between Vista or FBP and a long-defunct ICI." (*Id.* n.26.)

- "FBP does not know which produced e-mails do, and which do not, have attachments that may have been not produced." (*Id.* at 10.)

- Because Flame introduced over 150 exhibits during the July 1-5 depositions, Flame has a "good understanding of FBP's production," and the request for attachments is simply an attempt to swamp FBP's counsel with "busy work." (*Id.* n.29.)

This situation is identical to *Skepnek v. Roper & Twardowsky, LLC*, 2014 U.S. Dist. LEXIS 11894 (D. Kan. Jan. 27, 2014), a fee dispute case where the district court ordered defendant law firm to produce specific e-mail communications. The defendant produced the e-mails in PDF format without the attachments. Exactly as in this case, when the parties met and conferred in *Skepnek*, "defendants claimed that the e-mail server search was not capable of

15

producing the attachments to the e-mails and asked that plaintiffs request each specific attachment they seek." *Id.* at *4. The district court rejected that excuse and defendant's attempt to shift the burden to the plaintiff: "It is unclear why defendants claim that it is impossible to include every attachment to the produced e-mails but somehow, they are able to produce specific attachments upon request." *Id.* The district court found that the defendant did not have a valid excuse for not producing the missing attachments, and ordered it do so immediately. *Id.* at *5.

Like the defendant in *Skepnek*, FBP has no valid excuse for not producing the e-mail attachments. Flame's requests used the terms "document," communication," and "electronically stored information" in the broadest sense possible, thereby making the attachments indistinguishable parts of the e-mails. *See* Exhibit A (defining these terms "in the broadest sense allowed under Rule 34(a)"). And despite FBP's suggestions otherwise, the attachments are directly related to Flame's claims. The attachments are, among other things, bank records, P&I and hull insurance coverage for vessels, and correspondence concerning vessel charters. The Court should order FBP to immediately produce any attachments to e-mails already produced.

In sum, FBP's position is that although it admittedly violated the Court's April 30, 2014 Order by failing to produce attachments to responsive documents, it should not have not produce all attachments to those documents because FBP believes those documents are "not even remotely related to the alter ego cause of action." It is not for FBP to decide what evidence Flame needs to support its case at trial. None of FBP's excuses justify violating the Court's April 30, 2014 Order.

### Defense Evidence

Flame sent the following requests regarding FBP's defense evidence:

**Second RFP Request Sixty-Seven:** Any and all documents not previously identified above, which Defendants intend to reply upon or use at depositions and/or trial of this matter.

To date, FBP has not identified or produced a single document to support any affirmative defenses stated in the Amended Answer, and has not identified or produced a single document that FBP plans to use at trial to rebut Flame's evidence in support of its case in chief. Accordingly, FBP has failed to comply with the Court's April 30, 2014 Order.

**THE COURT SHOULD IMPOSE SANCTIONS ON FBP UNDER FEDERAL RULE OF CIVIL PROCEDURE 37(b)**

**A.  Standard of Review for Sanctions Under Federal Rule of Civil Procedure 37**

Federal Rule of Civil Procedure 37(b) provides for sanctions to be imposed on a party that fails to comply with court orders directing the production of discovery. Those sanctions include: "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence" and ordering "the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Fin. Markets Int'l, Inc. v. Booz Allen Hamilton, Inc.*, No. 11-1299, 2013 WL 5537817, at *2 (E.D. Va. Sept. 16, 2013).

The Fourth Circuit has established four factors to determine appropriate sanctions under Rule 37. "The court must determine (1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998). "The party facing sanctions carries the burden of demonstrating that his failure to comply was harmless or substantially justified, and the district court has 'broad

17

discretion' in determining whether such a burden has been met." *Bailey v. Christian Broad.*

*Network*, 483 F. App'x 808, 810 (4th Cir. 2012).

