IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| FLAME S.A., | : | |
| **Plaintiff,** | : | |
| | : | |
| GLORY WEALTH SHIPPING PTE. LTD., | : | |
| **Consolidated Plaintiff,** | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 2:13-cv-658 |
| | : | |
| INDUSTRIAL CARRIERS, INC., et al., | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION AND ORDER

To the surprise of absolutely no one familiar with this case, now before the Court are motions for sanctions filed by both Plaintiff Flame, S.A., ("Flame") and Consolidated Plaintiff Glory Wealth Shipping Pte. Ltd ("Glory Wealth"). ECF Nos. 326, 323. In their motions, both Plaintiffs allege that Defendant Freight Bulk Pte. Ltd. ("FBP") violated this Court's prior Orders compelling FBP to respond to certain discovery requests promulgated by Plaintiffs. In addition, both Plaintiffs ask the Court to reconsider its prior discovery Orders which limited the scope of discovery with respect to the Defendants. This latest round of discovery disputes centers on the Plaintiffs' belief that FBP has deliberately violated this Court's Orders by refusing to produce relevant documents, and by denying that it has certain categories of documents that Plaintiffs believe it must, in fact, have. Accordingly, Plaintiffs seek, as a sanction under Federal Rule of Civil Procedure 37(b), either entry of a default judgment against FBP, or, in the alternative, a ruling from the Court that certain facts with respect to Plaintiffs' alter ego claims are established.

Plaintiffs also seek attorneys' fees and costs in connection with their pursuit of these motions and as a penalty for the additional expense they claim to have incurred because of FBP's late or non-production of documents.

## I. Genesis of the Motions for Sanctions

The genesis of this latest dispute began in early July, when the parties traveled to Istanbul, Turkey to depose four non-party fact witnesses produced by FBP, and subsequently, were supposed to travel to Odessa, Ukraine to take the second deposition of named-Defendant Viktor Baransky.[1] Due to a multitude of concerns, the parties never went to Odessa and were unable to depose Mr. Baransky as scheduled. Days later, on July 11, 2014 and at the request of the parties, the undersigned convened a telephone conference to address "ongoing discovery issues." ECF No. 317. During the conference, among other topics,[2] Flame advised it had filed a motion to compel, its fifth, because FBP was still not producing discovery as ordered by the Court in its prior discovery orders issued on April 30, 2014, ECF Nos. 209, 210.[3] Flame sought from the Court an Order directing FBP to comply with the Court's previous discovery orders. Instead, the Court directed the parties to Federal Rule of Civil Procedure 37(b) to remedy any alleged violations of this Court's Orders, and set a briefing schedule for the filing of any sanctions motions if a party believed that the Court's Orders were, in fact, being disobeyed. ECF No. 318. Thus, Flame's fifth motion to compel was denied, ECF No. 331, and subsequently, both Glory Wealth and Flame filed motions for sanctions against FBP, ECF Nos. 323, 326. In these motions, Plaintiffs also ask the Court to reconsider the April 30, 2014 discovery orders and

---

[1] The Court notes that Flame, Glory Wealth and Defendant FBP each disagree even on how to spell Mr. Baransky's last name. The Court uses the spelling from the December 12, 2013 deposition upon oral examination of Viktor Baransky, which was filed as part of the record in this case. ECF No. 51.

[2] *See* ECF No. 333 for the full hearing transcript.

[3] ECF No. 209 ruled on Glory Wealth's motions, and ECF No. 210 ruled on Flame's motions. For purposes of this Order, the Court refers to the April 30, 2014 discovery orders collectively as "the discovery orders."

expand discovery to the sixty known entities that Mr. Baransky is alleged to control. *Id.* FBP

filed an opposition to both motions, ECF No. 334, and both Plaintiffs replied, ECF Nos. 340,

342.

## II. Brief Background

In the discovery orders, the Court granted in part Glory Wealth and Flame's motions to

compel, and ordered FBP to respond to Plaintiffs' discovery requests, "but only as to those

requests specifically tailored to named Defendants in this litigation." ECF Nos. 209 at 3-8; 210

at 3-8. Providing further explication, in its ruling the Court incorporated the holding from *E.I.*

*DuPont de Nemours and Co. v. Kolon Industries, Inc.*, 286 F.R.D. 288, 298 (E.D. Va. 2012), to

provide the parties with specific direction as to the scope of discovery that would be authorized,

by stating the following:

> Documents that relate to any ownership interest [that any named Defendant:
> Industrial Carriers, Inc. ("ICI"), Vista Shipping Inc. ("Vista"), FBP, Viktor
> Baransky, or Sergei Baransky] holds or has held in any other business entity
> during the relevant time period [2008, the date from which Glory Wealth's
> London arbitration award is calculated, forward] must be produced, and the
> motion to compel is granted to that extent.

ECF No. 209 at 3-4; 210 at 4 (quotation marks omitted). The Court then specifically enumerated

to which Requests for Production ("RFP") FBP was compelled to respond, and to which ones it

was not so compelled. ECF Nos. 209 at 5; 210 at 5, 7. The discovery parameters promulgated

by the Court should have been perfectly clear, especially when viewed in connection with the

RFPs to which FBP was compelled to respond, in comparison with those to which it was not.

For instance, FBP was compelled to produce documents in response to Flame's Third RFP No.

