IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| FLAME S.A., <br><br> Plaintiff, <br><br> GLORY WEALTH SHIPPING PTE LTD., <br><br> Consolidated Plaintiff, <br><br> NOBLE CHARTERING, INC. <br><br> Intervening Plaintiff, <br><br> v. <br><br> INDUSTRIAL CARRIERS, INC. <br> VISTA SHIPPING, INC., and <br> FREIGHT BULK PTE. LTD., <br><br> Defendants. | Civil Action No: 2:13-cv-658 <br>                      2:13-cv-704 |

**BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE ALL OR PARTS OF THE TESTIMONY OF PLAINTIFF'S EXPERT WITNESSES JEFFREY M. KATZ AND G. GRANT LYON**

Comes now specially appearing Defendant FREIGHT BULK PTE. LTD. ("FBP"), by and through undersigned counsel, subject to its restricted appearance pursuant to Supplemental Rule E(8) in support of its Motion in Limine to Exclude All or Parts of the Testimony of Plaintiff's Expert Witnesses Jeffrey M. Katz and G. Grant Lyon and submits the following Brief.

**INTRODUCTION**

This case is about a complex series of financial transactions related to the shipping industry. Many distinct legal entities over multiple countries on several continents make up

1

Viktor Baranskyi's holdings, including Vista Shipping. The issue before the court is whether FBP is an alter ego of a company for which he previously worked. Plaintiffs have collectively hired two separate experts in an unsuccessful effort to bolsters their spurious claims, that contrary to the evidence, Viktor Baranskyi did not build a successful business; rather, that he merely continued the operation of the prior company he left, as it ended with the tumultuous decline in the charter market following the bankruptcy of Lehman Brothers and the greatest world-wide recession since the 1930's. The opinions of these experts are inadmissible at trial for any one of several reasons. As a general proposition, by their own admission, these expert opinions rest on the shifting sands of a woefully insufficient factual foundation. Second, many of the specific opinions are inadmissible for wholly independent reasons. In short, neither expert should be permitted to testify at trial for the reasons articulated herein.

## ARGUMENT

A. SUMMARY OF OPINIONS

    1.    **Jeffrey M. Katz**

Mr. Katz lists a summary of his opinions on page 2 of his expert report. He has four primary opinions. First, he opined that "ICI was insolvent by at the latest June 30, 2008" (First Opinion). Second, that "the ICI Group, the Vista Group, and other entities related to Viktor Baranksyi operated in concert to fraudulently transfer funds out of ICI for the benefit of Vista Shipping." (Second Opinion). Third, the "arrangements among Vista Shipping, Sea Traffic Shipping and Freight Bulk Pte Ltd. to purchase the Cape Viewer were not arms-length transactions and did not serve any business purpose other than to have title to the ship on the name of Freight Bulk Pte Ltd. for the use of Vista Shipping." (Third Opinion). Lastly, he is of the opinion that the "overall business operations of the ICI Group, the Vista Group and the

Palmira Group have many unexplained transactions, an appearance of impropriety and indicia of fraud." (Fourth Opinion).

### 2. G. Grant Lyon

Mr. Lyon lists his summary of opinions on page 8 of his expert report. He has several primary opinions. First, he is of the opinion that the decrease in ICI's equity value was "in part, the product of intentional dissipation." (First Opinion). Second, ICI used "Fraudulent Conduits" and other entities "to make and receive payments" and that the "Fraudulent Conduits" were used to divert assets from Industrial Carriers."(Second Opinion). Third, "Viktor Baranskyi used cash, the Fraudulent Conduits, and third-party Money Laundering Entities in a process through which he fraudulently transferred assets from the Industrial Carriers' estate to Vista." (Third Opinion). Fourth, Viktor Barnskyi's statement that he was able to start Vista Shipping with "$1 million in cash provided by his mother along with other minor investments is not credible." (Fourth Opinion). Fifth, "Vista is a mere continuation of Industrial Carriers."(Fifth Opinion). Sixth, "Vista is dominated and controlled by Viktor Baranskyi" and "Viktor Baranskyi treats the funds of Vista as his own."(Sixth Opinion). Seventh, "the extensive and unexplained use of the Fraudulent Conduits and known Money Laundering Entities by Industrial Carriers, in the time leading up to its bankruptcy filing, is circumstantial evidence indicative of fraud." (Seventh Opinion). Lastly, "Vista engages in illegal money laundering and tax evasion activities..." (Eighth Opinion).

