IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FLAME S.A.,

     **Plaintiff,**

GLORY WEALTH SHIPPING PTE LTD.,          CIVIL NO. 2:13-cv-658

     **Consolidated Plaintiff,**

NOBLE CHARTERING, INC.,

     **Intervening Plaintiff,**

     v.

INDUSTRIAL CARRIERS, INC., VISTA
SHIPPING, LTD., and FREIGHT BULK
PTE. LTD.,

     **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon the hearing regarding the confirmation of the sale ("Confirmation Hearing") of the M/V CAPE VIEWER ("CAPE VIEWER" or "Vessel") at which counsel for Plaintiff Flame S.A. ("Flame"), Intervening Plaintiff Noble Chartering, Inc. ("Noble"), and Defendant Freight Bulk Pte. Ltd. ("FBP") attended. In a prior Order, (ECF No. 552), the Court **CONFIRMED** the sale of the CAPE VIEWER to Noble for the sum of $8,300,000.00 and now memorializes its reasons herein.

### I.    FACTUAL AND PROCEDURAL HISTORY

The parties being familiar with the complicated and complex procedural history of this case, the Court will summarize the case before turning to the most relevant portions for the

present inquiry. On November 22, 2013, Flame moved the Court to grant a writ of judicial attachment for the CAPE VIEWER under Supplemental Admiralty Rule B. The Vessel was attached on November 29, 2013 with a cargo of coal onboard, interrupting a pending charter between Noble and Vitol, S.A. ("Vitol"). After the Court initially denied an attempt to intervene by Glory Wealth Shipping Pte Ltd. ("Glory Wealth"), the Court entered an Order consolidating Flame and Glory Wealth's claims on December 20, 2013. (ECF No. 39). In the following seven months, countless motions were filed; many by FBP as part of its litigation strategy of delay and deferment. On August 26, 2014, the Court began a bench trial in this matter to determine: (1) whether FBP, Vista Shipping, Ltd. ("Vista"), Industrial Carriers, Inc. ("ICI"), and Viktor Baranskiy were alter egos of one another, and (2) whether ICI fraudulently transferred funds and contracts to Vista and FBP in order to avoid its creditors. The trial, however, abruptly ended on September 4, 2014 after Viktor Baranskiy, a named Defendant as well as the principal witness and owner of FBP, along his pro hac vice attorney, Sergei Kachura, fled the country in the middle of Baranskiy's cross-examination.

On September 19, 2014, the Court issued a Memorandum Opinion, (ECF No. 489), and an Order directing for the sale of the M/V CAPEVIEWER by public auction on October 6, 2014. ("Order for Sale"). (ECF No. 490). The Order for Sale also required that proper notice of the sale be published in The Virginia Pilot and Tradewinds. The Court subsequently scheduled a Confirmation Hearing for October 14, 2014, at which all parties would be given an opportunity to express any objections to the sale. At the time the Court issued the Order for Sale on September 19, none of the parties voiced any objections to this Order.

On October 3, 2014, however, the Court learned that the notice of the sale of the CAPE VIEWER was never advertised in Tradewinds, as directed by its Order for Sale. Later that day,

2

the Court issued an Order instructing the sale of the Vessel to proceed on October 6, 2014 at 11:00 a.m. and scheduling a Status Conference for October 10, 2014 at 10:00 a.m. to discuss the adequacy of the notice for the sale. (ECF No. 522). On October 6, 2014, the sale of the CAPE VIEWER occurred without any difficulties, and Noble's bid of $8,300,000.00 was the highest bid. Again, at the time of the sale of the Vessel, none of the parties expressed any objections to any part of the public auction or sale.

