IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FLAME S.A.,

      Plaintiff,

GLORY WEALTH SHIPPING PTE LTD.,

      Consolidated Plaintiff,

v.                              **CIVIL ACTION NO. 2:13-cv-658**

INDUSTRIAL CARRIERS, INC., et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court now is the "Memorandum in Support of Consolidated Plaintiff Glory Wealth Shipping Pte Ltd.'s ["Glory Wealth"] Motion for Award of Attorneys' Fees and Costs," along with a supplemental declaration in support. ECF Nos. 589, 588. Glory Wealth's request for fees and costs is premised on this Court's previous Orders authorizing such relief. Specifically, upon granting in part Glory Wealth's Motion to Compel, ECF No. 173, ("Motion to Compel"), the Court found that Defendant Freight Bulk Pte, Ltd.'s ("FBP") position was not substantially justified, and other circumstances did not make an award of reasonable expenses unjust; therefore, it granted Glory Wealth's request for attorneys' fees and costs in one of two discovery orders issued on April 30, 2014. ECF No. 209 ("Discovery Order"). Later, Glory Wealth filed a Motion for Sanctions, ECF No. 323, based on FBP's violation of the Court's Discovery Order. In granting the motion, the Court again awarded Glory Wealth its attorneys' fees and costs. ECF No. 377 ("Sanctions Order"). Glory Wealth subsequently filed a single motion seeking its attorneys' fees for both the Motion to Compel and the Motion for Sanctions.

ECF No. 468. That motion was denied without prejudice based on Glory Wealth's failure to provide sufficient evidence of the reasonableness of the fees it sought, and Glory Wealth was given fourteen days to submit additional evidence to remedy the deficiencies in its fee request. ECF No. 572. Glory Wealth has now done so, ECF Nos. 588 and 589, FBP has responded, ECF No. 600, and Glory Wealth has replied, ECF No. 602. Accordingly, the matter is now ripe for disposition.

## I. PROCEDURAL HISTORY

Having previously discussed the relevant procedural history and the basis for the Court's finding that FBP should pay Glory Wealth's attorneys' fees and costs in the Court's Discovery Order, ECF No. 209, its Sanctions Order, ECF No. 377, and its Order denying without prejudice Glory Wealth's first request for attorneys' fees, ECF No. 572, the Court will not repeat said details here. Rather, only a summary is necessary to establish the context for the present request for attorneys' fees.

With respect to the Motion to Compel, in relevant part Glory Wealth sought to compel FBP to fully respond to its First Request for Production of Documents ("RFP"), and to produce Viktor Baransky for a deposition. In granting the motion in part, the Court ordered FBP to produce documents in response to RFP numbers 1-33, 35-70, 72-75, 77, 87, 95-129, 131-132, 135, 138-144, 146-147, 149-160, 163, 167-169. ECF No. 209 at 5. The Court also ordered FBP to produce Mr. Baransky for deposition. *Id.* at 6-7. In denying the motion in part, the Court held that FBP was not required to produce documents in response to RFP numbers 71, 78-86, 88-94, 130, 133-134, 136-137, 145, 148, 161-162, 164-166, 170. *Id.* at 5. FBP was also directed to respond to request number 34 and 76 as limited by the Court. *Id.* Finding that Glory Wealth had made a good faith effort to resolve the discovery dispute without the intervention of the Court,

that FBP's position was not substantially justified, and that circumstances did not otherwise make an award of expenses unjust, the Court granted Glory Wealth's request for attorneys' fees pursuant to Federal Rule of Civil Procedure ("Rule") 37(a)(5)(A). ECF No. 209 at 8-9. However, as the Court acknowledged in its Order granting Plaintiff Flame S.A.'s, ("Flame"), first motion for attorneys' fees, it should have referenced Rule 37(a)(5)(C), since Glory Wealth's motion was granted in part and denied in part. *See* ECF No. 498 at 4-5. While Rule 37(a)(5)(A) provides that the Court *must* award reasonable expenses if the motion is granted (absent the exceptions delineated in subparts (i-iii)), Rule 37(a)(5)(C) provides that the Court *may apportion* the reasonable expenses for the motion if it is granted in part and denied in part (absent the same exceptions). *Compare* Rule 37(a)(5)(A), *with* Rule 37(a)(5)(C). Accordingly, the Court will appropriately apply Rule 37(a)(5)(C)'s direction to apportion the reasonable expenses for the Motion to Compel. *See, e.g., Mitchell v. Nat'l R.R. Passenger Corp.*, 217 F.R.D. 53, 60 (D.D.C. 2003) (finding an apportioned award was appropriate when the movant prevailed on six out of seven discovery issues).

With respect to the Motion for Sanctions, Glory Wealth claimed that FBP failed to comply with the Discovery Order and cited six categories of requested discovery that FBP had not produced in violation of the Discovery Order:

1. Corporate Records. ECF Nos. 324 at 7-9;
2. Emails Sent or Received by Victor Baransky. *Id.* at 9-10;
3. Supporting Documentation for Bank Records. *Id.* at 10-11;
4. Attachment to the Loan Agreement Between Sea Traffic Shipping Co. and FBP. *Id.* at 11-12;
5. Charters for the M/V CAPE VIEWER and HARMONY FALCON. *Id.* at 12-13; and
6. Documents from Industrial Carriers Inc. ("ICI"). *Id.* at 13.

Glory Wealth consequently sought sanctions for FBP's violations, including attorneys' fees and costs it incurred because of FBP's failure to obey the Court's Discovery Order. In its Sanction

Order, the Court found that FBP did not violate the Court's Discovery Order in connection with its production of the supporting documentation for bank records, and the charter parties for the CAPE VIEWER and HARMONY FALCON, but that FBP did violate the Court's Discovery Order by failing to produce documents pertaining to ICI, including corporate records, and the attachment to the loan agreement between Sea Traffic and FBP evidencing the loan repayment terms. ECF No. 377 at 19. In addition, the Court found that FBP violated the Discovery Order by failing to produce, in a timely fashion, Viktor Baransky's emails and the attachments thereto. *Id.* Evaluating FBP's conduct under Rule 37(b)(2)(A) and the standards enunciated in *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998), the Court found that such conduct warranted the imposition of sanctions, including reasonable expenses incurred as a result of FBP's failure to obey the Court's Discovery Order. *Id.* at 19-24. Based on FBP's counsel's role in advising the disobedient party, the Court awarded Glory Wealth its reasonable expenses against both FBP and its attorneys. *Id.* at 24 n.12.