Federal Rule of Civil Procedure 37(b)(2) provides that if a party fails to

obey an order to provide or permit discovery, "the court where the action is

pending may issue further just orders. They may include the following:"

> **(i)** directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> **(ii)** prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> **(iii)** striking pleadings in whole or in part;
>
> . . . .
>
> **(vi)** rendering a default judgment against the disobedient party . . . .
>
> . . . .
>
> **(C)** *Payment of Expenses.* Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(A) and (C).

**Proposed Sanctions**

Flame requests that the following sanctions be imposed on FBP for its failure to comply

with the Court's April 30, 2014 Order:

**The Court Should Strike FBP's Answer and Enter a Default Judgment Against FBP Under Rule 37(b)(2)(A)(iii)-(vi)**

Since the initiation of this action, FBP has resisted producing any documents to Flame, and after Flame filed its third and fourth motions to compel, FBP was sanctioned for taking discovery positions that are "not substantially justified" and Ordered to produce all responsive documents. (ECF No. 210 at 7.) Despite dumping over 150,000 pages of documents on Flame, it is apparent that FBP has deliberately chosen not to comply with the Court's Order, and to withhold critical documents from Flame, in order to stifle Flame's ability to prosecute this lawsuit and obtain a judgment. Although striking an answer and entering a default judgment are extraordinary remedies, those remedies are warranted here. FBP's failure to honor its discovery obligations and brazen violations of this Court's April 30, 2014 Order are egregious, and the Court should use its discretion to strike the Answer and enter a default judgment against FBP. In the alternative, if the Court declines to strike the Answer and enter a default judgment, alternative sanctions under Rule 37(b) are warranted, as discussed below.

Some examples of FBP's blatant disregard of its discovery obligations include:

- FBP claims that it received a loan to purchase the M/V CAPE VIEWER from Sea Traffic Shipping Co., and that Vista provided those funds to Sea Traffic Shipping Co. (ECF No. 104 at 6.) Although the Loan Agreement has been produced to Flame, Katerina Bobrenko testified that there is an attachment to the Loan Agreement describing the terms of repayment, which has not been produced. (Bobrenko Dep. 111:19-112:3, July 5, 2014.) The attachment was not created contemporaneously with the Loan Agreement, but it seems to have been created by Viktor Baranskiy after this lawsuit began. (*Id.* at 113:6-19 (testifying that Viktor Baranskiy handed her the document at the "end of the year 2013 or beginning of year 2014").)

19

- FBP did not produce any Ukrainian workbooks[3]—or any other document showing corporate structure or listing the full legal names of each officer, director, shareholder, and employee) for any deponents or other employees—with the exception of Viktor Baranskiy's workbook. The workbooks are responsive and material to Flame's allegations. Each of the deponents testified about their workbooks, but because they have not been produced to Flame, Flame was unable to question them in detail about the contents of the workbooks. Employment history of key employees will be a factor when analyzing alter ego.

- On July 14, 2014, two weeks after the depositions of four key defense witnesses, FBP produced a Stock Transfer showing that all 500 shares of Hachi Holding Ltd. were transferred from Palmira Holding N.V. to Liliya Dariy, Viktor Baranskiy's mother, for the total sum of one (1) euro. (Ex. 4.) Hachi Holding Ltd. owns Freight Bulk Ltd., which in turns owns Defendant Freight Bulk Pte. Ltd., the registered owner of the M/V CAPE VIEWER. Viktor Baranskiy signed on behalf of Palmira Holding N.V. The Stock Transfer document is dated March 31, 2014, and was acknowledged by the Marshall Islands special agent on April 14, 2014. This document is responsive to Flame's requests for production and material to Flame's allegations in this lawsuit— not to mention, Viktor Baranskiy is effectively attempting to sever the link between the Palmira Group of companies and the asset under attachment in this lawsuit, the M/V CAPE VIEWER. This document was in existence before the Court entered the

---

[3] According to Viktor Baranskiy, a Ukrainian "workbook" is an official book that lists all the jobs an employee has held, where the employee is currently working, and information describing why a person left a company. (Baranskiy Dep. 31:21-32:4, Dec. 12, 2013.) Workbooks are supposed to be held by company bookkeepers so that they may be inspected by Ukrainian authorities. (Bakalo Dep. 136:10-24, July 4, 2014.)