76: "All documents concerning the relationship between any of the Defendants and Sea Traffic

Shipping Co., Columbus Maritime Shipping Corporation, Tech Project LLC and MKTM Ltd. for

the period January 1, 2008 to present." ECF No. 201 at 7. It was not compelled to produce

documents in response to Flame's Third RFP No. 77: "Any and all correspondence and/or documents concerning the corporate structure of Sea Traffic Shipping Co., Columbus Maritime Shipping Corporation, Tech Project LLC and MKTM Ltd." *Id.* Inasmuch as the Court's discovery orders ruled on each discovery request before it, FBP had clear instruction as to its obligations to comply. Further, finding that FBP's position was not substantially justified and that other circumstances did not make an award of expenses unjust, the Court also awarded fees to Glory Wealth and Flame pursuant to Rule 37(a)(5)(A).[4]

Apparently dissatisfied with the Court's specified bounds of discovery, Plaintiffs filed a motion to reconsider, asking that discovery "include all companies that Mr. Baransky admittedly owns or controls, as originally requested by Flame." ECF No. 233 at 2. On June 4, 2014, the motion was denied because there had not been an intervening change in controlling law, a proffer of new evidence not available earlier, or a need to correct a clear error of law or to prevent manifest injustice. ECF No. 274 at 1 (citing Fed. R. Civ. P. 54(b)). Shortly thereafter, Senior U.S. District Judge Doumar continued the trial date, and gave the parties additional time to complete discovery. ECF No. 281. Discovery closed on July 15, 2014. ECF No. 268 at 2.

### III. Plaintiffs' Claim that FBP Failed to Comply with the Discovery Orders

Plaintiffs now claim that FBP has failed to comply with the discovery orders and ask for sanctions under Rule 37. Specifically, Plaintiffs cite no less than nine categories of requested discovery that FBP has not produced in violation of the discovery order:

1. Corporate Records (ECF Nos. 324 at 7-9; 327 at 4-6).

2. Emails Sent or Received by Victor Baransky (ECF Nos. 324 at 9-10; 327 at 6-8).

3. Supporting Documentation for Bank Records (ECF Nos. 324 at 10-11; 327 at 8-10).

---

[4] To date, however, neither Flame nor Glory Wealth have yet submitted a motion substantiating their fees and costs, as they were directed to do by the Court's discovery orders. ECF Nos. 209 at 9; 210 at 8.

4. Attachment to the Loan Agreement Between Sea Traffic Shipping Co. and FBP (ECF Nos. 324 at 11-12; 327 at 10-11).

5. Charters for the M/V CAPE VIEWER and HARMONY FALCON (ECF Nos. 324 at 12-13; 327 at 11-13).

6. Documents from Industrial Carriers Inc. ("ICI") (ECF Nos. 324 at 13; 327 at 14).

7. Audit Documentation and Correspondence (ECF No. 327 at 13-14).

8. All Attachments to Emails and Other Documents (ECF No. 327 at 14-16).

9. Defense Evidence (ECF No. 327 at 16-17).

FBP generally responds to these allegations in four ways: (1) the requested discovery is not subject to the Court's discovery orders, and thus, FBP was under no obligation to produce it; (2) FBP has produced documents it claims are responsive (but which Plaintiffs dispute); (3) FBP has produced documents it claims are responsive (which Plaintiffs do not dispute); and (4) FBP does not have the requested documents, blaming recordkeeping standards in Ukraine. ECF No. 334. In addition to asking the Court to reconsider the discovery orders to expand discovery to over sixty entities that Viktor Baransky holds or controls, Plaintiffs ask for and propose the following sanctions under Rule 37(b)(2)(A) for FBP's failure to obey the discovery order: (1) strike FBP's amended answer and enter default judgment against FBP in favor of Plaintiffs, ECF No. 327 at 30; or (2) designate certain matters or facts as established as true, and preclude FBP from introduction of evidence at trial to defend against the designated matters, *id.*, specifically, designate as established for purposes of the action that the Vista Group/Baransky controlled entities are alter egos of each other. ECF No. 340 at 6.

The Court's task in determining whether FBP has violated the Court's discovery orders is complicated by the parties' general focus on their summarization of the categories of information about which they dispute, rather than on the specific RFPs to which the Court ordered FBP to

respond.   While this focus is understandable because of the volume of discovery requests, nonetheless the Court did not compel FBP to respond to general requests for categories of information.  Instead, it compelled FBP to respond to specifically enumerated RFPs, by holding, for example:

> Accordingly, Glory Wealth's emergency motion to compel, ECF No. 173, is GRANTED as to the following First Requests for Production of Documents: request numbers 1-33, 35-70, 72-75, 77, 87, 95-129, 131-132, 135, 138-144, 146-147, 149-160, 163, 167-169.  FBP is directed to respond to those requests for production.  The motion is DENIED as to request numbers 71, 78-86, 88-94, 130, 133-134, 136-137, 145, 148, 161-162, 164-166, 170, and FBP is not required to produce documents responsive to those requests.

ECF No. 210 at 5.  Hence, the Court first must tackle the question of which, if any, specific discovery requests to which FBP was compelled to respond did it fail to respond in violation of the Court's discovery orders.[5]   Next, if the Court finds that FBP has violated the Court's discovery orders, then it must determine if sanctions under Rule 37 are appropriate, and if so, what type of sanction is necessary.

### IV. Analysis of FBP's Compliance with the Court's Discovery Orders

#### A. Corporate Records

Flame's First RFP No. 4, and Second RFP Nos. 1, 2, 6, 7, 8, 15, 17, 26, 54, 58, and 59 all deal with corporate records and structure of the named defendants, including ICI.  Similarly, Glory Wealth's First RFP Nos. 4, 13, 19 and 67 seek the same type of information.  Moreover, RFP No. 53 seeks records exchanged among the named defendants and certain other entities concerning the attached vessel, the CAPE VIEWER.  FBP responded that it has produced all responsive documents for FBP and Vista; that because "corporate governance formalities in Ukraine are less stringent than in the U.S." many documents, such as board meeting minutes and

---

[5] For organizational purposes the Court will adopt the parties' categories of information in analyzing the question of FBP's compliance with the discovery orders, but nonetheless must look to the specific RFPs themselves to determine whether FBP has complied with or violated the Court's Orders compelling it to respond.

records evidencing corporate structure, simply do not exist; that tax records do not exist because "neither [FBP nor Vista] is obligated to pay any taxes;" and that employee records, i.e. "workbooks," are "highly confidential personal documents" that are not in the possession of FBP or Vista because "such companies do not have any 'official' employees in Ukraine" and therefore cannot be produced. ECF No. 334 at 3-5. With respect to any documents regarding ICI, the company against which both Flame and Glory Wealth have judgments, FBP represented that neither FBP nor Vista are related to ICI, and neither they nor Viktor Baransky have any documentation from that company. *Id.* at 3-4.