### B. BOTH OF PLAINTIFFS' ACCOUNTING EXPERTS' OPINIONS REST ON AN INSUFFICIENT FOUNDATION

This Court has a duty to exclude any expert testimony that fails to meet certain specific foundational requirements. Rule 702 of the Federal Rules of Evidence "imposes an obligation upon a trial judge to 'ensure that any and all scientific testimony ... is not only relevant but

3

reliable.'" Minh Vu v. Rosen, 2013 WL 4804822 (D.Md. Sept. 6, 2013) quoting Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 589 (1993). The principles outlined in Daubert for scientific evidence apply with equal force to the admissibility of "technical expert evidence, such as the testimony of a forensic accountant ..." Id. citing Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999). In applying Doubert, courts typically weigh four factors: 1) whether the expert opinion can be tested, 2) whether the opinion has been subject to peer review, 3) the rate of error of the methods employed by the expert; and 4) whether the expert's method has been general accepted by his or her community. See Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 261 (4th Cir. 2005). Where, as here, the expert witness is not a scientist whose work can be subjected to refutation or can be tested, but is based on experience, the "district court must ... require an experiential witness to 'explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts.'" Rosen, 2013 WL 4804822, * 11 citing United States v. Wilson, 484 F.3d 267, 274 (4th Cir. 2007) (citations omitted).  Importantly, "a party proffering expert testimony must show by a 'preponderance of proof that the expert whose testimony is being offered is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of the issues relevant to the case.'" Hillside Productions, Inc. v. County of Macomb, 289 Fed. Appx. 449, *10 (6th Cir. 2010) citing Pride v. BIC Corp., 218 F.3d 566, 578 (6th Cir. 2000) (citation omitted).

    The testimony of financial experts has its own additional foundational requirements. In order to be admissible, an account's testimony must be "grounded in the principles and methodologies" of accounting. S.E.C. v. Lipson, 46 F. Supp.2d 758 (N.D. Ill. 1998). In particular, when it comes to a financial expert, his testimony "may not be used merely to repeat

or summarize what the jury independently has the ability to understand." Id. at 763. For example, it "is of limited assistance to a jury for a CPA to do simple mathematical calculations which a reasonable juror or lawyer could perform." De Jager Constr., Inc. v. Schleininger, 938 F.Supp. 446, 449 (W.D. Mich. 1996). When this Court compares the proffered testimony of Plaintiffs' accountants in their entirety against this backdrop of federal law, it is clear that these opinions are not founded in the principals and methodologies of accounting.

First and foremost, each of the Plaintiffs' expert witnesses admit in their own respective reports that they lack an appropriate foundation for any admissible opinions. Mr. Katz made the following glaring admissions in his final report:

- "An analysis to determine when ICI became insolvent in this matter is difficult to perform with precision because the accounting books and records of ICI have not been produced."

Katz Report at 9. Mr. Lyon admits even more infirmities in the foundation of his opinions in his report:

- "Some data produced by Vista, including the Cash Ledgers, are incorporated in this analysis, but are not considered at face value due to credibility, consistency concerns and/or contradicted by other data."

- "Most likely, Paladin was provided with cash or a wire transfer payment in connection with his transfer, although that information is impossible to confirm due to lack of information."

- "This analysis is admittedly not a perfect science, due to the incomplete nature of the information and the partial descriptions in many of the wires. However, KRyS believes that the analysis does provide circumstantial evidence that supports a general pattern."

- "KRyS believes that those wires represents funds transferred to Weaver' however, due to the lack of clarity on the issue, and the insufficient time to request further production of clarification from HSBC, KRyS has cited the discrepancy here."