At around 8:00 p.m. on October 9, 2014, the night before the Status Conference, FBP filed a Motion to Set a Bond. (ECF No. 536). This motion requested the Court's permission to post a bond to release the attachment on the CAPE VIEWER. Specifically, FBP asked for the bond to be set at $8,600,000.00 and be paid via wire transfer by either the Confirmation Hearing on October 14, 2014 or within three (3) to seven (7) days of the entry of an order. At 10:00 a.m. on October 10, 2014, all parties appeared through counsel at the Status Conference before the Court. In that hearing, all parties were given the opportunity to argue the merits of the Motion to Set a Bond. After hearing arguments, the Court, in open court, granted FBP's Motion to Set a Bond in part and allowed FBP until 2:00 p.m. later that day to deliver a bond of $8,600,000.00 in cash to the clerk of court. The Court issued a written Order approximately two hours later reiterating its ruling. (ECF No. 539); (ECF No. 547). The Court reconvened at 2:03 p.m., at which time FBP represented to the Court that it had failed to post the necessary bond by the 2:00 p.m. deadline. Before adjourning, the Court clarified that all parties knew the Confirmation Hearing would occur at 12:15 p.m. on Tuesday, October 14, 2014, the following business day after a long holiday weekend.

The night before the Confirmation Hearing, FBP filed a flurry of motions. Among them was the Notice of Appearance of Ian S. Hoffman, an attorney from Arnold & Porter, who sought

3

to appear on behalf of FBP. (ECF No. 542). At 9:07 p.m. on Monday, October 13, 2014, Mr. Hoffman subsequently filed two documents on behalf of FBP: a Notice of Interlocutory Appeal to the Court's Order granting of FBP's Motion to Set a Bond, (ECF No. 543), and a Motion for a Stay Pending Appeal. (ECF No. 544).

On October 14, 2014, the Confirmation Hearing took place, with counsel for all parties, except Glory Wealth, in attendance. Mr. Hoffman, however, failed to appear. At this hearing, counsel for FBP advanced no oral arguments defending its Motion for a Stay. Furthermore, none of the parties in attendance, including FBP, objected to, nor advanced any position or arguments against, the sale of the CAPE VIEWER. Accordingly, the Court confirmed the sale of the CAPE VIEWER to Noble Chartering, Inc. in open court, and subsequently issued an Order reflecting this ruling. (ECF No. 552).

## II.    LEGAL AUTHORITY

"Auctions should not be empty exercises." First Nat'l Bank of Jefferson Parish v. M/V Lightning Power, 776 F.2d 1258, 1261 (5th Cir. 1985). "The public policy of inspiring confidence in court-ordered sales favors confirmation of the sale to the highest bidder at the auction if it is fairly conducted." Id. However, the Court must also consider that the purpose of a judicial sale is "to benefit both the creditors and debtors." Id. The decision to confirm a judicial sale is, nevertheless, "within the judgment and discretion of the tribunal ordering the sale." Atlantic Funding Corp. v. Peterson, 13 Fed. Appx. 201, 204 (4th Cir. 2001) (quoting Am. Trading & Prod. Corp. v. Connor, 109 F.2d 871, 872 (4th Cir. 1940)); Bovay v. Townsend, 78 F.2d 343, 345 (8th Cir. 1935) ("The rule in federal courts is quite well settled, however, that the matter of confirming a public judicial sale rests in the sound judicial discretion of the trial court and that appellate courts will not disturb that discretion, except in cases of its abuse.").

4

## III.   CONFIRMATION OF THE SALE OF THE CAPE VIEWER

At both the public auction and the Confirmation Hearing, none of the attending parties expressed any objections to the sale of the CAPE VIEWER. However, since BFP filed a Motion for a Stay Pending Appeal, the Court must rule on this motion before reviewing the sale of the Vessel.

### A.   Motion for a Stay Pending Appeal

Before the Court reviews the propriety of a stay in the present case, two inaccurate factual allegations made by FBP in its Motion for a Stay need to be corrected. First, FBP's challenge of the value of the bond set by the Court is disingenuous. FBP contends that when the Court ordered FBP to pay a bond of $8,600,000.00, the Court required FBP to deliver a bond "in an amount above the appraised value." (Def.'s Motion for a Stay at 3). FBP fails to mention that it explicitly offered to post a bond of this value in its Motion to Set a Bond. Second, FBP's characterization of the time that FBP had to post the bond is also incorrect. FBP states that it had less than two hours to post the bond. (Id.). However, this statement is simply false. The Court ruled on FBP's Motion to Set a Bond in open court, shortly after the hearing started at 10:00 a.m. Under these facts, the Court granted FBP twice the amount of time that FBP represented it received in its motion. With these factual falsities corrected, the Court considers the merits of FBP's Motion for a Stay.