In support of its request for reasonable expenses, Glory Wealth now relies on a memorandum in support, ECF No. 589, the supplemental declaration of its attorney, Mr. James H. Power, along with attached billing records, ECF No. 588, and the declaration of Mr. Robert W. McFarland, a Norfolk attorney not involved in this litigation but who proffered the declaration in support of Flame's second motion for attorneys' fees, ECF No. 429 attach. 3. FBP opposed Glory Wealth's request on the grounds that it was not properly supported, that the time entries were not identified as to which motion they should be attributed to, that one time entry for July 7, 2014 is not related to either the Motion to Compel or the Motion for Sanctions, and that one third of Glory Wealth's brief in support of its Motion for Sanctions dealt with Glory

Wealth's request that the Court reconsider its Order delineating the parameters of discovery, which the Court has denied. ECF No. 600.

## II. ANALYSIS

As the Court has stated on numerous occasions, it evaluates the reasonableness of attorneys' fees by comparing the requested amount to the lodestar amount, which is defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008). In determining what constitutes a reasonable number of hours and rate, the Court looks to the factors[1] enumerated in *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243-44 (4th Cir. 2009). Specifically in connection with an award of attorneys' fees awarded pursuant to Rule 37, the Court looks to (1) Factor 1: the time and labor expended; (2) Factor 2: the novelty and difficulty of the questions raised; (3) Factor 3: the skill required to properly perform the legal services rendered; (4) Factor 5: the customary fee for like work; (5) Factor 9: the experience, reputation and ability of the attorney; and (6) Factor 12: attorneys' fees awards in similar cases. *Id.; Sun Trust Bank v. Nik*, No. 1:11cv343, 2012 WL 1344390, at *3 (E.D. Va. Mar. 22, 2012). The burden is on the party requesting fees to establish their reasonableness. *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990); *Cook v. Andrews*, 7 F. Supp. 2d 733, 736 (E.D. Va. 1998). Finally, it is within the sound discretion of the Court to fix the amount of a reasonable fee. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Glory Wealth's Motion requests an award of reasonable expenses both with respect to the Motion to Compel, for which fees were awarded pursuant to Rule 37(a), and the Motion for Sanctions, for which fees were awarded pursuant to Rule 37(b). Because of the differences in each rule, the Court will address the standards to be applied first.

---

[1] Sometimes referred to as "the *Johnson* factors," as they were first expressed in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).

### A.    Standards for Determining Attorneys' Fees

#### 1.    Rule 37(a)(5)(C) Standard

Having granted in part and denied in part Glory Wealth's Motion to Compel and awarded it the right to recover reasonable attorneys' fees and costs, the Court turns first to the standards it must apply under Rule 37(a)(5)(C). As many district courts have noted, the same factors guide a court's decision under both subsection 37(a)(5)(A) and 37(a)(5)(C). *See, e.g., Stephenson v. Pfizer Inc.,* No. 1:13CV147, 2014 WL 3385213, at *2 (M.D.N.C. July 9, 2014) (citing *Switch Commn'cns Grp. LLC v. Ballard,* No. 2:11-CV-285, 2011 WL 5041231, at *1 (D. Nev. Oct. 24, 2011)). "'Rule 37(a)(5)(C) effectively incorporates the substantive standards of Rule 37(a)(5)(A) . . . that expenses of a discovery motion may be imposed upon a party ordered to produce discovery where that party's conduct necessitated the motion' unless the nondisclosure or objection was substantially justified or other circumstances make an award of expenses unjust." *Charter Practices Int'l, LLC v. Robb,* No. 3:12CV1768, 2014 WL 273855, at *5 (D. Conn. Jan. 23, 2014) (quoting *Rahman v. Smith & Wollensky Rest. Grp.,* No. 06 CIV. 6198, 2009 WL 2169762, at *2 n.1 (S.D.N.Y. July 21, 2009)).

In addition, reasonable expenses may not be awarded if the movant filed the motion before attempting in good faith to obtain the discovery without court intervention. Rule 37(a)(5)(A)(i). Following the April 9, 2014 hearing held by the Court on Plaintiff Flame's first and second motions to compel and FBP's motion for protective order, the Court ordered all parties, including Glory Wealth, to immediately meet and confer over pending discovery matters. ECF Nos. 148, 147 at 22-25. Glory Wealth's Motion to Compel followed that meet-and-confer, and accordingly, the Court is satisfied that a good faith effort was made to resolve the discovery dispute without the intervention of the Court.

Finally, Rule 37(a)(5)(C) provides that the "reasonable expenses for the motion" may be apportioned when the motion to compel is granted in part and denied in part, as was the case here. Accordingly, the Court will appropriately apply Rule 37(a)(5)(C)'s direction to apportion the reasonable expenses Glory Wealth incurred in making the Motion to Compel. *See, e.g., Mitchell*, 217 F.R.D. at 60 (finding an apportioned award was appropriate when the movant prevailed on six out of seven discovery issues).

1.     Rule 37(b)(2)(C) Standard

Rule 37(b)(2)(C) provides that, instead of or in addition to certain other sanctions, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Having granted Glory Wealth's Motion for Sanctions, the Court imposed as a sanction, *inter alia*, that FBP and its counsel pay Glory Wealth's reasonable attorneys' fees and expenses. ECF No. 377 at 24. In its Sanctions Order the Court found that FBP's position was not substantially justified and an award of expenses was not unjust.[2]  *Id.* Hence, the Court will consider those reasonable expenses Glory Wealth incurred in pursuing the Motion for Sanctions, which necessarily resulted from the failure of FBP to comply with the Court's Discovery Order.