April 30, 2014 Order, and should have been produced to Flame on or before May 7, 2014. Had FBP complied with the Court's April 30, 2014 Order and timely produced this document to Flame before the depositions, Flame surely would have questioned FBP's witnesses about the document.

- On July 16, 2014, the date of this memorandum of law, FBP's counsel sent Plaintiffs a link to a document database entitled "Additional voluntarily produced docs in July." Contained in the database are the following categories of documents:

  - Attachments to Audited Financial Correspondence

  - M/V CAPE VIEWER Operations Email Attachments

  - Corporate Documents

  - Protection & Indemnity/Hull (*i.e.* insurance) Records

  - Viktor Baranskiy Personal Emails

Flame has not yet had a chance to analyze these documents, but the categories alone indicate that these documents are responsive and should have been produced on or before May 7, 2014 under the Court's April 30, 2014 Order. (ECF No. 210 at 7.)

### Alternatively, the Court Should Enter An Order Establishing As True Certain Facts as Flame Claims, and Prohibiting FBP From Introducing Designated Matters in Evidence Under Rule 37(b)(2)(A)(i)-(ii)

Alternatively, if the Court does not strike FBP's Answer and enter a default judgment in favor of Flame, the Court should enter an Order stating that any documents requested by Flame that were not produced by FBP would have been helpful to Flame but harmful to FBP, and that FBP is precluded from introducing those documents as evidence at trial. FBP cannot rely on the argument that these documents simply do not exist, because it is unreasonable that these

21

categories of documents—*e.g.* corporate records, charter party for the M/V HARMONY FALCON, resolutions of the board of directors approving inter-company loans, purchasing of vessels, etc., as outlined above—do not exist.

The Court should enter an Order designating the following facts, to be established as true, in addition to any other facts designated by the Court:

- To the extent FBP, Vista, Industrial Carriers, and Viktor Baranskiy have not produced:

  o corporate documents for all corporate Defendants (including, but not limited to: shareholder agreements, resolutions of the board of directors, bylaws, minutes of board meetings, lists of officers, directors, shareholders, and directors, documents evidencing dividend payments, tax records, documents evidencing the payment of salaries and bonuses, documents evidencing joint ventures, and documents evidencing transfers or sales of shares among the named Defendants);

  o the attachment to the Loan Agreement evidencing repayment terms or negotiations between Sea Traffic Shipping Co. and FBP;

  o loan agreements evidencing and/or board resolutions approving the transfer or loan of funds between Defendants and their parents and subsidiaries (including, but not limited to, the transfer of funds between Vista and Sea Traffic Shipping Co., which Sea Traffic Shipping Co. then loaned to FBP for the purchase of the M/V CAPE VIEWER);

- agreements, correspondence, or other documents evidencing a "bareboat charter" or other arrangement between Vista and FBP for Vista's use, charter, and operation of the M/V CAPE VIEWER; and

- correspondence and all other documents exchanged with PricewaterhouseCoopers, Deloitte, and any other auditor or accountant, regarding the financial audits of the Vista Group of companies and the Palmira Group of Companies;

the Court should enter an Order stating that it is established as true that FBP, Vista, and Industrial Carriers: (1) fail to observe corporate formalities; (2) fail to maintain proper corporate records; (3) have non-functioning officers; and (4) are controlled by a dominant stockholder; and (5) have an overlap of directors.

- To the extent FBP, Vista, Industrial Carriers, and Viktor Baranskiy have not produced Viktor Baranskiy's personal bank records, the Court should enter an Order stating that it is established as true that Viktor Baranskiy comingles the funds of FBP, Vista, and Industrial Carriers, and uses the funds to pay for his personal expenses.