Despite Plaintiffs' insistence that documentation such as board minutes, corporate governance structure, tax records and the like must exist, FBP has represented it has produced those records which it possesses, but, for a variety of reasons, including the fact that Ukrainian rules and practices do not require the creation and maintenance of such records, there exist no other records to produce. Pursuant to Fed.R.Civ.P. 26(g)(1), by signing discovery requests, parties certify that after reasonable inquiry they believe that their responses to discovery requests are complete and correct as of the time made and that those responses and or objections are warranted by existing law. *See In re Outside Wall Tire Litigation*, No. 1:09–cv–01217, 2011 WL 5357913 (E.D. Va. Nov. 7, 2011). Under these circumstances, FBP cannot be said to have violated the Court's discovery orders by failing to produce records it has certified do not exist.[6]

On the other hand, FBP has not certified that no such records exist with respect to ICI. Instead, is asserted that FBP, Vista, and Mr. Baransky do not have control over any such records. FBP insisted that "FBP or [sic] and Vista are in no way related to ICI and its sister companies,

---

[6] There are, of course, other remedies a party can pursue when another party does not produce records it is expected to have within its control. *See, e.g., Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (holding that "[a]s a general proposition, the trial court has broad discretion to permit a [fact-finder] to draw adverse inferences from a party's failure to present evidence, the loss of evidence, or the destruction of evidence. While a finding of bad faith suffices to permit such an inference, it is not always necessary.").

and therefore are not in possession of any documentation of ICI." ECF No. 334 at 3-4. FBP then explained in a footnote "[a]s Victor Baransky, FBP and Vista do not have any documentation of ICI, as more fully explained in subsequent section, this response is similarly true per all other Plaintiffs' requests regarding ICI documentation." *Id.* at 4 n.4. As a result, no documents regarding ICI were produced.

Nonetheless, despite the claim that Mr. Baransky has no control over ICI and therefore cannot produce any of its documents, throughout its memorandum FBP represents that Victor Baransky controls every other corporate entity referenced in this litigation: "Victor Baranksy remaining, as he always was, the sole beneficiary of all his companies." *Id.* at 3. "To avoid any possible confusion, FBP states that at all times Victor Baransky was, and currently is, the sole ultimate beneficial owner of FBP, Vista and all of FBP's sister companies." *Id.* at 6. "Victor Baransky is not trying to sever any links, having confidently admitted at the time of the [document] production on July 14, 2014 and admitting now that he is the sole beneficial owner of Vista, FBP and all of FBP's sister companies." *Id.* "[A]t this stage of the suit, Plaintiffs should drop the pretense that there could be someone else behind FBP, Vista and their sister companies other than Victor Baransky, as Plaintiffs' own admissions make it abundantly clear that there is Victor Baransky and no one else behind all his companies and success." *Id.* at 20. Claiming no responsibility to do so, Mr. Baransky "voluntarily" produced documents relating to all of FBP's sister companies: "Production of all of FBP's sister companies' and holding company's (Hachi Holdings) ownership documentation on July 14, 2014 was done voluntarily, as directly responsive documentation relates only to FBP and Vista, and such directly responsive documentation was all produced long time prior to July 14, 2014." *Id.* at 6. In short, FBP claims

Mr. Baransky controls every entity involved in this lawsuit, with the sole exception of ICI.[7] The Court does not accept this representation, and **FINDS**, therefore, that FBP has violated the Court's discovery orders compelling it to produce documents from ICI that are responsive to Flame's First RFP No. 4 and Second RFP Nos. 1, 2, 6, 7, 8, 15, 17, 26, 54, 58, and 59, and to Glory Wealth's RFP Nos. 4, 13, and 67.

At the first discovery hearing this Court held on April 9, 2014, the Court specifically advised then-counsel for FBP that, having found that Plaintiffs had made a prima facie case as to their contention that the defendant companies were alter egos of each other such that discovery on this subject would be permitted, Mr. Baransky was required to produce documents over all defendant companies over which he exercised control. ECF No. 147 at 26-28. Mr. Baransky, an 18% shareholder of ICI, along with his father, a named co-defendant in Glory Wealth's amended complaint, together control ICI with 51% of its shares. Deposition of Viktor Baransky, 25:19-22, ECF No. 51 at 25. The Court, having ordered Mr. Baransky, through the RFP directed to FBP, to produce the documents of those named Defendants over whom he exercised control,

---

[7] Later in its submission FBP made the following argument:

> At the beginning, there was just Victor Baransky, personally. Then, there was Vista. Later, Vista flowered with other sister companies, one of such companies being FBP. It is FBP's ship in the District. So, the focus is on Cape Viewer, FBP, Vista and Victor Baransky personally. Logical connection for the April 30, 2014 order seems clear. FBP substantially complied with such Court Order. Furthermore, it produced all banking records, for all times, and supporting documentation for all incoming payments, for all companies for all times, among thousands of other documents produced in this case and relevant to the alter ego cause of action. Did FBP have a right not to produce the bulk of such documentation, per the April 30, 2014 discovery Order? Absolutely! It was done not because FBP was required to do so, but because Victor Baransky, personally, gave orders to various companies to provide such documentation to FBP for subsequent production to Plaintiffs, without waiving any rights. As mentioned in the previous pleadings, such ability of a common owner to order anything per any of his/her companies is an axiom which yet does not have direct bearing on the legal question of when one company is deemed to be in control or possession of documentation of another company. As per such legal standard, there is indeed no control or possession by FBP of any of its sister companies' documentation.