- "... due to the nature of this case, accurate and complete information will never be provided because it does not exist."

-"KRyS believes that when dealing with hundreds of millions of dollars in cash transaction as well as 50+ shell companies and known money launderers, to expect accurate and complete data from which to work is a delusion."

Lyon Report at 21, 23, 36, 47. Most importantly, "KRyS has <u>no</u> <u>doubt</u> that many of its conclusion and findings are based on <u>incomplete</u> and potentially <u>inaccurate</u> data." Lyon Report at 47. (emphasis added). This is quite an admission because it goes to the very heart of Lyon's opinions. The Court need not draw its own conclusion as to whether the experts have a sufficient factual foundation. The experts themselves admit they possess no such foundation. As such, and on this basis alone, they cannot be permitted to testify at trial.

Additionally, neither expert in his report explains how his respective experience leads to his conclusions, or why his experience is a sufficient basis for the opinions or how his experience is reliably applied to the facts of this case. <u>Rosen</u>, 2013 WL 4804822 at *11. Though both expert reports, especially Lyon's, is chock full of conclusions, neither report attempts to expressly tie their individual accounting experience to their opinions. In fact, there is little more in their reports about their experience other than their respective biographies and CVs. Additionally, looking at each expert's C.V. neither seems to have any experience with shipping or chartering firms, which have their own unique financial challenges. This is not a sufficient foundation to render the expansive opinions contained in their reports.

C. **BOTH REPORTS SUFFER FROM ADDITIONAL INFIRMITIES WHICH BEAR ON THEIR ADMISSIBILITY**

Both Katz and Lyon's opinions are also inadmissible because of their respective failures to delineate their methodologies. "[D]istrict courts are only to determine whether the principles and methodology underlying the testimony are valid." <u>Schlineinger</u>, 938 F. Supp. at 448; <u>Lipson</u>, 46 F. Supp.2d at 762 (accountant's opinion must be "squarely grounded in the principles and methodology" of accounting). Where "the proponent of an expert could not demonstrate the

6

reliability of the methodology employed by the expert, the court was required to disallow the testimony." Loeffel STeel Products, Inc. v. Delta Brands, Inc., 387 F. Supp.2d 794, 800 (N.D. Ill. 2005). Here, neither Katz nor Lyons outlines what, if any, methodology either used to come to their respective conclusions. As a result, this Court cannot determine "whether the principles and methodologies underlying the testimony" are valid in this case. Schleininger, 938 F. Supp. at 448.

Additionally, in order to be valid, an accountant must verify the accuracy of the data provided to him and ensure the accuracy of the records on which his opinion is based. Lipson, 46 F. Supp.2d at 764-65; see, In re Vincent Crisomia, 286 B.R. 604 (2002) (same). In Lipson, the court concluded that an accountant's opinions were unreliable where he "did not attempt to audit the [Defendant's corporations'] internal financial reports, that he did not attempt to determine their accuracy, and that he did not assess the reliability of those reports in reporting revenue or how revenues compare to budget." Lipson, 46 F. Supp.2d at 764. Here, neither accountant verified the accuracy of the records provided to them, nor did they perform their own independent audit of the financial records of any corporation involved in the case. Mr. Lyon proclaims on page 7 of his report:

> For purposes of the Report, KRyS has assumed that all relevant data, reports, legal documents, valuations, opinions, analyses, financial statements, bank documents, and other related information are true, complete, and accurate. This assumption of truth and accuracy applies whether such materials were provided by H&K, the defendant's counsel, or selected by KRyS from third party sourcse. KRyS has not independently verified such materials and does not assume responsibility or liability related to such verification.

(emphasis added). As in Lipson, Plaintiffs' experts have not attempted to verify the accuracy or reliability of the documents on which all of their opinions are based. As such, they lack and adequate foundation and should be excluded on that basis as well.