A stay is an exercise of judicial discretion. Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 125 (4th Cir.1983) ("[F]ederal district courts possess the ability to, under their discretion, stay proceedings before them when the interests of equity so require."). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." Nken v. Holder, 556 U.S. 418, 433–34, 129 S. Ct. 1749, 1761 (2009). In deciding

whether to grant a stay pending appeal, the Court must consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Id. at 434, 129 S. Ct. at 1761; see also Long v. Robinson, 432 F.2d 977, 979 (4th Cir. 1970).

Assuming arguendo that an irreparable injury resulted to FBP when the Court denied the stay, a stay pending the appeal of FBP's Motion to Set a Bond was not appropriate in this case. Even if FBP suffered an irreparable injury, this fact does not end our inquiry. Nken, 556 U.S. at 433, 129 S. Ct. at 1760 ("A stay is not a matter of right, even if irreparable injury might otherwise result." (quoting Virginian Ry. Co. v. United States, 272 U.S. 658, 671, 47 S. Ct. 222, 228 (1926)). A diligent review of the other relevant factors reveals that a stay pending appeal was simply not appropriate.

First and foremost, FBP was not likely to succeed on the merits in light of the discretion afforded to the Court and the factual circumstances. FBP filed its Motion to Set a Bond pursuant to Supplemental Rule E of the Federal Rules of Civil Procedure. This rule permits a party to post a bond in order to release property that has been attached under maritime law. FED. R. CIV. P. SUPP. R. E(5)(a) ("Whenever process of maritime attachment and garnishment or process in rem is issued the execution of such process shall be stayed, or the property released, on the giving of security . . . ."). In its Motion to Set a Bond, FBP maintained that Supplemental Rule E is mandatory. Specifically, it cited to language in Gerard Construction Inc. v. Motor Vessel Virginia, 480 F. Supp. 488 (W.D. Pa. 1979), which states "[t]he right to obtain the release of arrested property upon the posting of adequate security is absolute and not subject to the court's discretion." Id. at 491. Despite FBP's best efforts, however, a cursory review of the relevant case

6

law shows that its interpretation of this rule is incorrect.

To begin with, the Court always has the power to set deadlines. "[D]istrict courts enjoy broad discretion in deciding how best to manage the cases before them. Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1366 (11th Cir.1997). This discretion includes the power "to set and enforce deadlines." Rae v. Perry, 392 Fed. Appx. 753, 755 (11th Cir. 2010). Additionally, and perhaps more importantly, FBP's position has already been rejected in Salazar v. Atlantic Sun, 881 F.2d 73 (3d Cir. 1989). In that case, the owner of the attached property cited to Gerard Construction Inc. for the same proposition—that is "after an auction has been held, an owner has the absolute right to possession of its vessel upon posting a bond equal to the amount of the highest bid." Id. at 80. In interpreting Supplemental Rule E(5), the Third Circuit found otherwise, dismissing Gerard Construction Inc. as "not on point." Id. Instead, the court found the rule does import some discretion to the trial court in its application—stating: "Determining the shipowner's right to possession of its vessel by providing security for satisfaction of the plaintiff's lien, but yet giving due consideration to the bidder's position, *is a task squarely within the discretionary powers of the court sitting in admiralty*." Salazar, 881 F.2d at 80 (emphasis added). Accordingly, the Court finds Salazar persuasive and concludes that Supplemental Rule E clearly imports discretionary power to the Court.

Upon considering the facts underlying the Court's decision, and the discretion afforded to such decisions, the Court determines that FBP would likely not succeed on the merits. "It is not enough that the chance of success on the merits be 'better than negligible.'" Nken, 556 U.S. at 434, 129 S. Ct. at 1761 (quoting Sofinet v. INS, 188 F.3d 703, 707 (7th Cir. 1999)). Instead, the moving party must make a stronger showing of success on the merits. See, e.g., BDC Capital, Inc. v. Thoburn Ltd. P'ship, 508 B.R. 633, 637 (E.D. Va. 2014) ("In order to receive a stay

pending appeal, [the moving party] must make a strong showing that it would succeed on the merits on appeal."). In addition, although a matter of first impression, the standard of review would likely be abuse of discretion. Judgments subject to the discretionary power of the trial court are not usually disturbed, absent abuse of discretion. See Am. Trading & Prod. Corp., 109 F.2d at 871; DeRosa v. Walsh, 541 Fed. Appx. 250, 252 (4th Cir. 2013); Seoul Broadcasting System Intern., Inc. v. Young Min Ro, 784 F. Supp. 2d 611, 613 (E.D. Va. 2011). As mentioned above, the Court has discretionary power to set deadlines and balance the competing interests of the owner and bidder when setting the conditions on a bond. In light of the factual circumstances that the Court relied upon to decide FBP's Motion to Set a Bond, and upon balancing FBP's position with the interests of the highest bidder, Noble, FBP cannot show that the Court abused its discretion.