**B.     Motion to Compel**

1.     Fee Request and FBP's Opposition

Glory Wealth requests that it be awarded $9,863 in attorneys' fees, based on 24.4 hours of work billed at rates between $350 per hour and $520 per hour. ECF No. 588 at 4, attach. 1. Specifically, Mr. James H. Power, a partner at the Holland & Knight law firm, billed 5.7 hours at

---

[2] FBP appealed the sanctions imposed in the Sanctions Order pursuant to Rule 72. ECF No. 404. The District Judge overruled FBP's objections. ECF No. 430.

$520 per hour; and Ms. Michelle T. Hess and Warren E. Gluck, associates at Holland & Knight, billed 11.8 hours at $380 per hour and 6.9 hours at $350 per hour, respectively. This time was all incurred after the Court ordered meet-and-confer took place on April 9, 2014, and, according to the time entries, involved work directly related to pursuing the Motion to Compel. *Id.*

In its memorandum opposing Glory Wealth's request for fees, FBP made four conclusory arguments. ECF No. 600 at 3. In making these arguments, FBP generally did not distinguish between those expenses which might be recoverable under Rule 37(a)(5)(C) in connection with the Motion to Compel, and those expenses which could be recoverable under Rule 37(b)(2)(C) in connection with the Motion for Sanctions. Of the four arguments, it appears that three of them might apply to the Motion to Compel.[3] First, it stated that Glory Wealth did not identify which time entries were attributable to which Order.[4] This argument is without merit, as Glory Wealth explicitly labeled which entries applied to pursuing the Motion to Compel and which applied to pursuing the Motion for Sanctions. ECF No. 588 at 4, 6. Second, FBP stated that the entry for July 7, 2014 did not support either motion for which the Court granted Glory Wealth its attorneys' fees. ECF No. 600 at 3. Review of Glory Wealth's proffer clearly indicates that this time entry is included in Glory Wealth's request for fees in connection with the Motion for Sanctions, not the Motion to Compel.[5] ECF No. 588 at 5-6. Third, FBP stated "Glory Wealth has failed to properly support its claim." ECF 600 at 3. In support of this argument, FBP stated that Glory Wealth failed to establish the reasonableness of its fees "in a manner that satisfies the Fourth Circuit precedent." *Id.* These conclusory statements, devoid of any further explanation,

---

[3] FBP's remaining argument is that one-third of Glory Wealth's brief in support of its Motion for Sanctions was attributable to its motion seeking reconsideration of the Court's previous Order limiting the scope of discovery, which Glory Wealth included in the Motion for Sanctions but was denied by the Court in the Sanctions Order. This argument will be addressed in Section II.C.1 of this Memorandum Opinion.

[4] Presumably, FBP meant which time entries applied to the Motion to Compel leading to the Discovery Order, and which entries applied to the Motion for Sanctions, leading to the Sanctions Order.

[5] The Court will address in Section II.C.1. of this Memorandum Opinion whether this time entry is recoverable.

cogent argument or legal support, are not persuasive. However, regardless of the quality, or lack thereof, of FBP's opposition, as discussed, *supra*, as the party requesting the fee award, it is Glory Wealth's burden to establish the reasonableness of its fees. *See Plyler*, 902 F.2d at 277. The Court will therefore examine whether Glory Wealth has met its burden.

2.    Factors 1 and 2: The Time and Labor Expended, and the Difficulty of the Questions Raised

According to the time records proffered by Glory Wealth, three attorneys spent 24.4 hours preparing the Motion to Compel, memorandum in support, and reply memorandum. ECF No. 588 at 4. The specific work performed is detailed in the time entries, along with the attorney who performed the work and the rates that were charged. Based on these time entries and the nature of the issues that were litigated, the Court **FINDS** that the time expended was reasonable given the novelty and difficulty of the questions raised. In the first instance, the issues involved in this discovery dispute were substantially the same as the issues in Plaintiff Flames dispute with FBP. *Compare* ECF Nos. 180 and 182 (memoranda in support of Flame's Third and Fourth motions to compel, respectively), *with* ECF No. 175 (memorandum in support of Glory Wealth's Motion to Compel). In awarding Flame its attorneys' fees for its two motions to compel, the Court found that the 56.2 hours Flame's attorneys' expended was reasonable. ECF No. 498 at 13. Additionally, the Court found that the issues raised in the motions were not particularly unique and were of average difficulty compared to the typical discovery dispute, explaining:

> [T]he Court, at the April 9 hearing and in its April 10 Order, delineated the parameters of permissible discovery concerning the alter-ego theory. That Order, which was objected to by FBP but affirmed by the Senior District Judge, required FBP to respond to discovery concerning all of the named defendants. When it failed to do so, Flame brought FBP's non-compliance to the attention of the Court, following a Court-ordered meet-and-confer, by means of its third and fourth motions to compel. Consistent with its April 10 Order, the Court granted that part of Flame's two motions directed to discovery of the named defendants,

9

and denied that part of Flame's motions that went beyond the April 10 Order. Hence, the dispute was not especially complex under the circumstances.

*Id.* at 14. Similarly, FBP improperly resisted Glory Wealth's discovery requests on the same subject matter for the same improper reasons as it did Flame's, and therefore the identical issues were required to be addressed in both Flame's and Glory Wealth's motions to compel. Accordingly, the 24.4 hours expended by Glory Wealth's attorneys in pursuing their Motion to Compel was reasonable.

### 3. Remaining Factors

The remaining four factors the Court must consider here in determining Glory Wealth's fee request all impact the hourly rate at which Glory Wealth seeks reimbursement for its attorneys. They include Factor 3, the skill required to properly perform the legal services rendered; Factor 5, the customary fee for like work; Factor 9, attorney experience, reputation and ability; and Factor 12, attorneys' fees awards in similar cases. The billable rates Glory Wealth has sought for the attorneys are set forth in the following chart:

| Attorney | Billable Rate |
| --- | --- |
| James H. Power | $520 |
| Michelle T. Hess | $380 |
| Warren T. Gluck | $350 |

ECF No. 589 at 5. For the reasons discussed below, the Court **FINDS** that, despite shortcomings in Glory Wealth's proffer, the requested rates are reasonable.