- To the extent FBP, Vista, Industrial Carriers, and Viktor Baranskiy have not produced evidence of a charter party between Vista and any other company for the charter of the M/V HARMONY FALCON in or around October 2008, the Court should enter an Order stating that it is established as true that Industrial Carriers fraudulently conveyed the right to charter the M/V HARMONY FALCON, and collect hire payments or any other financial benefit from the vessel's charter, to Vista, because Industrial Carriers conveyed the right to charter the vessel without consideration and with the intent to defraud existing creditors of Industrial Carriers, including Flame.

23

- To the extent FBP, Vista, Industrial Carriers, and Viktor Baranskiy have not produced any Industrial Carriers documents, the Court should enter an Order stating that it is established as true that because Industrial Carriers is still an active company, and because Viktor Baranskiy is an 18% shareholder of Industrial Carriers, it is unreasonable that Viktor Baranskiy does not have access to any Industrial Carriers documents, and accordingly, had any Industrial Carriers documents been produced to Flame in compliance with the Court's April 30, 2014 Order, the documents would have been favorable to Flame and harmful to Defendants.

- To the extent FBP, Vista, Industrial Carriers, and Viktor Baranskiy have not produced Viktor Baranskiy's personal bank records, the Court should enter an Order stating that it is established as true that Viktor Baranskiy comingles the funds of FBP, Vista, and Industrial Carriers, and uses the funds to pay for his personal expenses.

In addition to the above sanctions under Rule 37(b)(2)(A)(i), the Court should also prohibit FBP under Rule 37(b)(2)(A)(ii), from opposing Flame's claims at trial with any evidence that has not yet been produced to Flame, including, but not limited to, any evidence supporting the defense of Flame's claims, including affirmative defenses.

### The Court Should Order FBP to Pay Flame's Expenses Related to FBP's Failure to Obey the April 30, 2014 Order.

FBP should also be ordered to "to pay the reasonable expenses, including attorney's fees, caused by the failure" of FBP to obey the Court's April 30, 2014 Order. Fed. R. Civ. P. 37(b)(2) (C). The documents FBP failed to produce to Flame are material to Flame's case, and had FBP produced the documents to Flame before the July 1-5 depositions, Flame would have questioned the witnesses about the documents.

24

Flame has incurred the following expenses because of FBP's failure to comply with its discovery obligations:

- Costs and attorney's fees to prepare for, and attend, the July 1-5 depositions of Michael Ivanov, Dimitri Zorin, Sergey Bakalo, and Katerina Bobrenko, in Istanbul, Turkey.

- Any future costs and attorney's fees incurred to retake the depositions of Michael Ivanov, Dimitri Zorin, Sergey Bakalo, and Katerina Bobrenko.

- Costs, and any future costs, incurred by Flame's expert to revise and supplement his report based on any new, untimely evidence received by Flame from FBP.

- Flame's attorney's fees incurred to review and analyze the untimely documents produced by FBP after depositions concluded on July 5, 2014.

- Flame's attorney's fees and costs incurred to prepare, file, and argue this Motion.

- To the extent this lawsuit is stayed or delayed as a result of FBP's failure to comply with the Court's April 30, 2014 Order, any attorney's fees or costs incurred as a result of the delay, including, but not limited to, additional *custodia legis* costs.

**THE COURT SHOULD RECONSIDER, IN PART, THE APRIL 30, 2014 ORDER AND BROADEN THE SCOPE OF DISCOVERY**

On April 10, 2014, the Court issued an order stating that the issue of "alter ego" regarding the Defendants is a proper subject of discovery. (ECF No. 149). In the April 30, 2014, Order, the Court directed FBP to begin producing documents responsive to certain of Plaintiffs' requests for production that were in the possession of those entities controlled by Viktor Baranskiy, but only to the extent the entities are named defendants in this action. Flame, later joined by Glory Wealth, moved this Court to reconsider this limitation on discovery. (ECF No. 232). In denying Flame's motion for reconsideration, the Court stated that Plaintiffs failed to

25

"cite an intervening change in controlling  law, make a proffer of new evidence not available earlier, or demonstrate a need to correct a clear error of law or prevent manifest injustice." (ECF No. 274). By this Motion, Flame requests the Court reconsider its previous limitation on discovery in light of the newly obtained testimony from recent depositions.