*Id.* at 18-19. As is clear in both the discovery orders and this Court's ruling from the bench, FBP was required to produce all responsive documents that concerned any of the named Defendants, i.e. ICI, Vista, FBP, Viktor Baransky and Sergei Baranksy. ECF Nos. 209, 3-4; 210 at 3-4.; 147 at 22, 26-28.

specifically ordered FBP to answer the above-referenced RFPs. ECF Nos. 209, 210. FBP admits that Mr. Baransky controls every relevant entity, with the notable exception of ICI, a position this Court has already rejected. *Id.* The District Judge affirmed this ruling. ECF No. 192. Accordingly, by failing to produce any relevant documents with respect to ICI, FBP has violated this Court's discovery orders.

Finally, the Court also **FINDS** that FBP violated the discovery orders by failing to produce the afore-described "workbooks." Regardless of their confidentiality, which could have been addressed with a protective order, FBP repeatedly declared that Mr. Baranksy is the sole beneficial owner of FBP and all of its sister companies. As the sole beneficial owner, he has control over the records of all individuals who work for those companies, whether they are "official employees" under Ukrainian law or not. Accordingly, those records should have been produced.

### B. Viktor Baransky Emails

Both Flame and Glory Wealth issued numerous RFPs that, conceivably, would have required the production of emails sent by or to Viktor Baransky. *See, e.g.,* Flame Second RFP Nos. 14 (correspondence concerning bank transfers and loan agreements between and among each of the Defendants); 18 (emails by and/or between any of the Defendants and/or any third parties relating to, *inter alia*, Viktor Baransky's position and interest in any of the Defendants); 19 (copies of emails between Defendants and shipbrokers relating to each of the Defendants' purchase, charter or operation of, *inter alia*, the CAPE VIEWER); Glory Wealth RFP Nos. 11 (emails between Viktor Baransky and Sergei Baransky relating to defendants' purchase, charter or operation of, *inter alia*, the CAPE VIEWER); 22 (emails by any auditor relating to each of the Defendants and their subsidiaries); 29 (emails by and/or between any of the Defendants and/or

any third parties relating to, *inter alia*, Viktor Baransky's position and interest in any of the Defendants).[8] FBP responded that "FBP believes that the scope of the Court's discovery order encompasses only Victor Baransky's e-mail communications in his capacity as Director of FBP, and there are no such e-mails." ECF No. 334. This follows on FBP's representation in an earlier pleading that the Court's Order did not include Viktor Baransky as a Defendant to whom the discovery order applied. ECF No. 313 at 9. Flame quite correctly points out that the Court's Order was not so limited. ECF No. 327 at 7. In fact, the Court's discovery orders were quite explicit that FBP was "required to respond to discovery requests that are specifically tailored to the named Defendants in this action, *regardless of whether the Defendant has been served or entered an appearance.*" ECF No. 209 at 4; 210 at 4 (emphasis added). FBP's attempt to limit its response to Viktor Baransky's emails in his capacity as Director of FBP violates this Court's discovery order that each RFP that FBP was compelled to respond to be answered as to each named defendant.

FBP further responds by claiming that it voluntarily produced all business communication e-mails of Victor Baransky on July 14, 2014, the day before the close of discovery, even though "in FBP's opinion, [it] was under no obligation to do so." ECF No. 334 at 7. Despite FBP's "opinion," this Court's discovery orders were clear, and FBP was obligated to provide responsive documents long before the close of discovery. The Court's discovery orders required FBP to comply no later than one week from the date of the orders, i.e. by May 7, 2014. ECF Nos. 209 at 5; 210 at 7. FBP never sought an extension of time from the Court to comply with the discovery orders. Belated compliance with a Court Order more than two months after the Court's deadline and one day before the close of discovery does not constitute

---

[8] These are just a few examples of RFPs that called for the production of emails in Viktor Baransky's possession. As long as the discovery orders compelled FBP to respond to a specific RFP, if emails existed which were responsive to the category of documents requested, then they should have been produced.

compliance. *See, e.g., Green v. John Chatillon & Sons*, 188 F.R.D. 422 (M.D.N.C. 1998) (dismissing action with prejudice under Rule 37(b) for plaintiff's failure to provide discovery over eight months after the original requests and over two months after being ordered by the magistrate judge to do so). Accordingly, the Court **FINDS** that FBP violated the Court's discovery orders by failing to timely produce responsive emails.

### C. Supporting Documentation for Bank Records

Flame's Second RFP Nos. 9, 14, 20, 22, 25, and 27, and Third RFP 84, 88, 92 and 96 sought the production of records concerning bank accounts, bank transfers and other financial records pertaining to the Defendants.[9] Glory Wealth's RFP Nos. 25, 26, 52 and 53 were similar. Flame contends that, while some bank records have been produced, other records should have been, include Mr. Baransky's personal bank records. Flame also argued that, while bank records for Sea Traffic Shipping Co. ("Sea Traffic") were produced for 2008, 2009, 2010, 2011, and 2013, they were not produced for 2012, the year funds were provided from Vista to Sea Traffic for the purpose of a loan to FBP for the purchase of the CAPE VIEWER. ECF No. 327 at 10. Consequently, "Flame suspects that additional documents exist and are being withheld." ECF No. 327 at 9-10; ECF No. 342 at 9-11. Glory Wealth referenced testimony from the deposition of Ms. Bobrenko, a fact witness, and suggested that documents supporting notations and descriptions found within the cash ledgers must exist and therefore should have been produced. ECF No. 324 at 11.