7

Lyon's report in particular is the type of argumentative and conclusory expert testimony that other courts have excluded. In Hillside Productions, Inc., 389 Fed. Appx. at 460, the court analyzed the admissibility of a forensic account's expert opinions. The court noted that the accountant's report was "heavy on argumentative narrative and short on verification for his figures." Id. at *11. Further, "the report tends to repeat claims in the complaint and does not provide much independent specialized analysis." Id. Similarly, in Schleininger, the district court excluded much of an accountant's expert testimony in a civil RICO case. The plaintiff had retained the expert accountant to render testimony in support of its damage claims after he reviewed the financial records and other evidence in the case. Schleinginger, 938 F. Supp. at 448-49. However, the court concluded that "after listening to [the expert's] testify and discovering the basis for his opinions, this Court is convinced that [the expert] is seeking to weave a story. In doing so, [the expert] has selected those portions of the available material which support his client's position, and has deliberately ignored other portions that do not support his client's claim."

Lyon's report falls into the same category and should be excluded for the same reasons. As a starting point, his report is replete with argumentative invective and descriptions of actions that are clearly meant to advance Plaintiffs' theory of the case, as opposed to providing dispassionate and reasoned analysis. Throughout the report, he uses the phrase "Fraudulent Conduits" as shorthand for a series of third party corporations which in no way, shape or form have a relationship with Victor Baranskyi or any company owned by Victor Baranskyi. Victor Baranskyi does not own these "Fraudulent Conduits" and Lyon only ties him to them through innunendo and insinuation. Lyon suggests that those companies are something other than

8

properly formed third party corporation, yet provides little, if any, actual facts to support this alternative version of reality.

Similarly, Lyon uses the libelous moniker of "Money Laundering Entities" to refer to yet another group of companies, while at the same time failing to reference even a scintilla of actual evidence that any of these entities engage in any criminal activities or have been criminally charged with any crime. Additionally, Lyon notes that the Defendants use "cash boxes" and "vast cash deposits" to transact business which "raises an immediate red flag with respect to the legitimacy and legality of certain aspects of Vista's operations." Lyon Report at 18. Yet, after using such pejorative language, he fails to explain <u>why</u> using this transaction method raises "red flags." It is not beyond the realm of reason that using 'cash boxes' is simply an acceptable way to do business in the Ukraine. Lyon's Report asks this Court to assume the opposite is true. As a factual matter, these 'cash boxes' on which Lyon's relies to support his mistaken belief that they raise 'red flags' are nothing more than standard safe deposit boxes used by banking customers throughout the world every day. Further, he accuses ICI of having committed "bankruptcy fraud", yet ignores the fact that neither ICI nor anyone associated with ICI has ever been accused of, or charged with "bankruptcy fraud" let alone convicted of such a crime. Along the same lines, he boldly asserts that "Vista engages in illegal money laundering and tax evasion" while failing to mention that neither Vista, nor anyone associated with Vista has been charged with and/or been convicted of the crimes. He also fails to mention that, rather than violating the laws of Ukraine, Vista provides much needed jobs for the people of Ukraine.

Moreover, both experts 'cherry-pick' a small fraction of the available documents to support Plaintiffs' legal theories. As all parties will attest, hundreds of thousands of pages of documents have been produced in this case. Those documents reflect innumerable financial

transactions by and between the aforementioned numerous corporate entities. In support of their respective opinions, Katz and Lyons rely on a small population of these documents. In some cases, they have only relied on one piece of documentation. This selective reliance is further proof that these experts are going out of their way to support Plaintiffs' pre-conceived narrative of malfeasance on the part of Victor Baranskyi, FBP and its sister companies. They are, as the court in Schilinnger put it "trying to weave a story."