In denying FBP's motion, the Court relied on certain factors. First, FBP's consistent practice of delay and deferment influenced the Court's decision. As noted numerous times throughout this litigation, FBP's principal witness and owner, Viktor Baranskiy, was not open, frank, and truthful at trial. His questionable influence on this case culminated in his departure mid-trial during cross examination without warning. Furthermore, on multiple occasions, FBP was severely sanctioned by its abuse of the discovery process. Although Mr. Baranskiy's presence and the sanctioning of FBP are not the only aspects of FBP's litigation strategy that have been questionable, they are indicative of FBP's persistent attempt to hide the ball and postpone this case.

Second, the Court also considered the timing of FBP's motion and the failure of FBP to be ready to post a bond. This litigation has been ongoing since the CAPE VIEWER was attached on November 29, 2013. Until the Status Conference on October 10, 2014, FBP never made any

indication that it desired to post a bond to release the Vessel from its attachment. Instead of posting a bond, however, FBP filed a Motion to Set a Bond at 8:00 p.m. the night before a 10:00 a.m. Status Conference and less than two business days before the Confirmation Hearing—which would be held on October 14, 2014 after a long holiday weekend.

Third, the Court accounted for the practical consequence of granting FBP's request to post a bond via wire transfer. In its Motion to Set a Bond, FBP argued that it could post the bond before the Confirmation Hearing on October 14, 2014 or within three to seven days from the entry of such an order. Despite these representations to the Court, however, granting the motion in full would have required the Court to delay the Confirmation Hearing. If ordered at the Status Conference, a wire transfer from Europe on October 10 to the United States would have occurred after the banks were already closed. As a result, the bond clearly would not have arrived before the Confirmation Hearing scheduled for 12:15 p.m. on October 14. Accordingly, granting FBP's request to post a bond via wire transfer would have required the Court to delay the confirmation of the sale.

Finally, the Court considered the frequency that Mr. Baranskiy and FBP utilized and relied on cash payments. Trial testimony from various sources also established that Baranskiy's companies regularly relied on cash payments. Employees received "cash bonuses" up to the amount of half a million dollars. (Trial Tr. 3:21–24, Aug. 26, 2014, ECF No. 441). Cash transactions between his companies easily totaled millions of dollars. Id. at 4:3–5 (noting one cash leger totaled records of "tens of millions of dollars of cash transactions"). The record also establishes that Mr. Baranskiy himself relied on cash transactions. In his deposition, Mr. Baranskiy himself testified to making several large cash transfers, including a deal in which he received roughly one million dollars in a suitcase from his mother. (Baranskiy Dep. 137:2–7,

ECF No. 51). Mr. Baranskiy also testified at trial that he carried as much as eight hundred-thousand dollars of cash around the city of Odessa. (Trial Tr. 72:8–74:11, Sept. 3, 2014, ECF No. 456). Further testimony and evidence indicated that such cash transactions were only the tip of the iceberg.

Based on these considerations, the Court found, and so finds today, that FBP's Motion to Set a Bond was just its latest attempt to suspend the progression of this case and the judicial sale of the CAPE VIEWER. The last minute nature of FBP's motion, combined with FBP's prior pattern of delay, the practical necessity to postpone the Confirmation Hearing, and FBP's failure to be ready to post a bond, strongly indicated that FBP was simply seeking to delay the case. Despite the doubt surrounding FBP's intent to actually post a bond, however, FBP did have a legitimate interest in doing so. Nevertheless, the Court also had to consider Noble's strong interests in the subject matter. As the highest bidder at the public auction, Noble had an obvious interest in proceeding with the case. However, Noble also had an interest as the party who sought to promptly complete its pending charter with Vitol, which was interrupted by the attachment of the CAPE VIEWER. Accordingly, Noble had a strong interest in proceeding with the case without interruption.