First, in denying Glory Wealth's previous attempt to secure an award for its attorneys' fees, the Court specifically instructed as follows:

> Mr. Power's affidavit, alone, is insufficient to carry Glory Wealth's burden under *Robinson*, which requires that "the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Robinson*, 560 F.3d at 244 (finding the district court abused its discretion in awarding attorneys' fees where applicant offered no specific evidence, beyond an affidavit of a firm member, that the

hourly rates sought for her attorneys coincided with the then prevailing market rates of attorneys in the Eastern District of Virginia of similar skill and for similar work, which the Fourth Circuit's case law required her to do) (citation omitted) (emphasis omitted); *see also SunTrust Bank,* 2012 WL 1344390, at *4 (considering two declarations submitted by persons *who were not counsel of record in the case* to determine the customary fee for like work and attorneys' fees and awards in similar cases). "Examples of the type of specific evidence that [the Fourth Circuit] ha[s] held is sufficient to verify the prevailing market rates are affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Robinson,* 560 F.3d at 245. Such evidence is absent here.

ECF No. 572 at 4. Despite this admonition, Glory Wealth again proffered a single declaration from its attorney, Mr. Power, wherein he attached the billing records from his law firm. ECF No. 588. Further, in its memorandum in support, Glory Wealth provided some limited information regarding Mr. Power and the associates with whom he worked in his law firm. ECF No. 589 at 4-6.

Second, Glory Wealth also relied on the declaration of Norfolk attorney Robert W. McFarland for the proposition that the billing rates of the Holland & Knight attorneys were reasonable and customary: "It is entirely appropriate for the Court to consider such declaration submitted by Flame in support of Glory Wealth's fees as Holland & Knight and Blank Rome are firms with similar rates and reputations in the maritime industry." ECF No. 589 at 6. Reliance on Mr. McFarland's declaration is of only limited value, however. As Glory Wealth acknowledged, Mr. McFarland's declaration was submitted on behalf of Flame, not Glory Wealth, in order to establish that the billable rates of Blank Rome, Flame's attorneys, were reasonable. As is apparent, Mr. McFarland is silent as to Holland & Knight and its attorneys, never mentioning them, their experience, reputation and abilities, or their billing rates. ECF No. 429 attach. 3. Hence, Mr. McFarland's declaration provides little evidentiary support for the reasonableness of the billing rates of Holland & Knight.

In addition, recognizing that the hourly rates it seeks are higher than the rates the Court approved for Flame's attorneys, Glory Wealth relied on Mr. McFarland's statement that the billing rates of Flame's attorneys are "commensurate with, and also actually lower than the rates typically charged," by similarly situated attorneys to justify its higher billing rates. ECF No. 589 at 6 (citing ECF No. 429 attach. 3). Glory Wealth therefore seeks an inference that, since Flame's attorneys' rates might be lower than customary, its own attorneys' higher rates therefore can be considered customary. The problem with this inference is that Mr. McFarland provided no guidance as to *how much* lower any of Flame's attorneys' rates might be than what are customary. Glory Wealth seeks a $520 per hour rate for Mr. Power, which is nearly fifty percent higher than the highest Flame attorney rate.[6] Accordingly, Mr. McFarland's declaration provides only minor support for the proposition that Glory Wealth's higher fees are reasonable and customary.

Nonetheless, the Court is mindful of the fact that Glory Wealth was able to proffer a quite effective and proficient Motion to Compel (and for sanctions) which ultimately justifies the higher rates sought. When considering the reasonableness of attorneys' rates, the Court may consider whether "[c]ounsel has rendered its legal services in a highly efficient manner," and such "effective and efficient representation" may then "justify[y] a higher hourly rate." *In re Brier Creek Corp. Ctr. Assocs., Ltd. P'ship*, No. 12-01855-8, 2013 WL 2352570, at *6 (E.D.N.C. May 29, 2013). Particularly, regarding Factor 3, the skill required to properly perform the legal services rendered, the Court has determined that the issues pertaining to Glory Wealth's Motion to Compel were substantially similar to the issues pertaining to Flame's Motions to Compel. However, while Glory Wealth expended 24.4 hours on its motion, Flame expended more than

---

[6] The highest rate the Court approved for any Flame attorney was $360 per hour for Blank Rome attorney Belknap. ECF No. 570 at 6-7.

twice that amount of time. *Compare* ECF No. 588 at 4, *with* ECF No. 386 attach. 1-2. Upon review of Glory Wealth's submissions, a significant amount of skill, which was ably demonstrated, was required to properly perform the legal services rendered. Glory Wealth prepared a sound memorandum with exhibits in support of its Motion to Compel, along with a reply memorandum, which were capably done and provided appropriate evidentiary support. ECF Nos. 174, 175, 202. Most importantly, though, Glory Wealth's pleadings evidenced the same level of skill expended by Flame's counsel, but Glory Wealth was vastly more efficient by completing substantially similar work in half the time. The Court therefore evaluates this factor in Glory Wealth's favor.

Regarding Factor 5, the customary fee for like work, Glory Wealth relies on Mr. McFarland's declaration, which averred that the rates charged by Blank Rome and Crenshaw, Ware & Martin were customary for this area, and that the fees charged by Flame's attorneys were reasonable. Inasmuch as those fees were lower than the amount of fees sought by Glory Wealth, the Court gives little weight to Mr. McFarland's declaration for this purpose. Nonetheless, the Court does credit Mr. McFarland's declaration for the proposition that the total amount of fees was customary for like work, since Glory Wealth's total fees were relatively comparable to those charged by Flame.