### A.  Standard of Review for Motion for Reconsideration Under Rule 54(b)

Federal Rule of Civil Procedure 54(b) provides, in relevant part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end this action as to any of the claims or parties and may be revised at any time before the entry of judgment adjudicating all the claims and the parties' rights and liabilities.

"A district court may grant a motion for reconsideration under Rule 54(b): (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available earlier; or (3) to correct a clear error of law or prevent manifest injustice." *LaFleur v. Dollar Tree Stores, Inc.*, No. 12-CV-00363, 2014 WL 2121563, at *1 (E.D. Va. May 20, 2014) (citing *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993)).

Here, Flame's request for the Court to reconsider a portion of its April 30, 2014 Order is based on the second factor: new evidence that was not available to Plaintiffs, or the Court, when Plaintiffs requested that the scope of discovery be expanded beyond the named Defendants.

### Reconsideration of the April 30, 2014 Order is Appropriate Because the July 1-5 Depositions Uncovered New Evidence Not Available on April 30, 2014

The depositions held in Istanbul, Turkey the week of July 1-5, 2014 were enlightening, and establish that the "Vista Group" of companies, which included Defendant Vista Shipping Ltd. ("Vista"), no longer exists, and most of those companies are now part of the "Palmira Group," which consists of approximately sixty single-purpose companies, including Vista and

FBP. (*See* Bobrenko Dep. 133:25-134:6, July 5, 2014.) All of the Palmira Group companies are owned and controlled by Viktor Baranskiy and appear to act as a single entity by, for instance: (1) sharing employees; (2) comingling funds; and (3) making routine wire transfers to each other without written documentation or consideration. (*See* Bobrenko Dep. 30:2-6, July 4, 2014.) A number of facts were established during the depositions that further demonstrate that the Palmira Group companies act as a singular entity.

First, although FBP is the only Defendant to appear in this litigation, FBP "volunteered" to produce four non-employees to testify as fact witnesses at deposition. Deponent Michael Ivanov, a former key "employee" of Industrial Carriers, testified as a witness for FBP on July 1-2. However, Ivanov's workbook lists his employer as "Columbus Maritime Co. Ltd." Ivanov testified that he is the Director of Columbus Maritime Co. Ltd. and that Vista is Columbus Maritime Co. Ltd.'s only customer, yet he was unable to state how much money Vista had paid Columbus Maritime Co. Ltd. in the past year. (Ivanov Dep. 174:11-175:19, July 2, 2014.)

Deponent Dimitri Zorin testified as a witness for FBP on July 2-3. He stated that he worked for Vista and chartered vessels for Vista and Columbus Maritime Co. Ltd., but he carries a business card that shows his employer to be Black Sea Azov Services. (Zorin Dep. 29:8-14, July 2, 2014.) Black Sea Azov Services is a Ukrainian company owned by Viktor Baranskiy's mother and another company called Coral Sea Spirit Inc.. (*Id.* at 29:21-30:2.) Coral Sea Spirit Inc. is owned and controlled by Viktor Baranskiy.

Deponent Sergey Bakalo testified as a witness for FBP on July 3-4. However, his workbook lists his employer as "Echo Technology Company," although he could not remember who worked for the company. (Bakalo Dep. 26:24-27:9, July 3, 2014.) Bakalo testified that Echo Technology Company was owned by Coral Sea Spirit Inc., and that Viktor Baranskiy was the

person who told him he would be officially employed by "Echo Technology Company." (*Id.* at 27:10-12; 29:14-16.) He also testified Vista Shipping Ltd. is not listed in his workbook, yet his first job was a trainee operator for Vista in November 2009. (*Id.* at 10:21-11:2; 14:12-13.) Bakalo further testified that although he has never worked for FBP, he executed documents for FBP as "attorney-in-fact" at the direction of Viktor Baranskiy. Bakalo Dep. 92:22-93:9, July 4, 2014.) He also executed documents for Sea Traffic Shipping Co. as "attorney-in-fact" at the direction of Viktor Baranskiy. Thus, at the direction of Viktor Baranskiy, Bakalo executed documents for both the borrower of the loan used to purchase the M/V CAPE VIEWER (FBP) and for the lender (Sea Traffic Shipping Co.)—an odd arrangement, to say the least.