Conversely, FBP represented that it produced all personal and business bank records: "In fact, FBP provided to Plaintiffs all bank statements, for all Victor Baransky entities and Victor Baransky personal accounts, for all times." ECF No. 334 at 7. It represented that the 2012 bank

---

[9] Flame also seeks enforcement of its Third RFP No. 78, but the Court denied Flame's motion to compel with respect to that RFP. ECF No. 210 at 7.

records for Sea Traffic had, in fact, been produced, and identified the specific bates stamp numbers of the relevant documents. *Id.* at 9. Further, FBP explained that Glory Wealth had misunderstood Ms. Bobrenko's testimony, which was taken with the assistance of an interpreter because Ms. Bobrenko does not speak English, such that no other documents exist. *Id.* at 17. To Flame's suspicion that additional documents exist and are being withheld, FBP responded: "Flame is wrong." *Id.* at 9.

In sum, Plaintiffs claim that FBP has not produced all of Victor Baransky's personal banking records and other banking records, that more banking records must exist, and therefore that FBP is withholding them in violation of the Court's discovery orders. FBP claims that it has produced all of Victor Baransky's banking records, that all other banking records which exist have been produced, and therefore that there are no other records which exist to produce. Once again, by signing FBP's discovery responses, counsel for FBP certified, pursuant to Rule 26(g), that after reasonable inquiry he believed that the responses to discovery requests were complete and correct as of the time made. Moreover, in FBP's memorandum in opposition to plaintiffs' motions for sanctions, counsel for FBP represented to the Court pursuant to his obligation under Rule 11(b) that all responsive documents have been produced and no other records exist. Plaintiffs' suspicions that other records must exist are insufficient. Accordingly, the Court **FINDS** that FBP has not violated the Court's discovery orders with respect to the production of bank records.

### D. Attachment to Loan Agreement Between Sea Traffic and FBP

Through their RFPs, Flame and Glory Wealth sought the production of the loan agreement between Sea Traffic and FBP, which provided FBP with the funds necessary to purchase the CAPE VIEWER. Specifically, Flame's Second RFP Nos. 45-47, and Third RFP

Nos. 100-103 all pertained to the loan agreement, as did Glory Wealth's RFP Nos. 55-58. The Court ordered FBP to produce documents in response to these RFPs, although it limited Flame's Third RFP Nos. 101 and 103 to records pertaining to FBP. ECF Nos. 209 at 5; 210 at 7. Plaintiffs contend that FBP failed to produce an attachment to the loan agreement which purported to provide for the terms of the loan's repayment. ECF Nos. 327 at 11; 324 at 11-12. There appears to be no doubt that this record exists, as it was described by Ms. Bobrenko in her deposition. ECF No. 327 at 11. FBP contends that it produced the attachment, albeit late because the document allegedly was not created until March 2014, despite the fact the loan was completed in 2012. ECF No. 9-10. In its reply, Flame attached as Exhibit 5 the document which FBP represents is the pertinent attachment to the loan agreement. ECF No. 342-1. Based on the Court's review of this exhibit, it is apparent that this document is not the attachment which set forth the terms of the repayment of the loan from Sea Traffic to FBP. Instead, the document, dated March 21, 2014, pertains to a ship management agreement between Vista and FBP, and pertains not at all to the loan between Sea Traffic and FBP.

There is no dispute that there exists an attachment to the loan agreement between Sea Traffic and FBP which delineates the loan repayment terms. Although the aforementioned Exhibit 5 was identified by FBP as that attachment, clearly it is not. Accordingly, the Court **FINDS** that FBP violated the discovery orders that it produce all relevant documents in response to the aforementioned RFPs, which should have included the attachment to the loan agreement.

### E.  Charters for CAPE VIEWER and HARMONY FALCON

Included among Plaintiffs' RFPs were requests directed towards the production of documents evidencing the charter of vessels by the named Defendants, specifically, Flame's Second RFP Nos. 19, 35-39, 62 and Third RFP No. 104, and Glory Wealth's RFP Nos. 45, 46

14

and 48. The Court ordered FBP to respond to each of these RFPs. ECF Nos. 209 at 5, 7; 210 at 5. According to Flame, although FBP owns the CAPE VIEWER, Vista chartered the vessel to Noble Chartering for the voyage that brought the ship into this jurisdiction, but FBP did not produce any agreement between Vista and FBP providing for such arrangement. ECF No. 327 at 13. Moreover, Plaintiffs allege FBP failed to produce any documents regarding the charter of the HARMONY FALCON, a vessel owned by ICI for which Vista was paid hire in October 2008 (which was at or near the time ICI declared bankruptcy). *Id.*; ECF No. 324 at 11-12. FBP contended that it did, in fact, produce all documentation regarding the charter of the CAPE VIEWER to Noble Chartering, referencing specific bates numbered documents. ECF No. 334 at 11. It further represented that documents with respect to the charter of the HARMONY FALCON were lost, and thus cannot be produced. *Id.* FBP then referenced an earlier submission to the Court, ECF No. 319, wherein it provided a lengthy explanation regarding the lost documents. In short, this was a last-minute charter, things were hectic, an employee who possessed the charter document left the company, and the email account in which the document was kept lapsed, thereby causing the loss of the electronic copy of the document. ECF No. 319 at 2-6.

With respect to CAPE VIEWER charter, Flame did not contest in its reply FBP's representation that it produced the responsive documents. Glory Wealth did not assert in its motion for sanctions that FBP failed to produce the CAPE VIEWER charter. Accordingly, the Court **FINDS** that FBP did not violate the Court's Order in connection with the CAPE VIEWER charter. With respect to the HARMONY FALCON charter, as Flame notes, FBP's explanation of why it cannot produce the charter agreement was in the form of a pleading by an attorney, and not a sworn affidavit or declaration. Plaintiffs ask the Court to find that FBP's explanation is

15

unbelievable, and consequently sanction it either by entering a default judgment against FBP or by making a finding that ICI fraudulently conveyed the right to charter the HARMONY FALCON to Vista. ECF Nos. 324 at 13; 342 at 15.