**D. MANY OF THE EXPERTS' SPECIFIC OPINIONS ARE ALSO INADMISSIBLE FOR ADDITIONAL REASONS**

Lyons' First Opinion that ICI's decrease in equity value was due to "intentional dissipation" is not admissible, as a matter of law, nor is it true for that matter. Testimony about a litigant's state of mind or intent is not the proper subject of expert testimony. U.S. v. McDonnell, 2014 WL 2916721, * 1 (E.D. Va. June 26, 2014) (proposed expert is no more qualified to judge fraudulent intent than lay person). As the district court pointedly noted in In re Rezulin Prods. Liab. Litig., 309 F. Supp.2d 531, 547 (S.D.N.Y. 2004), "[I]nferences about the intent or motive of parties or others lie outside the bounds of expert testimony...the question of intent is a classic jury question and not one for the experts." see also, In re Fosamax Prods. Liab. Litig., 645 F. Supp.2d 164, 192 (S.D.N.Y. 2009) (precluding testimony as to "the knowledge, motivations, intent, state of mind, or purpose of' a company and its employees because it "is not a proper subject for expert or even lay testimony.")

Many of the experts' opinions are legal conclusions which are not admissible as a matter of law. In this circuit as in others, an expert witness may not render expert testimony on an ultimate issue that merely states a legal conclusion. United States v. Barile, 286 F.3d 749, 760 (4th Cir. 2002); Dow v. Jones, 311 F.Supp.2d 461, 474-75 (D. Md. 2004). "[T]he district court must limit expert testimony so as to not allow experts to opine on 'what the law required' or

'testify as to the governing law.'" Casper v. SMG, 389 F. Supp.2d 618, 621 (D. N.J. 2005) quoting U.S. v. Leo, 941 F.2d 181, 196-97 (3rd Cir. 1991). Similarly, the court in Reginald Martin Agency, Inc. v. Conseco Med. Ins. Co., 2007 WL 831613, *3 (S.D. Ind. Mar. 5, 2007), held that an expert witness could not testify about a legal conclusion that went to the heart of a breach of fiduciary duty and constructive fraud claim.; Walsh v. Principal Life Ins. Co., 266 F.R.D. 232, 238 (S.D.Iowa 2010) ("expert testimony on legal matters is not admissible. Matters of law are for the trial judge, and, and it is the judge's job to instruct the jury on them."). These general prohibitions on 'ultimate legal issue' testimony apply equally to the expert testimony of accountants. See e.g., Pozez v. Ethanol Capital Management, L.L.C., 2009 WL 2176574, *12 (D. Ariz. July 21, 2009).

    The case of Tindall v. H&S Homes, LLC, 2012 WL 3242128 (M.D. Ga. Aug. 7, 2012) provides a good example of the limits of expert testimony in a highly analogous case. There, plaintiff alleged that a defendant corporation was the alter ego of other corporations and that the corporations engaged in fraudulent transfers between each other. Id. at *1. Plaintiff retained a Certified Public Accountant, Robert J. Taylor, who reviewed the financial records at issue in the case, as well as the depositions taken of the parties and witnesses. Id. at *5. He was prepared to opine on many matters, including the issue of whether or not one corporation was an alter ego of another, and the general question of the separateness of the different corporations. Id. This testimony was objected to on the ground that it was irrelevant, unreliable and amounted to "impermissible legal conclusions." Id. In analyzing the issue, the court noted that Mr. Taylor "does not have legal experience or training that would qualify him to render" opinions on "the issues of corporate separateness, alter ego, or piercing the corporate veil." Id. at 6. The court ultimately held that "Mr. Taylor is neither qualified to offer an opinion about Georgia law nor

11

authorized to make legal conclusions as to whether H&S Homes may be considered the 'alter ego' of any Defendant. Such opinions involve matters reserved for courts under an alter ego analysis and exceed the expertise of an accounting and finance expert." Id. at 5. Mr. Taylor was precluded from rendering these 'ultimate issue' opinions. see also, Rochester Gas & Elec. Corp. v. GPU, Inc., 355 Fed. Appx. 547, 551 (2d. Cir. 2009) (explaining that "it was for the court alone to determine whether the facts met the standard for piercing the corporate veil"); Ponca Tribe of Indians of Okla. v. Cont'l Carbon Co., 2008 WL 7211982, *3 (W.D. Okla. Nov. 21, 2008) (accounting expert precluded from offering "summary and understanding of the relevant legal rules applicable to whether one corporation can be held liable for the actions undertaken by another related corporation").