In order to balance the interests of FBP and Noble, the Court determined that requiring a short deadline to post the bond in a cash payment would best protect the interests of all parties. Requiring a cash payment with a short deadline would benefit Noble by reducing any likelihood of further delay. These conditions would also grant FBP an opportunity to post a bond if it legitimately wanted to do so. After all, if FBP had any desire to actually post a bond, surely it would have made such a request sometime in the ten months between the attachment of the vessel and the public auction and not the night before the Status Conference. At the very least,

FBP would have had the money for a bond on hand. In addition, FBP's past inclination to rely on large cash transactions to conduct business suggested a cash payment to post a bond did not unduly prejudice the party. Based on these considerations, the Court granted FBP's Motion to Set a Bond, to the extent that FBP had until 2:00 p.m. on Friday, October 10, 2014 to deliver a bond of $8,600,000.00 in cash to the Clerk of the United States District Court for the Eastern District of Virginia. As mentioned earlier, however, FBP failed to meet this deadline to post a bond.

In light of the Court's careful balancing of FBP and Noble's interests, FBP cannot show that the Court abused its discretion in granting FBP's Motion to Set a Bond. Accordingly, the Court concludes that FBP was not likely to succeed on the merits of its appeal of this motion.

The remaining factors for granting a stay pending appeal also do not weigh in FBP's favor. Despite FBP's arguments to the contrary, Noble would have suffered substantial harm from further delay in the action. As alluded to earlier, staying the action would have further postponed Noble's attempt to complete its charter with Vitol. In addition, the public interest also weighs against the imposition of a stay. Courts have recognized a strong public policy in favoring efficient and fair judicial sales, First Nat'l Bank of Jefferson Parish, 776 F.2d at 1261, or any other action that "impair[s] confidence in the stability of judicial sales." Ballentyne v. Smith, 205 U.S. 285, 291, 27 S. Ct. 527, 529 (1907). FBP's constant attempts to undermine and delay the Court's adjudication of this case have rendered ongoing litigation uneconomical and inefficient. Furthermore, a stay would have also extended a physical danger to the public. The Court was informed that the combustible nature of the coal on the Vessel posed a substantial risk of spontaneous combustion. Consequently, a further delay of the case would have prolonged the risk of a fire to the port of Norfolk. Accordingly, the public interest would not be served by the

further delay of this action.

Therefore, the Court holds that FBP has not met its burden in showing that the circumstances of the present case justify a stay pending appeal.

### B.    Conditions of the Sale

The Court now considers the adequacy of the sale of the CAPE VIEWER. On October 6, 2014, only a single bid was made. Noble bid $8,300,000 for the Vessel. First and foremost, Nobles' bid was in the range previously found acceptable by the Court. In an Order dated September 19, 2014, the Court analyzed three appraisals for the value of the CAPE VIEWER and found $8,300,000.00 to $8,600,000.00 to be the most acceptable valuation of the Vessel. (ECF No. 491). The Court relies on that Order to find that Noble's bid of $8,300,000.00 was a fair bid for the CAPE VIEWER. In addition, at no point did any party to this litigation, including FBP, object to the sale. After the auction concluded, none of the parties objected. Furthermore, at the Confirmation Hearing on October 14, none of the parties made any objections. In fact, two of the parties, Flame and Noble, moved to confirm the sale. In light of the fair bid price and the lack of any objections by any party to the sale, the Court holds that sale of the CAPE VIEWER to the highest bidder, Noble, was fairly conducted under acceptable conditions.

### IV.    CONCLUSION

For the reasons set forth above, the Court **DENIED** FBP's Motion for a Stay Pending Appeal and **CONFIRMED** the sale of the M/V CAPE VIEWER to Noble Chartering, Inc. for the sum of $8,300,000.00 paid to this Court.

**IT IS SO ORDERED**.                    **Entered *nunc pro tunc* October 14, 2014.**

                                         /s/
                                         Robert G. Doumar
                                         Senior United States District Judge

                                         UNITED STATES DISTRICT JUDGE

Norfolk, VA
October ____, 2014

13