Regarding Factor 9, attorney experience, reputation and ability, Glory Wealth provided minimal information attesting to the experience, reputation and abilities of the attorneys. Neither Mr. Powers' declaration nor Mr. McFarland's discussed this factor. ECF Nos. 588, 429, attach. 3. It is the fee movant's burden to "produce satisfactory evidence" of the attorneys' experience, *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984), which requires "affidavits of other local lawyers" to testify to the attorneys' skill and experience, *Robinson*, 560 F.3d at 245. Glory

Wealth provided no such specific evidence; however, its memorandum in support of its motion for an award of fees and costs did provide the Court with some conclusory information regarding this factor. ECF No. 589 at 5-6. While this information should have been provided for the Court's consideration by means of external evidence, i.e., declarations, rather than representations in a legal memorandum, *see, e.g., Mostaed v. Crawford*, No. 3:11-cv-00079, 2012 WL 3947978, at *6 (E.D. Va. Sept. 10, 2012) (denying plaintiffs' motion for attorneys' fees, in part, because plaintiffs produced only the affidavits of their own lawyers and failed to offer unbiased, external evidence of the fees' reasonableness), the Court nonetheless may consider it. Glory Wealth stated in its memorandum that Mr. Power is "a partner at Holland & Knight LLP with 16 years of experience in maritime, shipping, complex commercial litigation and cross-border insolvencies." ECF No. 589 at 5. Glory Wealth proffered that Ms. Hess is a former associate at Holland & Knight and a former judicial clerk "with approximately 8 years of experience in commercial litigation, and substantial experience practicing before state and federal courts in Virginia." *Id.* Glory Wealth also proffered that Mr. Gluck is a "mid-level associate" in the maritime group at Holland & Knight with "experience in the areas of commercial litigation, insolvency and admiralty law." *Id.* Glory Wealth also provided some additional information about Mr. Gluck's background, representing that Mr. Gluck "is a frequent speaker on international debt enforcement and cross-border insolvency." *Id.* Finally, in its only reference to the reputation of the attorneys,[7] Glory Wealth referred to Mr. McFarland's declaration, where he discussed the reputation of Flame's attorneys, and proffered that "Holland & Knight and Blank Rome are firms with similar rates and reputations in the maritime industry."

---

[7] Glory Wealth does state in its memorandum that the hourly rates sought for Mr. Power and Ms. Hess were "reasonable for an attorney with [their] experience and reputation." ECF No. 589 at 5.

*Id.* at 6. Despite the paucity of detail, the Court will give some weight to Glory Wealth's proffer, recognizing, too, that the abilities of the attorneys was evident in their work.

Regarding Factor 12, attorneys' fee awards in similar cases, Glory Wealth referred the Court to *Stewart* v. *VCU Health Sys. Auth.*, Case No. 3:09-cv-738, 2012 U.S. Dist. LEXIS 47355 (E.D. Va. Apr. 3, 2012) and *Paice, LLC* v. *Hyundai Motor Co.*, Case No. WDQ-12-0499, 2014 U.S. Dist. LEXIS 95043 (D. Md. June 27, 2014), two recent cases in which district courts in this circuit awarded $28,547.25 and $35,000, respectively, in attorneys' fees pursuant to Rule 37(b)(2)(C) for violating court orders. While these cases are not especially helpful in determining the appropriate fee award in considering reasonable expenses incurred in pursuing the Motion to Compel, a more helpful comparator is Glory Wealth's reference to the $10,000 awarded to Flame for pursuing its two motions to compel.

Ultimately, while Glory Wealth's submission justifying the level of its fees was not ideal, the Court is persuaded that its attorneys' skillful and proficient handling of the Motion to Compel enabled them to provide more effective and efficient representation in this case that justifies charging the higher billable rates. *See , e.g., In Re Brier Creek Corporate Ctr. Associates, Ltd. P'Ship*, 2013 WL 2352570, at *6 (finding that reasonableness of compensation may be determined by the Court's evaluation of counsel's proficiency in handling complex matters efficiently). In conclusion, the Court **FINDS** that Glory Wealth is entitled to reasonable attorneys' fees at the hourly rates requested. Furthermore, even where proffered evidence is deficient, "the Court may set a reasonable hourly rate based upon its own knowledge and experience." *Rehab. Ass'n of Va., Inc. v. Metcalf*, 8 F. Supp. 2d 520, 528 (E.D. Va. 1998) (citing *EEOC v. Nutri/System, Inc.*, 685 F. Supp. 568, 576 (E.D. Va. 1988)); *see also Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1079 (10th Cir. 2002) (stating that where "a

district court does not have before it adequate evidence of prevailing market rates, the court may use other relevant factors, including its own knowledge, to establish the rate"). Based on Glory Wealth's proffer, and the Court's own over thirty (30) years of practice and judicial experience, the past twenty within the Eastern District of Virginia and the Fourth Circuit, the Court **FINDS** that Glory Wealth is entitled to hourly rates in the amount of $520 for Mr. Power, $380 for Ms. Hess, and $350 for Mr. Gluck.

4.    <u>Summary and Apportionment Pursuant to Rule 37(a)(5)(C)</u>

Having determined it appropriate to apply the adjusted billable rates to the hours authorized in Section II.B.2, *supra,* the Court calculates the "lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate," *Robinson,* 560 F.3d at 243, as set forth in the following chart:

| Attorney | Billable Rate | Hours allowed | Total |
|---|---|---|---|
| Power | $520 | 5.7 | $2,964.00 |
| Hess | $380 | 11.8 | $4,484.00 |
| Gluck | $350 | 6.9 | $2,415.00 |
| **Grand Totals** | | 24.4 | $9,863.00 |

The Court's task does not end here, however, as it must determine what apportionment is proper under Rule 37(a)(5)(C). As noted in Section I, *supra,* Glory Wealth's Motion to Compel was granted in part and denied in part. The Court overruled FBP's objections and compelled it to respond to 138 of Glory Wealth's 170 RFPs, it sustained FBP's objections to thirty RFPs, and it sustained in part FBP's objections to two RFP's and compelled FBP to respond in a limited fashion. ECF No. 209 at 5. From a straight statistical point of view, the Court fully overruled FBP's objections and compelled it to respond to approximately eighty-one percent of Glory Wealth's RFPs. In addition, the Court granted that part of Glory Wealth's Motion compelling FBP to produce Viktor Baransky for his deposition. *Id.* at 6.