Deponent Katerina Bobrenko testified as a witness for FBP on July 4-5. Bobrenko's workbook lists her employer as "Sub Sun Tranship." (Bobrekno Dep. 12:8-10, July 4, 2014.) However, she stated that she worked for Vista in the capacity as Chief Financial Officer ("CFO"), despite never taking an accounting class and having no formal accounting training. (*Id.* at 13:3-4; 15:21-23.) She also stated that she was the CFO for all of the roughly sixty Palmira Group companies. (Bobrenko Dep. 133:25-134:6, July 5, 2014.) In her capacity as CFO of the Palmira Group, Bobrenko provides services for a number of companies, including Sea Traffic Shipping Co., Freight Bulk Pte. Ltd., Alpen Shipmanagement, Atlanta Trading Co., Smart Trading LLP, Huan Hwa Trading Ltd. Bobrenko also provides services for Columbus Maritime Co. Ltd., even though Vista is a customer of Columbus Maritime Co. Ltd.

Second, throughout this lawsuit, FBP's current and former counsel have been adamant that they only represented FBP, the only Defendant that has appeared in this lawsuit. For instance, during the litigation of the third and fourth motions to compel in or about April 2014, FBP's former counsel, Carmine Zarlenga, stated to the Court that he only represented FBP, and

that Defendants Industrial Carriers, Inc., Vista Shipping Ltd., and Viktor Baranskiy were not represented. (*See* Mot. Hr'g Tr. 25:14-24 Apr. 9, 2014.) As the Court will likely recall, Mr. Zarlenga argued he had no means of compelling entities he did not represent to produce documents.

During the July 1-5 depositions, each of the deponents testified that FBP's current counsel, Sergei Kachura, had meetings with the four deponents—none of whom are employed by FBP—to prepare them for the depositions. Yet, despite the prior representations that counsel only represents FBP, Mr. Kachura objected on the basis of attorney-client privilege and attorney work product and instructed witnesses not to answer questions not only about communications held during those meetings, but also about simple, non-privileged facts such as who attended the meetings, what documents they were given to review, and what tasks each were assigned to perform as respects reviewing and producing records..

When Flame's counsel asked for clarification about the basis of Mr. Kachura's objections, given that Plaintiffs' counsel was under the impression that Mr. Kachura only represents FBP, Mr. Kachura stated that he represented "all of the companies of Viktor Baranskiy." FBP's local counsel, Patrick Brogan, stated that he "represents Freight Bulk." (Zorin Dep. 87:4-13, July 3, 2014.) When Mr. Kachura was asked whether he represented Sub Sun Tranship, Katerina Bobrenko's employer, at first Mr. Kachura stated that he needed "two minutes" to check, and then reiterated that he represents all companies Viktor Baranskiy owns. (Bobrenko Dep. 51:22-52:18, July 4, 2014.) Mr. Kachura also stated that he represents Viktor Baranskiy as an individual. (*Id.* at 52:19-53:16.)

The sum effect of these revelations is that Mr. Kachura apparently represents over sixty companies, all controlled by Viktor Baranskiy, and also represents Viktor Baranskiy as an

individual. Mr. Kachura claims to have provided privileged legal advice to individuals who all testified that they work for "Vista," yet are employed by other companies. None of the deponents work for FBP—the owner of the M/V CAPE VIEWER, and the only Defendant who has appeared in this lawsuit.