As dubious as FBP's explanation for the loss of the HARMONY FALCON's charter sounds, the Court at this juncture is not tasked with making findings of fact and conclusions of law as to the merits of this particular claim. Although FBP's explanation was not provided by sworn affidavit or declaration, nonetheless the pleading was submitted by counsel for FBP pursuant to Rule 11(b)'s requirement of good faith. Absent some other evidence that FBP's explanation is false, the Court cannot find that FBP has violated the Court's discovery orders by failing to produce evidence which it claims was lost.[10]

### F.  Documents from ICI

Both Plaintiffs proffered RFPs requiring production of documents pertaining to ICI, the specific entity against whom both Plaintiffs have judgments.  Flame contends that FBP failed to comply with its Second RFP Nos. 5, 28-34, and 61, to which FBP was compelled to respond by the Court's discovery order.  ECF No. 210 at 5.  Flame also contends FBP failed to comply with its first RFP Nos. 1-2, to which FBP was compelled to respond by the Court's earlier Order granting Flame's first motion to compel.  ECF No. 149.  In addition, Glory Wealth contends that FBP failed to respond to its RFPs pertaining in whole or in part to ICI, Nos. 1, 3-4, 16-22, 25-29, 30-32, 36-37, 39-46, 49, 67-70, 72, 75, 95-110, and 123, to which FBP was compelled to respond by the Court's discovery order.  ECF No. 209 at 5.  FBP responded by claiming that it provided what few documents were kept in Viktor Baransky's possession, but otherwise reiterated its claim that neither FBP, Mr. Baransky, or Vista had any ICI documents.  ECF No.

---

[10] This is not to say that such a finding may not be made at the trial of this matter, or that an adverse inference may not be drawn from FBP's loss of evidence. *See Glover*, 6 F.3d at 1329.

334 at 12-13.

The Court has already rejected FBP's argument. *See* Section IV.A., *supra.* As discussed, the Court was quite explicit in relaying its finding at the April 10 hearing that Mr. Baransky has control over the documents in possession of the named Defendants. ECF No. 147 at 26-28. FBP's objection to this Court's ruling was overruled by the District Judge. ECF No. 192. As Flame pointed out and FBP did not contest, ICI is still an active company. ECF No. 327 at 14. Accordingly, the Court rejects FBP's claim there are no documents which can be produced from ICI, and therefore the Court **FINDS** that FBP has violated the Court's discovery orders that it produce all relevant ICI documents in response to the aforementioned RFPs.

### G. Audit Documentation and Correspondence

Flame contends that FBP failed to comply with the Court's discovery orders that it produce documents in response to Flame's Second RFP Nos. 10, 11, and 24, which sought documents regarding correspondence with corporate auditors. The Court's discovery orders compelled FBP to produce these records. ECF No. 210 at 5. FBP responded that it provided such documents in May, 2014, and identified by bates stamp numbers specific records. ECF No. 334 at 12. In its reply, Flame contends that additional audit reports concerning ICI in 2007, Vista in 2009, and the Palmira Group (which includes FBP and Vista) in 2010-12, were not produced. ECF No. 342. Nonetheless, Flame identifies the ICI audit, which was filed by FBP with the Court at ECF No. 319-1, and references the Vista and Palmira Group audits by bates stamp numbers, indicating that it, in fact, has those documents. Although Flame contends that FBP did not produce these documents, ECF No. 342 at 16 ("FBP has failed to produce all responsive documents regarding audit reports pertaining to named Defendants"), no information was provided to the Court as to where the aforementioned ICI, Vista and Palmira Group audit

17

reports came from, how they were obtained, or whether they are complete. Accordingly, the Court has an insufficient basis to determine whether its discovery orders were violated in connection with the audit documentation and correspondence records.

### H.  Email Attachments

Through its discovery requests Flame sought relevant emails, and to the extent responsive emails originally included attachments, those attachments should have been produced, absent some privilege which has not been asserted in this dispute. *See* Section IV.B, *supra*. Instead, FBP stated that any production of emails was voluntary, and cited the unrest in Ukraine as a reason it did not promptly "voluntarily" produce the email attachments. FBP represented that over the course of several weeks, it engaged in the cumbersome process of searching for attachments to "tens of thousands" of emails, and has produced them over time. ECF No. 334 at 13-14. Further, FBP admitted that it had not fully complied with the Court's discovery orders to produce all relevant documents within seven days when it represented that "FBP will produce all such attachments within a week, before the current tentatively-scheduled early August date for Victor Baransky deposition." *Id.*

The Court has already found that FBP failed to comply with the discovery orders when it belatedly produced emails as late as the close of discovery. Section IV.B, *supra.* Production of the attachments to the emails, for identical reasons, should have begun as soon as the Court issued its discovery orders. At no time did FBP request an extension of time to comply with this Court's discovery orders. For the reasons explained in Section IV.B *supra,* the Court **FINDS** that FBP violated the discovery orders by failing to timely produce the email attachments included in the relevant RFPs.

### I.  Defense Evidence

Lastly, Flame contends that FBP violated the Court's discovery orders by not producing documents in response to its Second RFP No. 67, which it has summarized as calling for "defense evidence."  In its discovery orders, the Court specifically denied Flame's motion to compel FBP's response to its Second RFP No. 67.  ECF No. 210 at 5 ("The Motion is **DENIED** as to request numbers 60 and 67, and FBP is not required to produce documents responsive to those requests.").  Accordingly, FBP has not violated the discovery orders with respect to RFP No. 67 and "defense evidence."