Several of the opinions proffered by both of Plaintiffs' accounting experts fall into the category of ultimate legal conclusions and are inadmissible on that ground alone. Katz's Second Opinion that ICI, Vista and others "fraudulently" transferred funds out of ICI is a legal conclusion that also ignores the only evidence in this case that ICI's finances were controlled out of its office in Greece by Mr. Vitale Cherepanov. Similarly, Lyons' Third Opinion (Baranskyi "fraudulently" transferred assets), his Sixth Opinion (Vista is "dominated and controlled" by Baranskyi in support of the alter ego claims), his Seventh Opinion (use of 'Fraudulent Conduits and known Money Laundering Entities by Industrial Carriers...is...indicative of fraud") and his Eighth Opinion (Vista engages in "illegal money laundering and tax evasion activities") are all legal conclusions that are inadmissible at trial. Like the accountant in Tindall, Katz and Lyon are not qualified to render legal opinions on these ultimate issues and, thus, should be prohibited from doing so at trial.

Lyon's Fourth Opinion, that Baranksyi's statement that he started Vista with $1 million from his mother is not credible, is also not admissible. Expert testimony on whether or not a witness is telling the truth or is credible is inadmissible. United States v. Lespier, 725 F.3d 437, 449 (4th Cir. 2013) cert. denied, 134 S.Ct. 974 (2014) (holding that the trial court did not abuse its discretion in excluding defendant's expert on the basis that his testimony would "intrude on the jury's role regarding the assessment of the credibility of the witness" and that "Rule 702 renders inadmissible expert testimony on the issues of witness credibility"); see also, United States v. Cecil, 836 F.2d 1431, 1436-37, 1442 (4th Cir. 1988) (excluding a psychiatrist's report alleging that the government's witness suffered form a narcissistic personality disorder precluding the witness from testifying truthfully). Put another way, "[E]xpert testimony is not needed to determine whether a declarant or witness is telling the truth." De Jager Construction, Inc. v. Schleinginger, 938 F. Supp. 446, 449 (W.D.Mich. 1996). As such, Lyons' Fourth Opinion must be excluded at trial.

## CONCLUSION

Plaintiffs' expert witnesses, Jeffrey M. Katz and G. Grant Lyon should be excluded at the trial of this matter. None of their opinions has an adequate factual foundation and several of their individual opinions should be excluded for separate and distinct reasons. Freight Bulk Pte, LTD., by counsel, respectfully moves this Court to exclude these witnesses from the trial of this matter.

    Respectfully Submitted,

    By:   /s/ Bryan K. Meals
    DAVEY & BROGAN, P.C.
    Mr. Patrick M. Brogan (VSB No. 25568)
    Mr. Bryan K. Meals, (VSB No. 40184)
    101 Granby Street, Suite 300

Norfolk, Virginia 23510
Telephone: 757.622.0100
Facsimile: 757.622.4924
Email: Pbrogan@daveybroganpc.com
bmeals@daveybroganpc.com

-AND-

LAW OFFICE OF SERGEI KACHURA
Sergei Kachura (*Pro Hac Vice*)
311 North Center Avenue
Brownwood, TX 76801
Tel: 301.358.5196
Email: svkachura@yahoo.com
*Attorneys for Specially Appearing Defendant FB - PTE. LTD*

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which in turn will provide electronic notification of and access to such filing to the counsel of record in this matter who are registered on the CM/ECF system.

/s/ Bryan K. Meals
DAVEY & BROGAN, P.C.
Mr. Patrick M. Brogan (VSB No. 25568)
Mr. Bryan K. Meals (VSB No.: 40184)
101 Granby Street, Suite 300
Norfolk, Virginia 23510
Telephone: 757.622.0100
Facsimile: 757.622.4924
Email: pbrogan@daveybroganpc.com
bmeals@daveybroganpc.com
*Counsel for Specially Appearing Defendant FB - Pte. Ltd.*