"[U]ltimately, '[t]he matter of attorney fees rests, of course, within the sound discretion of the [court], who is in the best position to determine whether, . . . [and to what extent], they should be awarded.'" *Guidry v. Clare*, 442 F. Supp. 2d 282, 295 (E.D. Va. 2006) (quoting *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1458 (Fed. Cir. 1984)). Therefore the Court, exercising its discretion under Rule 37(a)(5)(C), **FINDS** that Glory Wealth should be awarded approximately eighty-five percent of the pertinent attorneys' fees it incurred, which the Court has found to be properly recoverable in making the Motion to Compel, for an amount totaling $8,400. Such an apportionment is in accord with other cases which have considered appropriate apportionments under Rule 37(a)(5)(C). *See e.g. Stephenson*, 2014 WL 3385213, at *5 (reducing the movant's award of expenses by 25% "to account for Defendant's limited success" on 10 of the discovery requests); *Procaps S.A. v. Patheon, Inc.*, Civ. No. 12-24356, 2013 WL 6238647, at *11 (S.D. Fla. Dec. 3, 2013) (awarding 40% of expenses to the movant because the movant was successful on 6 out of 15 discovery requests); *S2 Automation, LLC v. Micron Tech., Inc.*, Civ. No. 11-0884, 2012 WL 3656454, at *42-43 (D.N.M. Aug. 9, 2012) (awarding the movant 80% of the attorneys' fees and costs, even though "it is difficult to precisely quantify the degree to which [the movant] has prevailed," because the court granted "the majority" of movant's requests and the movant "prevailed on all of what the Court perceives to be its most significant requests"); *Mitchell*, 217 F.R.D. at 60 (D.D.C. 2003) (finding a deduction of 14% to be appropriate when the movant prevailed on six out of seven discovery issues); *Cal Dive Int'l, Inc. v. M/V Tzimin (Ex Stena Seahorse)*, 127 F.R.D. 213, 217–18 (S.D. Ala. Aug. 18, 1989) (awarding 70% of expenses to the movant because the court granted 57 out of 81 items presented in the Motion to Compel).

### C.  Motion for Sanctions

#### 1.  Fee Request and FBP's Opposition

Glory Wealth requested that it be awarded $21,659 in attorneys' fees, based on 56.9 hours of work billed at hourly rates between $320 and $520 for attorneys,[8] and at $220 for a paralegal. ECF No. 588, attach.1 at 5-6. Specifically, according to their billing records, Mr. Power billed 10 hours, Ms. Hess billed 25.4 hours, and Mr. Gluck billed 6.5 hours. *Id.* In addition, Marie E. Larson, an associate at Holland & Knight, billed 12 hours at $320 per hour; Marie B. Catillaz, a paralegal at Holland & Knight, billed 2.8 hours at $220 per hour, and Elvin Ramos, status unknown, billed 0.2 hours at $380 per hour. *Id.* This time is represented to have been incurred by Glory Wealth's attorneys in pursuing their Motion for Sanctions.

The Court addressed FBP's opposition to Glory Wealth's fee request in Section II.B.1 of this Memorandum Opinion, and need not address again FBP's contention that Glory Wealth's submission does not identify which time entries are attributable to which order, and its conclusory assertion that Glory Wealth failed to properly support its claims. Instead, the Court will address the arguments that the time entry for July 7, 2014 was not related to the Motion for Sanctions, and that the part of the Motion for Sanctions addressed to Glory Wealth's request that the Court reconsider its previous Order limiting the scope of discovery should not be recoverable. With respect to the July 7, 2014 time entry, this reflects the work of Glory Wealth's attorneys trying to determine the extent to which FBP violated the Court's Discovery Order and planning how to go about addressing that violation and seeking an appropriate remedy. ECF No. 588 at 5. The date of this entry occurred almost immediately after the conclusion of the overseas depositions at which Glory Wealth learned the extent to which FBP had violated the Discovery

---

[8] The Court assumes that Elvin Ramos, for whose time Glory Wealth seeks fees in the amount of $380 per hour, is an attorney, given the billing rate sought. Glory Wealth's proffer, however, is silent as to who he is. *See* ECF Nos. 588, 589, 602.

Order. *See* ECF No. 377 at 2. Rule 37(b)(2)(C) specifically authorizes a party to recover from a party who fails to obey a court's order "the reasonable expenses, including attorneys' fees, caused by the failure." Certainly, determining the extent to which FBP violated the Discovery Order and planning how to remedy the violation, constitutes an expense "caused by FBP's failure" to obey the Discovery Order, and was contemplated by this Court when it held in its Sanctions Order that Glory Wealth should recover its reasonable expenses in pursuing their Motion for Sanctions. Consequently, FBP's argument is without merit.

With respect to FBP's contention that one-third of Glory Wealth's memorandum in support of its Motion for Sanctions dealt with its motion asking the Court to reconsider the scope of the Discovery Order, this, too, is without merit. In its Motion for Sanctions, Glory Wealth sought a variety of different remedies caused by FBP's failure to obey the Discovery Order. These proposed sanctions included, *inter alia*, evidentiary sanctions and attorneys' fees. ECF No. 323. Glory Wealth also asked the Court to broaden the scope of discovery based on FBP's violation of the Discovery Order. Although, that, too, may be considered a requested sanction against FBP, it was also a potential remedy caused by FBP's failure to obey the Discovery Order. Consequently, although the Court elected not to reconsider the scope of its Discovery Order, this issue was certainly intertwined with the Court's consideration of how to remedy FBP's violation, and therefore the Court will not attempt to parse out that part of Glory Wealth's work attempting to repair the harm caused by FBP's disobedience. Furthermore, just as the Court found that FBP did not violate the Discovery Order with respect to certain matters yet still awarded sanctions for those parts of the Order FBP did violate,[9] FBP can find no harbor in the fact that the Court also found that it would not reconsider the scope of discovery. At the end of the day, the Court

---

[9] In its Sanction Order, the Court found that FBP did not violate the Court's Discovery Order in connection with its production of the supporting documentation for bank records and the charter parties for the CAPE VIEWER and HARMONY FALCON.

sanctioned FBP for violating its Discovery Order; the fact that the Court chose not to also expand the scope of discovery does not immunize FBP from a fee award under Rule 37(b)(2)(C). The Court therefore rejects this argument as well. As before, however, as the party requesting the fee award, it remains Glory Wealth's burden to establish the reasonableness of its fees, so the Court now turns to that question. *See Plyler*, 902 F.2d at 277.