## CONCLUSION

FBP's failure to honor its discovery obligations in this case has prejudiced Flame, as the documents not produced directly relate to issues related to Flame's case in chief at trial. The Court should grant Flame relief under Federal Rule of Civil Procedure 37(b) by striking the Answer and entering a default judgment against FBP in favor of Flame. Alternatively, the Court should designate the matters described in this memorandum of law as established as true, and preclude FBP from introducing evidence at trial to defend against the designated matters. Defendants have cavalierly defied the Court's April 30, 2014 Order, and they should be sanctioned. The Court should also enter any further relief it deems proper to enforce its April 30, 2014 Order.

Dated:  July 16, 2014

**FLAME S.A.**


_____/s/ David C. Hartnett_____

Steven M. Stancliff, VSB No. 73853
David C. Hartnett, VSB No. 80452
*Attorneys for Plaintiff Flame S.A.*
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, VA 23510
Tel:  (757) 623-3000
Fax: (757) 623-5735
sstancliff@cwm-law.com
dhartnett@cwm-law.com

30

- and -

William R. Bennett, III, Esquire
Lauren B. Wilgus, Esquire
Nicholas R. Tambone, Esquire
*Attorneys for Plaintiff Flame S.A.*
*Admitted Pro Hac Vice*
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, NY  10174
Tel:  (212) 885-5000
Fax: (212) 885-5001
WBennett@BlankRome.com
LWilgus@BlankRome.com
NTambone@BlankRome.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of July, 2014, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such electronic filing to the following counsel of record:

Patrick M. Brogan
DAVEY & BROGAN, P.C.
101 Granby Street, Suite 300
Norfolk, Virginia 23510
Tel: (757) 622-0100
Fax: (757) 622-4924
Email: pbrogan@daveybroganpc.com
*Attorney for Defendant Freight Bulk PTE, LTD.*

Mark T. Coberly
Dustin M. Paul
VANDEVENTER BLACK LLP
101 W. Main Street
500 World Trade Center
Norfolk, VA 23510
Tel: (757) 446-8600
Fax: (757) 446-8670
Email: mcoberly@vanblk.com
dpaul@vanblk.com
*Attorneys for Vitol, S.A.*

Sergei Kachura (pro hac vice)
Law Office of Sergei Kachura
311 N. Center Ave.
Brownwood, TX 76801
Tel:  (301) 358-5196
Fax: (325) 646-3628
Email: svkachura@yahoo.com
*Attorney for Defendant Freight Bulk PTE, LTD.*

James H. Power (pro hac vice)
Michelle Hess (VSB No. 71080)
HOLLAND & KNIGHT, LLP
31 West 52nd Street,
New York, NY 10019
Tel: (212)513-3200
Fax: (212)385-9010
Email: James.power@hklaw.com
michelle.hess@hklaw.com
*Attorneys for Consolidated Plaintiff*
*Glory Wealth Shipping Pte Ltd.*

David H. Sump
Leonard Fleisig
WILCOX SAVAGE, P.C.
440 Monticello Ave; Suite 2200
Norfolk, VA 23510
Email: dsump@wilsav.com
       lfleisig@wilsav.com
*Attorneys for Noble Chartering, Inc.*

Paul Myung Han Kim
John Joseph Reilly
SQUIRES SANDERS (US), LLP
30 Rockefeller Plaza; 23rd Floor
New York, NY 10112
Tel: (212) 872-9841
Fax: (212) 872-9815
Email: paul.kim@squiresanders.com
      John.reilly@squiresanders.com
*Attorneys for Noble Chartering, Inc.*

Michael E. Unger (pro hac vice)
Freehill, Hogan & Mahar LLP
80 Pine Street, New York, NY 10005
Tel: (212) 425-1900
Fax: (212) 425-1900
Email: unger@freehill.com
*Attorney for Vitol, S.A.*

        */s/ David C. Hartnett*    
Steven M. Stancliff, VSB No. 73853
David C. Hartnett, VSB No. 80452
*Attorneys for Plaintiff Flame S.A.*
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, VA 23510
Tel:  (757) 623-3000
Fax: (757) 623-5735
sstancliff@cwm-law.com
dhartnett@cwm-law.com