### J.  Summary of Findings

In sum, the Court **FINDS** that FBP did not violate the Court's discovery orders in connection with its production of the supporting documentation for bank records, the charter parties for the CAPE VIEWER and HARMONY FALCON, audit documentation and correspondence, and defense evidence.  However, the Court **FINDS** that FBP has violated the Court's discovery orders by failing to produce documents pertaining to ICI, including corporate records, and the attachment to the loan agreement between Sea Traffic and FBP evidencing the loan repayment terms.  In addition, the Court **FINDS** that FBP violated the discovery orders by failing to produce, in a timely fashion, Viktor Baransky's emails and the attachments thereto.  Having found that its discovery orders have been violated, the Court turns now to the question of whether and what sanctions under Rule 37(b) are appropriate.

## V.  Appropriateness of Sanctions

### A. Standard for Sanctions under Rule 37(b)(2)(A)

"If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders.  They may include the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
(iii) striking pleadings in whole or in part;
(iv) staying further proceedings until the order is obeyed;
(v) dismissing the action or proceeding in whole or in part;
(vi) rending a default judgment against the disobedient party; or
(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). To determine whether sanctions under Rule 37(b) are appropriate, the Court considers the *Anderson* factors: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998) (citation omitted). As long as the "sanctions do not involve dismissal, they fall squarely within the jurisdiction of the magistrate judge." *Financial Markets Int'l, Inc. v. Booz Allen Hamilton, Inc.*, No. 1:11-cv-1299, 2013 WL 5538341, at *1 (E.D. Va. Oct. 7, 2013) (citing 28 U.S.C. § 636). The Court considers each factor in turn.

## B. Application

### 1. Whether FBP Acted in Bad Faith

The first *Anderson* factor requires the Court to consider whether FBP acted in bad faith when it violated the discovery orders. The Court finds that FBP acted in bad faith. To characterize the discovery disputes in this matter as extensive is an understatement. Notably, almost all disputes can be traced back to FBP's non-compliance or "stonewalling" tactics. *See Anderson*, 155 F.3d at 504 ("The district court's opinion adequately supports a conclusion that the [non-complying party] acted in bad faith. The Foundation stonewalled on discovery from the inception of the lawsuit."). Even now, in the opposition brief to the motions for sanctions, just

like in *Anderson*, FBP gives "inconsistent answers" for its non-compliance with discovery obligations, and instead attempts to excuse its disobedience by shifting the blame to "the archaic nature of Ukraine's law." *See* ECF No. 334 at 5. While FBP claims that its "approach to its discovery obligations always was and is sincere," ECF No. 334 at 2, again, just like in *Anderson*, FBP "completely fails to explain why" it failed to produce discovery in accordance with this Court's discovery orders. 155 F.3d at 504-505. Moreover, even though the bounds of this Court's discovery orders were made explicitly clear from the beginning, FBP continues to parse words and narrowly interpret those orders to its own benefit. *See* ECF No. 334 at 7 ("As stated previously, FBP believes that the scope of the Court's discovery order encompasses only Victor Baransky's e-mail communications in his capacity as Director of FBP, and there are no such e-mails."). The Court need not revisit its previously stated findings as to why such narrow interpretations of the discovery orders are unacceptable. *See* Sec. IV., *supra*. Accordingly, the Court finds that FBP acted in bad faith.

### 2. The Amount of Prejudice FBP's Non-compliance Caused Plaintiffs

The second *Anderson* factor to be considered is the amount of prejudice that FBP's non-compliance with the Court's discovery orders caused the Plaintiffs. In accordance with the expedited nature of this admiralty proceeding, the compliance with all discovery deadlines was necessary to ensure a just and efficient resolution to this case. However, FBP has not complied with this Court's discovery orders, as discussed in detail above, even though the Court has continued the trial date, and granted numerous extensions of discovery deadlines for the benefit of all parties. FBP's violation of the Court's discovery orders by failing to produce documents it was required to produce or producing them months after it was required to do so certainly impacted the Plaintiffs' ability to fully examine the fact witnesses who were deposed in Istanbul

21

in early July. Plaintiffs have the burden of proof in this matter, and the Court finds that continual delays in the production of discovery by FBP have prejudiced the ability of Plaintiffs to gather the necessary evidence to put on their case in chief. FBP's actions (or omissions) have needlessly increased the expense, annoyance, and delay of these proceedings. *Anderson*, 155 F.3d at 505 ("In addition to the expense, annoyance, and delay of prosecuting his case, Anderson's claim became junior to that of another claimant suing the Foundation in Tennessee state court due to the delay in prosecuting Anderson's Virginia case."). Accordingly, the Court finds that FBP's non-compliance with the discovery orders prejudiced Plaintiffs.

### 3 & 4. The Need for Deterrence and the Effectiveness of Less Drastic Sanctions

The third factor the Court must consider is the need for deterrence of the particular sort of non-compliance demonstrated by FBP, and the fourth factor is the effectiveness of less drastic sanctions. "The deterrence and lesser sanctions factors are somewhat intertwined." *Anderson*, 155 F.3d at 505. The Court has already sanctioned FBP in this matter under Rule 37 awarding fees and costs to Plaintiffs for failure to comply with its discovery obligations. This did not deter further failures and non-compliance, so the Court finds that this less drastic sanction was not effective. "[T]he continued abuses cited by the court as evidence of [FBP's] bad faith demanded some form of punishment. Lesser sanctions did not deter such behavior." *Id.* (citing *Mutual Fed. Sav. And Loan Ass'n v. Richards & Assocs.*, 872 F.2d 88, 94 (4th Cir. 1989) (entry of default judgment sends an "unmistakable message to them and others that the judicial system will not tolerate repeated misconduct never wholly remedied in the future.")). Accordingly, the Court finds both there is great need for deterrence of this type of discovery abuse, and that less drastic sanctions such as those previously imposed proved ineffective to deter FBP's non-compliance.