2.    Factors 1 and 2: The Time and Labor Expended, and the Difficulty of the Questions Raised

According to the time records proffered by Glory Wealth, up to five attorneys and one paralegal spent 56.9 hours determining the extent of FBP's failure to obey the Discovery Order, and preparing the Motion for Sanctions, memorandum in support, and reply memorandum. ECF No. 588 at 5-6. The novelty and difficulty of the questions raised as a result of FBP's disobedience were quite significant based on FBP's discovery misconduct. FBP's history of stonewalling discovery and delay tactics presented a complex challenge to Glory Wealth to figure out what discovery had been withheld and how to remedy FBP's violation of the Court's Order. Accordingly, this factor weighs in favor of Glory Wealth. Based on a careful review of Mr. Powers' Supplemental declaration and the attendant billing records, and Glory Wealth's memorandum in support of its motion, the Court **FINDS** that most of the time and labor expended was reasonable under the circumstances. As noted by the Court in its Sanctions Order, FBP's willful violation of the Discovery Order caused prejudice to Glory Wealth in prosecuting this case and "needlessly increased the expense, annoyance, and delay of these proceedings." ECF No. 377 at 22. The tasks specified in the billing records provide a detailed account of the work performed and demonstrate the labor Glory Wealth was required to expend because of FBP's refusal to comply with the Discovery Order. FBP's opposition, as previously discussed, does not undermine the validity of Glory Wealth's proffer.

20

However, there are two time entries which do not appear to be compensable. First, the July 28, 2014 entry for Elvin Ramos's time E-filing Glory Wealth's reply memorandum reflects administrative or clerical work which is not ordinarily recoverable under Rule 37. *See Gregory v. Belfor USA Grp., Inc.*, No. 2:12CV11, 2014 WL 468923, at *6 (E.D. Va. Feb. 4, 2014) (quoting *Abusamhadaneh v. Taylor*, No. 1:11cv939, 2013 WL 193778 at *38 (E.D. Va. Jan. 17, 2013) ("Purely clerical activities, regardless of who performs them, are considered overhead and are not compensable as . . . attorney fees.")); *see, e.g., Morse v. Republican Party of Va.*, 972 F. Supp. 355, 366 (W.D. Va. 1997) (denying attorneys' fees for time spent filing papers as a disallowed "clerical task[]").

Second, the four hour entry by Ms. Hess for July 29, 2014 does not appear to be related to the Motion for Sanctions. Glory Wealth's last brief regarding this motion was filed the day before, on July 28, 2014. ECF No. 340. Review of the Court's docket demonstrates that the reply memorandum filed on July 29, 2014 pertained to Glory Wealth's "Motion for Additional Expert Identification." ECF No. 344. Moreover, the time entry itself also includes the descriptor: "prepare and file motion for [sic] seal and reply brief." ECF No. 588 at 6. Again, review of the Court's docket demonstrates that the motion to seal pertained to the aforementioned Motion for Additional Expert Identification. ECF No. 345. Consequently, the Court will deduct both of these time entries, and **FINDS** that the remaining 52.7 hours billed by Glory Wealth's attorneys was reasonable with respect to the Motion for Sanctions.

3.    Remaining Factors

The remaining four factors the Court must again consider here in determining Glory Wealth's fee request impact the hourly rate at which Glory Wealth seeks reimbursement for its attorneys. The Court held in Section II.B.3 of this Opinion that the requested rates of Messrs.

Power and Gluck and Ms. Hess are reasonable based on the proficiency and skill demonstrated by the attorneys. Accordingly, the Court incorporates here its analysis from Section II.B.3. In addition to the aforementioned attorneys, in its fee request pertaining to the Motion for Sanctions, Glory Wealth has also sought to recover fees for Ms. Larsen, Mr. Ramos and Ms. Catillaz. The Court therefore will examine the four factors to determine the reasonable hourly rates for all six individuals.

The following chart summarizes the hourly rates sought for each individual with respect to the Motion for Sanctions:

| Name | Position | Billable Rate |
|------|----------|---------------|
| James H. Power | Attorney – Partner | $520 |
| Michelle T. Hess | Attorney – Associate | $380 |
| Warren T. Gluck | Attorney – Associate | $350 |
| Marie Larsen | Attorney – Associate | $320 |
| Elvin Ramos | Information not provided | $380 |
| Marie B. Catillaz | Paralegal | $210 |

ECF No. 589 at 5. For the reasons discussed below, the Court **FINDS** that, with the exception of those sought for Mr. Ramos and Ms. Catillaz, the requested rates are reasonable.

Regarding Factor 3, the skill required to properly perform the legal services rendered, the Court has determined that the issues pertaining to Glory Wealth's Motion for Sanctions were again substantially similar to the issues pertaining to Flame's sanctions motion. Given FBP's stonewalling and abusive discovery tactics, which necessitated painstaking review and analysis on the part of Glory Wealth's attorneys, a significant amount of skill, which was ably demonstrated, was required to properly perform the legal services rendered. Moreover, the skill enabled Glory Wealth's attorneys to prepare a comprehensive memorandum with exhibits in support of its Motion for Sanctions, along with a reply memorandum, in significantly less time than the Court previously approved for Flame. *Compare* ECF No. 588 at 5-6, *with* ECF No. 429

attach. 1-2. Glory Wealth's memoranda were very capably and proficiently done and provided appropriate legal and evidentiary support. ECF Nos. 323, 324, 340. Because of FBP's conduct, a significant amount of skill was required in order to respond to FBP's tactics, resulting in favorable rulings in the Sanctions Order. The Court therefore evaluates this factor very strongly in Glory Wealth's favor.