## C. Sanctions and Conclusion

Application of the *Anderson* factors as discussed above direct that a significant sanction against FBP is necessary and appropriate for its violation of the discovery orders, both as a deterrent and as a last-resort sanction. *Anderson*, 155 F.3d at 505. The district court in Maryland has previously addressed why such significant sanctions are necessary, and this discussion applies with equal force to the facts before this Court and FBP's violations of the discovery orders.

> A significant sanction award is crucial to vindicate the important principles of fair play in the largely private world of civil discovery. In complex litigation such as this, cases are shaped, if not won or lost, in the discovery phase. The rules of discovery must necessarily be largely self-enforcing. The integrity of the discovery process rests on the faithfulness of the parties and counsel to the rules—both the spirit and the letter.

*Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 507 (D. Md. 2000). Plaintiffs here attached the CAPE VIEWER, a ship owned by FBP – a company owned by Mr.Baransky – as a means of attempting to satisfy their judgments against ICI – a company in which Mr. Baransky had a substantial interest. FBP's disobedience has directly impacted Plaintiffs' ability to prove that Viktor Baransky's companies are alter egos for each other, which Plaintiffs must establish to prove their case. The documents that FBP failed to produce, or produced very late, i.e. ICI corporate records, Mr. Baransky's emails and attachments, the loan repayment terms at issue regarding the CAPE VIEWER, and the employee work records, all conceivably would bear on the issue of the extent to which the named Defendants intermingle corporate assets and employees, and are, in fact, alter egos for each other. FBP's violation of the discovery orders has made it that much more difficult for Plaintiffs to prove their alter ego theory, which may very well have been the purpose of FBP's noncompliance. Accordingly, because of FBP's violation of the discovery orders, and because of its history of repeated abuses and non-compliance in this

23

matter, the following sanctions are appropriate.   First, pursuant to Federal Rule of Civil

Procedure 37(b)(2)(A)(i), the Court **FINDS** and designates as established for purposes of this

action that: 1) Freight Bulk Pte. Ltd and Vista Shipping, Inc. are alter egos of one another[11]; 2)

the loan from Sea Traffic Shipping Co. to Freight Bulk Pte. Ltd. for the purchase of the CAPE

VIEWER was a sham transaction for the sole purpose of avoiding creditors; and 3) had any

Industrial Carriers, Inc. documents been produced by FBP in compliance with the Court's

discovery orders, those documents would have been favorable to the Plaintiffs and harmful to the

Defendants.   Second, pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(ii), FBP is

**PROHIBITED** at trial from: 1) offering any evidence with respect to repayments made under

the loan agreement between Sea Traffic Shipping Co. and Freight Bulk Pte. Ltd. for the purchase

of the CAPE VIEWER.   Third, pursuant to Federal Rule of Civil Procedure 37(b)(2)(C),

inasmuch as FBP's failure to comply with this Court's discovery orders was not substantially

justified and no other circumstances make an award of expenses unjust, FBP and its counsel

jointly[12] are **ORDERED** to pay the reasonable attorneys' fees and expenses of Flame and Glory

Wealth in pursuing their motions for sanctions.   Plaintiffs Flame and Glory Wealth are each

**DIRECTED** to submit, within thirty days from the date of this Order, a motion substantiating

their costs and fees pursuant to the factors enumerated in *Robinson v. Equifax Info. Servs., LLC*,

560 F.3d 235, 243-44 (4th Cir. 2009).   Once the Court reviews and determines the

reasonableness of Plaintiffs' costs and fees, an appropriate Order shall issue.

---

[11] As Glory Wealth noted in its reply brief, Plaintiffs still must ultimately prove at trial that Vista is the alter ego and/or fraudulent transferee of Industrial Carriers, Inc., as alleged in the amended complaint.

[12] The Court includes FBP counsel in the sanctions award because of counsel's unfounded and unjustified narrow interpretation, *see, e.g.,* Section IV.B., *supra*, of the scope of the discovery orders.  *See* Fed.R.Civ.P. 37(b)(2)(C) ("Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure ...").

## VI. Motions to Partially Reconsider Discovery Orders

Finally, both Flame and Glory Wealth moved for partial reconsideration of that part of the Court's discovery orders limiting discovery to the named Defendants, and instead seek an Order broadening the scope of discovery to include approximately sixty companies Plaintiffs claim are owned and/or controlled by Mr. Baransky. Discovery in this case is closed, and trial begins on August 26, 2014. As this Court has previously advised the parties, the Court is no longer entertaining motions that would impact dates in the scheduling order, or the trial date. *See Great Am. Ins. Co. v. Gross*, No. 3:05-cv-159, 2007 WL 1577503, at *14 (E.D. Va. May 30, 2007) ("District courts enjoy broad discretion in managing discovery matters.") (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery . . . .")) (citing *Hinkle v. City of Clarksburg*, 81 F.3d 416, 426 (4th Cir. 1996) (observing that District Courts "enjoy nearly unfettered discretion to control the timing and scope of discovery")). Accordingly, Plaintiffs' motions for the Court to reconsider that part of its discovery orders limiting the scope of discovery are **DENIED**.

## VII. Conclusion

Plaintiff Glory Wealth's motion for sanctions and for reconsideration of the discovery order, ECF No. 323, is **GRANTED IN PART** and **DENIED IN PART**, in that the Court awards sanctions but denies reconsideration. Plaintiff Flame's motion for sanctions and for reconsideration of the discovery order, ECF No. 326, is **GRANTED IN PART and DENIED IN PART**, in that the Court awards sanctions but denies reconsideration.

It is so **ORDERED**.

LAWRENCE R. LEONARD
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
August 8, 2014