Regarding Factor 5, the customary fee for like work, Glory Wealth relies on Mr. McFarland's declaration, which averred that the rates charged by Blank Rome and Crenshaw, Ware & Martin were customary for this area. As the Court found, *supra*, this declaration does not necessarily support the proposition that Holland & Knight's higher rates reflect a customary fee for like work, although the Court notes that the firm's total fees for the Motion for Sanctions were actually less than that incurred by Flame, which Mr. McFarland opined to be reasonable and customary, and thus it credits Mr. McFarland's declaration for this limited purpose.

Regarding Factor 9, attorney experience, reputation and ability, the Court adopts its previous finding regarding Glory Wealth's evidence with respect to Messrs. Power and Gluck, and Ms. Hess. Glory Wealth's evidence regarding the remaining three individuals, Ms. Larsen, Mr. Ramos and Ms. Catillaz, however, suffers from some deficiencies. Glory Wealth's memorandum identifies Ms. Larsen as a three year associate at Holland & Knight in its maritime practice group who represents clients in "Rule B attachment proceedings, judgment enforcement and commercial litigation and arbitration." ECF No. 589 at 5. She is also identified as a graduate of New York University Law School.[10] While this information was minimally satisfactory, on the other hand no information at all was provided regarding Mr. Ramos's experience, reputation and ability, including whether or not he is an attorney. Finally, other than identifying Ms. Catillaz as a paralegal, no information was provided to the Court about her.

---

[10] Ms. Larsen is the only individual whose educational background was proffered to the Court.

23

Finally, with respect to Factor 12, Glory Wealth's reliance on *Stewart*, 2012 U.S. Dist. LEXIS 47355 and *Paice, LLC*, 2014 U.S. Dist. LEXIS 95043 (D. Md. June 27, 2014), as sanctions cases involving awards pursuant to Rule 37(b)(2)(C), is more apropos. Again, the Court may also rely on the $39,318.50 in sanctions awarded to Flame based on its similar motion.

In conclusion, the Court **FINDS** that Glory Wealth has established that it is entitled to reasonable attorneys' fees at the hourly rates requested for attorneys Power, Hess, Gluck, and Larsen, but not for Mr. Ramos and Ms. Catillaz. *Robinson*, 560 F.3d at 245. In the absence of sufficient evidence, "the Court may set a reasonable hourly rate based upon its own knowledge and experience." *Rehab. Ass'n of Va., Inc. v. Metcalf*, 8 F. Supp. 2d 520, 528 (E.D. Va. 1998) (citing *EEOC v. Nutri/System, Inc.*, 685 F. Supp. 568, 576 (E.D. Va. 1988)); *see also Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1079 (10th Cir. 2002) (stating that where "a district court does not have before it adequate evidence of prevailing market rates, the court may use other relevant factors, including its own knowledge, to establish the rate"). Based on Glory Wealth's proffer, and the Court's own experience, the Court **FINDS** that Glory Wealth is entitled to the hourly rates it seeks for attorneys Power, Hess, Gluck and Larsen, but it is not entitled to an hourly rate for Ms. Catillaz greater than that which this Court awarded to Flame's paralegal, Ms. Hunter. [11] Consequently, the Court **FINDS** that, in addition to the rates previously established for Messrs. Power and Gluck and Ms. Hess, Ms. Larsen's reasonable rate is $320 per hour, and Ms. Catillaz's reasonable rate is $125 per hour. However, Glory Wealth failed to provide any information at all with respect to Mr. Ramos, and therefore the Court does not even have the bare minimum information necessary to arrive at a reasonable rate. Moreover, the task for which Glory Wealth seeks to recover as performed by Mr. Ramos, E-filing a pleading, is the

---

[11] *See* ECF No. 570 at 6-7.

type of clerical or administrative task that is not recoverable. *See Gregory*, 2014 WL 468923, at *6. As a result, Mr. Ramos's time on this case is not recoverable.

4.     Summary

In sum, then, the Court arrives at the proper lodestar amount per *Grissom*, 549 F.3d at 320-21, by multiplying the time and labor authorized by the Court in Section II.C.2 of this Memorandum Opinion, by the billable rates allowed for each attorney and paralegal, and, accordingly, relying on its sound discretion, *Hensley*, 461 U.S. at 437, **FINDS** that Glory Wealth should be awarded reasonable fees in the amount of $19,797.00. The specific calculation of this amount is categorized in the following chart:

| Attorney/Paralegal | Hours Authorized | Billable Rate | Fee |
|---|---|---|---|
| James H. Power | 10.0 | $520 | $5,200.00 |
| Michelle T. Hess | 21.4 | $380 | $8,132.00 |
| Warren E. Gluck | 6.5 | $350 | $2,275.00 |
| Marie E. Larsen | 12.0 | $320 | $3,840.00 |
| Marie B. Catillaz | 2.8 | $125 | $350.00 |
| **Grand Totals** | **52.7** | | **$19,797.00** |

C.     **Costs**

In addition to attorneys' fees, costs may be recovered if those costs were incurred in making the motions to compel and for sanctions. Although Glory Wealth captioned its motion as being for attorneys' fees and costs, no cost items or other request for costs was proffered. Accordingly, the Court **FINDS** that Glory Wealth is not entitled to costs.

### III. CONCLUSION

Pursuant to this Court's previous Order awarding Glory Wealth its reasonable expenses incurred in connection with its Motion to Compel, ECF No. 209, Glory Wealth is **AWARDED** attorneys' fees in the amount of **$8,400.00** against FBP. Pursuant to this Court's Order awarding Glory Wealth its reasonable expenses incurred in connection with its Motion for Sanctions,

Glory Wealth is **AWARDED** attorneys' fees in the amount of **$19,797.00** against both FBP and its counsel.

The Clerk is **DIRECTED** to forward a copy of this Order to all counsel of record.

It is so **ORDERED**.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
December 16, 2014